

# EXHIBIT Q

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| RARE BREED TRIGGERS, INC., a Texas corporation, and<br>ABC IP, LLC, a Delaware limited liability company,<br><br>       *Plaintiffs*,<br>v.<br><br>PEAK TACTICAL, LLC d/b/a PARTISAN TRIGGERS, a Wyoming limited liability company, and<br>NICHOLAS NORTON, an individual,<br><br>       *Defendants*. | Case No. 26-cv-00018<br><br>**DECLARATION OF BRIAN LUETTKE** |

I, Brian Luettke, declare and state as follows:

## I.    Qualifications and Assignment

1.    I am over eighteen years of age, and I am an employee of Luettke Firearms Consulting, Inc., located in Grand Rapids, Michigan, and am competent to make these statements.

2.    I have been retained as an expert for Plaintiffs in the case, Rare Breed Triggers, LLC ("Rare Breed") and ABC IP, LLC to examine the Partisan Disruptor Trigger and FRT-15L3™ Trigger and compare them to U.S. Patent Nos. 10,514,223 ("the '223 Patent"); 11,724,003 ("the '003 Patent"); 12,036,336 ("the '336 Patent"); and 12,274,807 ("the '807 Patent") (collectively, "the Asserted Patents").  I have also been asked to compare the Partisan Disruptor Trigger and FRT-15L3™ Trigger to U.S. Patent No. 9,146,067 ("the '067 Patent").

3.    The content of my testimony or payment of my consulting fee is not dependent in any way on the outcome of this matter.  I have no financial interest in any party to this case.

4.    I have more than twenty-five years of experience in firearms identification, investigation, and classification.

5.    I hold a Bachelor of Arts degree in Criminal Justice from the University of Michigan – Flint and a Master's Degree in Security and Safety Leadership from The George Washington University.

6.    I have been employed as a firearm consultant and trainer for at least the last five years, working as a firearm expert and trainer in firearm identification.

7.    I am a person of at least ordinary skill in the field of firearm trigger designs and function.

## II.    The Rare Breed FRT-15L3™ and Partisan Disruptor Products

8.    I am familiar with the construction and operation of the Rare Breed FRT-15L3™ semiautomatic trigger, shown below.  Unlike standard semiautomatic triggers or other firing-rate-enhancing devices, the trigger described in the Asserted Patents and the Rare Breed trigger operate

1    DECLARATION OF BRIAN LUETTKE

by the trigger being forcibly pushed into the reset position, with the sear engaging the hammer, each time the action cycles (i.e., each time a shot is fired). Another shot cannot be fired until the bolt returns to the in-battery position and the trigger is pulled again by the user.



9.    I have reviewed publicly available information on the Partisan Disruptor trigger, including technical specifications and images of the product.

10.    From publicly available information and from a physical examination, I can see the mechanisms of the Partisan Disruptor trigger and how it operates.

11.    Comparing the Partisan Disruptor and Rare Breed FRT-15L3™ triggers, it is my opinion that the products are functionally identical and therefore that the Disruptor can serve as a direct substitute for the FRT-15L3™ trigger. The only visible difference between the triggers is the shape of the housing, which does not affect trigger functionality. Once installed into a firearm, the products are virtually indistinguishable.



Partisan Disruptor                                    Rarebreed FRT-15L3

Partisan Disruptor                                    Rarebreed FRT-15L3

12.    Both the Partisan Disruptor and Rare Breed FRT-15L3™ products are manufactured of durable steel and are intended to be long-lasting products.

13.    Both the Partisan Disruptor and Rare Breed FRT-15L3™ triggers are readily installed out of the box into firearms without requiring modification or gunsmithing.

14.    Both the Partisan Disruptor and Rare Breed FRT-15L3™ triggers advertise "hassle-free installation."  In order to install the Partisan Disruptor or Rare Breed FRT-15L3™ triggers into an AR-15 receiver, a person simply inserts the trigger into the receiver's fire control mechanism pocket, inserts the two (supplied) trigger pins to hold the trigger in place, and installs the (supplied) safety selector or safety switch.

3      DECLARATION OF BRIAN LUETTKE

15.     Both the Partisan Disruptor and Rare Breed FRT-15L3™ triggers can be retrofitted to any existing MIL-SPEC AR-15 lower receiver and can be easily transferred from one rifle to another.

16.     Forced reset triggers are a type of semi-automatic trigger mechanism that fully reset the trigger after each shot, forcing the trigger back into the forward position and allowing the user to take faster follow-up shots without fully releasing the trigger.  In contrast, assisted reset triggers reset the trigger only partially.  Both the Partisan Disruptor and Rare Breed FRT-15L3™ triggers are forced reset triggers, not assisted reset triggers, because in both products the trigger is forced back into its reset position with each shot.

17.     In particular, both products, the Partisan Disruptor and Rare Breed FRT-15L3™, incorporate a locking bar as a safety and legal compliance feature to prevent runaway fire of the weapon.  The locking bar is necessary in an FRT design but has no relevance in an assisted reset trigger.

18.     Forced reset triggers such as the Partisan Disruptor and Rare Breed FRT-15L3™ also have a different firing rate than assisted reset triggers.

**III.    Infringement of the Asserted Patents**

19.     I have been provided copies of and have studied the Asserted Patents.  The '223 Patent relates to a forced reset trigger that allows more rapid reset and semiautomatic firing of a firearm, firing once each time the trigger is pulled by the user.  The '003 Patent, the '336 Patent, and the '807 Patent describe and claim a similarly operating device with the additional feature that allows the device to be selectively operated in one of two distinct modes:  (1) standard disconnector semiautomatic mode, and (2) forced reset semiautomatic mode.

20.     I have been asked to compare the structure and operation of the Partisan Disruptor and Rare Breed FRT-15L3™ triggers to the elements specified in claim 4 of the '223 Patent, claim 4 of the '003 Patent, claim 3 of the '336 Patent, and claim 1 of the '807 Patent.

4       DECLARATION OF BRIAN LUETTKE

21.    I am not a patent attorney, nor have I independently researched the law on patent validity. Rare Breed's counsel explained certain legal principles to me, set forth below, that I have relied on and followed in forming my opinions set forth in this declaration.

22.    I have been instructed that a determination of patent infringement requires a two-step analysis: first, the patent claims must be properly construed; and second, a determination must be made as to whether the claims "read on" the accused product.

23.    To determine the meaning of the patent terms (construing claim terms), I looked primarily to the claim language and the specifications of the Asserted Patents.

24.    For purposes of my evaluation, I applied the plain and ordinary meaning of the terms of the asserted claim as they would be understood by a person of ordinary skill in this field in the context of the patent document as a whole. The Asserted Patents sufficiently describe the limitations of the claims such that their meanings are clear.

25.    For the second step of the inquiry, I compared the language of the claim to the accused product.

**A. Claim 4 of the '223 Patent**

26.    Below is a chart that compares each element and limitation of claim 4 of the '223 Patent to the Partisan Disruptor:

| Claim Language | Infringing Device (Partisan Disruptor) |
|---|---|
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, | The Infringing Device is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket. |

DECLARATION OF BRIAN LUETTKE

| | |
|---|---|
| and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising: | **Fire Control Mechanism Pocket**<br><br>An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.<br><br>**Bolt Carrier** |
| a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; | The Infringing Device includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins.<br><br>**Hammer and trigger pins** |



| | |
|---|---|
| | **(Plaintiff–generated renderings of the Partisan Disruptor here and below)** |
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis | The Infringing Device includes a hammer **(Blue)** with a sear notch and is mounted in the housing to pivot on a transverse axis. |
| between set and | **(Set position)** |

| | |
|---|---|
| released positions; | <br>**(Released position)** |
| a trigger member having a sear and mounted in the housing to pivot on a transverse axis<br><br>between set<br><br><br><br><br><br><br>and released positions, | The infringing device has a trigger member **(Green)** that has a sear and is mounted in a housing to pivot on a transverse axis.<br><br><br>**(Set position)**<br><br><br>**(Released position)** |

Case 2:26-cv-00018-KHR     Document 7-17     Filed 01/16/26     Page 11 of 50

| | |
|---|---|
| the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, | The trigger member (Green) has a surface positioned to be contacted by a surface of the hammer (Blue)  |
| the contact causing the trigger member to be forced to the set position; | The hammer (Blue) pivots rearward causing the trigger (Green) to be forced to the set position. |

9     DECLARATION OF BRIAN LUETTKE



| | |
|---|---|
| a locking bar pivotally mounted in the housing | The Infringing Device includes a locking bar (Red) that is pivotally mounted in the housing. |
| and spring biased toward a first position | The locking bar is spring biased toward a first position in which the locking bar mechanically |

| in which the locking bar mechanically blocks the trigger member from moving to the released position, | blocks the trigger member from moving to the released position. |
|---|---|



**(First position mechanically blocked)**

| and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position | The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position. |
|---|---|

| in which the trigger member can be moved by an external force to the released position. | In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position. |
|---|---|



27.     It is my opinion, for the reasons stated above, that the Partisan Disruptor includes each and every limitation of claim 4 and, therefore, literally infringes at least claim 4 of the '223 Patent.

28.     As explained above, it is my opinion that the Partisan Disruptor and Rare Breed FRT-15L3™ triggers are functionally identical.  Because the products are functionally identical and the claim language is silent regarding the only distinction between the products (the shape of the housing), it is my opinion the Rare Breed FRT-15L3™ trigger is also covered by at least claim 4 of the '223 Patent.

**B.  Claim 4 of the '003 Patent**

29.     Below is a chart that compares each element and limitation of claim 4 of the '003 Patent to the Partisan Disruptor:

| Claim Language | Infringing Device (Partisan Disruptor) |
|---|---|
| 4. A firearm trigger mechanism comprising: | The Infringing Device is a firearm trigger mechanism. |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Infringing Device includes a housing (**Black**) that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin.  The Infringing Device is sold with hammer and trigger pins. |



| | |
|---|---|
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin | The Infringing Device includes a hammer (**Blue**) that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |



**(Plaintiff-generated renderings of the Partisan Disruptor here and below)**



between set and

**(Set position)**

| | |
|---|---|
| | **(Released position)** |
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin<br><br><br>between set | The Infringing Device includes a trigger member **(Green)** that has a sear and is mounted in the housing to pivot on the trigger member pin<br><br>**(Set position)** |
| and released positions, | |

| | |
|---|---|
| said trigger member having a surface positioned to be contacted by a surface of said hammer | <br><br>**(Released position)**<br><br>The trigger member **(Green)** has a surface positioned to be contacted by a surface of the hammer **(Blue)**<br><br> |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer **(Blue)** pivots rearward causing the trigger **(Green)** to be forced to the set position. |

15    DECLARATION OF BRIAN LUETTKE



| | |
|---|---|
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position |



**(Set position)**

The sear and sear catch are out of engagement in the released position

16    DECLARATION OF BRIAN LUETTKE

| | |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | **(Released position)** |
| a disconnector having a hook for engaging said hammer | The infringing device has a disconnector (**Orange**) that has a hook for engaging the hammer (**Blue**) hook<br><br>The disconnect is mounted in the housing to pivot on the trigger (**Green**) member pin |

| | |
|---|---|
| and mounted in said housing to pivot on said trigger member pin, |  |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The infringing device has a locking member (**Red**) that is mounted in the housing and it pivots on a transverse locking member pin<br><br> |
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar (**Red**) is in the first position, the locking member blocks the trigger (**Green**) from being pulled<br><br><br><br>**(First position mechanically blocked)** |
| and a second position at which said locking member does not mechanically | When the locking bar (**Red**) is in the second position, it does not prevent the trigger (**Green**) from being pulled |

| | |
|---|---|
| block said trigger member allowing said trigger member to be moved to said released position, | <br><br>**(Second position not mechanically blocked)** |
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | The locking member **(Red)** is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.<br><br> |

| | The Disruptor |
|---|---|
| | The Disruptor (US Patent 9140957) is an app of a trigger described from the original Fastern D.I.T trigger, arranged for legal and has the law installation in the AR-15 platform, it can match of installation applications at being. But for anyone who takes unusual and control features in how quickly it's come up with their Gate. Articularly, look to build a forced feedback. Without this variable trigger full resist jack ement while not losing any of its cut and owes as two of a reject. A forced to one operation. is not.
(https://partisantriggers.com/the-disruptor/) |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (**Blue**) to pivot and the disconnect (**Orange**) hook catches the hammer hook  |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | (**Standard semi-automatic position**) |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the infringing device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer (**Blue**) to pivot which causes the trigger (**Green**) to be forced to the set position. |



|  |  |
|---|---|
|  | **(Trigger pulled to the rear, hammer first touches the trigger)** |
|  | **(Hammer has now caused the trigger to move to the reset position)** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector **(Orange)** hook from catching the hammer **(Blue)** hook by pivoting the disconnector back out of the way of the hammer hook. |
|  | **(Set position)** |

| | |
|---|---|
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger **(Green)** without manually releasing pressure off the trigger<br> |

30.     It is my opinion, for the reasons stated above, that the Partisan Disruptor includes each and every limitation of claim 4 and, therefore, literally infringes at least claim 4 of the '003 Patent.

31.     As explained above, it is my opinion that the Partisan Disruptor and Rare Breed FRT-15L3™ triggers are functionally identical. Because the products are functionally identical and the claim language is silent regarding the only distinction between the products (the shape of the housing), it is my opinion that the Rare Breed FRT-15L3™ trigger is also covered by at least claim 4 of the '003 Patent.

**C. Claim 3 of the '336 Patent**

32.     Below is a chart that compares each element and limitation of claim 3 of the '336 Patent to the Partisan Disruptor:

| Claim Language | Infringing Device (Partisan Disruptor) |
|---|---|
| 3. A firearm trigger mechanism comprising: | The Infringing Device is a firearm trigger mechanism. |

| | |
|---|---|
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Infringing Device includes a housing that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin.  The Infringing Devise is sold with hammer and trigger pins.  |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin | The Infringing Device includes a hammer (**Blue**) that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |

Case 2:26-cv-00018-KHR    Document 7-17    Filed 01/16/26    Page 26 of 50

between set and



**(Plaintiff-generated renderings of the Partisan Disruptor here and below)**

**(Set position)**

released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,



**(Released position)**

| | |
|---|---|
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin<br><br><br><br>between set | The Infringing Device includes a trigger member **(Green)** that has a sear and is mounted in the housing to pivot on the trigger member pin |



**(Set position)**

| | |
|---|---|
| and released positions, | <br><br>**(Released position)**<br><br>The trigger member **(Green)** has a surface positioned to be contacted by a surface of the hammer **(Blue)** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer |  |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer **(Blue)** pivots rearward causing the trigger **(Green)** to be forced to the set position |



| | |
|---|---|
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position |



**(Set position)**

| | |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position |

**(Released position)**

| | |
|---|---|
| a disconnector having a hook for engaging said hammer | The infringing device has a disconnector (**Orange**) that has a hook for engaging the hammer (**Blue**) hook |



| | |
|---|---|
| and mounted in said housing to pivot on said trigger member pin, | The disconnect is mounted in the housing to pivot on the trigger (**Green**) member pin |

28    DECLARATION OF BRIAN LUETTKE

| | |
|---|---|
| |  |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The infringing device has a locking member (**Red**) that is mounted in the housing and it pivots on a transverse locking member pin.<br> |
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar (**Red**) is in the first position, the locking member blocks the trigger (**Green**) from being pulled<br><br>**(First position mechanically blocked)** |

| | |
|---|---|
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, | When the locking bar **(Red)** is in the second position, it does not prevent the trigger **(Green)** from being pulled.  **(Second position not mechanically blocked)** |
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | The locking member **(Red)** is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.  Safety Selector |

| | |
|---|---|
| |  **The Disruptor**<br><br>(https://partisantriggers.com/the-disruptor/) |
| said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook, | While in the forced reset semi-automatic position the disconnect **(Orange)** moves to a position that does not allow the disconnector hook to catch the hammer **(Blue)** hook<br><br>**(Forced reset semi-automatic position)** |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot and the disconnect **(Orange)** hook catches the hammer hook |

31   DECLARATION OF BRIAN LUETTKE

| | |
|---|---|
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | <br>**(Standard semi-automatic position)** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the infringing device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot which causes the trigger **(Green)** to be forced to the set position.<br><br><br>**(Trigger pulled to the rear, hammer first touches the trigger)**<br><br><br>**(Hammer has now caused the trigger to move to the reset position)** |

DECLARATION OF BRIAN LUETTKE

| | |
|---|---|
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector **(Orange)** hook from catching the hammer **(Blue)** hook <br><br>**(Set position)** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger **(Green)** without manually releasing pressure off the trigger |

33.     It is my opinion, for the reasons stated above, that the Partisan Disruptor includes each and every limitation of claim 4 and, therefore, literally infringes at least claim 3 of the '336 Patent.

34.     As explained above, it is my opinion that the Partisan Disruptor and Rare Breed FRT-15L3™ triggers are functionally identical. Because the products are functionally identical and the claim language is silent regarding the only distinction between the products (the shape of the housing), it is my opinion that the Rare Breed FRT-15L3™ trigger is also covered by at least claim 3 of the '336 Patent.

**D. Claim 1 of the '807 Patent**

35.     Below is a chart that compares each element and limitation of claim 1 of the '807 Patent to the Partisan Disruptor:

| Claim Language | The infringing Device (Partisan Disruptor) |
|---|---|
| 1. A firearm trigger mechanism comprising: | The Infringing Device is a firearm trigger mechanism. |

| | |
|---|---|
| a hammer having a sear catch and a hook and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis | The Infringing Device includes a hammer **(Blue)** that has a sear catch and a hook for engaging a disconnector. It is mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |



**(Plaintiff-generated renderings of the Partisan Disruptor here and below)**

| | |
|---|---|
| between set and | <br><br>**(Set position)** |

| | |
|---|---|
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | <br>**(Released position)** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>between set<br><br><br><br><br>and released positions, | The Infringing Device includes a trigger member **(Green)** that has a sear and is mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br><br>**(Set position)**<br><br>**(Released position)** |

| | |
|---|---|
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member (**Green**) has a surface positioned to be contacted by a surface of the hammer (**Blue**)<br><br> |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer (**Blue**) pivots rearward causing the trigger (**Green**) to be forced to the set position<br><br> |

| | |
|---|---|
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position<br><br><br><br>**(Set position)** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position<br><br><br><br>**(Released position)** |
| a disconnector having a hook for engaging said hammer hook | The infringing device has a disconnector **(Orange)** that has a hook for engaging the hammer **(Blue)** hook |

| | |
|---|---|
| |  |
| and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnect is mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis  |
| a locking member adapted to be movably mounted in the fire control mechanism pocket, | The infringing device has a locking member **(Red)** that is movably mounted in the fire control mechanism pocket and it is movable between a first position and a second position.  |
| said locking member being movable between a first position at which said locking member | When the locking bar **(Red)** is in the first position, the locking member blocks the trigger **(Green)** from being pulled |

38    DECLARATION OF BRIAN LUETTKE

| | |
|---|---|
| mechanically blocks said trigger member from moving to said released position |  **(First position mechanically blocked)** When the locking bar **(Red)** is in the second position, it does not prevent the trigger **(Green)** from being pulled |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, |  **(Second position not mechanically blocked)** |
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | The locking member **(Red)** is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position |
| a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi- | The Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. |

| | |
|---|---|
| automatic, and forced reset semi-automatic positions, | <br><br><br><br>**(https://partisantriggers.com/the-disruptor/)** |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br><br><br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot and the disconnect **(Orange)** hook catches the hammer hook<br><br><br><br>**(Standard semi-automatic position)** |

40    DECLARATION OF BRIAN LUETTKE

| | |
|---|---|
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the infringing device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer (**Blue**) to pivot which causes the trigger (**Green**) to be forced to the set position.  **(Trigger pulled to the rear, hammer first touches the trigger)**  **(Hammer has now caused the trigger to move to the reset position)** |

41    DECLARATION OF BRIAN LUETTKE

| | |
|---|---|
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector **(Orange)** hook from catching the hammer **(Blue)** hook.<br><br>**(Set position)** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger **(Green)** without manually releasing pressure off the trigger.<br> |

36.    It is my opinion, for the reasons stated above, that the Partisan Disruptor includes each and every limitation of claim 4 and, therefore, literally infringes at least claim 1 of the '807 Patent.

42    DECLARATION OF BRIAN LUETTKE

37.     It is my opinion that the asserted claims relate to the core functionality of the Partisan Disruptor and therefore that designing around the asserted claims would require material technical changes.  For example, Partisan highlights the three-position safety selector, claimed in claim 4 of the '003 Patent, claim 3 of the '336 Patent, and claim 1 of the '807 Patent, as a key feature of the Disruptor.



(https://partisantriggers.com/the-disruptor/)

38.     As explained above, it is my opinion that the Partisan Disruptor and Rare Breed FRT-15L3™ triggers are functionally identical.  Because the products are functionally identical and the claim language is silent regarding the only distinction between the products (the shape of the housing), it is my opinion that the Rare Breed FRT-15L3™ trigger is also covered by at least claim 1 of the '807 Patent.

## IV.     Non-Infringing Alternatives

39.     I am not aware of any alternatives that provide the same functionality, durability, and ease of installation as the Partisan Disruptor and Rare Breed FRT-15L3™ triggers without infringing the asserted claims.

## V.     The Partisan Disruptor and FRT-15L3 Do Not Practice the '067 Patent

40.     I have reviewed the '067 patent and am familiar with the patent and its recited claims.

43     DECLARATION OF BRIAN LUETTKE

41.     In my opinion, neither the RBT FRT-15L3™ nor the Partisan Disruptor practice any claim

of the '067 patent.

42.     The '067 Patent's independent claims 1, 4, 8, 11, and 15 all, and therefore all the dependent

claims that depend from them, require a "reset lever" that is struck by a hammer.  In my opinion,

a person of ordinary skill in the art would understand that the following claim limitations

(emphasized below) create such a requirement:

> 1. A trigger mechanism, comprising:
>
> a trigger disconnector assembly having a trigger nose, and a disconnector having a disconnector hook;
>
> ***a reset lever mounted for pivotal movement between open and closed positions;***
>
> the trigger disconnector assembly mounted for pivotal movement between charged and discharged orientations, the charged orientation comprises a set position of the trigger nose and a disengaged position of the disconnector hook, and the discharged orientation comprises a released position of the trigger nose and an engaged position of the disconnector hook;
>
> a hammer includes a striking end, a hammer disconnect notch, a pivot end pivotable about a hammer pivot between a firing position of the striking end, a cocked position of the striking end, and a past-cocked position of the striking end, and a trigger notch formed in the pivot end for receiving the trigger nose in the cocked position of the hammer; and
>
> the trigger disconnector assembly is in mechanical communication with the reset lever, ***the striking end of the hammer strikes the reset lever in the past-cocked position of the hammer pivoting the reset lever from the open position to the closed position, the reset lever acting on the trigger disconnector assembly to pivot the trigger disconnector assembly from the discharged orientation to the charged orientation when the reset lever moves from the open position to the closed position, to position*** the trigger nose in the set position in preparation to be received by the trigger notch in the cocked position of the hammer and to position the disconnector in the disengaged position of the disconnector hook relative to the hammer disconnect notch.
>
> 4. A trigger mechanism, comprising:
>
> a trigger disconnector assembly having a trigger nose, and a disconnector having a disconnector hook and a cam surface;
>
> ***a reset lever mounted for pivotal movement between open and closed positions;***

the trigger disconnector assembly mounted for pivotal movement between charged and discharged orientations, the charged orientation comprises a set position of the trigger nose and a disengaged position of the disconnector hook, and the discharged orientation comprises a released position of the trigger nose and an engaged position of the disconnector hook;

a hammer includes a striking end including a striking surface and an opposed hammer tail, a hammer disconnect notch, a pivot end pivotable about a hammer pivot between a forward position of the striking end, a cocked position of the striking end, and a past-cocked position of the striking end, and a trigger notch formed in the pivot end for receiving the trigger nose in the set position of the trigger nose and the cocked position of the hammer; and

*the cam surface of the trigger disconnector assembly is in mechanical communication with the reset lever, the hammer tail of the striking end of the hammer strikes the reset lever in the past-cocked position the hammer pivoting the reset lever from the open position to the closed position, the reset lever acting on the cam surface to pivot the trigger disconnector assembly from the discharged orientation to the charged orientation when the reset lever moves from the open position to the closed position, to position* the trigger nose in the set position in preparation to be received by the trigger notch in the cocked position of the hammer and to position the disconnector in the disengaged position of the disconnector hook relative to the hammer disconnect notch.

8. A trigger mechanism, comprising:

a trigger body having a trigger nose and a trigger pivot for pivotally coupling the trigger body to a firearm for movement of the trigger nose between set and released positions;

*a reset lever mounted for pivotal movement between open and closed positions;*

a disconnector having a disconnector hook, and a disconnector pivot pivotally coupling the disconnector to the trigger pivot for movement of the disconnector hook between disengaged and engaged positions in response to pivotal movement of the trigger body between the set and released positions of the trigger nose, respectively;

a hammer includes a striking end, a hammer disconnect notch, a pivot end pivotable about a hammer pivot between a firing position of the striking end, a cocked position of the striking end, and a past-cocked position of the striking end, and a trigger notch formed in the pivot end for receiving the trigger nose in the cocked position of the hammer; and

*the disconnector is in mechanical communication with the reset lever, the striking end of the hammer strikes the reset lever in the past-cocked position of the hammer pivoting the reset lever from the open position to the closed position, the reset lever acting on the disconnector to concurrently pivot the disconnector*

*from the engaged position of the disconnector hook to the disengaged position of the disconnector hook* and the trigger body from the released position of the trigger nose to the set position of the trigger nose in preparation to be received by the trigger notch in the cocked position of the hammer when the reset lever moves from the open position to the closed position.

11. A trigger mechanism, comprising:

a trigger body having a trigger nose and a trigger pivot for pivotally coupling the trigger body to a firearm for movement of the trigger nose between set and released positions;

*a reset lever mounted for pivotal movement between open and closed positions;*

a disconnector having a disconnector lever, a disconnector hook, and a disconnector pivot pivotally coupling the disconnector to the trigger pivot for movement of the disconnector hook between disengaged and engaged positions in response to pivotal movement of the trigger body between the set and released positions of the trigger nose, respectively;

a hammer includes a striking end, a hammer disconnect notch, a pivot end pivotable about a hammer pivot between a firing position of the striking end, a cocked position of the striking end, and a past-cocked position of the striking end, and a trigger notch formed in the pivot end for receiving the trigger nose in the cocked position of the hammer; and

*the disconnector lever of the disconnector is in mechanical communication with the reset lever, the striking end of the hammer strikes the reset lever in the past-cocked position of the hammer pivoting the reset lever from the open position to the closed position, the reset lever acting on the disconnector lever to concurrently pivot the disconnector from the engaged position of the disconnector hook to the disengaged position of the disconnector hook and the trigger body from the released position of the trigger nose to the set position of the trigger nose* in preparation to be received by the trigger notch in the cocked position of the hammer when the reset lever moves from the open position to the closed position.

15. A trigger mechanism, comprising:

a trigger body having a trigger nose and a trigger pivot for pivotally coupling the trigger body to a firearm for movement of the trigger nose between set and released positions;

*a reset lever mounted for pivotal movement between open and closed positions;*

a disconnector having a disconnector hook, a cam surface, and a disconnector pivot pivotally coupling the disconnector to the trigger pivot for movement of the disconnector hook between disengaged and engaged positions in response to

46    DECLARATION OF BRIAN LUETTKE

pivotal movement of the trigger body between the set and released positions of the trigger nose, respectively;

a hammer includes a striking end, a hammer disconnect notch, a pivot end pivotable about a hammer pivot between a firing position of the striking end, a cocked position of the striking end, and a past-cocked position of the striking end, and a trigger notch formed in the pivot end for receiving the trigger nose in the cocked position of the hammer; and

*the cam surface of the disconnector is in mechanical communication with the reset lever, the striking end of the hammer strikes the reset lever in the past-cocked position of the hammer pivoting the reset lever from the open position to the closed position, the reset lever acting on the cam surface to concurrently pivot the disconnector from the engaged position of the disconnector hook to the disengaged position of the disconnector hook and the trigger body from the released position of the trigger nose to the set position of the trigger nose in* preparation to be received by the trigger notch in the cocked position of the hammer when the reset lever moves from the open position to the closed position.

43.    I have analyzed the designs of both the FRT-15L3™ and Partisan Disruptor and, in my opinion, the FRT-15L3™ and Partisan Disruptor do not have any features that satisfy the above requirement as recited by the above limitations.

44.    The only remaining claim in the '067 patent is claim 19. This claim requires a selector that permits different amount of trigger travel for different selected operating modes. In my opinion, a person of ordinary skill in the art would understand that the following claim limitations (emphasized below) create such a requirement:

19. A trigger mechanism, comprising:

a trigger assembly with a hammer having a trigger notch, a trigger body has a trigger nose, a trigger tail, and a trigger, the trigger nose for receiving the trigger notch in a cocked position of the hammer and a set position of the trigger body and for releasing the trigger nose when the trigger body is moved a travel distance from the set position to a fired position, a disconnector coupled between the hammer and the trigger body, and a selector movable between a first position and a second position for adjusting the travel distance of the trigger body;

*the selector has a first stop aligned with the tail of the trigger body in the first position, and a second stop aligned with the tail of the trigger body in the second position;*

47    DECLARATION OF BRIAN LUETTKE

*the first stop is separated from tail of the trigger body a first distance in the set position of the trigger body in the first position of the selector, and the second stop is separated from tail of the trigger body a second distance in the set position of the trigger body in the second position of the selector;*

*in the first position of the selector and the fired position of the trigger body the first distance between the first stop and the tail of the trigger body is closed and the tail contacts the first stop, and movement of the trigger body is arrested by the tail contacting the first stop;*

*in the second position of the selector and the fired position of the trigger body the second distance between the second stop and the tail of the trigger body is closed and the tail contacts the second stop, and movement of the trigger body is arrested by the tail contacting the second stop; and*

*the second distance is less than the first distance, wherein the travel distance of the trigger body in the second position of the selector is less than the travel distance of the trigger body in the first position of the selector.*

45.     Based on my analysis of the RBT's FRT-15L3™ and Partisan Disruptor, in my opinion, the RBT's FRT-15L3™ and Partisan Disruptor do not have any features that meet the above claim requirements.

46.     Therefore, in my opinion the Partisan Disruptor and FRT-15L3™ do not practice any claims of the '067 patent.

47.     For this reason, in my opinion, any statement by Partisan that the Disruptor practices, or is covered by, the '067 patent, is incorrect and misleading.

        Under penalty of perjury, I declare that the foregoing statements and facts stated herein are true and correct to the best of my knowledge and belief.

Date:  January 16, 2026

                                        Respectfully submitted,

                                        Brian Luettke

48     DECLARATION OF BRIAN LUETTKE