# Attachment
# Part 1

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| _____ ) | |
| ) | |
| In re: Super Safety Patent Litigations ) | |
| ) | **MDL No. _____** |
| _____ ) | |

**<u>DEFENDANTS' MOTION TO TRANSFER FOR COORDINATION
OR CONSOLIDATION UNDER 28 U.S.C. § 1407</u>**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(a) of the Rules of Procedure of the Judicial

Panel on Multidistrict Litigation, Defendants 80Mills LLC d/b/a Tactical Titan Supply; Pearson

Gardner; DNT LLC d/b/a Deez Nutz Tactical; Zach Morrow; Z3 Productions LLC d/b/a Z3 PRO;

Harrison Gunworks LLC; Tyler Harrison; Hanes Tactical LLC; Damion Terrell Bennett; and

Steven Thanh Nguyen d/b/a Polymer Pew (collectively, "Movants"), and any other defendant(s)

that may join this Motion, respectfully move the Judicial Panel on Multidistrict Litigation (the

"Panel") to transfer for coordinated or consolidated pretrial proceedings the patent infringement

actions identified on Schedule A (the "Actions"), as well as any related actions later filed and

treated as tag-along actions, to the United States District Court for the Northern District of Ohio

and assign the proceedings to the Honorable J. Philip Calabrese.

Centralization is warranted because the Actions involve common questions of fact and law

arising from the nationwide campaign of Plaintiffs ABC IP, LLC and Rare Breed Triggers, Inc.,

alleging that multiple defendants infringe the same core patents directed to trigger devices and

related components. Each Action alleges infringement of claim 15 of U.S. Patent No. 12,038,247

(the "'247 Patent") by a product called the Super Safety. Several Actions additionally allege

1

infringement of U.S. Patent No. 7,398,723 (the "'723 Patent"), and one Action asserts additional related patents.

Absent transfer under § 1407, the parties and courts will confront duplicative discovery and overlapping pretrial issues, including (among other things): (i) the scope and construction of the asserted patent claims and the meaning of disputed claim terms; (ii) the patents' prosecution histories, priority, inventorship, and ownership; (iii) validity and enforceability defenses; (iv) Plaintiffs' infringement theories and damages methodology; and (v) expert discovery on technical and damages issues common to multiple Actions. Without centralization, multiple courts could reach inconsistent rulings on claim construction, validity-related issues, infringement-related issues, discovery disputes, and other common pretrial matters, and the parties will incur the significant expense and burden of repeating discovery in six different Actions.

The Northern District of Ohio is the most appropriate transferee forum. One of the Actions is already pending there—*ABC IP, LLC and Rare Breed Triggers, Inc. v. 80Mills LLC and Pearson Gardner*, No. 1:25-cv-01262 (N.D. Ohio filed June 17, 2025) ("Ohio Action")—and that court is a geographically convenient and logical hub for coordinated proceedings. Ohio is centrally located, and the Northern District of Ohio is particularly convenient because key parties and counsel for both sides are located in Ohio, and 80Mills LLC is established in the district. The Honorable J. Philip Calabrese, who is currently presiding over the Ohio Action, has experience managing complex matters, including multidistrict litigation (e.g., *In re: Suboxone Film Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 3092) and patent litigation.

For these reasons, transfer for coordination or consolidation under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.

WHEREFORE, Movants respectfully request that the Panel enter an order transferring the Actions listed on Schedule A, and all related tag-along actions, to the United States District Court for the Northern District of Ohio for coordinated or consolidated pretrial proceedings before the Honorable J. Philip Calabrese.

Dated: December 23, 2025

Respectfully submitted,

**EMERSON, THOMSON & BENNETT, LLC**

/s/ *John M. Skeriotis*
John M. Skeriotis (Ohio Bar # 0069263)
jms@etblaw.com
Sergey Vernyuk (Ohio Bar # 0089101)
sv@etblaw.com
1914 Akron-Peninsula Rd.
Akron, Ohio 44313
(330) 434-9999 – Telephone
(330) 434-8888 – Facsimile
*Attorneys for Defendants/Movants:*
*80Mills LLC d/b/a Tactical Titan Supply; Pearson Gardner; DNT LLC d/b/a Deez Nutz Tactical; Zach Morrow; Z3 Productions LLC d/b/a Z3 PRO; Harrison Gunworks LLC; Tyler Harrison; Hanes Tactical LLC; Damion Terrell Bennett; and Steven Thanh Nguyen d/b/a Polymer Pew*

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

In re: Super Safety Patent Litigations                MDL No. _____

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER FOR
COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407**

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

I.    FACTUAL BACKGROUND .............................................................................................2

      A.    The Actions and Parties ........................................................................................2

      B.    The Asserted Patents .............................................................................................3

II.   LEGAL STANDARD ........................................................................................................3

III.  ARGUMENT .....................................................................................................................4

      A.    The Actions Involve Common Questions of Fact and Law ....................................4

      B.    Centralization Will Serve the Convenience of Parties and Witnesses....................6

      C.    Centralization Will Promote the Just and Efficient Conduct of the Actions ...........7

      D.    The Northern District of Ohio Is the Appropriate Transferee Forum......................8

CONCLUSION ............................................................................................................................8

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                          **<u>Page(s)</u>**

*In re Acacia Media Techs. Corp. Pat. Litig.*,
   360 F. Supp. 2d 1377 (J.P.M.L. 2005)......................................................................7

*In re Bear Creek Techs., Inc. ('722) Pat. Litig.*,
   858 F. Supp. 2d 1375 (J.P.M.L. 2012)................................................................4, 6

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
   626 F. Supp. 2d 1341 (J.P.M.L. 2009)......................................................................6

*In re Embro Pat. Infringement Litig.*,
   328 F. Supp. 507 (J.P.M.L. 1971).............................................................................6

*In re Mobile Telecomm. Techs., LLC Pat. Litig.*,
   222 F. Supp. 3d 1337 (J.P.M.L. 2016)................................................................4, 6

*In re Pipe Flashing Pat. Litig.*,
   713 F. Supp. 3d 1414 (J.P.M.L. 2024)......................................................................7

*In re Proven Networks, LLC, Pat. Litig.*,
   492 F. Supp. 3d 1338 (J.P.M.L. 2020)................................................................4, 5

*In re RAH Color Techs. LLC Pat. Litig.*,
   347 F. Supp. 3d 1359 (J.P.M.L. 2018)................................................................. 5

*In re Taasera Licensing, LLC, Pat. Litig.*,
   619 F. Supp. 3d 1352 (J.P.M.L. 2022)...............................................................4, 5, 7

**<u>Statutes</u>**

28 U.S.C. § 1407................................................................................................ *passim*

## <u>INTRODUCTION</u>

This litigation is a textbook case for centralization under 28 U.S.C. § 1407. Plaintiffs ABC IP, LLC and Rare Breed Triggers, Inc. (collectively, "Plaintiffs") have filed six separate patent infringement actions across five federal districts against different defendants, but each action turns on common questions of fact and law regarding the same core asserted patent — U.S. Patent No. 12,038,247 ("the '247 Patent"), and in particular claim 15 of that patent, asserted against a product called the Super Safety. Several actions also assert additional related patents, including U.S. Patent No. 7,398,723 ("the '723 Patent"). Absent centralization, six courts will be asked to address overlapping issues of claim construction, validity and enforceability, infringement theories, and damages issues in parallel, creating a substantial risk of inconsistent rulings and unnecessary duplication of effort.  The Actions for which transfer and centralization are sought are:

1. *Rare Breed Triggers, Inc. and ABC IP, LLC v. DNT LLC and Zach Morrow*, No. 4:25-cv-00298 (D. Idaho filed June 6, 2025);

2. *ABC IP, LLC and Rare Breed Triggers, Inc. v. Harrison Gunworks LLC and Tyler Harrison*, No. 4:25-cv-00299 (D. Idaho filed June 6, 2025);

3. *ABC IP, LLC and Rare Breed Triggers, Inc. v. Hanes Tactical LLC and Damion Terrell Bennett*, No. 3:25-cv-00201 (W.D. Tex. filed June 6, 2025);

4. *ABC IP, LLC and Rare Breed Triggers, Inc. v. 80Mills LLC and Pearson Gardner*, No. 1:25-cv-01262 (N.D. Ohio filed June 17, 2025);

5. *ABC IP, LLC and Rare Breed Triggers, Inc. v. Z3 Productions LLC*, No. 5:25-cv-00695 (W.D. Okla. filed June 23, 2025); and

6. *ABC IP, LLC and Rare Breed Triggers, Inc. v. Steven Thanh Nguyen*, No. 4:25-cv-02961 (S.D. Tex. filed June 26, 2025).

Formal centralization is warranted to eliminate the significant inefficiencies and potential for inconsistent results that would follow from requiring six different courts to oversee related parties, common patent issues, overlapping discovery, and repeating claim construction proceedings. Transfer to a single forum will permit one court to manage a uniform schedule, coordinate discovery, supervise claim construction, and resolve common motions in a consistent manner.

Movants respectfully submit that the Northern District of Ohio is the most appropriate transferee forum. One of the Actions is already pending there, the district is centrally located and convenient for parties and counsel, and the Honorable J. Philip Calabrese—who is presiding over the Northern District of Ohio action—has experience managing complex litigation, including multidistrict litigation. Centralization in the Northern District of Ohio will serve the convenience of parties and witnesses and promote the just and efficient conduct of these Actions.

## I.       FACTUAL BACKGROUND

### A.       The Actions and Parties

Plaintiffs ABC IP, LLC and Rare Breed Triggers, Inc. have filed six related patent infringement actions against different defendants in the District of Idaho (two actions), the Western District of Texas, the Northern District of Ohio, the Western District of Oklahoma, and the Southern District of Texas. Although the defendants vary, Plaintiffs' complaints reflect a coordinated filing campaign asserting infringement of the same core patent claim across multiple districts.

All six Actions were filed within a three-week period in June 2025. The Actions are therefore proceeding on parallel tracks in multiple courts, and absent centralization each court will

be required to duplicate much of the same work in overseeing discovery, resolving disputes, and addressing claim construction and validity issues common to the asserted patents.

### B.     The Asserted Patents

Each Action asserts infringement of claim 15 of the '247 Patent against a product called the Super Safety. Several Actions also assert additional patents. Differences in the set of additional patents asserted in particular actions do not diminish the substantial overlap in the core factual issues presented by Plaintiffs' claims, including claim construction, prosecution history, priority, and validity issues concerning the '247 Patent.

| Defendants & Action | Asserted Patents (as alleged) | Docket Sheet & Operative Complaint |
|---|---|---|
| *DNT LLC and Zach Morrow* No. 4:25-cv-00298 (D. Idaho) | 12,038,247 (claim 15); 7,398,723 | Exhibit 1 |
| *Harrison Gunworks LLC and Tyler Harrison* No. 4:25-cv-00299 (D. Idaho) | 12,038,247 (claim 15); 10,514,223; 11,724,003; 12,036,336; 12,274,807 | Exhibit 2 |
| *Hanes Tactical LLC and Damion Bennett* No. 3:25-cv-00201 (W.D. Tex.) | 12,038,247 (claim 15); 7,398,723 | Exhibit 3 |
| *80Mills LLC and Pearson Gardner* No. 1:25-cv-01262 (N.D. Ohio) | 12,038,247 (claim 15); 7,398,723 | Exhibit 4 |
| *Z3 Productions LLC* No. 5:25-cv-00695 (W.D. Okla.) | 12,038,247 (claim 15) | Exhibit 5 |
| *Steven Nguyen* No. 4:25-cv-02961 (S.D. Tex.) | 12,038,247 (claim 15) | Exhibit 6 |

## II.     LEGAL STANDARD

The Panel may order the transfer of civil actions pending in different districts for coordinated or consolidated pretrial proceedings when the actions involve "one or more common

questions of fact" and transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). In applying this standard, the Panel has repeatedly recognized that centralization is appropriate in patent litigations where common issues concerning claim construction, patent validity, and related discovery predominate, even if the actions involve different accused products or different combinations of asserted patents.

Centralization is appropriate where overlapping patents will require the parties and courts to address common issues such as claim construction, validity and enforceability defenses, and discovery concerning prior art, prosecution history, inventorship, and damages. *See, e.g., In re Taasera Licensing, LLC, Pat. Litig.*, 619 F. Supp. 3d 1352, 1352-53 (J.P.M.L. 2022) (centralization warranted where claim construction and validity issues predominated); *In re Bear Creek Techs., Inc. ('722) Pat. Litig.*, 858 F. Supp. 2d 1375, 1379 (J.P.M.L. 2012) (Panel has often centralized litigation involving different products alleged to infringe common patents).

The Panel does not require complete identity of claims or patents to order transfer; differences in the patents asserted or accused products do not defeat centralization when the actions share substantial common questions of fact. *See In re Proven Networks, LLC*, *Pat. Litig.*, 492 F. Supp. 3d 1338, 1339 (J.P.M.L. 2020) (centralizing patent actions notwithstanding that "different combinations of patents" were asserted); *In re Mobile Telecomm. Techs.*, *LLC Pat. Litig.*, 222 F. Supp. 3d 1337, 1338 (J.P.M.L. 2016) (same).

## III.    ARGUMENT

### A.    The Actions Involve Common Questions of Fact and Law

Centralization is warranted because the Actions indisputably share common questions of fact and law. Most importantly, each Action asserts infringement of the same patent claim: claim

15 of the '247 Patent. Accordingly, each court will be required to construe the same claim language and address overlapping issues of patent validity, enforceability, infringement, and damages. The Panel has consistently held that these types of overlapping patent issues satisfy Section 1407's "common questions of fact" requirement. *See, e.g., In re Taasera Licensing*, *LLC, Pat. Litig.*, 619 F. Supp. 3d at 1352-53; *In re RAH Color Techs. LLC Pat. Litig.*, 347 F. Supp. 3d 1359, 1360 (J.P.M.L. 2018).

Common issues will include, at minimum: (a) the meaning and scope of the limitations of claim 15 of the '247 Patent; (b) the '247 Patent's prosecution history, priority claims, and any related proceedings; (c) prior art and other evidence relevant to validity (including anticipation and obviousness defenses); (d) Plaintiffs' ownership and standing theories; and (e) Plaintiffs' infringement and damages methodologies that will be advanced across multiple Actions against the same product: the Super Safety. These issues will necessarily be explored through overlapping discovery, including common document discovery and deposition testimony from Plaintiffs, inventors and prosecuting attorneys (where relevant), third-party prior-art witnesses, and overlapping technical and damages experts.

The presence of additional patents in some Actions does not undermine the substantial overlap created by the '247 Patent. The Panel routinely centralizes patent actions even where "different combinations of patents are asserted" across cases, because the common patents and defenses create sufficient overlap to warrant coordinated pretrial proceedings. *See In re Proven Networks, LLC*, *Pat. Litig.*, 492 F. Supp. 3d at 1339. Similarly, any differences in the specific accused products at issue do not defeat centralization where, as here, common questions concerning claim construction, infringement, and validity will predominate. *See In re Bear Creek*

*Techs., Inc. ('722) Pat. Litig.*, 858 F. Supp. 2d at 1379; *In re Mobile Telecomm. Techs., LLC, Pat. Litig.*, 222 F. Supp. 3d at 1338.

Finally, the Panel has long recognized that patent validity presents common factual questions that support centralization. *See In re Embro Pat. Infringement Litig.*, 328 F. Supp. 507, 508 (J.P.M.L. 1971) ("We have consistently held that the issue of patent validity presents common questions of fact which satisfy the statutory requirements of § 1407."). This principle applies with particular force where, as here, all Actions assert the same patent claim and will give rise to overlapping validity defenses and expert analyses.

**B.        Centralization Will Serve the Convenience of Parties and Witnesses.**

Centralization will serve the convenience of the parties and witnesses by eliminating duplicative discovery and avoiding the need for common witnesses to appear in multiple jurisdictions. *See In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 626 F. Supp. 2d 1341, 1342 (J.P.M.L. 2009) (centralization before a single judge ensures that common parties and witnesses are not subjected to duplicative discovery).

Without centralization, the parties face the prospect of repeating the same core efforts in six courts, including: (a) producing and reviewing overlapping categories of documents concerning the asserted patents; (b) litigating similar protective-order and ESI issues; (c) engaging in multiple rounds of expert discovery on claim construction and validity; and (d) conducting multiple Markman proceedings focused on the same patent claim. Centralization will streamline these processes and reduce the burden on parties, witnesses, and counsel.

The geographic dispersion of the Actions further supports centralization. The Actions are pending in Idaho, Texas (two districts), Oklahoma, and Ohio. Coordinating common discovery and motion practice across that footprint will impose substantial costs and inefficiencies absent an

MDL structure. A single transferee court can establish coordinated procedures to minimize travel and duplication, including the use of coordinated deposition scheduling and uniform protocols for expert discovery.

      **C.**      **<u>Centralization Will Promote the Just and Efficient Conduct of the Actions.</u>**

Centralization will promote the just and efficient conduct of these Actions by conserving judicial resources and preventing inconsistent pretrial rulings, particularly with respect to claim construction and patent validity. *See In re Taasera Licensing, LLC*, *Pat. Litig.*, 619 F. Supp. 3d at 1352-53 (centralization eliminates duplicative discovery and prevents inconsistent pretrial rulings, particularly on claim construction); *In re Acacia Media Techs. Corp. Pat. Litig.*, 360 F. Supp. 2d 1377, 1379 (J.P.M.L. 2005) (same).

Absent centralization, six courts will be required to become familiar with the same asserted patent claim and related technology, and may be called upon to decide substantially similar disputes regarding claim construction, discovery scope, validity challenges, and damages-related discovery. The Panel has recognized that this duplication creates an unnecessary burden on the judiciary and increases the risk of inconsistent rulings. *See In re Pipe Flashing Pat. Litig.*, 713 F. Supp. 3d 1414, 1415 (J.P.M.L. 2024) (noting risk of inconsistent rulings and unnecessary expenditure of judicial resources absent centralization).

Centralization is especially appropriate at this stage because the Actions were filed in close temporal proximity. Coordinating pretrial proceedings now will maximize efficiencies and minimize the risk that inconsistent schedules and rulings will entrench duplicative work. Once centralized, the transferee court can structure coordinated procedures for claim construction, invalidity contentions, and expert discovery that will benefit all parties and the courts.

### D.      **The Northern District of Ohio Is the Appropriate Transferee Forum.**

Movants respectfully submit that the Northern District of Ohio is the most appropriate transferee forum. One Action is already pending in that district (No. 1:25-cv-01262, "Ohio Action"), and the Northern District of Ohio is centrally located and readily accessible. Proceedings there would be convenient for parties and counsel, including because 80Mills LLC is established in the district and certain parties and counsel for both sides reside in Ohio.

The Panel commonly selects a transferee forum where an action is already pending and where the court can efficiently manage common pretrial issues. Here, centralization in the Northern District of Ohio will leverage the court's familiarity with the Ohio Action and provide an efficient framework for managing the overlapping patent issues across all Actions.

Judge J. Philip Calabrese, who is presiding over the Ohio Action, is well-suited to oversee coordinated proceedings. He has experience managing complex litigation and currently oversees multidistrict litigation proceedings, including *In re Suboxone Film Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 3092. His experience will promote efficient and consistent case management for this coordinated patent litigation.

For these reasons, the Northern District of Ohio and Judge Calabrese provide the most logical and convenient forum for coordinated pretrial proceedings, and centralization there will best serve the statutory goals of Section 1407.

### CONCLUSION

For the foregoing reasons, Movants respectfully request that the Panel grant the accompanying Motion and transfer the Actions listed on Schedule A, as well as any tag-along actions, to the United States District Court for the Northern District of Ohio for coordinated or consolidated pretrial proceedings before the Honorable J. Philip Calabrese.

Dated: December 23, 2025     Respectfully submitted,

**EMERSON, THOMSON & BENNETT, LLC**

/s/ *John M. Skeriotis*
John M. Skeriotis (Ohio Bar # 0069263)
jms@etblaw.com
Sergey Vernyuk (Ohio Bar # 0089101)
sv@etblaw.com
1914 Akron-Peninsula Rd.
Akron, Ohio 44313
(330) 434-9999 – Telephone
(330) 434-8888 – Facsimile
*Attorneys for Defendants/Movants:*
*80Mills LLC d/b/a Tactical Titan Supply; Pearson Gardner; DNT*
*LLC d/b/a Deez Nutz Tactical; Zach Morrow; Z3 Productions LLC*
*d/b/a Z3 PRO; Harrison Gunworks LLC; Tyler Harrison; Hanes*
*Tactical LLC; Damion Terrell Bennett; and Steven Thanh Nguyen*
*d/b/a Polymer Pew*

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

In re: Super Safety Patent Litigations                    MDL No. _____

<u>**SCHEDULE A**</u>
<u>**ACTIONS TO BE TRANSFERRED PURSUANT TO 28 U.S.C. § 1407**</u>

| Case Captions | Civil Action No. | District | Assigned Judge |
|---|---|---|---|
| **Plaintiffs**:<br>Rare Breed Triggers, Inc.; ABC IP, LLC<br>**Defendants**:<br>DNT LLC d/b/a Deez Nutz Tactical; Zach Morrow | 4:25-cv-00298 | D. Idaho (Pocatello – Eastern) | Amanda K. Brailsford |
| **Plaintiffs**:<br>ABC IP, LLC; Rare Breed Triggers, Inc.<br>**Defendants**:<br>Harrison Gunworks LLC; Tyler Harrison | 4:25-cv-00299 | D. Idaho (Pocatello – Eastern) | Amanda K. Brailsford |
| **Plaintiffs**:<br>ABC IP, LLC; Rare Breed Triggers, Inc.<br>**Defendants**:<br>80Mills LLC d/b/a Tactical Titan Supply; Pearson Gardner | 1:25-cv-01262 | N.D. Ohio (Eastern – Cleveland) | J. Philip Calabrese |
| **Plaintiffs**:<br>ABC IP, LLC; Rare Breed Triggers, Inc.<br>**Defendants**:<br>Z3 Productions LLC d/b/a Z3 PRO | 5:25-cv-00695 | W.D. Oklahoma | Charles Goodwin |
| **Plaintiffs**:<br>ABC IP, LLC; Rare Breed Triggers, Inc.<br>**Defendants**:<br>Steven Thanh Nguyen d/b/a Polymer Pew | 4:25-cv-02961 | S.D. Texas (Houston) | George C. Hanks, Jr. |
| **Plaintiffs**:<br>ABC IP, LLC; Rare Breed Triggers, Inc.<br>**Defendants**:<br>Hanes Tactical LLC; Damion Terrell Bennett | 3:25-cv-00201 | W.D. Texas (El Paso) | David C. Guaderrama |

**Note regarding asserted patents:**

Each Action asserts infringement of claim 15 of U.S. Patent No. 12,038,247. In addition, the D. Idaho (4:25-cv-00298), W.D. Texas (3:25-cv-00201), and N.D. Ohio (1:25-cv-01262) Actions also assert U.S. Patent No. 7,398,723; and the D. Idaho (4:25-cv-00299) Action also asserts U.S. Patent Nos. 10,514,223; 11,724,003; 12,036,336; and 12,274,807.



**EXHIBIT 1**

## U.S. District Court
## District of Idaho (LIVE) NextGen 1.8 (Pocatello − Eastern)
## CIVIL DOCKET FOR CASE #: 4:25−cv−00298−AKB

Rare Breed Triggers, Inc. et al v. DNT LLC et al
Assigned to: Judge Amanda K Brailsford
Cause: 35:271 Patent Infringement

Date Filed: 06/06/2025
Jury Demand: Both
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**Rare Breed Triggers, Inc.**
*a Texas corporation*

represented by **Glenn D Bellamy**
Wood, Herron & Evans LLP
600 Vine Street
Suite 2800
Cincinnati, OH 45202
513−241−2324
Fax: 513−241−6234
Email: gbellamy@whe−law.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jared Wayne Allen**
ID
955 Pier View Drive
Idaho Falls, ID 83402
208−523−5171
Fax: 208−529−9732
Email: allen@beardstclair.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ABC IP, LLC**
*a Delaware limited liability company*

represented by **Glenn D Bellamy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jared Wayne Allen**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DNT LLC**
*doing business as*
Deez Nutz Tactical

represented by **John M. Skeriotis**
Emerson Thomson Bennett
1914 Akron Peninsula Road
Akron, OH 44313
330−352−4240
Email: jms@etblaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joyce Ann Hemmer**
Elam & Burke, P.A.
251 E. Front St.
Suite 300
Boise, ID 83702

208−343−5454
Fax: 208−384−5844
Email: jah@elamburke.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Zach Morrow**                                represented by **John M. Skeriotis**
                                               (See above for address)
                                               *LEAD ATTORNEY*
                                               *PRO HAC VICE*
                                               *ATTORNEY TO BE NOTICED*

                                               **Joyce Ann Hemmer**
                                               (See above for address)
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Zach Morrow**                                represented by **John M. Skeriotis**
                                               (See above for address)
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*

                                               **Joyce Ann Hemmer**
                                               (See above for address)
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**DNT LLC**                                    represented by **John M. Skeriotis**
                                               (See above for address)
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*

                                               **Joyce Ann Hemmer**
                                               (See above for address)
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**ABC IP, LLC**                                represented by **Glenn D Bellamy**
*a Delaware limited liability company*         (See above for address)
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*

                                               **Jared Wayne Allen**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Rare Breed Triggers, Inc.**                  represented by **Glenn D Bellamy**
*a Texas corporation*                          (See above for address)
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*

                                               **Jared Wayne Allen**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/06/2025 | 1 | COMPLAINT against DNT LLC d/b/a Deez Nuts Tactical, Zach Morrow ( Filing fee $ 405 receipt number AIDDC−2938468.), filed by Rare Breed Triggers, LLC, ABC IP LLC. (Attachments: # 1 Cover Sheet, # 2 Summons for DNT, # 3 Summons Morrow)(Allen, Jared) |
| 06/06/2025 | 2 | Corporate Disclosure Statement by ABC IP LLC. (Allen, Jared) |
| 06/06/2025 | 3 | Corporate Disclosure Statement by Rare Breed Triggers, LLC. (Allen, Jared) |
| 06/06/2025 | 4 | MOTION FOR PRO HAC VICE APPEARANCE by Glenn Bellamy. ( Filing fee $ 250 receipt number AIDDC−2938475.)Jared Wayne Allen appearing for Plaintiffs ABC IP LLC, Rare Breed Triggers, LLC. Responses due by 6/27/2025 (Allen, Jared) |
| 06/09/2025 | | CORRECTIVE ENTRY − The entry docket number 1 Complaint, filed by ABC IP LLC, Rare Breed Triggers, LLC was filed incorrectly in this case. The defendant names do not match the names that are listed on the complaint. Please submit a corrected complaint. You may file this using the event Errata located under other filings/other documents to avoid paying a duplicate filing fee.(hs) |
| 06/09/2025 | 5 | ERRATA by Plaintiffs ABC IP, LLC, Rare Breed Triggers, Inc. re 1 Complaint, Corrective Entry, *Amended Complaint*. (Allen, Jared) |
| 06/09/2025 | 6 | DOCKET ENTRY ORDER approving 4 Motion for Pro Hac Vice Appearance of attorney Glenn Bellamy for ABC IP, Rare Breed Triggers, Inc. Per Local Rule 83.4(e), out−of−state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (hs) |
| 06/09/2025 | 7 | Summons Issued as to DNT LLC, Zach Morrow. (Print attached Summons for service.) (Attachments: # 1 Summons − Zach Morrow)(hs) |
| 06/09/2025 | 8 | REPORT on the filing or determination of an action regarding patent and/or trademark number(s)12038247 (Notice sent to USPTO) (Attachments: # 1 Complaint Filed on 6/6/2025) (hs) |
| 06/24/2025 | 9 | SUMMONS Returned Executed by Rare Breed Triggers, Inc., ABC IP, LLC. All Defendants. (Attachments: # 1 Affidavit of Service on Zach Morrow)(Allen, Jared) |
| 07/03/2025 | 10 | AMENDED DOCUMENT by ABC IP, LLC, Rare Breed Triggers, Inc.. Amendment to 1 Complaint, 5 Errata *Second Amended Complaint*. (Allen, Jared) |
| 07/31/2025 | 11 | ANSWER to 1 Complaint, */ Second Amended Complaint for Patent Infringement [Dkt. 10]* by DNT LLC, Zach Morrow. (Attachments: # 1 Exhibit 1)(Hemmer, Joyce) |
| 07/31/2025 | 12 | Corporate Disclosure Statement by DNT LLC, Zach Morrow. (Hemmer, Joyce) |
| 08/01/2025 | 13 | MOTION FOR PRO HAC VICE APPEARANCE by John M. Skeriotis. ( Filing fee $ 250 receipt number AIDDC−2966112.)Joyce Ann Hemmer appearing for Defendants DNT LLC, Zach Morrow. Responses due by 8/22/2025 (Attachments: # 1 Exhibit Attachment)(Hemmer, Joyce) |
| 08/01/2025 | 14 | NOTICE of Availability of Magistrate Judge and Requirement for Consent sent to counsel for ABC IP, LLC, DNT LLC, Zach Morrow, Rare Breed Triggers, Inc. re 11 Answer to Complaint, 1 Complaint, Consent/Objection to Magistrate due by 9/2/2025. (hs) |
| 08/01/2025 | 15 | DOCKET ENTRY ORDER approving 13 Motion for Pro Hac Vice Appearance of attorney John M. Skeriotis for Zach Morrow, John M. Skeriotis for DNT LLC. Per Local Rule 83.4(e), out−of−state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (hs) |
| 08/01/2025 | 16 | LITIGATION ORDER AND NOTICE OF TELEPHONIC SCHEDULING CONFERENCE − Joint Litigation Plan and Discovery Plan due by 8/19/2025. Telephonic Scheduling Conference set for 8/26/2025 11:30 AM in Telephonic Hearing − Boise Chambers before Judge Amanda K Brailsford. Signed by Judge Amanda K |

| | | |
|---|---|---|
| | | Brailsford. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (hs) |
| 08/19/2025 | | **NOTICE OF CONSENT DEADLINE:** Pursuant to General Order 457, this is a reminder that the Court has not received your completed form in response to the <u>14</u> Notice of Availability Setting Deadline. Please discuss this matter with your client and complete and return the consent to proceed form, if appropriate. As provided in Local Rule 73.1, your opportunity to consent will expire if we do not receive your consent prior to the 30 day deadline. * *Consents are not to be filed in the case and should be emailed in pdf form to consents@id.uscourts.gov. No Judge will be informed of a party's response.* (hs) |
| 08/19/2025 | <u>17</u> | DISCOVERY PLAN by Rare Breed Triggers, Inc. *Joint Discovery Plan.* (Bellamy, Glenn) |
| 08/20/2025 | 18 | DOCKET ENTRY ORDER: The Court amends the following deadlines in the Litigation Order (Dkt. <u>16</u> ): the parties shall submit their proposed joint Litigation Plan no later than August 26, 2025; the telephonic scheduling conference is rescheduled for September 4, 2025, at 1:00 PM MT. Signed by Judge Amanda K Brailsford. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (pdg) |
| 08/26/2025 | <u>19</u> | SCHEDULING CONFERENCE FORM − LITIGATION PLAN by ABC IP, LLC, Rare Breed Triggers, Inc.. (Allen, Jared) |
| 08/26/2025 | <u>20</u> | SCHEDULING CONFERENCE FORM − LITIGATION PLAN by DNT LLC, Zach Morrow. (Hemmer, Joyce) |
| 08/28/2025 | <u>21</u> | SCHEDULING ORDER TRACK: (Standard) − the telephonic scheduling conference set for September 4, 2025, is VACATED. All dispositive motions and motions for punitive damages, must be filed by May 29, 2026. Motions to amend the pleadings, except for allegations of punitive damages, and motions to join parties must be filed on or before December 3, 2025. ADR must be held by July 10, 2026. All fact discovery must be completed by May 14, 2026. Signed by Judge Amanda K Brailsford. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jd) |
| 09/03/2025 | 22 | The 30 day consent deadline has expired. Case will remain with a District Judge. No more notice of availability or assignment will be sent out. (hs) |
| 10/15/2025 | <u>23</u> | MOTION for Leave to File *Third Amended Complaint* Jared Wayne Allen appearing for Plaintiffs ABC IP, LLC, Rare Breed Triggers, Inc.. Responses due by 11/5/2025 (Allen, Jared) |
| 10/16/2025 | <u>24</u> | ORDER FOR LEAVE TO FILE THIRD AMENDED COMPLAINT − Plaintiffs are granted leave to file their Third Amended Complaint. Signed by Judge Amanda K Brailsford. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (jd) |
| 10/17/2025 | <u>25</u> | AMENDED COMPLAINT *Third Amended Complaint* against All Defendants, filed by All Plaintiffs.(Allen, Jared) |
| 10/23/2025 | <u>26</u> | NOTICE by DNT LLC, Zach Morrow re <u>25</u> Amended Complaint *Non−Opposition to Motion* (Skeriotis, John) |
| 10/31/2025 | <u>27</u> | ANSWER to <u>25</u> Amended Complaint by DNT LLC, Zach Morrow.(Hemmer, Joyce) |
| 11/21/2025 | <u>28</u> | AMENDED ANSWER to *Third* <u>25</u> Amended Complaint *for Patent Infringement*, COUNTERCLAIM against All Plaintiffs by Zach Morrow, DNT LLC. (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2, # <u>3</u> Exhibit 3)(Hemmer, Joyce) |
| 12/08/2025 | <u>29</u> | ANSWER to <u>28</u> Amended Answer to Complaint, Counterclaim by ABC IP, LLC, Rare Breed Triggers, Inc..(Bellamy, Glenn) |
| 12/09/2025 | <u>30</u> | *CORRECTED* ANSWER to <u>28</u> Amended Answer to Complaint, Counterclaim by ABC IP, LLC, Rare Breed Triggers, Inc..(Bellamy, Glenn) |

Jared W. Allen, ISB No. 5793
BEARD ST. CLAIR GAFFNEY PA
955 Pier View Drive
Idaho Falls, ID 83402
Tel: (208) 523-5171
Fax: (208) 529-9732
Email: allen@beardstclair.com

Glenn D. Bellamy, Ohio Bar No. 0070321
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Tel: (513) 707-0243
Fax: (513) 241-6234
E-mail: gbellamy@whe-law.com

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas corporation, | |
| Plaintiffs, | Case No.: 4:25-cv-0298-AKB |
| vs. | |
| DNT LLC, d/b/a DEEZ NUTZ TACTICAL, and ZACH MORROW, an individual, | THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT |
| Defendants. | |

This is an action for patent infringement in which ABC IP LLC ("ABC") and Rare Breed

Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse DNT LLC, d/b/a Deez Nutz

Tactical ("Deez Nutz") and Zach Morrow ("Morrow") (collectively, "Defendants"), of infringing

U.S. Patent No. 12,038,247 ("the '247 Patent") and U.S. Patent No. 7,398,723 ("the '723

Patent") as follows:

**PARTIES**

1.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.      Rare Breed is a corporation organized under the laws of Texas with an address of 2710 Central Freeway, Suite 150, Wichita Falls, TX 76306.

3.      Deez Nutz is a limited liability company existing under the laws of the state of Idaho and has a place of business at 354 Chateau Drive, Idaho Falls, ID 83404.

4.      Morrow is an individual residing at 354 Chateau Drive, Idaho Falls, ID 83404, and is the sole member of and operates Deez Nutz.

5.      Upon information and belief, Morrow operates Deez Nutz from his residence.

**JURISDICTION AND VENUE**

6.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 284-85.

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

8.      Personal jurisdiction and venue over Defendants are proper in this District because the Defendants reside in and/or have a place of business this district.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in this district and/or have a regular and established place of business in this District.

## BACKGROUND

10.     This lawsuit asserts contributory and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent") and U.S. Patent No. 7,398,723 ("the '723 Patent"). True and correct copies of the '247 Patent and the '723 Patent are attached hereto as Exhibits A and B, respectfully.

11.     The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. The application from which the '247 Patent issued claimed a priority date of September 8, 2022.

12.     The '723 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 15, 2008. The application from which the '723 Patent issued has a priority date of April 25, 2003.

13.     The '723 Patent lapsed for nonpayment of its final maintenance fee. The inventor and owner of the '723 Patent at the time, Brian A. Blakley, did not receive a reminder of the maintenance fee being due from his attorney and the failure to pay the maintenance fee in time was inadvertent. A Petition to Accept Unintentionally Delayed Payment of Maintenance Fee was filed on April 20, 2022, and the '723 Patent was reinstated on May 16, 2022.

14.     ABC is the current assignee and owner of all right, title and interest in and to the '247 and '723 Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

15.     The '723 Patent expired on September 22, 2024.

16.     Rare Breed is the exclusive licensee of the '247 and '723 Patents.

17.    Upon information and belief, Defendants have committed acts of contributory and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

18.    On March 31, 2025, counsel for ABC sent a cease and desist demand letter to Deez Nutz, informing it of the '247 Patent and expressly accusing its "Super Safety" (3 Position) of patent infringement.

19.    Additionally, on information and belief, Defendants have committed contributory and induced infringement of U.S. Patent No. 7,398,723 ("the '723 Patent") prior to its expiration.

<u>**The Invention**</u>

20.    The '723 Patent discloses a semiautomatic trigger mechanism that forces the trigger to reset via a cam and claims a method of accelerating the firing cycle using such a trigger mechanism.

21.    The '247 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a forced reset semiautomatic mode and uses a cam, rotated by cycling of the action, to force the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position. While the '247 Patent may be adapted to many types of firearms, the '247 Patent shows one embodiment designed as a drop-in replacement particularly to fit AR15-pattern firearms. The scope of the claimed invention, however, is defined by the claims of the '247 Patent.

22.    A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced

Third Amended Complaint for Patent Infringement    4

by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of the bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

23.    In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

24.    In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and locks the trigger member in this position until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

25.     The '723 Patent teaches a trigger mechanism in which the cycling action of a semiautomatic firearm causes a cam to forcibly reset the trigger member and holds it there until the action has reached the end of its cycle and is ready to fire again.

26.     The '723 Patent claims a method of accelerating the firing cycle of a semiautomatic firearm. According to the method, a firearm trigger is depressed with a finger to discharge the firearm. This activates a reciprocating mechanism within the firearm (such as a bolt or bolt carrier) which causes a cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position until the reciprocating mechanism has reached an approximately closed, ready to fire position.

27.     The '247 Patent relates to a semiautomatic trigger mechanism that represents an improvement on the above-described technologies because it has two modes of operation: one that operates as a standard disconnector trigger mechanism described above and another that allows the user to fire more rapidly by forcibly returning the trigger to the reset state.

28.     The '247 Patent invention teaches a forcible reset mode of the trigger by a cam while the bolt cycles to the rear and then returns forward to the in-battery position. The cam also limits movement of the trigger member. The cam acts to prevent the trigger member from being pulled a second (or subsequent) time until the bolt carrier has returned to the in-battery position.

## The Infringing Devices

29.     On information and belief, Defendants have and are currently making, importing, using, selling, and/or offering for sale a "Super Safety" ("the Infringing Device"), which embodies the technology claimed in the '247 Patent.

30.     On information and belief, Defendants made, imported, used, sold, and/or offered

for sale the Infringing Device, which embodies the technology claimed in the '723 Patent prior to

its expiration.

31.     On information and belief, Defendants have made or had made for them,

imported, used, sold or offered for sale the Infringing Device via the Deez Nutz Tactical website,

the Deez Nutz Tactical Facebook page, and numerous private Facebook groups.  Exemplary

photographs of these are shown below:





32.    Defendants sell a specially made cam and cam lever that replaces a standard AR-pattern safety selector, along with a trigger member specially cut to work with the cam. When these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247 and '723 Patents.

33.    Defendants also sell or are offering to sell precut triggers, which are specially designed triggers for use with a "Super Safety" (3 Position), in addition to spare "Super Safety" cam levers, both shown below.





34.     In addition, Defendants are selling or offering to sell products called the "DB9 Super Safety Curved Kit" and the "DB9 Super Safety Flat Kit", which are "Super Safety" (3 Position) kits specially designed for the DB9 platform. When installed as instructed via a link provided on Defendants' website, (https://odysee.com/@M1ke843:f/DB-9-Alloy-standoff-ss-remix:d), the "DB9 Super Safety Curved Kit" and the "DB9 Super Safety Flat Kit" are covered by the '247 and '723 Patents.



35.     Further, Defendants are selling or offering to sell a product called the "DB9 Titanium Trip Bar", which is not a standard component intended for use with a traditional fire control group. Rather, it is specially designed and manufactured for use exclusively with the "Super Safety" (3 Position) device in a DB9 platform. They are offering the "DB9 Titanium Trip Bar" not only for use with devices they have sold directly, but also for use with "Super Safety" products made or sold by others. As such, the "DB9 Titanium Trip Bar" constitutes a material part of the invention claimed in the '247 and '723 Patents, is not a staple article or commodity of commerce suitable for substantial noninfringing use and is intended to be assembled into an infringing device.



36.     Defendants are selling or offering to sell "Centering Blocks," which are specially designed parts exclusively used in conjunction with the cam lever of a "Super Safety" (3 Position). These "Centering Blocks" are not standard components intended for use with a traditional fire control group. Rather, they are specially designed and manufactured for use exclusively with the "Super Safety" (3 Position) device. Defendants are offering these "Centering Blocks" not only for use with devices it has sold directly, but also for use with "Super Safety" products made or sold by others. As such, these "Centering Blocks" constitute a material part of the inventions claimed in the '247 and '723 Patents, are not staple articles or commodities

of commerce suitable for substantial noninfringing use and are intended to be assembled into infringing devices.



37.     Defendants are also selling or offering to sell products referred to as the "Jig" and the "Go/No-Go Gauge." These items are not standard tools or components intended for general use. Rather, they are specially designed and manufactured solely to assist others in modifying existing parts so they can specifically be used in connection with the "Super Safety" (3 Position) device, resulting in an infringing assembly. The "Jig" and "Go/No-Go Gauge" serve no substantial noninfringing use and exist only to facilitate the creation of infringing devices.



38.      Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer. 35 U.S.C. § 271(c).

39.      These parts sold by Defendants are components of a patented apparatus, constituting a material part of the invention. The Defendants know that these are especially made or especially adapted for use in an infringement of the '247 and '723 Patents, and not a staple article or commodity of commerce suitable for substantial noninfringing use. 35 U.S.C. § 271(c).

40.      These parts cannot be used in any manner that avoids infringement of the '247 and '723 Patents. The Infringing Devices and associated kits are not staple articles or commodities of commerce suitable for substantial noninfringing use and have no real utility outside the infringing combination or method described in the '247 and '723 Patents.

41.      Whoever actively induces infringement of a patent shall be liable as an infringer. 35 U.S.C. § 271(b).

42.      Defendants instruct purchasers to assemble the Infringing Devices in a way that induces infringement of the '247 and '723 Patents.

43.      The Infringing Devices also can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger.  The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

44.     The user can slide the cam between safe and fire (forced reset semiautomatic with locking bar) modes.

45.     Defendants also sell "D2 Complete FCG Curved SS Kit,", and "D2 Complete FCG Flat Super Safety Kit". Images of these products (Infringing Devices) are reproduced below.



Both of these items are described as "Everything you need to swap out your cassette style trigger for a Super Safe setup. Includes the usual super safety and precut trigger, as well as a complete fire control group including springs, hammer and trigger pins, disconnector and spring."

46.     The "D2 Complete FCG Curved SS Kit" and "D2 Complete FCG Flat Super Safety Kit" each include all the components of the patented combination claims and, thus, directly infringe the '247 Patent contributorily infringe and/or induce infringement of the '723 Patent.

47.     For the reasons explained in more specificity below, Defendants' Infringing Devices each infringe at least one claim of the '247 Patent and contributorily infringe and/or induce infringement of the '723 Patent and thus, Defendants are liable for patent infringement pursuant to 35 U.S.C. § 271(a), (b) and/or (c).

48.     In view of the Defendant's continued infringement after ABC's demand letter, the infringement is willful.

**COUNT I – INDIRECT INFRINGEMENT OF THE '247 PATENT**

49.     The allegations set forth in paragraphs 1-48 are fully incorporated into this First Count for Relief.

50.     Upon information and belief, Defendants have and continue to willfully contributorily infringe and/or induce infringement of at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

51.     An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and use as intended is illustrated in the chart below:

| Claim Language | Infringing Device |
|---|---|
| 15. A firearm trigger mechanism comprising: | The Infringing Device is for a firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket.<br><br> |

| | An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled. |
|---|---|
| |  |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The Infringing Device is installed in a fire control mechanism pocket of a receiver along with a hammer that has a sear catch and a hook for engaging a disconnector.  The hammer pivots on a transverse hammer pivot axis between set and released positions. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier |



Hammer Set Position



Hammer Released Position

| | |
|---|---|
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Infringing Device is installed with a trigger member in the fire control mechanism pocket that pivots on a transverse trigger member pivot axis between set and released positions and has a sear.<br><br><br><br>Trigger Member Set Position |

| | |
|---|---|
| | <br>Trigger Member Released Position |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement when the hammer and trigger member are in their set positions.<br><br><br>Hammer and Trigger Member in Set Positions |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The disconnector is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer.<br><br> |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being | The Infringing Device has a cam that is adapted to be movably mounted in the fire control mechanism pocket and includes a cam that has a cam lobe. |

| | |
|---|---|
| movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position. In the second position the cam lobe forces said trigger member towards the set position.<br><br><br>Cam Lobe First Position<br><br><br>Cam Lobe Second Position |
| whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set | In the standard semi-automatic mode, the cam is a first position for at least part of the cycle. Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches said hammer hook. |

positions so that the user can pull said trigger member to fire the firearm, and



Cam in Standard Semiautomatic Disconnector Mode

Thereafter, the bolt carrier moves forward into battery, at which time a user must manually release the trigger member to free said hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull said trigger member to fire the firearm.

whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm.

When in the forced reset semi-automatic mode, the cam is in a second position for at least part of the cycle.



Cam In Forced Reset Semiautomatic Mode

Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook doesn't catch the hammer hook.



Thereafter, the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm.

Third Amended Complaint for Patent Infringement   20



52.    When assembled as intended and instructed by the Defendants, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

53.    The Defendants instruct their customers to assemble the components they sell into an infringing combination of parts. Thus, Defendants actively induces infringement of the '247 Patent.

54.    Accordingly, when a purchaser installs and uses Defendants' Infringing Devices as instructed, there is direct infringement of the '247 Patent.

55.    Accordingly, Defendants' sell and/or offer to sell the Infringing Device is infringement under 35 U.S.C. § 271(b) and/or (c).

56.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is an indirect infringement of the '247 Patent.

57.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

58.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II – DIRECT INFRINGEMENT OF THE '247 PATENT

59.    The allegations set forth in paragraphs 1-58 are fully incorporated into this Second Count for Relief.

60.    Defendants have and continue to directly infringe at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing all components of the claimed combination (the Infringing Device) to be used without authority within the United States.

61.    An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and used as intended with the combination of parts supplied is illustrated in the chart in paragraph 42, above.

62.    Defendants' sell and/or offer to sell the Infringing Device "D2 Complete FCG Curved SS Kit" and the "D2 Complete FCG Flat Super Safety Kit." As such, Defendants are selling all the components of the patented combination. Thus, Defendants directly infringe the '247 Patent under 35 U.S.C. § 271(a).

63.    Accordingly, when a purchaser installs and uses Defendants' Infringing Devices as instructed, there is direct infringement of the '247 Patent.

64.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is a direct infringement of the '247 Patent.

65.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

66.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

### COUNT III – INDIRECT INFRINGEMENT OF THE '723 PATENT

67.     The allegations set forth in paragraphs 1-66 are fully incorporated into this Second Count for Relief.

68.     Upon recently learned information and belief, Defendants have contributorily infringed and/or induced infringement of Claim 1 of the '723 Patent prior to its expiration by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

69.     An image of the deeznutztactical.com website archived by Archive.org (https://deeznutztactical.com/product-category/3/) reproduced below shows that Defendants were selling or offering for sale the Infringing Devices at least as of August 5, 2024.



70.      An exemplary comparison of the Infringing Device with claim 1 of the '723

Patent when assembled and used as intended and instructed is illustrated in the chart below:

| Claim Language | Infringing Device |
|---|---|
| 1. A method of accelerating the firing cycle of a semi-automatic firearm comprising the steps of: | When installed and used as intended and instructed, the Infringing Device allows the user to use a method that accelerates the firing cycle of a semi-automatic firearm. |
| depressing a firearm trigger with a finger to discharge the firearm; | When installed and used as intended and instructed, the user depressing the trigger with a finger causes the firearm to discharge.<br> |
| activating a reciprocating mechanism within the firearm that causes a cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position | When the firearm is discharged, a reciprocating mechanism (bolt or bolt carrier assembly) within the firearm is activated, it causes the cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position. |



| until the reciprocating mechanism has reached an approximately closed, ready to fire position. | The trigger is held forward in the ready to fire position by the cam until the reciprocating mechanism (bolt or bolt carrier) until the reciprocating mechanism has reached an approximately closed, ready to fire position. |

71.    Because the claim "comprises" specified steps, the fact that the Infringing Devices, when installed and used as the Defendants instruct, can also operate according to another method does not avoid infringement.

72.    When assembled as intended and instructed by the Defendants, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

73.    The Defendants instructed their customers to assemble the components they sold into an infringing combination of parts. Thus, Defendants actively induced infringement of the '247 Patent prior to its expiration.

74.    Accordingly, when a purchaser installed and used Defendants' Infringing Devices as instructed, there was direct infringement of the '723 Patent.

75.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices was an indirect infringement of the '723 Patent prior to its expiration under 35 U.S.C. § 271(b) and/or (c).

76.    Defendants' acts of infringement were willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

77.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs' respectfully request that this Court enter:

a.    A judgment in favor of Plaintiffs that Defendants have infringed the '247 Patent and the '723 Patent (prior to expiration);

b.    A preliminary injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

c.      A permanent injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent, or other such equitable relief as the Court determines is warranted;

d.      A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '247 Patent and the '723 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement; and

e.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED: October 17, 2025.


*/s/ Jared W. Allen*
Jared W. Allen
Beard St. Clair Gaffney PA
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I certify I am a licensed attorney in the state of Idaho and on October 17, 2025, I filed the

foregoing *Third Amended Complaint for Patent Infringement* using the CM/ECF system and

caused the same to be served upon the following by electronic means:

Joyce A. Hemmer
Elam & Burke, P.A.
jah@elamburke.com

John J. Skeriotis
Emerson, Thomson & Bennett, LLC
jms@etblaw.com


*/s/ Jared W. Allen*
Jared W. Allen
Beard St. Clair Gaffney PA
Attorneys for Plaintiffs

LC25,MEDIATION,NONCONSENT,PAT/TRD/COPY

**EXHIBIT 2**

# U.S. District Court
## District of Idaho (LIVE) NextGen 1.8 (Pocatello − Eastern)
## CIVIL DOCKET FOR CASE #: 4:25−cv−00299−AKB

| | |
|---|---|
| ABC IP, LLC et al v. Harrison Gunworks LLC et al | Date Filed: 06/06/2025 |
| Assigned to: Judge Amanda K Brailsford | Jury Demand: Both |
| Cause: 35:271 Patent Infringement | Nature of Suit: 830 Patent |
| | Jurisdiction: Federal Question |

**Plaintiff**

**ABC IP, LLC**
*a Delaware limited liability company*

represented by **Glenn D Bellamy**
Wood, Herron & Evans LLP
600 Vine Street
Suite 2800
Cincinnati, OH 45202
513−241−2324
Fax: 513−241−6234
Email: gbellamy@whe−law.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jared Wayne Allen**
ID
955 Pier View Drive
Idaho Falls, ID 83402
208−523−5171
Fax: 208−529−9732
Email: allen@beardstclair.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rare Breed Triggers, Inc.**
*a Texas corporation*

represented by **Glenn D Bellamy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jared Wayne Allen**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Harrison Gunworks LLC**
*an Idaho limited liability company*

represented by **John M. Skeriotis**
Emerson Thomson Bennett
1914 Akron Peninsula Road
Akron, OH 44313
330−352−4240
Email: jms@etblaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joyce Ann Hemmer**
Elam & Burke, P.A.
251 E. Front St.
Suite 300
Boise, ID 83702

208−343−5454
Fax: 208−384−5844
Email: jah@elamburke.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Tyler Harrison**
*an individual*

represented by **John M. Skeriotis**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joyce Ann Hemmer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Tyler Harrison**
*an individual*

represented by **John M. Skeriotis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joyce Ann Hemmer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Harrison Gunworks LLC**
*an Idaho limited liability company*

represented by **John M. Skeriotis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joyce Ann Hemmer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**ABC IP, LLC**
*a Delaware limited liability company*

represented by **Glenn D Bellamy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jared Wayne Allen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Rare Breed Triggers, Inc.**
*a Texas corporation*

represented by **Glenn D Bellamy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jared Wayne Allen**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/06/2025 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405 receipt number AIDDC−2938493.), filed by All Plaintiffs. (Attachments: # 1 Cover Sheet, # 2 Summons Harrison Gunworks, # 3 Summons Tyler Harrison)(Allen, Jared) |
| 06/06/2025 | 2 | Corporate Disclosure Statement by ABC IP LLC. (Allen, Jared) |
| 06/06/2025 | 3 | Corporate Disclosure Statement by Rare Breed Triggers, Inc.. (Allen, Jared) |
| 06/06/2025 | 4 | MOTION FOR PRO HAC VICE APPEARANCE by Glenn Bellamy. ( Filing fee $ 250 receipt number AIDDC−2938504.)Jared Wayne Allen appearing for Plaintiffs ABC IP LLC, Rare Breed Triggers, Inc.. Responses due by 6/27/2025 (Allen, Jared) |
| 06/09/2025 | 5 | Summons Issued as to Tyler Harrison, Harrison Gunworks LLC. (Print attached Summons for service.) (Attachments: # 1 Summons − Tyler Harrison)(hs) |
| 06/09/2025 | 6 | DOCKET ENTRY ORDER approving 4 Motion for Pro Hac Vice Appearance of attorney Glenn Bellamy for ABC IP, LLC, Rare Breed Triggers, Inc. Per Local Rule 83.4(e), out−of−state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (hs) |
| 06/09/2025 | 7 | REPORT on the filing or determination of an action regarding patent and/or trademark number(s)12038247, 10514223, 11724003, 12036336, 12274807 (Notice sent to USPTO) (Attachments: # 1 Complaint Filed on 6/6/2025) (hs) |
| 06/23/2025 | 8 | SUMMONS Returned Executed by ABC IP, LLC, Rare Breed Triggers, Inc.. All Defendants. (Attachments: # 1 Affidavit Affidavit of Service on Tyler Harrison)(Allen, Jared) |
| 07/31/2025 | 9 | ANSWER to 1 Complaint *and Demand for Jury Trial* by Tyler Harrison, Harrison Gunworks LLC. (Attachments: # 1 Exhibit 1)(Hemmer, Joyce) |
| 07/31/2025 | 10 | Corporate Disclosure Statement by Tyler Harrison, Harrison Gunworks LLC. (Hemmer, Joyce) |
| 08/01/2025 | 11 | MOTION FOR PRO HAC VICE APPEARANCE by John M. Skeriotis. ( Filing fee $ 250 receipt number AIDDC−2966142.)Joyce Ann Hemmer appearing for Defendants Tyler Harrison, Harrison Gunworks LLC. Responses due by 8/22/2025 (Attachments: # 1 Exhibit Attachment)(Hemmer, Joyce) |
| 08/01/2025 | 12 | NOTICE of Assignment to Magistrate Judge and Declination of Consent Form sent to counsel for ABC IP, LLC, Tyler Harrison, Harrison Gunworks LLC, Rare Breed Triggers, Inc. re 9 Answer to Complaint, 1 Complaint Consent/Objection to Magistrate due by 9/2/2025. (hs) |
| 08/01/2025 | 13 | DOCKET ENTRY ORDER approving 11 Motion for Pro Hac Vice Appearance of attorney John M. Skeriotis for defendants. Per Local Rule 83.4(e), out−of−state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (hs) Modified on 12/4/2025, to change representation to defendants instead of plaintiffs (jd). |
| 08/19/2025 | | **NOTICE OF DECLINATION DEADLINE:** You will be deemed to have knowingly and voluntarily consented to proceed before a Magistrate Judge UNLESS you email a declination of consent form to the Clerk of Court within the time frame set forth in 12 Notice of Assignment Setting Deadline. *Declinations are not to be filed in the case and should be emailed in pdf form to consents@id.uscourts.gov. No Judge will be informed of a party's response.* (hs) |
| 08/20/2025 | 14 | DECLINATION OF CONSENT TO A MAGISTRATE JUDGE FILED AND REASSIGNMENT OF CASE. Case reassigned to Senior Judge B. Lynn Winmill for all further proceedings. US Magistrate Judge Raymond E. Patricco no longer assigned to case. Please use this case number on all future pleadings, 4:25−cv−00299−BLW(hs) |

| 08/21/2025 | 15 | DOCKET ENTRY ORDER: The undersigned judge recuses himself from this case pursuant to 28 U.S.C. § 455(a). The Clerk is directed to reassign this case to another judge. Signed by Senior Judge B. Lynn Winmill. (mls) |
|---|---|---|
| 08/21/2025 | | DOCKET ENTRY NOTICE of Case Number Change, Case reassigned to Judge Amanda K Brailsford for all further proceedings. Senior Judge B. Lynn Winmill no longer assigned to case. Please use this case number on all future pleadings, 4:25−cv−00299−AKB (hs) |
| 08/21/2025 | 16 | A DECLINATION OF CONSENT TO A MAGISTRATE JUDGE HAS BEEN FILED IN THIS CASE(hs) |
| 08/22/2025 | 17 | LITIGATION ORDER AND NOTICE OF TELEPHONIC SCHEDULING CONFERENCE − Joint Litigation Plan and Discovery Plan due by 9/19/2025. Telephonic Scheduling Conference set for 9/26/2025 10:30 AM in Telephonic Hearing − Boise Chambers before Judge Amanda K Brailsford. Signed by Judge Amanda K Brailsford. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (hs) |
| 09/11/2025 | 18 | DISCOVERY PLAN by ABC IP, LLC, Rare Breed Triggers, Inc. . (Bellamy, Glenn) |
| 09/11/2025 | 19 | SCHEDULING CONFERENCE FORM − LITIGATION PLAN by ABC IP, LLC, Rare Breed Triggers, Inc.. (Bellamy, Glenn) |
| 09/11/2025 | 20 | SCHEDULING CONFERENCE FORM − LITIGATION PLAN by ABC IP, LLC, Rare Breed Triggers, Inc.. (Bellamy, Glenn) |
| 09/12/2025 | 21 | SCHEDULING ORDER − The telephonic scheduling conference set for September 26, 2025 is VACATED. Dispositive Motion Deadline: due by 5/29/2026. Amendment of Pleadings and Joinder of Parties: due by 12/3/2025. Alternative Dispute Resolution: Mediation shall take place by 7/10/2026. Completion of Fact Discovery: due by 5/14/2026. Signed by Judge Amanda K Brailsford. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (hs) |
| 12/04/2025 | 22 | *Amended* ANSWER to 1 Complaint *and Demand for Jury Trial*, COUNTERCLAIM against All Plaintiffs by Tyler Harrison, Harrison Gunworks LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Hemmer, Joyce) |

Jared W. Allen, ISB No. 5793
BEARD ST. CLAIR GAFFNEY PA
955 Pier View Drive
Idaho Falls, ID 83402
Tel: (208) 523-5171
Fax: (208) 529-9732
Email: allen@beardstclair.com

Glenn D. Bellamy, Ohio Bar No. 0070321
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Tel: (513) 707-0243
Fax: (513) 241-6234
E-mail: gbellamy@whe-law.com

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas corporation, | |
| Plaintiffs, | Case No.: |
| vs. | |
| HARRISON GUNWORKS LLC, an Idaho limited liability company, and TYLER HARRISON, an individual, | COMPLAINT FOR PATENT INFRINGEMENT |
| Defendants. | |

This is an action for patent infringement in which ABC IP LLC ("ABC" or "Plaintiff")

accuses Harrison Gunworks LLC ("Gunworks") and Tyler Harrison ("Harrison") (collectively,

"Defendants"), of infringing U.S. Patent Nos. 12,038,247 ("the '247 Patent") 10,514,223, ("the

'223 Patent"), 11,724,003 ("the '003 Patent"), 12,036,336 ("the '336 Patent"), and 12,274,807

("the '807 Patent) as follows:

Complaint for Patent Infringement        1

## PARTIES

1.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.      Rare Breed Triggers, Inc. ("Rare Breed") is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

3.      Upon information and belief, Defendant Harrison Gunworks LLC ("Gunworks") is a limited liability company existing under the laws of the state of Idaho and has a place of business at 7804 West Katsilometes Road, Pocatello, ID 83204.

4.      Upon information and belief, Defendant Tyler Harrison ("Harrison") is an individual residing at 1467 Surprise Valley Road, Pocatello, ID 83201 who solely operates and directs the complained-of activities of Gunworks.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(b), 281, and 284-85.

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

7.      Personal jurisdiction and venue over Defendants are proper in this District because the Defendants reside in and/or have a place of business this district.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in this district and/or have a regular and established place of business in this District.

## BACKGROUND

9.      This lawsuit asserts contributory and induced infringement of U.S. Patent No. 12,038,247 ("the '247 Patent"). A true and correct copy of the '247 Patent is attached hereto as Exhibit A.

10.     The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024.The application from which the '247 Patent issued claimed a priority date of September 8, 2022.

11.     ABC is the current assignee and owner of all right, title and interest in and to the '247 Patent. This assignment has been recorded at the United States Patent and Trademark Office ("USPTO").

12.     This lawsuit asserts direct infringement of the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent. True copies of the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent are attached hereto and Exhibits B, C, D, and E, respectively.

13.     The '223 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 24, 2019.

14.     The '003 Patent was lawfully and properly issued by the United States Patent and Trademark Office on August 15, 2023.

15.     The '336 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024.

16.     The '807 Patent was lawfully and properly issued by the United States Patent and Trademark Office on April 15, 2025.

17.     ABC is the current assignee and owner of all right, title and interest in and to the

'223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent. These assignments have been

recorded at the United States Patent and Trademark Office ("USPTO").

18.     Upon information and belief, Defendants have committed acts of direct,

contributory and induced patent infringement, which will be described in more detail below.

These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

19.     On March 28, 2025, counsel for Plaintiffs sent a cease and desist demand letter to

Defendant Gunworks, informing it of the '247 Patent and expressly accusing its "Super Safety"

(3 Position) of patent infringement.

20.     On May 8, 2024, counsel for Plaintiffs sent a message to John M. Skeriotis,

counsel for Defendants, informing them of the '223 Patent, the '003 Patent, the '336 Patent, and

the '807 Patent in view of a newly offered product and expressly asserting infringement of these

additional patents.

## The Inventions

21.     By way of background, a typical AR15-pattern firearm, for example, is

considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern

trigger mechanism is commenced by the trigger member being pulled by the user. The trigger

member releases the hammer from the trigger sear and allows the hammer to strike the firing pin.

A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear

of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and

then the bolt is allowed to return forward into battery with a new round inserted into the

chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can

either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to

return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

22.      In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

23.      In contrast. in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

24.      The '223 Patent describes and claims a device in which the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

25.      The '003 Patent, the '336 Patent, and the '807 Patent describe and claim a similarly operating device with the additional feature that it can be selected to operate in either of

two distinct modes: 1) standard disconnector semiautomatic mode and 2) forced reset semiautomatic mode.

26.    The '247 Patent relates to a semiautomatic trigger mechanism that represents improvement on the above-described technologies because it has two modes of operation: one that operates as a standard disconnector trigger mechanism described above and another that allows the user to fire more rapidly by forcibly returning the trigger to the reset state.

27.    The '247 Patent invention teaches a forcible reset mode of the trigger member by a cam while the bolt cycles to the rear and then returns forward to the in-battery position. The cam also limits movement of the trigger member. The cam acts to prevent the trigger member from being pulled a second (or subsequent) time until the bolt carrier has returned to the in-battery position.

**The Infringing Devices**

28.    On information and belief, Defendants are currently making, using, selling, and/or offering for sale a "Super Safety" (3 Position) ("the Infringing Device"), which embodies the technology claimed in the '223 Patent.

29.    On information and belief, Defendants sell or offers for sale the Infringing Device via the website harrisongunworks.com.  Exemplary photographs of these are shown below:

///


///


///


Complaint for Patent Infringement          6



**AR-SS D2 Curved Kit**

$149.99

The AR-SS is an active safety system designed by Hoffman Tactical that assists in resetting your semi-automatic trigger to allow for more efficient follow up shots. This version of the AR-SS also includes a "passive" position that deactivates the assisted reset, for when slow, high precision shots are preferred.

Note: A M-16 pattern BCG is required, and an H2 buffer is highly recommended.

Parts included: Replacement Milspec Curved Trigger, Safety Cam, Safety Lever, Rounded Detent.

Available on backorder

| 1 | Add to cart |

SKU: ar-ss_d2_curved_kit Category: SS



Home / SS / AR-SS D2 Flat Kit



**AR-SS D2 Flat Kit**

$164.99

The AR-SS is an active safety system designed by Hoffman Tactical that assists in resetting your semi-automatic trigger to allow for more efficient follow up shots. This version of the AR-SS also includes a "passive" position that deactivates the assisted reset, for when slow, high precision shots are preferred.

Note: A M-16 pattern BCG is required, and an H2 buffer is highly recommended.

Parts included: Replacement Milspec Flat Trigger, Safety Cam, Safety Lever, Rounded Detent.

Out of stock



**Email When Stock Available**

Your Name

Your Email Address

30.    Defendants sell a specially made cam and cam lever that replaces a standard AR-pattern safety selector, along with a trigger member specially cut to work with the cam. When these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247 Patent.

31.    Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer. 35 U.S.C. § 271(c).

32.    These parts sold by Defendants are components of a patented apparatus, constituting a material part of the invention. The Defendants know that these are especially made or especially adapted for use in an infringement of the '247 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use. 35 U.S.C. § 271(c).

33.    Whoever actively induces infringement of a patent shall be liable as an infringer. 35 U.S.C. § 271(b).

34.    Defendant instructed purchasers to assemble the Infringing Devices in a way that induces infringement of the '247 Patent.

35.    The Infringing Devices also can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger.  The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

Complaint for Patent Infringement          8

36.     The user can move the cam between safe, standard semiautomatic disconnector, and forced reset semiautomatic modes.

37.     For the reasons explained in more specificity below, Defendants' Infringing Devices each infringe at least one claim of the '247 Patent and thus, Defendants are liable for patent infringement pursuant to 35 U.S.C. § 27(b) and/or (c).

38.     Defendants have also offered for sale a second type of forced reset trigger mechanism they call the Defender FRT that provides a complete, drop-in trigger mechanism replacement ("the Defender FRT").

39.     As shown below, the Defender FRT is a dual mode device that operates as a standard, disconnector trigger mechanism in one mode and as a forced reset trigger mechanism is in a second mode.



40.     When the Defender FRT operates in the forced reset mode, the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position according to the invention described and claimed in the of the '223 Patent.

41.     As claimed in the '003 Patent, the '336 Patent, and the '807 Patent, the Defender FRT has the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) forced reset semiautomatic mode.

42.     On information and belief, at least the major components of this Defender FRT are imported from Bosnia.

43.     In view of the Defendants' continued infringement after ABC's demand, the infringement is willful.

## COUNT I – INDIRECT INFRINGEMENT OF THE '247 PATENT

44.     The allegations set forth in paragraphs 1-43 are fully incorporated into this First Count for Relief.

45.     Upon information and belief, Defendants have and continue to willfully contributorily infringe and/or induce infringement of at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

46.     An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and used as intended is illustrated in the chart below:

///

///

| Claim Language | Infringing Device |
|---|---|
| 15. A firearm trigger mechanism comprising: | The Infringing Device is for a firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket.<br><br><br><br>An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.<br><br> |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis | The Infringing Device is installed in a fire control mechanism pocket of a receiver along with a hammer that has a sear catch and a hook for engaging a disconnector. |

| | |
|---|---|
| between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | 

The hammer pivots on a transverse hammer pivot axis between set and released positions. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier



Hammer Set Position



Hammer Released position |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a | The Infringing Device is installed with a trigger member in the fire control mechanism pocket that |

| | |
|---|---|
| transverse trigger member pivot axis between set and released positions, | pivots on a transverse trigger member pivot axis between set and released positions and has a sear.<br><br><br>Trigger Member Set Position<br><br><br>Trigger Member Released Position |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement when the hammer and trigger member are in their set positions.<br><br> |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The disconnector is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer. |



| | |
|---|---|
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The Infringing Device has a cam that is adapted to be movably mounted in the fire control mechanism pocket and includes a cam that has a cam lobe.<br><br>The cam is movable between a first position and a second position. In the second position the cam lobe forces said trigger member towards the set position.<br><br><br>Cam Lobe Second Position |
| whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set | In the standard semi-automatic mode, the cam is moved laterally to a first position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches said hammer hook. |

positions so that the user can pull said trigger member to fire the firearm, and



Cam in Standard Semiautomatic Disconnector Mode



Thereafter, the bolt carrier moves forward into battery, at which time a user must manually release the trigger member to free said hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull said trigger member to fire the firearm.



whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm.

When in the forced reset semi-automatic mode, the cam is moved laterally to a second position.



Cam In Forced Reset Semiautomatic Mode

Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook doesn't catch the hammer hook.



Thereafter, the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm.



|  |  |
|---|---|

47.     When assembled as intended and instructed by the Defendants, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

48.     The Defendants instruct their customers to assemble the components they sell into an infringing combination of parts. Thus, Defendants actively induce infringement of the '247 Patent.

49.     Accordingly, Defendants' sale and/or offer to sell the Infringing Device is infringement under 35 U.S.C. § 271 (a), (b), and/or (c).

50.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is an indirect infringement of the '247 Patent.

51.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

52.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## <u>COUNT II – DIRECT INFRINGEMENT OF THE '223 PATENT</u>

53.     The allegations set forth in paragraphs 1-52 are fully incorporated into this Second Count for Relief.

54.     Upon information and belief, Defendants have and continue to willfully directly infringe at least Claim 4 of the '223 Patent by making, using, selling, offering for sale, and/or importing without authority within the United States, the Infringing Unit.

55.     Because the claims describe the invention as "comprising" the enumerated elements, the scope of the claims are not limited to those elements and the inclusion of additional structures or features not specified in a claim does not avoid infringement.

56.     An exemplary comparison of the Infringing Unit with claim 4 of the '223 Patent is illustrated in the chart below:

| Claim Language | Infringing Unit |
|---|---|
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising: | The Infringing Unit is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket.<br><br>Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector. |

Complaint for Patent Infringement          18



An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.

| | |
|---|---|
| a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; | The Infringing Unit includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins. |



| | |
|---|---|
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis between set and released positions; | The Infringing Unit includes a hammer with a sear notch and is mounted in the housing to pivot on a transverse axis between set and released positions. |
| a trigger member having a sear and mounted in the housing to pivot on a transverse axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, the contact causing the trigger member to be forced to the set position; | The Infringing Unit includes a trigger member with a sear and that is mounted in the housing to pivot on a transverse axis between set and released positions.<br><br><br><br>The trigger member has a surface (shown above) positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled.<br><br>The contact causes the trigger member to be forced to the set position. |

| a locking bar pivotally mounted in the housing and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position in which the trigger member can be moved by an external force to the released position. | The Infringing Unit includes a locking bar that is pivotally mounted in the housing.<br><br><br><br>The locking bar is spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position.<br><br>The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaches a substantially in-battery position. In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position. |
| --- | --- |

57.    Accordingly, Defendants' sale and/or offer to sell the Infringing Unit is direct infringement under 35 U.S.C. § 271(a).

58.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Unit is an indirect infringement of the '247 Patent.

59.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

60.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

damages adequate to compensate for the infringement, being lost profits or no less than a

reasonable royalty, treble damages, and attorneys' fees.

## COUNT III – DIRECT INFRINGEMENT OF THE '003 PATENT

61.     The allegations set forth in paragraphs 1-60 are fully incorporated into this Third

Count for Relief.

62.     Upon information and belief, Defendants have and continue to willfully directly

infringe at least Claim 4 of the '003 Patent by making, using, selling, offering for sale, and/or

importing without authority within the United States, the Infringing Unit.

63.     An exemplary comparison of the Infringing Unit with claim 4 of the '003 Patent

is illustrated in the chart below:

| Claim Language | Infringing Unit |
|---|---|
| 4. A firearm trigger mechanism comprising: | Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector.<br><br>The Infringing Unit is a firearm trigger mechanism. |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, |  |

| | A housing has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. |
|---|---|
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | A hammer having a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | <br><br>A trigger member has a sear and is mounted in the housing to pivot on the trigger member pin between set and released positions. The trigger member has a surface positioned to be contacted by a surface of said hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position. |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement in the hammer and trigger member set positions and are out of engagement in the hammer and trigger member released positions. |

| | |
|---|---|
| a disconnector having a hook for engaging said hammer and mounted in said housing to pivot on said trigger member pin, | <br><br>A disconnector has a hook for engaging the hammer and is mounted in the housing to pivot on the trigger member pin. |
| a locking member mounted in said housing to pivot on a transverse locking member pin, said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and |  |

| | |
|---|---|
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, |  Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector.<br><br>A safety selector is mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | When in the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward | When in the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer, causing the |

| | |
|---|---|
| pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | trigger member to be forced to the set position. The safety selector prevents the disconnector hook from catching the hammer hook. Thereafter, when the bolt carrier reaches the substantially in-battery position, the user can pull the trigger member to fire the firearm without manually releasing the trigger member. |

64.     Accordingly, Defendants' sale and/or offer to sell the Infringing Unit is direct infringement under 35 U.S.C. § 271(a).

65.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Unit is an indirect infringement of the '247 Patent.

66.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

67.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT IV – DIRECT INFRINGEMENT OF THE '336 PATENT

68.     The allegations set forth in paragraphs 1-67 are fully incorporated into this Fourth Count for Relief.

69.     Upon information and belief, Defendants have and continue to willfully directly infringe at least Claim 3 of the '336 Patent by making, using, selling, offering for sale, and/or importing without authority within the United States, the Infringing Unit.

70.     An exemplary comparison of the Infringing Unit with claim 3 of the '336 Patent

is illustrated in the chart below:

| Claim Language | Infringing Unit |
|---|---|
| 3. A firearm trigger mechanism comprising: | The Infringing unit is firearm trigger mechanism.<br><br>Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector. |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | <br><br>The housing has first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | |

<table>
<tr>
<td></td>
<td>



The hammer has a sear catch and a hook for engaging a disconnector and mounted in the housing to pivot on the hammer pin between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier

</td>
</tr>
<tr>
<td>

a trigger member having a sear and mounted in said housing to pivot on said trigger member pin between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position,

</td>
<td>



</td>
</tr>
<tr>
<td>

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

</td>
<td>

The sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member.

</td>
</tr>
</table>

| | |
|---|---|
| a disconnector having a hook for engaging said hammer and mounted in said housing to pivot on said trigger member pin, | <br><br>The disconnector has a hook for engaging the hammer and mounted in the housing to pivot on the trigger member pin. |
| a locking member mounted in said housing to pivot on a transverse locking member pin, said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | <br><br>A locking member is mounted in the housing to pivot on a transverse locking member pin. The locking member is pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member, allowing the trigger member to be moved to the released position. The locking member is spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the |

| | bolt carrier reaches a substantially in-battery position. |
|---|---|
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook, | <br><br>Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector.<br><br>A safety selector is mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. The safety selector is configured such that, when said safety selector is in the forced reset semi-automatic position, it causes the disconnector to be repositioned and in doing so prevents the disconnector hook from catching the hammer hook. |

| | |
|---|---|
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector.<br><br>When in the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches said hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When in the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer, causing the trigger member to be forced to the set position. The safety selector prevents the disconnector hook from catching the hammer hook. Thereafter, when the bolt carrier reaches the substantially in-battery position, the user can pull the trigger member to fire the firearm without manually releasing the trigger member. |

71.    Accordingly, Defendants' sale and/or offer to sell the Infringing Unit is direct infringement under 35 U.S.C. § 271(a).

72.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Unit is an indirect infringement of the '336 Patent.

73.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

74.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

### COUNT V – DIRECT INFRINGEMENT FO THE '807 PATENT

75.     The allegations set forth in paragraphs 1-74 are fully incorporated into this Fifth Count for Relief.

76.     Upon information and belief, Defendants have and continue to willfully directly infringe at least claim 1 of the '807 Patent by making, using, selling, offering for sale, and/or importing without authority within the United States, the Infringing Unit.

77.     An exemplary comparison of the Infringing Unit with claim 1 of the '807 Patent is illustrated in the chart below:

| Claim Language | Infringing Unit |
|---|---|
| 1. A firearm trigger mechanism comprising: | The Infringing unit is firearm trigger mechanism.<br><br>Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector. |

| a hammer having a sear catch and a hook and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | <br><br>The hammer has a sear catch and a hook and is mounted in housing that fits into a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions. The hammer pivots rearward by rearward movement of a bolt carrier. |
|---|---|
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | <br><br>The trigger member has a sear and is mounted in a housing that fits into a fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions. The trigger member has a surface positioned to be contacted by a surface of said hammer during rearward pivoting of the hammer to cause said trigger member to be forced to the set position. |



| | |
|---|---|
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member. |
| a disconnector having a hook for engaging said hammer hook and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | <br><br>The disconnector has a hook for engaging the hammer hook and is mounted in a housing that fits into the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, which it shares with the trigger member. |

| | |
|---|---|
| a locking member adapted to be movably mounted in the fire control mechanism pocket, said locking member being movable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | 

The locking member is movably mounted in a housing that fits into the fire control mechanism pocket. The locking member is movable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member, allowing said trigger member to be moved to the released position. The locking member is spring biased toward the first position and is moved against said spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |
| a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions, |  |

| | |
|---|---|
| | Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector.<br><br>The safety selector is movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions. |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector.<br><br>In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release said trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to their set positions so that the user can pull the trigger member to fire the firearm. |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | Harrison Gunworks is proud to now offer 3 position cassette-style FRTs! For those not wanting to re-train on the push button selector of the Super Safety, the Defender FRT allows seamless transitions between Safe, Traditional Semi, and Forced Reset Semi, utilizing a standard 3 position selector.<br><br>In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer,causing the trigger |

| | member to be forced to the set position, the safety selector prevents the disconnector hook from catching the hammer hook. Thereafter, when the bolt carrier reaches the substantially in-battery position, the user can pull the trigger member to fire the firearm without manually releasing said trigger member. |
|---|---|

78.    Accordingly, Defendants' sale and/or offer to sell the Infringing Unit is direct infringement under 35 U.S.C. § 271(a).

79.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Unit is an indirect infringement of the '807 Patent.

80.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

81.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a.    A judgment in favor of Plaintiffs that Defendants have infringed the '247 Patent;

b.    A preliminary injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

c.      A permanent injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent, or other such equitable relief as the Court determines is warranted;

d.      A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '247 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

e.      A judgment in favor of Plaintiffs that Defendants have infringed the '223 Patent;

f.      A preliminary injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '223 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

g.      A permanent injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '223 Patent, or other such equitable relief as the Court determines is warranted;

h.      A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '223 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

i.      A judgment in favor of Plaintiffs that Defendants have infringed the '003 Patent;

j.      A preliminary injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '003 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

k.      A permanent injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '003 Patent, or other such equitable relief as the Court determines is warranted;

l.      A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '003 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

m.      A judgment in favor of Plaintiffs that Defendants have infringed the '336 Patent;

n.      A preliminary injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '336 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

o.      A permanent injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '336 Patent, or other such equitable relief as the Court determines is warranted;

p.      A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '336 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

q.      A judgment in favor of Plaintiffs that Defendants have infringed the '807 Patent;

r.      A preliminary injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '807 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

s.      A permanent injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '807 Patent, or other such equitable relief as the Court determines is warranted;

t.      A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '807 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement; and

u.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED: June 6, 2025.


/s/ Jared W. Allen
Jared W. Allen
Of Beard St. Clair Gaffney PA
Attorney for Plaintiffs



**EXHIBIT 3**

**U.S. District Court [LIVE]**
**Western District of Texas (El Paso)**
**CIVIL DOCKET FOR CASE #: 3:25−cv−00201−DCG**

ABC IP, LLC et al v. Hanes Tactical LLC et al
Assigned to: Judge David C Guaderrama
Cause: 35:271 Patent Infringement

Date Filed: 06/06/2025
Jury Demand: Both
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**ABC IP, LLC**
*a Delaware limited liability company*

represented by **Glenn D Bellamy**
Wood, Herron & Evans LLP
600 Vine Street
Suite 2800
Cincinnati, OH 45202
513−241−2324
Fax: 513−241−6234
Email: gbellamy@whe−law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Whitney A. Davis**
Eggleston King Davis, LLP
102 Houston Avenue, Suite 300
Weatherford, TX 76086
817−596−4200
Fax: 916−333−5373
Email: whit@ekdlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rare Breed Triggers, Inc.**
*a Texas corporation*

represented by **Whitney A. Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Glenn D Bellamy**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Hanes Tactical LLC**
*a Texas limited liability company*

represented by **H. Dale Langley , Jr.**
The Law Firm of H. Dale Langley, Jr.,
P.C.
1803 West Avenue
Austin, TX 78701
512−477−3830
Fax: 866−735−9129
Email: dlangley@iptechlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Damion Terrell Bennett**
*an individual*

represented by **H. Dale Langley , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Plaintiff**

**Damion Terrell Bennett**                    represented by    **H. Dale Langley , Jr.**
*an individual*                                                                      (See above for address)
                                                                                     *LEAD ATTORNEY*
                                                                                     *ATTORNEY TO BE NOTICED*


**Counter Plaintiff**

**Hanes Tactical LLC**                         represented by    **H. Dale Langley , Jr.**
*a Texas limited liability company*                                                   (See above for address)
                                                                                     *LEAD ATTORNEY*
                                                                                     *ATTORNEY TO BE NOTICED*


V.

**Counter Defendant**

**ABC IP, LLC**                                represented by    **Glenn D Bellamy**
*a Delaware limited liability company*                                                (See above for address)
                                                                                     *LEAD ATTORNEY*
                                                                                     *ATTORNEY TO BE NOTICED*

                                                                                     **Whitney A. Davis**
                                                                                     (See above for address)
                                                                                     *LEAD ATTORNEY*
                                                                                     *ATTORNEY TO BE NOTICED*


**Counter Defendant**

**Rare Breed Triggers, Inc.**                  represented by    **Whitney A. Davis**
*a Texas corporation*                                                                 (See above for address)
                                                                                     *LEAD ATTORNEY*
                                                                                     *ATTORNEY TO BE NOTICED*

                                                                                     **Glenn D Bellamy**
                                                                                     (See above for address)
                                                                                     *ATTORNEY TO BE NOTICED*


| Date Filed | # | Docket Text |
|---|---|---|
| 06/06/2025 | 1 | COMPLAINT *for Patent Infringement* ( Filing fee $ 405 receipt number ATXWDC−20296607), filed by ABC IP, LLC, Rare Breed Triggers, Inc.. (Attachments: # 1 Exhibit, # 2 Civil Cover Sheet)(Davis, Whitney A.) (Entered: 06/06/2025) |
| 06/06/2025 | 2 | REQUEST FOR ISSUANCE OF SUMMONS by ABC IP, LLC *Hanes Tactical* (Davis, Whitney A.) (Entered: 06/06/2025) |
| 06/06/2025 | 3 | RULE 7 DISCLOSURE STATEMENT filed by ABC IP, LLC. (Davis, Whitney A.) (Entered: 06/06/2025) |
| 06/06/2025 | 4 | RULE 7 DISCLOSURE STATEMENT filed by Rare Breed Triggers, Inc.. (Davis, Whitney A.) (Entered: 06/06/2025) |
| 06/06/2025 |  | Case assigned to Judge David C Guaderrama. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (ll) (Entered: 06/09/2025) |
| 06/06/2025 |  | If ordered by the court, all referrals will be assigned to Magistrate Judge Enriquez (ll) (Entered: 06/09/2025) |
| 06/09/2025 | 5 | Summons Issued as to Hanes Tactical LLC. (ll) (Entered: 06/09/2025) |
| 06/09/2025 | 6 | REQUEST FOR ISSUANCE OF SUMMONS by ABC IP, LLC, Rare Breed Triggers, Inc.. *for Damion Bennett* (Davis, Whitney) (Entered: 06/09/2025) |

| 06/09/2025 | 7 | Summons Issued as to Damion Terrell Bennett. (ll) (Entered: 06/09/2025) |
|---|---|---|
| 06/16/2025 | 8 | WAIVER OF SERVICE Returned Executed by ABC IP, LLC, Rare Breed Triggers, Inc. as to Hanes Tactical LLC. Waiver sent on 6/11/2025, answer due 8/11/2025. (Davis, Whitney) (Entered: 06/16/2025) |
| 06/16/2025 | 9 | WAIVER OF SERVICE Returned Executed by ABC IP, LLC, Rare Breed Triggers, Inc. as to Damion Terrell Bennett. Waiver sent on 6/11/2025, answer due 8/11/2025. (Davis, Whitney) (Entered: 06/16/2025) |
| 08/11/2025 | 10 | ANSWER to 1 Complaint with Jury Demand . Attorney H. Dale Langley, Jr added to party Damion Terrell Bennett(pty:dft), Attorney H. Dale Langley, Jr added to party Hanes Tactical LLC(pty:dft) by Damion Terrell Bennett, Hanes Tactical LLC. (Attachments: # 1 Exhibit Exhibit 1)(Langley, H.) (Entered: 08/11/2025) |
| 08/12/2025 | 11 | Order REQUIRING PARTIES TO FILE JOINT RULE 26(f) REPORT, Scheduling Recommendations/Proposed Scheduling Order. Scheduling recommendations/proposed scheduling order due to the Court within sixty (60) days after the appearance of any defendant. Scheduling Recommendations/Proposed Scheduling Order due by 9/12/2025,. Signed by Judge David C Guaderrama. (jg1) (Entered: 08/12/2025) |
| 08/19/2025 | 12 | MOTION to Appear Pro Hac Vice (Filing fee $ 100 receipt number 3572) by ABC IP, LLC, Rare Breed Triggers, Inc. (Attachments: # 1 Proposed Order, # 2 Receipt)(ll) (Entered: 08/20/2025) |
| 08/20/2025 | 13 | ORDER DENYING 12 Motion to Appear Pro Hac Vice for Attorney Glenn Dean Bellam. Signed by Judge David C Guaderrama. (ll) (Entered: 08/20/2025) |
| 08/20/2025 | 14 | ORDER DENYING REQUEST FOR PRELIMINARY INJUNCTION WITHOUT PREJUDICE re 1 Complaint filed by Rare Breed Triggers, Inc., ABC IP, LLC. Signed by Judge David C Guaderrama. (ll) (Entered: 08/20/2025) |
| 08/28/2025 | 15 | MOTION to Appear Pro Hac Vice of Attorney Glenn Dean Bellamy ( Filing fee $ 100 receipt number 3584) by ABC IP, LLC. (Attachments: # 1 Proposed Order, # 2 Filing Fee Receipt)(em) (Entered: 08/28/2025) |
| 08/28/2025 | | Text Order GRANTING 15 Motion to Appear Pro Hac Vice. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center entered by Judge David C Guaderrama. (This is a text−only entry generated by the court. There is no document associated with this entry.) (ESlc) (Entered: 08/28/2025) |
| 09/12/2025 | 17 | Proposed Order to 11 Order for Scheduling Recommendations/Proposed Scheduling Order, by ABC IP, LLC. (Davis, Whitney) (Entered: 09/12/2025) |
| 09/12/2025 | 18 | Rule 26(f) Discovery Report/Case Management Plan by ABC IP, LLC. (Davis, Whitney) (Entered: 09/12/2025) |
| 09/16/2025 | 19 | SCHEDULING ORDER: Pretrial Conference set for 1/7/2027 02:00 PM before Judge David C Guaderrama, Jury Trial set for 1/19/2027 09:00 AM before Judge David C Guaderrama, ADR Report Deadline due by 11/6/2026, ADR Mediation Completed by 10/30/2026, Amended Pleadings due by 12/1/2025, Discovery due by 7/15/2026, Motions due by 9/18/2026,. Signed by Judge David C Guaderrama. (dt) (Entered: 09/16/2025) |
| 10/13/2025 | 20 | MOTION to Amend Complaint by ABC IP, LLC, Rare Breed Triggers, Inc.. (Attachments: # 1 Exhibit Amended Complaint, # 2 Exhibit Exhibit A to Amd Complaint, # 3 Exhibit Exhibit B to Amd Complaint)(Davis, Whitney) (Entered: 10/13/2025) |
| 10/16/2025 | 21 | STATUS REPORT *on Settlement Negotiations* by ABC IP, LLC, Rare Breed Triggers, Inc.. (Bellamy, Glenn) (Entered: 10/16/2025) |
| 10/29/2025 | | Text Order GRANTING 20 Motion to Amend Complaint entered by Judge David C Guaderrama. (This is a text−only entry generated by the court. There is no document associated with this entry.) (ESlc) (Entered: 10/29/2025) |

| 10/29/2025 | <u>22</u> | AMENDED COMPLAINT against Damion Terrell Bennett, Hanes Tactical LLC amending, filed by ABC IP, LLC, Rare Breed Triggers, Inc. (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2)(ll) (Entered: 11/20/2025) |
|---|---|---|
| 12/01/2025 | | Set/Reset Hearings: As per Order ECF No <u>19</u> Jury Selection set for 1/19/2027 09:00AM before Judge David C Guaderrama, Jury Trial set for 1/19/2027 09:00 AM before Judge David C Guaderrama, (dt) (Entered: 12/01/2025) |
| 12/04/2025 | <u>23</u> | ANSWER to <u>22</u> Amended Complaint with Jury Demand , COUNTERCLAIM against All Plaintiffs by Damion Terrell Bennett, Hanes Tactical LLC. (Attachments: # <u>1</u> Exhibit, # <u>2</u> Exhibit, # <u>3</u> Exhibit)(Langley, H.) (Entered: 12/04/2025) |

~~Exhibit 1~~

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **ABC IP, LLC, and Rare Breed Triggers, Inc.,** | ) | **CASE NO.  3:25-cv-00201-DCG** |
| | ) | |
| **Plaintiffs.** | ) | |
| | ) | **First Amended Complaint** |
| **v.** | ) | |
| | ) | |
| **Hanes Tactical LLC, and Damion Terrell Bennett,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

---

This is an action for patent infringement in which ABC IP LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively "Plaintiffs") accuse Hanes Tactical LLC ("Hanes") and Damion Terrell Bennett ("Bennett") (collectively, "Defendants"), of infringing U.S. Patent Nos. 12,038,247 ("the '247 Patent") and 7,398,723 ("the '723 Patent") as follows:

### <u>PARTIES</u>

1.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.      Rare Breed Triggers, Inc. ("Rare Breed") is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150, Wichita Falls, TX 76306.

3.      Upon information and belief, Defendant Hanes Tactical LLC ("Hanes") is a limited liability company existing under the laws of the state of Texas and has a place of business at 2414 Carrington Road, Fort Bliss, Texas 79916.

4.      Upon information and belief, Defendant Damion Terrell Bennett ("Bennett") is an individual and member of the United Staes Army residing and doing business at 2414 Carrington Road, Fort Bliss, Texas 79916.

5.      Upon information and belief, Bennett did business as "Hanes Tactical" as a sole proprietor before forming the Hanes Tactical LLC entity.

## JURISDICTION AND VENUE

6.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(b), 281, 284, and 285.

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

8.      Personal jurisdiction and venue over Defendants are proper in this District because the Defendants reside in and/or have a place of business this district.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in this district and/or have a regular and established place of business in this District.

## BACKGROUND

10.       This lawsuit asserts contributory and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent") and 7,398,723 ("the '723 Patent"). True and correct copies of the '247 Patent and the '723 Patent are attached hereto as Exhibits A and B, respectfully.

11.      The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. The application from which the '247 Patent issued claimed a priority date of September 8, 2022.

12.    The '723 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 15, 2008. The application from which the '723 Patent issued has a priority date of April 25, 2003.

13.    The '723 Patent lapsed for nonpayment of its final maintenance fee. The inventor and owner of the '723 Patent at the time, Brian A. Blakley, did not receive a reminder of the maintenance fee being due from his attorney and the failure to pay the maintenance fee in time was inadvertent. A Petition to Accept Unintentionally Delayed Payment of Maintenance fee was filed on April 20, 2022, and the '723 Patent was reinstated on May 16, 2022.

14.    ABC is the current assignee and owner of all right, title, and interest in and to the '247 and '723 Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

15.    The '723 Patent expired on September 22, 2024.

16.    Rare Breed is the exclusive licensee of the '247 and '723 Patents.

17.    Upon information and belief, Defendants have committed acts of contributory and/or induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

18.    On March 28, 2025, counsel for Plaintiffs sent a cease and desist demand letter to Hanes, informing it of the '247 Patent and expressly accusing its "Super Safety" (3 Position) of patent infringement.

**The Invention**

19.    The '723 Patent discloses a semiautomatic trigger mechanism that forces the trigger to reset via a cam and claims a method of accelerating the firing cycle using such a trigger mechanism.

FIRST AMENDED COMPLAINT - 3 -

20.     The '247 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a forced reset semiautomatic mode. While the '247 Patent may be adapted to many types of firearms, the '247 Patent shows one embodiment designed as a drop-in replacement particularly to fit AR15-pattern firearms. The scope of the claimed invention, however, is defined by the claims of the '247 Patent.

21.     A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pull on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

22.     In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the

trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single function of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

23.    In contrast. in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and locks the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

24.    The '723 Patent teaches a trigger mechanism in which the cycling action of a semiautomatic firearm causes a cam to forcibly reset the trigger member and holds it there until the action has reached the end of its cycle and is ready to fire again.

25.    The '723 Patent claims a method of accelerating the firing cycle of a semi-automatic firearm. According to the method, a firearm trigger is depressed with a finger to discharge the firearm. This activates a reciprocating mechanism within the firearm (such as a bolt or bolt carrier) which causes a cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position until the reciprocating mechanism has reached an approximately closed, ready to fire position.

26.    The '247 Patent relates to a semiautomatic trigger mechanism that represents improvement on the above-described technologies because it has two modes of operation: one that operates as a standard disconnector trigger mechanism described above and another that allows the user to fire more rapidly by forcibly returning the trigger to the reset state.

FIRST AMENDED COMPLAINT - 5 -

27.    The '247 Patent invention teaches a forcible reset mode of the trigger by a cam while the bolt cycles to the rear and then returns forward to the in-battery position. The cam also limits movement of the trigger member. The cam locks the trigger member, preventing it from being pulled a second (or subsequent) time, until the bolt carrier has returned to the in-battery position.

## The Infringing Devices

28.    On information and belief, Defendants are currently making, using, selling, and/or offering for sale a "Super Safety" (3 Position) ("the Infringing Device"), which embodies the technology claimed in the '247 Patent.

29.    On information and belief, Defendants made, imported, used, sold, and/or offered for sale the Infringing Device, which embodies the technology claimed in the '723 Patent prior to its expiration.

30.    On information and belief, technical specification for the Infringing Devices were exported to China.

31.    On information and belief, the Infringing Devices were imported by Defendants from China.

32.    On information and belief, the nature of the infringing Devices was falsely identified on import documents.

33.    On information and belief, Defendants sell or offer for sale the Infringing Device via at least Facebook posts and direct messaging.  Exemplary photographs of these are shown below:



34.     Defendants sell a specially made cam and cam lever that replaces a standard AR-pattern safety selector, along with a trigger member specially cut to work with the cam. When these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247 Patent. Defendants also sell precut trigger members separately that can be used with cam assemblies made by others to assemble an infringing combination, as shown below:



35.     Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer. 35 U.S.C. § 271(c).

36.     These parts sold by Defendants are components of a patented apparatus, constituting a material part of the invention. The defendants know that these are especially made or especially adapted for use in an infringement of the '247 and '723 Patents, and not a staple article or commodity of commerce suitable for substantial noninfringing use. 35 U.S.C. § 271(c).

37.     Defendants' manufacture, sale, and offer for sale of parts constitute contributory infringement under 35 U.S.C. § 271(c), and their conduct in facilitating their use with third-party devices constitutes active inducement of infringement under 35 U.S.C. § 271(b).

38.     Defendants instructed purchasers to assemble the Infringing Devices in a way that induces infringement the '247 and '723 Patents.

39.     The Infringing Devices also can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger.  The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

40.     The user can move the cam between safe, standard disconnector semiautomatic mode, and forced reset semiautomatic mode.

41.     For the reasons explained in more specificity below, the Defendants' Infringing Devices each infringe at least one claim of the '247 Patent and contributorily infringe and/or induce infringement of the '723 Patent and thus, Defendants are liable for patent infringement pursuant to 35 U.S.C. § 27(b) and/or (c).

42.     At least in view of the Defendants' continued infringement after ABC's demand letter, the infringement is willful.

## COUNT I – INDIRECT INFRINGEMENT OF THE '247 PATENT

43.     The allegations set forth in paragraphs 1-42 are fully incorporated into this First Count for Relief.

44.     Upon information and belief, Defendants have and continues to willfully contributorily infringe and/or induce infringement of at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

45.     An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and use as intended is illustrated in the chart below:

| Claim Language | Infringing Device |
|---|---|
| 15. A firearm trigger mechanism comprising: | The Infringing Device is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket.<br><br><br><br>An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.<br><br> |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot | The Infringing Device is installed in a fire control mechanism pocket of a receiver along with a hammer that has a sear catch and a hook for engaging a disconnector. |

| Claim Language | Infringing Device |
|---|---|
| on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | <br><br>The hammer pivots on a transverse hammer pivot axis between set and released positions. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier<br><br><br>Hammer Set Position<br><br><br>Hammer Released position |

| Claim Language | Infringing Device |
|---|---|
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Infringing Device is installed with a trigger member in the fire control mechanism pocket that pivots on a transverse trigger member pivot axis between set and released positions and has a sear.<br><br><br><br>Trigger Member Set Position<br><br><br><br>Trigger Member Released Position |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement when the hammer and trigger member are in their set positions.<br><br><br><br>Hammer and Trigger Member Set Positions |
| said disconnector having a hook for engaging said hammer and adapted to | The disconnector is adapted to be mounted in the fire control mechanism pocket to pivot on a |

| Claim Language | Infringing Device |
|---|---|
| be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer.<br><br> |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The Infringing Device has a cam that is adapted to be movably mounted in the fire control mechanism pocket and includes a cam that has a cam lobe.<br><br>The cam is movable between a first position and a second position. In the second position the cam lobe forces said trigger member towards the set position.<br><br><br>Cam Lobe First Position |

| Claim Language | Infringing Device |
|---|---|
| | <br>Cam Lobe Second Position |
| whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | In the standard semi-automatic mode, the cam is in a first position during at least part of the firing cycle. Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches said hammer hook.<br><br>Thereafter, the bolt carrier moves forward into battery, at which time a user must manually release the trigger member to free said hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull said trigger member to fire the firearm. |

| Claim Language | Infringing Device |
|---|---|
|  |  |
| whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm. | When in the forced reset semi-automatic mode, the cam is in the second position during at least part of the firing cycle.<br><br>Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook doesn't catch the hammer hook.<br><br>Thereafter, the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm. |

| Claim Language | Infringing Device |
|---|---|
|  |  |

46.     When assembled as intended and instructed by the Defendants, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

47.     The Defendants instruct their customers to assemble the components it sells into an infringing combination of parts. Thus, Defendants actively induce infringement of the '247 Patent.

48.     Accordingly, Defendants' sale and/or offer to sell the Infringing Device are infringement under 35 U.S.C. § 271 (a), (b), and/or (c).

49.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is an indirect infringement of the '247 Patent.

50.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

51.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

<u>**COUNT II – INDIRECT INFRINGEMENT OF THE '723 PATENT**</u>

52.     The allegations set forth in paragraphs 1-51 are fully incorporated into this Third Count for Relief.

53.     Upon recently learned information and belief, Defendants have contributorily infringed and/or induced infringement of Claim 1 of the '723 Patent prior to its expiration by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

54.     As shown in Paragraph 35, above, Defendants were selling or offering for sale the Infringing Devices at least as of February 2, 2024.

55.     An exemplary comparison of the Infringing Device with claim 1 of the '723 Patent when assembled and used as intended is illustrated in the chart below:

| Claim Language | Infringing Device |
|---|---|
| 1. A method of accelerating the firing cycle of a semi-automatic firearm comprising the steps of: | When installed and used as intended and instructed, the Infringing Device allows the user to use a method that accelerates the firing cycle of a semi-automatic firearm. |
| depressing a firearm trigger with a finger to discharge the firearm; | When installed and used as intended and instructed, the user depressing the trigger with a finger causes the firearm to discharge.<br> |

FIRST AMENDED COMPLAINT - 17 -

| Claim Language | Infringing Device |
|---|---|
| activating a reciprocating mechanism within the firearm that causes a cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position | When the firearm is discharged, a reciprocating mechanism (bolt or bolt carrier assembly) within the firearm is activated, it causes the cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position.  |
| until the reciprocating mechanism has reached an approximately closed, ready to fire position. | The trigger is held forward in the ready to fire position by the cam until the reciprocating mechanism has reached an approximately closed, ready to fire position.  |

56.    Because the claim "comprises" specified steps, the fact that the Infringing Devices, when installed and used as the Defendants instruct, can also operate according to another method does not avoid infringement.

FIRST AMENDED COMPLAINT - 18 -

57.    When assembled as intended and instructed by the Defendants, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

58.    The Defendants instructed their customers to assemble the components they sold into an infringing combination of parts. Thus, Defendants actively induced infringement of the '247 Patent prior to its expiration.

59.    Accordingly, when a purchaser installed and used Defendants' Infringing Devices as instructed, there was direct infringement of the '723 Patent.

60.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices was an indirect infringement of the '723 Patent prior to its expiration under 35 U.S.C. § 271(b) and/or (c).

61.    Defendants' acts of infringement were willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

62.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a.    A judgment in favor of Plaintiffs that Defendants have infringed the '247 Patent and the '723 Patent (prior to expiration);

b.      A permanent injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent, or other such equitable relief as the Court determines is warranted;

c.      A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '247 Patent and the '723 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement; and

d.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED: October 13, 2025           Respectfully submitted,

*/s/ Whitney A. Davis*
Whitney A Davis
TX SBN 24084843
**Eggleston King Davis LLP**
102 Houston Avenue, Suite 300
Weatherford, TX 7608/6
Email: whit@ekdlaw.com
Tel: (817) 596-4200

and

Glenn D. Bellamy
**Wood Herron & Evans LLP**
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on this the 13th day of October 2025.  Notice of this filing will be sent to all parties by  operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Whitney A. Davis*
Whitney A Davis

Cat07,Complex,Grimes,Protect



**EXHIBIT 4**

**U.S. District Court**
**NORTHERN DISTRICT OF OHIO (Cleveland)**
**CIVIL DOCKET FOR CASE #: 1:25−cv−01262−JPC**

ABC IP, LLC et al. v. 80Mills LLC et al.                    Date Filed: 06/17/2025
Assigned to: Judge J. Philip Calabrese                     Jury Demand: Both
Cause: 35:271 Patent Infringement                          Nature of Suit: 830 Patent
                                                           Jurisdiction: Federal Question

**Plaintiff**

**ABC IP, LLC**                          represented by    **Glenn D. Bellamy**
*a Delaware limited liability company*                     Wood, Herron & Evans
                                                           2700 Carew Tower
                                                           441 Vine Street
                                                           Cincinnati, OH 45202
                                                           513−241−2324
                                                           Fax: 513−241−6234
                                                           Email: gbellamy@whe−law.com
                                                           *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rare Breed Triggers, Inc**             represented by    **Glenn D. Bellamy**
*a Texas corporation*                                      (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**80Mills LLC**                          represented by    **John M. Skeriotis**
*a Wyoming limited liability company*                      Emerson Thomson Bennett
*doing business as*                                        1914 Akron−Peninsula Road
Tactical Titan Supply                                      Akron, OH 44313
                                                           330−434−9999
                                                           Fax: 330−434−8888
                                                           Email: jms@etblaw.com
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Sergey V. Vernyuk**
                                                           Emerson Thomson Bennett
                                                           1914 Akron−Peninsula Road
                                                           Akron, OH 44313
                                                           330−434−9999
                                                           Fax: 330−434−8888
                                                           Email: sv@etblaw.com
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Pearson Gardner**                      represented by    **John M. Skeriotis**
*an individual*                                            (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Sergey V. Vernyuk**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

**Counter−Claimant**

**Pearson Gardner**                      represented by    **John M. Skeriotis**
*an individual*                                            (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

Sergey V. Vernyuk
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter−Claimant**

**80Mills LLC**                                    represented by    **John M. Skeriotis**
*a Wyoming limited liability company*                                 (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

Sergey V. Vernyuk
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter−Defendant**

**ABC IP, LLC**                                   represented by    **Glenn D. Bellamy**
*a Delaware limited liability company*                               (See above for address)
                                                                     *ATTORNEY TO BE NOTICED*

**Counter−Defendant**

**Rare Breed Triggers, Inc**                      represented by    **Glenn D. Bellamy**
*a Texas corporation*                                                (See above for address)
                                                                     *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/17/2025 | 1 | **Complaint** for Patent Infringement with jury demand against 80Mills LLC d/b/a Tactical Titan Supply, Pearson Gardner. Filing fee paid $ 405.00, Receipt number AOHNDC−13152306. Filed by ABC IP, LLC, Rare Breed Triggers, Inc. (Attachments: # 1 Exhibit A−Patent 247, # 2 Civil Cover Sheet, # 3 AO 120 Form) (Bellamy, Glenn) (Entered: 06/17/2025) |
| 06/17/2025 | 2 | Corporate Disclosure Statement filed by ABC IP, LLC. (Bellamy, Glenn) (Entered: 06/17/2025) |
| 06/17/2025 | 3 | Corporate Disclosure Statement filed by Rare Breed Triggers, Inc. (Bellamy, Glenn) (Entered: 06/17/2025) |
| 06/17/2025 | 4 | Supplement to Complaint, − Civil Case Summons, filed by ABC IP, LLC, Rare Breed Triggers, Inc. Related document(s) 1 . (Attachments: # 1 Pearson Gardner Summons)(Bellamy, Glenn) (Entered: 06/17/2025) |
| 06/17/2025 |  | Judge J. Philip Calabrese assigned to case. (B,Ch) (Entered: 06/17/2025) |
| 06/17/2025 |  | Random Assignment of Magistrate Judge pursuant to Local Rule 3.1. In the event of a referral, case will be assigned to Magistrate Judge James E. Grimes, Jr. (B,Ch) (Entered: 06/17/2025) |
| 06/17/2025 | 5 | Original Summons and Magistrate Consent Form issued to counsel for service upon 80Mills LLC, Pearson Gardner. (Attachments: # 1 Magistrate Consent Form) (B,Ch) (Entered: 06/17/2025) |
| 06/17/2025 |  | This action has been identified as a Patent Case that is subject to the Local Patent Rules.  Link to Local Patent Rules. (B,Ch) (Entered: 06/17/2025) |
| 07/02/2025 | 6 | **Amended complaint** against 80Mills LLC, Pearson Gardner. Filed by Rare Breed Triggers, Inc. (Attachments: # 1 Exhibit A − United States Patent) (Bellamy, Glenn) (Entered: 07/02/2025) |
| 08/04/2025 | 7 | Waiver of Service Returned Executed by Rare Breed Triggers, Inc. 80Mills LLC waiver sent on 7/2/2025, answer due 9/2/2025 filed on behalf of Rare Breed Triggers, Inc (Bellamy, Glenn) (Entered: 08/04/2025) |

| 08/04/2025 | 8 | Waiver of Service Returned Executed by Rare Breed Triggers, Inc. Pearson Gardner waiver sent on 7/2/2025, answer due 9/2/2025 filed on behalf of Rare Breed Triggers, Inc (Bellamy, Glenn) (Entered: 08/04/2025) |
|---|---|---|
| 09/02/2025 | 9 | **Answer** to 6 Amended complaint filed by 80Mills LLC, Pearson Gardner. (Attachments: # 1 Exhibit 1: Letter to G Bellamy Re Infringement)(Skeriotis, John) (Entered: 09/02/2025) |
| 09/09/2025 | 10 | Joint Case Management Notice filed by All Defendants. (Skeriotis, John) (Entered: 09/09/2025) |
| 09/09/2025 | 11 | **Notice of Case Management Conference**: Case management conference to be held on October 30, 2025 at 4:00 p.m. in Chambers 16B before Judge J. Philip Calabrese. Judge J. Philip Calabrese on September 9, 2025. (Attachments: # 1 Rule 26 Report of Parties)(Y,A) (Entered: 09/09/2025) |
| 09/23/2025 | 12 | Amended **Answer** *to First Amended Complaint*, **Counterclaim** against All Plaintiffs filed by All Defendants. Related document(s) 6 , 9 . (Attachments: # 1 Exhibit 1: Letter to G Bellamy Re Infringement, # 2 Exhibit 2: US Patent No. 7398723, # 3 Exhibit 3: Strbac Complaint, # 4 Revision Per Standing Order, paragraph 3,Track Changes to Original Answer) (Skeriotis, John) (Entered: 09/23/2025) |
| 09/23/2025 | 13 | Supplement to Answer, Counterclaim, − Redlined Amendments to Original Answer, filed by 80Mills LLC, Pearson Gardner. Related document(s) 12 . (Skeriotis, John) (Entered: 09/23/2025) |
| 09/30/2025 | 14 | Joint **Motion** for conference to be Conducted Virtually filed by ABC IP, LLC, Rare Breed Triggers, Inc. (Bellamy, Glenn) (Entered: 09/30/2025) |
| 10/01/2025 | | **Order** [non−document]: In response to an inquiry from counsel for a party, the Court directs the parties to use the Report of Parties' Planning Meeting in Patent Cases found in Appendix B of the Local Patent Rules in lieu of the Court's standard form previously provided to the parties. Judge J. Philip Calabrese on October 1, 2025. (Y,A) (Entered: 10/01/2025) |
| 10/14/2025 | 15 | **Answer** *to Defendant's Counterclaims* filed by ABC IP, LLC, Rare Breed Triggers, Inc. Related document(s) 12 . (Bellamy, Glenn) (Entered: 10/14/2025) |
| 10/23/2025 | 16 | Joint Report of Parties' Planning Meeting − parties do not consent to this case being assigned to the magistrate judge, filed by All Plaintiffs. (Bellamy, Glenn) (Entered: 10/23/2025) |
| 10/24/2025 | 17 | **Order**: The Court **ORDERS** the parties to provide additional information from Appendix B of the Local Patent Rules no later than October 29, 2025. Judge J. Philip Calabrese on October 24, 2025. (Y,A) (Entered: 10/24/2025) |
| 10/28/2025 | | **Order** [non−document]: At the request of counsel, the Court will conduct the initial case management conference by Zoom. (ECF No. 14 ). Judge J. Philip Calabrese on October 28, 2025.(Y,A) (Entered: 10/28/2025) |
| 10/29/2025 | 18 | Second Report of Parties' Planning Meeting − parties do not consent to this case being assigned to the magistrate judge, filed by All Plaintiffs. Related document(s) 16 .(Bellamy, Glenn) (Entered: 10/29/2025) |
| 10/30/2025 | | **IMPORTANT:** Notice [non−document]: The Court continues the case management conference scheduled for October 30, 2025 to November 14, 2025 at 1:00 p.m., which will be held by Zoom before Judge J. Philip Calabrese. (Y,A) (Entered: 10/30/2025) |
| 11/05/2025 | 19 | Amended Report of Parties' Planning Meeting − parties do not consent to this case being assigned to the magistrate judge, filed by All Plaintiffs. Related document(s) 18 .(Bellamy, Glenn) (Entered: 11/05/2025) |
| 11/11/2025 | 20 | Notice of Case Management Conference Scheduling Conflict filed by All Plaintiffs. (Bellamy, Glenn) (Entered: 11/11/2025) |
| 11/12/2025 | | **IMPORTANT:** Notice [non−document]: The case management conference previously set for November 14, 2025, will now be held on November 20, 2025 at 11:00 a.m. by Zoom. (Y,A) (Entered: 11/12/2025) |

| 11/20/2025 | 21 | **Minutes and Order**: On November 20, 2025, the Court held a case management conference by Zoom. Glenn D. Bellamy attended on behalf of Plaintiffs and Counter−Defendants. John M. Skeriotis attended on behalf of Defendants and Counter−Claimants. Counsel provided their respective views of the case and its factual and procedural background and confirmed the production of initial disclosures, infringement and non−infringement contentions, and initial document productions. Counsel identified several similar cases pending around the country in which the '247 Patent is the core of the dispute and indicated that the underlying technologyforced reset triggersis the same across all the cases. Based on these discussions, the Court discussed with the parties the creation of multidistrict litigation or, in the alternative, the possibly of transferring the cases to a common jurisdiction. Additionally, the Court discussed the viability of the parties' proposed schedule and set a status conference for May 12, 2026 at 3:00 p.m. by Zoom. By separate order, the Court will enter a case schedule and protective order. Judge J. Philip Calabrese on November 20, 2025. Time: 30 minutes.(Y,A) (Entered: 11/20/2025) |
|---|---|---|
| 11/20/2025 | 22 | **Case Management Plan and Scheduling Order**: The Court enters the following Case Management Order: Complex Track. Case not referred to ADR at this time. Parties do not consent to the jurisdiction of the Magistrate Judge. Parties have agreed to follow the default standard for discovery of electronically stored information found in Appendix K to the Local Rules. Parties agree the Court should enter a modified version of the protective order found in Appendix A to the Local Rules, which the Court will do by separate entry. The Schedule is as follows: Invalidity Contentions: December 12, 2025; Defendant Document Production: December 12, 2025; Plaintiffs' Validity and Enforceability Contentions: January 2, 2026; Initial Exchange of Proposed Terms: January 9, 2026; Final Exchange of Proposed Terms: January 29, 2026; Exchange of Preliminary Constructions: February 13, 2026; Expert Claim Construction Discovery Exchange CV and Expert Report: March 2, 2026; Rebuttal Expert Witness Disclosure, CV, and Expert Report: March 17, 2026; Deadline for Expert Depositions: April 17, 2026; Final Claim Constructions: May 8, 2026; Opening Claim Construction Briefs: June 8, 2026; Responsive Claim Construction Briefs: July 8, 2026; Joint Claim Construction Prehearing Statement: July 15, 2026. The next status conference is scheduled for May 12, 2026 at 3:00 p.m. by Zoom. Judge J. Philip Calabrese on November 20, 2025. (Y,A) (Entered: 11/20/2025) |
| 11/20/2025 | 23 | **Stipulated Protective Order**. Judge J. Philip Calabrese on November 20, 2025. (Attachments: # 1 Acknowledgement and Agreement to be Bound)(Y,A) (Entered: 11/20/2025) |
| 11/20/2025 |  | **Order** [non−document]: The Court Orders that, under Rule 502(d) of the Federal Rules of Evidence, a disclosure of a communication or information covered by the attorney−client privilege or work−product protection made in connection with this litigation shall not constitute a waiver of that privilege or protection in this or any other federal or State proceeding. Judge J. Philip Calabrese on November 20, 2025. (Y,A) (Entered: 11/20/2025) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **ABC IP, LLC, a Delaware limited liability company,** | ) ) ) | CASE NO.  1:25-CV-1262 |
| **and** | ) ) | **JURY TRIAL DEMANDED** |
| **RARE BREED TRIGGERS, INC., a Texas corporation,** | ) ) ) | |
| Plaintiffs. | ) ) | |
| **v.** | ) ) | |
| **80MILLS LLC, d/b/a Tactical Titan Supply, a Wyoming limited liability company,** | ) ) ) | |
| **and** | ) ) | |
| **Pearson Gardner, an individual,** | ) ) | |
| Defendants. | ) | |

---

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

---

This is an action for patent infringement in which ABC IP LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse 80Mills LLC, d/b/a Tactical Titan Supply ("80Mills") and Pearson Gardner ("Gardner") (collectively, "Defendants"), of infringing U.S. Patent No. 12,038,247 ("the '247 Patent") as follows:

<u>**PARTIES**</u>

1.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.      Rare Breed is a corporation organized under the laws of Texas with an address of 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

3.      Upon information and belief, 80Mills is a limited liability company existing under the laws of the state of Wyoming, registered as a foreign entity in Ohio, doing business as Tactical Titan Supply, with a business address of 11545 Twin Mills Lane, Chardon, Ohio 44024, and a mailing address at 1603 Capitol Ave., Ste 415 #557441, Cheyenne, WY 82001.

4.      Upon information and belief, 80Mills has a foreign limited liability registration on file with the state of Ohio.

5.      Upon information and belief, 80Mills has registered the fictitious name "Tactical Titan Supply" with the State of Ohio. The business operates under this name at the same address.

6.      Upon information and belief, Pearson Gardner is an individual residing at 11545 Twin Mills Lane, Chardon, OH 44024, and is the sole operator and director of 80Mills, which he operates from his residence, and is the registered agent for 80Mills.

## JURISDICTION AND VENUE

7.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 284-85.

8.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

9.      Personal jurisdiction and venue over Defendants are proper in this District because the Defendants reside in and/or have a place of business this district.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1400. Defendants reside in this district and/or have a regular and established place of business in this District.

## **BACKGROUND**

11.      This lawsuit asserts contributory and induced infringement of U.S. Patent No. 12,038,247 ("the '247 Patent"). A true and correct copy of the '247 Patent is attached hereto as Exhibit A.

12.     The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024.The application from which the '247 Patent issued claimed a priority date of September 8, 2022.

13.     ABC is the current assignee and owner of all right, title and interest in and to the '247 Patent. This assignment has been recorded at the United States Patent and Trademark Office ("USPTO").

14.     Rare Breed is the exclusive licensee of the '247 Patent.

15.     Upon information and belief, Defendants have committed acts of contributory and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

16.     On March 31, 2025, counsel for ABC sent a cease and desist demand letter to Tactical Titan Supply, informing it of the '247 Patent and expressly accusing its "Super Safety" (3 Position) of patent infringement.

## **The Invention**

17.     The '247 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow accelerated rate of semiautomatic firing. The device can be selected to operate in either

a standard semiautomatic mode or a forced reset semiautomatic mode and uses a cam, rotated by cycling of the action, to force the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position. While the '247 Patent may be adapted to many types of firearms, the '247 Patent shows one embodiment designed as a drop-in replacement particularly to fit AR15-pattern firearms. The scope of the claimed invention, however, is defined by the claims of the '247 Patent.

18.     A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of the bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

19.     In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery

position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

20.     In contrast. in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and locks the trigger member in this position until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

21.     The '247 Patent relates to a semiautomatic trigger mechanism that represents improvement on the above-described technologies because it has two modes of operation: one that operates as a standard disconnector trigger mechanism described above and another that allows the user to fire more rapidly by forcibly returning the trigger to the reset state.

22.     The '247 Patent invention teaches a forcible reset mode of the trigger by a cam while the bolt cycles to the rear and then returns forward to the in-battery position. The cam also limits movement of the trigger member. The cam acts to prevent the trigger member from being pulled a second (or subsequent) time until the bolt carrier has returned to the in-battery position.

**The Infringing Devices**

23.     On information and belief, Defendants have and are currently making, using, selling, and/or offering for sale a "Super Safety" (3 Position) ("the Infringing Device"), which embodies the technology claimed in the '247 Patent.

24.     On information and belief, Defendants sell or offer for sale the Infringing Devices via the Tactical Titan Supply website (https://tacticaltitansupply.com), the Tactical Titan Supply Facebook page (https://www.facebook.com/tacticaltitansupply), and private Facebook groups. Exemplary photographs of these are shown below:





25.     Defendants sell "Super Safety Cam Kit – CPM10V/A2," a specially made cam and cam lever that replaces a standard AR-pattern safety selector, along with a trigger member specially cut to work with the cam. When these components are installed, as directed, in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247 Patent.



26.     Defendants also sell or are offering to sell precut triggers, which are specially designed triggers for use with a "Super Safety" (3 Position), in addition to spare "Super Safety" cam levers, both shown below.



27.     Defendants further offer for sale a product they have named the "Super Safety Fire Control Group (FCG) Completion Kit." This kit contains all of the remaining standard AR-pattern components necessary to complete the combination that embodies the invention claimed in the '247 Patent. By marketing and packaging these components together under a unified product name, Defendants are expressly promoting and facilitating the assembly of the patented invention, thereby reinforcing their knowledge of and intent to enable direct infringement.

AMENDED COMPLAINT - 8 -



28.     Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer. 35 U.S.C. § 271(c).

29.     These parts sold by Defendants are components of a patented apparatus, constituting a material part of the invention. The defendants know that these are especially made or especially adapted for use in an infringement of the '247 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use. 35 U.S.C. § 271(c).

30.     Whoever actively induces infringement of a patent shall be liable as an infringer. 35 U.S.C. § 271(b).

31.     Defendants instruct purchasers to assemble the Infringing Devices in a way that induces infringement the '247 Patent.

32.    The Infringing Devices also can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger.  The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

33.    The user can move the cam between safe, standard disconnector semiautomatic mode, and forced reset semiautomatic mode.

34.    For the reasons explained in more specificity below, Defendants' Infringing Devices each infringe at least one claim of the '247 Patent and thus, Defendants are liable for patent infringement pursuant to 35 U.S.C. § 27(b) and/or (c).

35.    In view of the Defendant's continued infringement after ABC's demand letter, the infringement is willful.

## COUNT I – INDIRECT INFRINGEMENT OF THE '247 PATENT

36.    The allegations set forth in paragraphs 1-35 are fully incorporated into this First Count for Relief.

37.    Upon information and belief, Defendants have and continue to willfully contributorily infringe and/or induce infringement of at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

38.    An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and use as intended is illustrated in the chart below:

| Claim Language | Infringing Device |
|---|---|
| 15. A firearm trigger mechanism comprising: | The Infringing Device is for a firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket. |

AMENDED COMPLAINT - 10 -



An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.



| | |
|---|---|
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The Infringing Device is installed in a fire control mechanism pocket of a receiver along with a hammer that has a sear catch and a hook for engaging a disconnector. |

AMENDED COMPLAINT - 11 -



The hammer pivots on a transverse hammer pivot axis between set and released positions. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier



Hammer Set Position



Hammer Released position

| | |
|---|---|
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a | The Infringing Device is installed with a trigger member in the fire control mechanism pocket that |

| transverse trigger member pivot axis between set and released positions, | pivots on a transverse trigger member pivot axis between set and released positions and has a sear. |
| --- | --- |
| |  Trigger Member Set Position  Trigger Member Released Position |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement when the hammer and trigger member are in their set positions.  Hammer and Trigger Member in Set Positions |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The disconnector is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer. |



| | |
|---|---|
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The Infringing Device has a cam that is adapted to be movably mounted in the fire control mechanism pocket and includes a cam that has a cam lobe.<br><br>The cam is movable between a first position and a second position. In the second position the cam lobe forces said trigger member towards the set position.<br><br><br>Cam Lobe First Position<br><br><br>Cam Lobe Second Position |

| | |
|---|---|
| whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | In the standard semi-automatic mode, the cam is in a first position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches said hammer hook.  Thereafter, the bolt carrier moves forward into battery, at which time a user must manually release the trigger member to free said hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull said trigger member to fire the firearm.  |
| whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm. | When in the forced reset semi-automatic mode, the cam is moved laterally to a second position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook doesn't catch the hammer hook. |



Thereafter, the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm.

39.     When assembled as intended and instructed by the Defendants, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

40.     The Defendants instruct their customers to assemble the components it sells into an infringing combination of parts. Thus, Defendants actively contributes to and induce infringement of the '247 Patent.

41.     Accordingly, Defendants' sale and/or offer to sell the Infringing Device is infringement under 35 U.S.C. § 271(b) and/or (c).

42.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is an indirect infringement of the '247 Patent.

43.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

44.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II – DIRECT INFRINGEMENT OF THE '247 PATENT

45.     The allegations set forth in paragraphs 1-44 are fully incorporated into this Second Count for Relief.

46.     Defendants have and continue to directly infringe at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing all components of the claimed combination (the Infringing Device) to be used without authority within the United States.

47.     An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and used as intended with the combination of parts supplied is illustrated in the chart in paragraph 38, above.

48.     Defendants sell the "Super Safety Cam Kit – CPM10V/A2" along with the "Flat Super Safety Cut Trigger" or the "Curved Suer Safety Cut Trigger" and the "Remaining Parts for FCG." As such, Defendants are selling all the components of the patented combination. Thus, Defendants directly infringe the '247 Patent.

49.     Accordingly, Defendants' sale and/or offer to sell the Infringing Device is infringement under 35 U.S.C. § 271(a).

50.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is a direct infringement of the '247 Patent.

51.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

52.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a.     A judgment in favor of Plaintiffs that Defendants have infringed the '247 Patent;

b.     A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

c.      A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent, or other such equitable relief as the Court determines is warranted;

d.      A judgment and order requiring Defendants to pay to Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '247 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement; and

e.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED: July 2, 2025

Respectfully submitted,

 _/Glenn D. Bellamy/_____
Glenn D. Bellamy (Ohio Bar No. 0070321)
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

*Attorneys for Plaintiffs*

MAXFIELD



**EXHIBIT**

**5**

### U.S. District Court
### Western District of Oklahoma[LIVE] (Oklahoma City)
### CIVIL DOCKET FOR CASE #: 5:25−cv−00695−G

ABC IP LLC et al v. Z3 Productions LLC
Assigned to: Judge Charles Goodwin
Cause: 35:271 Patent Infringement

Date Filed: 06/23/2025
Jury Demand: Defendant
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**ABC IP LLC**
*a Delaware limited liability corporation*

represented by **Colin H Tucker**
Rhodes Hieronymus Jones Tucker &
Gable
PO Box 21100
Tulsa, OK 74121−1100
918−582−1173
Fax: 918−592−3390
Email: chtucker@rhodesokla.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Glenn D Bellamy**
Wood, Herron & Evans LLP
600 Vine Street
Suite 2800
Cincinnati, OH 45202
513−241−2324
Fax: 513−241−6234
Email: gbellamy@whe−law.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rare Breed Triggers Inc**
*a Texas corporation*

represented by **Colin H Tucker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Glenn D Bellamy**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Z3 Productions LLC**
*an Oklahoma limited liability company*
*doing business as*
Z3 PRO

represented by **John Skeriotis**
Emerson Thomson Bennett
1914 Akron−Peninsula Rd
Akron, OH 44313
330−352−4240
Email: jms@etblaw.com
*ATTORNEY TO BE NOTICED*

**Michael S Vernon**
Michael S. Vernon Attorney at Law,
PLLC
1216 N.W. 50th Street
73118
Oklahoma City, OK 73118
405−514−5002
Email: msv@michaelsvernon.com

*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Z3 Productions LLC**
*an Oklahoma limited liability company*

represented by **John Skeriotis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael S Vernon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**ABC IP LLC**
*a Delaware limited liability corporation*

represented by **Colin H Tucker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Glenn D Bellamy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Rare Breed Triggers Inc**
*a Texas corporation*

represented by **Colin H Tucker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Glenn D Bellamy**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/23/2025 | 1 | COMPLAINT against Z3 Productions LLC filed by ABC IP LLC, Rare Breed Triggers Inc. (Attachments: # 1 Exhibit 1 − US Patent, # 2 Civil Cover Sheet)(llr) (Entered: 06/24/2025) |
| 06/24/2025 | 2 | Report Regarding AO 120 Report on the Filing or Determination of an Action or Appeal Regarding a Patent or Trademark provided by email to USPTO (llr) (Entered: 06/24/2025) |
| 06/24/2025 | 3 | Summons Issued Electronically as to Z3 Productions LLC. (llr) (Entered: 06/24/2025) |
| 06/25/2025 | | PAYMENT FOR A CIVIL CASE Filing fee $ 405, receipt number AOKWDC−4724900. (Tucker, Colin) (Entered: 06/25/2025) |
| 06/25/2025 | 4 | MOTION for Leave to Appear Pro Hac Vice − *Request for Admission Pro Hac Vice of Glenn D. Bellamy* − Filing fee $ 100, receipt number AOKWDC−4725460 by ABC IP LLC, Rare Breed Triggers Inc. (Attachments: # 1 Exhibit 1 − Request for Admission Pro Hac Vice)(Tucker, Colin) (Entered: 06/25/2025) |
| 06/26/2025 | 5 | ORDER denying 4 Motion to Appear Pro Hac Vice without prejudice to resubmission. Local counsel for Plaintiffs shall enter an appearance within seven (7) days of the date of this Order. Signed by Judge Charles Goodwin on 06/26/2025. (jb) (Entered: 06/26/2025) |
| 06/26/2025 | 6 | ENTRY of Appearance by Colin H Tucker on behalf of ABC IP LLC, Rare Breed Triggers Inc (Tucker, Colin) (Entered: 06/26/2025) |
| 09/24/2025 | 7 | ENTRY of Appearance by Michael S Vernon on behalf of Z3 Productions LLC (Vernon, Michael) (Entered: 09/24/2025) |
| 09/24/2025 | 8 | ANSWER to Complaint by Z3 Productions LLC.(Vernon, Michael) (Entered: 09/24/2025) |

| 09/24/2025 | 9 | AMENDED MOTION for Leave to Appear Pro Hac Vice *of Glenn D. Bellamy* by ABC IP LLC, Rare Breed Triggers Inc. (Attachments: # 1 Exhibit 1 − Amended Request for Admission Pro Hac Vice)(Tucker, Colin) (Entered: 09/24/2025) |
|---|---|---|
| 09/25/2025 | 10 | ORDER granting 9 Motion to Appear Pro Hac Vice. On or before October 9, 2025, Attorney Bellamy shall electronically file an entry of appearance on the form prescribed by the Clerk of Court. Signed by Judge Charles Goodwin on 09/25/2025. (jb) (Entered: 09/25/2025) |
| 09/29/2025 | 11 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 100, receipt number AOKWDC−4799471 by Z3 Productions LLC. (Attachments: # 1 Pro Hac Vice Form)(Vernon, Michael) (Entered: 09/29/2025) |
| 09/30/2025 | 12 | ORDER granting 11 Motion to Appear Pro Hac Vice. On or before October 14, 2025, Attorney Skeriotis shall electronically file an entry of appearance on the form prescribed by the Clerk of Court. Signed by Judge Charles Goodwin on 09/30/2025. (jb) (Entered: 09/30/2025) |
| 09/30/2025 | 13 | ORDER. The parties shall file their required disclosure statements no later than October 14, 2025. Signed by Judge Charles Goodwin on 09/30/2025. (jb) (Entered: 09/30/2025) |
| 10/03/2025 | 14 | ENTRY of Appearance by Glenn D Bellamy on behalf of ABC IP LLC, Rare Breed Triggers Inc (Bellamy, Glenn) (Entered: 10/03/2025) |
| 10/07/2025 | 15 | DOCKET: Scheduling Conference set for 10/29/2025 10:40 AM telephonically before Judge Charles Goodwin. Status Report due by 10/22/2025. (jb) (Entered: 10/07/2025) |
| 10/14/2025 | 16 | DISCLOSURE STATEMENT − LLC by ABC IP LLC . (Bellamy, Glenn) (Entered: 10/14/2025) |
| 10/14/2025 | 17 | DISCLOSURE STATEMENT − CORPORATE by Rare Breed Triggers Inc . (Bellamy, Glenn) (Entered: 10/14/2025) |
| 10/14/2025 | 18 | ENTRY of Appearance by John Skeriotis on behalf of All Defendants (Skeriotis, John) (Entered: 10/14/2025) |
| 10/14/2025 | 19 | DISCLOSURE STATEMENT − CORPORATE by Z3 Productions LLC . (Skeriotis, John) (Entered: 10/14/2025) |
| 10/15/2025 | 20 | AMENDED ANSWER to 1 Complaint , COUNTERCLAIM against All Plaintiffs by Z3 Productions LLC. (Attachments: # 1 Exhibit 1 250508 Letter to G Bellamy Re Infringement)(Skeriotis, John) (Entered: 10/15/2025) |
| 10/22/2025 | 21 | JOINT STATUS REPORT AND DISCOVERY PLAN by Plaintiffs ABC IP LLC, Rare Breed Triggers Inc. (Bellamy, Glenn) (Entered: 10/22/2025) |
| 11/05/2025 | 22 | ANSWER to 20 Amended Answer to Complaint, Counterclaim by ABC IP LLC, Rare Breed Triggers Inc.(Bellamy, Glenn) (Entered: 11/05/2025) |
| 12/02/2025 | 23 | ORDER. Plaintiff ABC IP, LLC and Defendant Z3 Productions, LLC shall file amended disclosure statements within seven (7) days of the date of this Order. Signed by Judge Charles Goodwin on 12/02/2025. (jb) (Entered: 12/02/2025) |
| 12/02/2025 | 24 | ORDER. The parties shall file their proposed scheduling order within seven (7) days of the date of this Order. Signed by Judge Charles Goodwin on 12/02/2025. (jb) (Entered: 12/02/2025) |
| 12/08/2025 | 25 | DISCLOSURE STATEMENT − LLC by Z3 Productions LLC . (Skeriotis, John) (Entered: 12/08/2025) |
| 12/08/2025 | 26 | DISCLOSURE STATEMENT − LLC by ABC IP LLC . (Bellamy, Glenn) (Entered: 12/08/2025) |
| 12/08/2025 | 27 | SUPPLEMENT re 21 Joint Status Report and Discovery Plan −−*Joint Proposed Scheduling Order* by ABC IP LLC, Rare Breed Triggers Inc. (Bellamy, Glenn) (Entered: 12/08/2025) |
| 12/09/2025 | 28 | SCHEDULING ORDER. Signed by Judge Charles Goodwin on 12/09/2025. (jb) (Entered: 12/09/2025) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1)** | **ABC IP, LLC, A Delaware limited liability company,** ) ) ) | |
| **And** | ) ) | |
| **(2)** | **BREED TRIGGERS, INC., a Texas corporation,** ) ) ) | |
| | **Plaintiffs,** ) ) | **Case No.:** |
| **v.** | ) ) | |
| **(3)** | **Z3 Productions, LLC, an Oklahoma limited liability company, d/b/a Z3 PRO,** ) ) ) | **Jury Trial Demanded** |
| | **Defendant.** ) ) ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which ABC IP, LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse Z3 PRODUCTIONS, LLC, d/b/a Z3 PRO ("Z3 PRO") ("Defendant"), of infringing U.S. Patent No. 12,038,247 ("the '247 Patent").

## PARTIES

1.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.      Rare Breed is a corporation organized under the laws of Texas with an address of 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

3.    Upon information and belief, Z3 Productions is a limited liability company existing under the laws of the state of Oklahoma, doing business as Z3 Pro, with a listed business address of 6608 N Western Ave., PMB 3307, Nichols Hills, OK.

## JURISDICTION AND VENUE

4.    This is an action for patent infringement arising under 35 U.S.C. §§ 271(b) and (c), 281, and 284-85.

5.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

6.    Personal jurisdiction and venue over Defendant is proper in this District because the Defendant is organized under the laws of the State of Oklahoma and has a place of business in this district.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1400. Defendant resides in this district and/or has a regular, established place of business in this District.

## BACKGROUND

8.    This lawsuit asserts contributory and induced infringement of U.S. Patent No. 12,038,247 ("the '247 Patent"). A true and correct copy of the '247 Patent is attached hereto as Exhibit 1.

9.    The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. The application from which the '247

2

Patent issued claimed a priority date of September 8, 2022.

10.    ABC is the current assignee and owner of all right, title and interest in and to the '247 Patent. This assignment has been recorded at the United States Patent and Trademark Office ("USPTO").

11.    Rare Breed is the exclusive licensee of the '247 Patent.

12.    Upon information and belief, Defendant has committed acts of contributory and induced patent infringement, described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

13.    On April 1, 2025, counsel for ABC sent a cease and desist demand letter to Z3 Pro, informing it of the '247 Patent and expressly accusing its "Super Safety" (3 Position) of patent infringement.

## The Invention

14.    The '247 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a forced reset semiautomatic mode and uses a cam, rotated by cycling of the action, to force the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position. While the '247 Patent may be adapted to many types of firearms, the '247 Patent shows one embodiment designed as a drop-in replacement particularly to fit AR15-pattern firearms. The scope of the claimed invention, however, is defined by the claims of the '247 Patent.

3

15.     A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a standard disconnector AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of the bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

16.     In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it

returns to battery without firing a second round, leaving the hammer uncocked.

17.    In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and locks the trigger member in this position until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

18.    The '247 Patent relates to a semiautomatic trigger mechanism that represents improvement on the above-described technologies because it has two modes of operation: one that operates as a standard disconnector trigger mechanism described above and another that allows the user to fire more rapidly by forcibly returning the trigger to the reset state.

19.    The '247 Patent invention teaches a forcible reset mode of the trigger by a cam while the bolt cycles to the rear and then returns forward to the in-battery position. The cam also limits movement of the trigger member. The cam acts to prevent the trigger member from being pulled a second (or subsequent) time until the bolt carrier has returned to the in-battery position.

### The Infringing Devices

20.    On information and belief, Defendant has and is currently making, using, selling, and/or offering for sale a "Super Safety" (3 Position) ("the Infringing Device"), which embodies the technology claimed in the '247 Patent.

21.    On information and belief, Defendant sells or offers for sale the Infringing Devices via the Z3 Pro website (https://www.z3pro.com/), the Z3 Pro Facebook page (https://www.facebook.com/ze.pro.912984/), and private Facebook groups.

Exemplary photographs of these are shown below:







22.    Defendant sells a specially made cam and cam lever that replaces a standard AR-pattern safety selector, along with a jig used for modifying a trigger member to be specially cut to work with the cam. When these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247 Patent.





23.     Defendant also separately sells or is offering to sell an "M16 Super Safety Centering Block", which are specially designed parts solely for use with a "Super Safety," and an "AR Super Safety Trigger Jig" used for modifying a trigger member to be specially cut to work with the cam, as shown below.



24.     Whoever offers to sell or sells within the United States or imports into

the United States a component of a patented machine, manufacture, combination or

composition, or a material or apparatus for use in practicing a patented process,

constituting a material part of the invention, knowing the same to be especially made

or especially adapted for use in an infringement of such patent, and not a staple article

or commodity of commerce suitable for substantial noninfringing use, shall be liable

as a contributory infringer. 35 U.S.C. § 271(c).

25.     These parts sold by Defendant are components of a patented apparatus,

constituting a material part of the invention. Defendant knows that these are especially

made or especially adapted for use in an infringement of the '247 Patent, and not a

staple article or commodity of commerce suitable for substantial noninfringing use. 35

U.S.C. § 271(c).

26.     Whoever actively induces infringement of a patent shall be liable as an

infringer. 35 U.S.C. § 271(b).

27.     Defendant instructs purchasers to assemble the Infringing Devices in a

way that induces infringement the '247 Patent.

28.     The Infringing Devices also can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger.  The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

29.     The user can move the cam between safe, standard disconnector semiautomatic mode, and forced reset semiautomatic mode.

30.     For the reasons explained in more specificity below, Defendant's Infringing Devices each infringe at least one claim of the '247 Patent and thus, Defendant is liable for patent infringement pursuant to 35 U.S.C. § 271(b) and/or (c).

31.     In view of Defendant's continued infringement after ABC's demand letter, the infringement is willful.

## COUNT I – INDIRECT INFRINGEMENT OF THE '247 PATENT

32.     The allegations set forth in paragraphs 1-31 are fully incorporated into this First Count for Relief.

33.     Upon information and belief, Defendant has and continues to willfully contributorily infringe and/or induce infringement of at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

34.     An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and use as intended is illustrated in the chart below:

| Claim Language | Infringing Device |
|---|---|
| 15. A firearm trigger mechanism comprising: | The Infringing Device is for a firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket.<br><br><br><br>An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.<br><br> |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a | The Infringing Device is installed in a fire control mechanism pocket of a receiver along with a hammer that has a sear catch and a hook for engaging a disconnector. |

receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,



The hammer pivots on a transverse hammer pivot axis between set and released positions. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier



Hammer Set Position



Hammer Released position

| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Infringing Device is installed with a trigger member in the fire control mechanism pocket that pivots on a transverse trigger member pivot axis between set and released positions and has a sear. |
|---|---|
| |  Trigger Member Set Position  Trigger Member Released Position |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement when the hammer and trigger member are in their set positions.  Hammer and Trigger Member in Set Positions |
| said disconnector having a hook | The disconnector is adapted to be mounted in |

| | |
|---|---|
| for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer.<br><br> |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The Infringing Device has a cam that is adapted to be movably mounted in the fire control mechanism pocket and includes a cam that has a cam lobe.<br><br>The cam is movable between a first position and a second position. In the second position the cam lobe forces said trigger member towards the set position.<br><br><br><br>Cam Lobe First Position |



Cam Lobe Second Position

whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

In the standard semi-automatic mode, the cam is in a first position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches said hammer hook.



Thereafter, the bolt carrier moves forward into battery, at which time a user must manually release the trigger member to free said hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull said trigger member to fire the firearm.



| | |
|---|---|
| whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm. | When in the forced reset semi-automatic mode, the cam is moved laterally to a second position.<br><br>Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook doesn't catch the hammer hook.<br><br><br><br>Thereafter, the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm. |



35.    When assembled as intended and instructed by Defendant, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

36.    Defendant instructs its customers to assemble the components it sells into an infringing combination of parts. Thus, Defendant actively contributes to and induces infringement of the '247 Patent.

37.    Accordingly, Defendant's sale and/or offer to sell the Infringing Device is infringement under 35 U.S.C. § 271(b) and/or (c).

38.    Accordingly, Defendant's making, using, selling, offering for sale, and/or importing of the Infringing Devices is indirect infringement of the '247 Patent.

39.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

40.    Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a.    A judgment in favor of Plaintiffs that Defendant has infringed the '247 Patent;

b.    A preliminary injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

c.    A permanent injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent, or other such equitable relief as the Court determines is warranted;

d.    A judgment and order requiring Defendant to pay to Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for Defendant's infringement of the '247 Patent as provided under 35 U.S.C. § 284, and

an accounting of any ongoing post-judgment infringement; and

e.    Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Respectfully Submitted,

By:    */s/ Colin H. Tucker*
COLIN H. TUCKER, OBA 16325
chtucker@rhodesokla.com
RHODES, HIERONYMUS, JONES, TUCKER & GABLE
P.O. Box 21100
Tulsa, OK 74121-1100
(918) 582-1173; (918) 592-3390 [fax]

and

Glenn D. Bellamy (Ohio Bar No. 0070321)
gbellamy@whe-law.com
(to be admitted pro hac vice)
WOOD HERRON & EVANS LLP
600 Vine Street, Suite 2800
Cincinnati OH 45202
(513) 707-0243; (513) 241-6234 [fax]

*Attorneys for Plaintiffs*

DHP

EXHIBIT

6

**U.S. District Court**
**SOUTHERN DISTRICT OF TEXAS (Houston)**
**CIVIL DOCKET FOR CASE #: 4:25−cv−02961**

ABC IP, LLC et al v. Nguyen
Assigned to: Judge George C Hanks, Jr
Cause: 28:1338 Patent Infringement

Date Filed: 06/26/2025
Jury Demand: Both
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**ABC IP, LLC**
*a Delaware Limited Liability Company*

represented by **Francisco Javier Caycedo**
Adams and Reese LLP
1221 McKinney
Suite 4400
Houston, TX 77010
713−652−5151
Email: frank.caycedo@arlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Glenn Dean Bellamy**
Wood, Herron & Evans LLP
600 Vine St.
Suite 2800
Cincinnati, OH 45202
513−241−2324
Fax: 513−241−6234
Email: gbellamy@whe−law.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rare Breed Triggers, Inc**
*a Texas Corporation*

represented by **Francisco Javier Caycedo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Glenn Dean Bellamy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Steven Thanh Nguyen**
*doing business as*
Polymer Pew

represented by **Harry Dale Langley , Jr**
Attorney at Law
1803 W Ave
Austin, TX 78701
512−477−3830
Email: dlangley@iptechlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Michael Skeriotis**
Emerson, Thomson & Bennett, LLC
1914 Akron Peninsula Road
Canton, OH 44718

330−352−4240
Fax: 330−434−8888
Email: jms@etblaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Steven Thanh Nguyen**                          represented by   **Harry Dale Langley , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Michael Skeriotis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**ABC IP, LLC**                                  represented by   **Francisco Javier Caycedo**
*a Delaware Limited Liability Company*                           (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Glenn Dean Bellamy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Rare Breed Triggers, Inc**                     represented by   **Francisco Javier Caycedo**
*a Texas Corporation*                                            (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Glenn Dean Bellamy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/26/2025 | 1 | COMPLAINT against All Defendants (Filing fee $ 405 receipt number ATXSDC−33660166) filed by ABC IP, LLC, Rare Breed Triggers, Inc. (Attachments: # 1 Exhibit Exhibit A, # 2 Civil Cover Sheet Civil Cover Sheet) (Caycedo, Francisco) (Entered: 06/26/2025) |
| 06/26/2025 | 2 | MOTION to Appear Pro Hac Vice for Glenn D. Bellamy (Fee Paid: $100, receipt number ATXSDC−33665804) by ABC IP, LLC, Rare Breed Triggers, Inc, filed. Motion Docket Date 7/17/2025. (Caycedo, Francisco) (Entered: 06/26/2025) |
| 06/26/2025 | 3 | Request for Issuance of Summons as to Steven Thanh Nguyen, filed. (Caycedo, Francisco) (Entered: 06/26/2025) |
| 06/27/2025 | | Referral Judge Selected: Magistrate Judge Dena Hanovice Palermo randomly selected to receive referrals. The selected Magistrate Judge is not assigned to this case until a District Judge refers the case or a motion or the parties consent to jurisdiction of the Magistrate Judge. Once a referral has been made, the name of the referral judge will appear at the top of the docket sheet. (anc4) (Entered: 06/27/2025) |

| 06/27/2025 | 4 | CLERKS NOTICE Regarding Consent to Jurisdiction of Magistrate Judge. Parties notified, filed. (anc4) (Entered: 06/27/2025) |
| 06/27/2025 | 5 | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 9/17/2025 at 10:30 AM by video before Magistrate Judge Dena Hanovice Palermo. (Signed by Magistrate Judge Dena Hanovice Palermo) Parties notified. (anc4) (Entered: 06/27/2025) |
| 06/27/2025 | 6 | US Patent and Trademark Office Notified. AO 120, filed. (Attachments: # 1 Complaint) (anc4) (Entered: 06/27/2025) |
| 06/27/2025 | 7 | Summons Issued as to Steven Thanh Nguyen. Issued summons delivered to plaintiff by NEF, filed. (dm4) (Entered: 06/27/2025) |
| 06/30/2025 | 8 | ORDER granting 2 Motion for Glenn Bellamy to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Judge George C Hanks, Jr) Parties notified. (knp4) (Entered: 06/30/2025) |
| 07/02/2025 | 9 | RETURN of Service of SUMMONS Executed as to All Defendants, filed. (Caycedo, Francisco) (Entered: 07/02/2025) |
| 07/10/2025 | 10 | First CERTIFICATE OF INTERESTED PARTIES by ABC IP, LLC, filed. (Caycedo, Francisco) (Entered: 07/10/2025) |
| 08/07/2025 | 11 | ANSWER to 1 Complaint with Jury Demand by Steven Thanh Nguyen, filed. (Attachments: # 1 Exhibit) (Langley, Harry) (Entered: 08/07/2025) |
| 09/05/2025 | 12 | JOINT DISCOVERY/CASE MANAGEMENT PLAN by ABC IP, LLC, filed. (Caycedo, Francisco) (Entered: 09/05/2025) |
| 09/16/2025 | 13 | CERTIFICATE OF INTERESTED PARTIES by Steven Thanh Nguyen, filed. (Langley, Harry) (Entered: 09/16/2025) |
| 09/23/2025 | | Minute Entry for proceedings held before Magistrate Judge Dena Hanovice Palermo. SCHEDULING CONFERENCE held on 9/23/2025. Appearances: Glenn Dean Bellamy, Harry Dale Langley, Jr.(ERO:Yes), filed. (clf4) (Entered: 09/23/2025) |
| 09/23/2025 | 14 | SCHEDULING ORDER. Trial Term: February/March 2027. Docket Call set for 1/8/2027 at 03:00 PM in Courtroom 9C before Judge George C Hanks Jr (Signed by Magistrate Judge Dena Hanovice Palermo) Parties notified. (clf4) (Entered: 09/23/2025) |
| 10/17/2025 | 15 | NOTICE of Appearance by John M. Skeriotis on behalf of Steven Thanh Nguyen, filed. (Skeriotis, John) (Entered: 10/17/2025) |
| 10/17/2025 | 16 | AMENDED ANSWER to 1 Complaint with Jury Demand, COUNTERCLAIM against All Plaintiffs by Steven Thanh Nguyen, filed. (Attachments: # 1 Exhibit 1: Letter to G Bellamy Re Infringement, # 2 Exhibit 2: US Patent No. 7398723, # 3 Exhibit 3: Strbac Complaint) (Skeriotis, John) (Entered: 10/17/2025) |
| 11/07/2025 | 17 | ANSWER to 16 Amended Answer,, Counterclaim, by ABC IP, LLC, Rare Breed Triggers, Inc, filed. (Bellamy, Glenn) (Entered: 11/07/2025) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ABC IP, LLC, a Delaware limited liability company,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **RARE BREED TRIGGERS, INC., a Texas corporation,** | ) | |
| | ) | |
| **Plaintiffs.** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.  4:25-CV-2961** |
| | ) | |
| **Steven Thanh Nguyen, an individual, d/b/a Polymer Pew,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

---

**COMPLAINT FOR PATENT INFRINGEMENT**

---

This is an action for patent infringement in which ABC IP LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse Steven Thanh Nguyen, d/b/a Polymer Pew ("Polymer Pew") ("Defendant"), of infringing U.S. Patent No. 12,038,247 ("the '247 Patent") as follows:

## <u>PARTIES</u>

1.    ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.    Rare Breed is a corporation organized under the laws of Texas with an address of 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

3.    Upon information and belief, Steven Thanh Nguyen is an individual doing business

as "Polymer Pew", which he operates from his residence at 3506 Ustinik Road, Rosenberg, TX 77471.

4.     Upon information and belief, Steven Thanh Nguyen maintains a private mailbox for Polymer Pew at 24301 Brazos Town Crossing, Ste 500-49, Rosenberg, TX 77471.

## JURISDICTION AND VENUE

5.     This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 284-85.

6.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

7.     Personal jurisdiction and venue over Defendant are proper in this District because the Defendant resides in and/or has a place of business in this district.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1400. Defendant resides in this district and/or has a regular and established place of business in this District.

## BACKGROUND

9.      This lawsuit asserts contributory and induced infringement of U.S. Patent No. 12,038,247 ("the '247 Patent"). A true and correct copy of the '247 Patent is attached hereto as Exhibit A.

10.     The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. The application from which the '247 Patent issued claimed a priority date of September 8, 2022.

11.     ABC is the current assignee and owner of all right, title and interest in and to the

'247 Patent. This assignment has been recorded at the United States Patent and Trademark Office ("USPTO").

12.     Rare Breed is the exclusive licensee of the '247 Patent.

13.     Upon information and belief, Defendant has committed acts of contributory and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

14.     On March 31, 2025, counsel for ABC sent a cease and desist demand letter to Polymer Pew, informing it of the '247 Patent and expressly accusing its "Super Safety" (3 Position) of patent infringement.

## The Invention

15.     The '247 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a forced reset semiautomatic mode and uses a cam, rotated by cycling of the action, to force the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position. While the '247 Patent may be adapted to many types of firearms, the '247 Patent shows one embodiment designed as a drop-in replacement particularly to fit AR15-pattern firearms. The scope of the claimed invention, however, is defined by the claims of the '247 Patent.

16.     A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a standard disconnector AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used

to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of the bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

17.    In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

18.    In contrast. in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and locks the trigger member in this position until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

19.    The '247 Patent relates to a semiautomatic trigger mechanism that represents improvement on the above-described technologies because it has two modes of operation: one that operates as a standard disconnector trigger mechanism described above and another that allows

the user to fire more rapidly by forcibly returning the trigger to the reset state.

20.     The '247 Patent invention teaches a forcible reset mode of the trigger by a cam while the bolt cycles to the rear and then returns forward to the in-battery position. The cam also limits movement of the trigger member. The cam acts to prevent the trigger member from being pulled a second (or subsequent) time until the bolt carrier has returned to the in-battery position.

### The Infringing Devices

21.     On information and belief, Defendant has and is currently making, using, selling, and/or offering for sale a "Super Safety" (3 Position) ("the Infringing Device"), which embodies the technology claimed in the '247 Patent.

22.     On information and belief, Defendant sells or offers for sale the Infringing Devices via the Polymer Pew website (https://polymerpew.com/), the Polymer Pew Facebook page (https://www.facebook.com/polymer.pew/), and private Facebook groups.    Exemplary photographs of these are shown below:





23.     Defendant sells a specially made cam and cam lever that replaces a standard AR-pattern safety selector, along with a trigger member specially cut to work with the cam. When these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247 Patent.



24.     Defendant also sells or is offering to sell precut triggers, which are specially designed triggers for use with a "Super Safety" (3 Position), in addition to spare "Super Safety" cam levers, and "Super Safety" centering blocks, all shown below.



25.     Additionally, Defendant sells a "display model," pictured below, that illustrates and demonstrates how to combine the parts sold into an infringing combination or assembly.



26.     Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer. 35 U.S.C. § 271(c).

27.     These parts sold by Defendant are components of a patented apparatus, constituting a material part of the invention. The defendant knows that these are especially made or especially adapted for use in an infringement of the '247 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use. 35 U.S.C. § 271(c).

28.     Whoever actively induces infringement of a patent shall be liable as an infringer. 35 U.S.C. § 271(b).

29.    Defendant instructs purchasers to assemble the Infringing Devices in a way that induces infringement the '247 Patent.

30.    The Infringing Devices also can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger.  The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

31.    The user can move the cam between safe, standard disconnector semiautomatic mode, and forced reset semiautomatic mode.

32.    For the reasons explained in more specificity below, Defendant's Infringing Devices each infringe at least one claim of the '247 Patent and thus, Defendant is liable for patent infringement pursuant to 35 U.S.C. § 271(b) and/or (c).

33.    In view of the Defendant's continued infringement after ABC's demand letter, the infringement is willful.

## COUNT I – INDIRECT INFRINGEMENT OF THE '247 PATENT

34.    The allegations set forth in paragraphs 1-33 are fully incorporated into this First Count for Relief.

35.    Upon information and belief, Defendant has and continues to willfully contributorily infringe and/or induce infringement of at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

36.    An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and use as intended is illustrated in the chart below:

| Claim Language | Infringing Device |
|---|---|
| 15. A firearm trigger mechanism comprising: | The Infringing Device is for a firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket.<br><br><br><br>An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.<br><br> |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said | The Infringing Device is installed in a fire control mechanism pocket of a receiver along with a hammer that has a sear catch and a hook for engaging a disconnector. |

| | |
|---|---|
| hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, |  The hammer pivots on a transverse hammer pivot axis between set and released positions. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier  Hammer Set Position  Hammer Released position |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a | The Infringing Device is installed with a trigger member in the fire control mechanism pocket that |

| | |
|---|---|
| transverse trigger member pivot axis between set and released positions, | pivots on a transverse trigger member pivot axis between set and released positions and has a sear.<br><br><br>Trigger Member Set Position<br><br><br>Trigger Member Released Position |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement when the hammer and trigger member are in their set positions.<br><br><br>Hammer and Trigger Member in Set Positions |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The disconnector is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer. |



| | |
|---|---|
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The Infringing Device has a cam that is adapted to be movably mounted in the fire control mechanism pocket and includes a cam that has a cam lobe.<br><br>The cam is movable between a first position and a second position. In the second position the cam lobe forces said trigger member towards the set position.<br><br><br>Cam Lobe First Position<br><br><br>Cam Lobe Second Position |

| | |
|---|---|
| whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | In the standard semi-automatic mode, the cam is in a first position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches said hammer hook.  Thereafter, the bolt carrier moves forward into battery, at which time a user must manually release the trigger member to free said hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull said trigger member to fire the firearm.  |
| whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm. | When in the forced reset semi-automatic mode, the cam is moved laterally to a second position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook doesn't catch the hammer hook. |



Thereafter, the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm.

37.    When assembled as intended and instructed by the Defendant, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

38.    The Defendant instructs its customers to assemble the components it sells into an infringing combination of parts. Thus, Defendant actively contributes to and induces infringement

of the '247 Patent.

39.     Accordingly, Defendant's sale and/or offer to sell the Infringing Device is infringement under 35 U.S.C. § 271(b) and/or (c).

40.     Accordingly, the Defendant's making, using, selling, offering for sale, and/or importing of the Infringing Devices is an indirect infringement of the '247 Patent.

41.     Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

42.     Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a.     A judgment in favor of Plaintiffs that Defendant has infringed the '247 Patent;

b.     A preliminary injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

c.     A permanent injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent, or other such equitable relief as the Court determines is warranted;

d.     A judgment and order requiring Defendant to pay to Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for Defendant's infringement of the '247 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement; and

e.     Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

### **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED: June 26, 2025

Respectfully submitted,

ADAMS AND REESE LLP

By:   ___/s/ Francisco J. Caycedo_____
Francisco J. Caycedo
Texas State Bar No. 24040664
S.D. Tex. No. 36976
frank.caycedo@arlaw.com
1221 McKinney, Suite 4400
Houston, Texas 77010
Telephone: (713) 652-5151
Facsimile: (713) 652-5152

and

Glenn D. Bellamy
Ohio Bar No. 0070321
WOOD HERRON & EVANS LLP
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6194

***Attorneys for Plaintiffs***

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

In re: Super Safety Patent Litigations                    MDL No. _____

**<u>STATEMENT REGARDING ORAL ARGUMENT</u>**

Movants respectfully request oral argument on this Motion to Transfer to answer any questions

that the Panel may have. Alternatively, if the Panel concludes that oral argument is unnecessary,

Movants do not oppose submission on the papers.

Respectfully submitted,

**EMERSON, THOMSON & BENNETT, LLC**

/s/ *John M. Skeriotis*
John M. Skeriotis (Ohio Bar # 0069263)
jms@etblaw.com
Sergey Vernyuk (Ohio Bar # 0089101)
sv@etblaw.com
1914 Akron-Peninsula Rd.
Akron, Ohio 44313
(330) 434-9999 – Telephone
(330) 434-8888 – Facsimile
*Attorneys for Defendants/Movants:*
*80Mills LLC d/b/a Tactical Titan Supply; Pearson*
*Gardner; DNT LLC d/b/a Deez Nutz Tactical; Zach*
*Morrow; Z3 Productions LLC d/b/a Z3 PRO; Harrison*
*Gunworks LLC; Tyler Harrison; Hanes Tactical LLC;*
*Damion Terrell Bennett; and Steven Thanh Nguyen d/b/a*
*Polymer Pew*

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

In re: Super Safety Patent Litigations                    MDL No. _____

**<u>PROOF OF SERVICE</u>**

I hereby certify that on December 23, 2025, I caused a true and correct copy of the foregoing

Motion and accompanying papers to be served by email and/or First Class Mail upon the following

in accordance with the Rules of Procedure of the Judicial Panel on Multidistrict Litigation:

**Clerks of Courts**

Clerk of Court                                      Clerk of Court
U.S. Courthouse                                    Carl B. Stokes U.S. Court House
801 E. Sherman Street                              801 West Superior Avenue
Room 119                                           Cleveland, OH 44113
Pocatello, ID 83201

Clerk of Court                                      Clerk of Court
William J. Holloway, Jr. U.S. Courthouse           Bob Casey U.S. Courthouse
200 NW 4th Street                                  515 Rusk Avenue
Oklahoma City, OK 73102                             Houston, TX 77002

Clerk of Court
U.S. Courthouse
525 Magoffin Avenue
Suite 105
El Paso, TX 79901

**Parties**

Glenn D. Bellamy
gbellamy@whe-law.com
Wood Herron & Evans LLP
600 Vine Street
Suite 2800
Cincinnati, OH 45202
*Counsel for ABC IP, LLC and Rare Breed Triggers, Inc. in all of the cases on Schedule A*

with a courtesy copy by email to the following local counsel for ABC IP, LLC and Rare Breed Triggers, Inc. in the respective indicated cases:

Jared W. Allen (D. Idaho, nos. 4:25-cv-00298 and 4:25-cv-00299)
allen@beardstclair.com

Colin H. Tucker (W.D. Okla., no. 5:25-cv-00695)
chtucker@rhodesokla.com

Francisco J. Caycedo (S.D. Tex., no. 4:25-cv-02961)
frank.caycedo@arlaw.com

Whitney A. Davis (W.D. Tex., no. 3:25-cv-00201)
whit@ekdlaw.com

Respectfully submitted,

**EMERSON, THOMSON & BENNETT, LLC**

/s/ *John M. Skeriotis*
John M. Skeriotis (Ohio Bar # 0069263)
jms@etblaw.com
Sergey Vernyuk (Ohio Bar # 0089101)
sv@etblaw.com
1914 Akron-Peninsula Rd.
Akron, Ohio 44313
(330) 434-9999 – Telephone
(330) 434-8888 – Facsimile
*Attorneys for Defendants/Movants:*
*80Mills LLC d/b/a Tactical Titan Supply; Pearson*
*Gardner; DNT LLC d/b/a Deez Nutz Tactical; Zach*
*Morrow; Z3 Productions LLC d/b/a Z3 PRO; Harrison*
*Gunworks LLC; Tyler Harrison; Hanes Tactical LLC;*
*Damion Terrell Bennett; and Steven Thanh Nguyen d/b/a*
*Polymer Pew*

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

In re: Super Safety Patent Litigations                    MDL No. _____

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER FOR
COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

I.    FACTUAL BACKGROUND ....................................................................................2

      A.    The Actions and Parties ................................................................................2

      B.    The Asserted Patents ....................................................................................3

II.   LEGAL STANDARD ...............................................................................................3

III.  ARGUMENT ............................................................................................................4

      A.    The Actions Involve Common Questions of Fact and Law ..........................4

      B.    Centralization Will Serve the Convenience of Parties and Witnesses ..................6

      C.    Centralization Will Promote the Just and Efficient Conduct of the Actions ...........7

      D.    The Northern District of Ohio Is the Appropriate Transferee Forum ..................8

CONCLUSION ..................................................................................................................8

**<u>TABLE OF AUTHORITIES</u>**

**<u>Cases</u>**                                                                                                **<u>Page(s)</u>**

*In re Acacia Media Techs. Corp. Pat. Litig.*,
    360 F. Supp. 2d 1377 (J.P.M.L. 2005)......................................................................7

*In re Bear Creek Techs., Inc. ('722) Pat. Litig.*,
    858 F. Supp. 2d 1375 (J.P.M.L. 2012)................................................................4, 6

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
    626 F. Supp. 2d 1341 (J.P.M.L. 2009)......................................................................6

*In re Embro Pat. Infringement Litig.*,
    328 F. Supp. 507 (J.P.M.L. 1971)............................................................................6

*In re Mobile Telecomm. Techs., LLC Pat. Litig.*,
    222 F. Supp. 3d 1337 (J.P.M.L. 2016)................................................................4, 6

*In re Pipe Flashing Pat. Litig.*,
    713 F. Supp. 3d 1414 (J.P.M.L. 2024)......................................................................7

*In re Proven Networks, LLC, Pat. Litig.*,
    492 F. Supp. 3d 1338 (J.P.M.L. 2020)................................................................4, 5

*In re RAH Color Techs. LLC Pat. Litig.*,
    347 F. Supp. 3d 1359 (J.P.M.L. 2018)..................................................................... 5

*In re Taasera Licensing, LLC, Pat. Litig.*,
    619 F. Supp. 3d 1352 (J.P.M.L. 2022)...............................................................4, 5, 7

**<u>Statutes</u>**

28 U.S.C. § 1407.............................................................................................. *passim*

## <u>INTRODUCTION</u>

This litigation is a textbook case for centralization under 28 U.S.C. § 1407. Plaintiffs ABC IP, LLC and Rare Breed Triggers, Inc. (collectively, "Plaintiffs") have filed six separate patent infringement actions across five federal districts against different defendants, but each action turns on common questions of fact and law regarding the same core asserted patent — U.S. Patent No. 12,038,247 ("the '247 Patent"), and in particular claim 15 of that patent, asserted against a product called the Super Safety. Several actions also assert additional related patents, including U.S. Patent No. 7,398,723 ("the '723 Patent"). Absent centralization, six courts will be asked to address overlapping issues of claim construction, validity and enforceability, infringement theories, and damages issues in parallel, creating a substantial risk of inconsistent rulings and unnecessary duplication of effort.  The Actions for which transfer and centralization are sought are:

1. *Rare Breed Triggers, Inc. and ABC IP, LLC v. DNT LLC and Zach Morrow*, No. 4:25-cv-00298 (D. Idaho filed June 6, 2025);

2. *ABC IP, LLC and Rare Breed Triggers, Inc. v. Harrison Gunworks LLC and Tyler Harrison*, No. 4:25-cv-00299 (D. Idaho filed June 6, 2025);

3. *ABC IP, LLC and Rare Breed Triggers, Inc. v. Hanes Tactical LLC and Damion Terrell Bennett*, No. 3:25-cv-00201 (W.D. Tex. filed June 6, 2025);

4. *ABC IP, LLC and Rare Breed Triggers, Inc. v. 80Mills LLC and Pearson Gardner*, No. 1:25-cv-01262 (N.D. Ohio filed June 17, 2025);

5. *ABC IP, LLC and Rare Breed Triggers, Inc. v. Z3 Productions LLC*, No. 5:25-cv-00695 (W.D. Okla. filed June 23, 2025); and

6. *ABC IP, LLC and Rare Breed Triggers, Inc. v. Steven Thanh Nguyen*, No. 4:25-cv-02961 (S.D. Tex. filed June 26, 2025).

Formal centralization is warranted to eliminate the significant inefficiencies and potential for inconsistent results that would follow from requiring six different courts to oversee related parties, common patent issues, overlapping discovery, and repeating claim construction proceedings. Transfer to a single forum will permit one court to manage a uniform schedule, coordinate discovery, supervise claim construction, and resolve common motions in a consistent manner.

Movants respectfully submit that the Northern District of Ohio is the most appropriate transferee forum. One of the Actions is already pending there, the district is centrally located and convenient for parties and counsel, and the Honorable J. Philip Calabrese—who is presiding over the Northern District of Ohio action—has experience managing complex litigation, including multidistrict litigation. Centralization in the Northern District of Ohio will serve the convenience of parties and witnesses and promote the just and efficient conduct of these Actions.

## I.    FACTUAL BACKGROUND

### A.    The Actions and Parties

Plaintiffs ABC IP, LLC and Rare Breed Triggers, Inc. have filed six related patent infringement actions against different defendants in the District of Idaho (two actions), the Western District of Texas, the Northern District of Ohio, the Western District of Oklahoma, and the Southern District of Texas. Although the defendants vary, Plaintiffs' complaints reflect a coordinated filing campaign asserting infringement of the same core patent claim across multiple districts.

All six Actions were filed within a three-week period in June 2025. The Actions are therefore proceeding on parallel tracks in multiple courts, and absent centralization each court will

be required to duplicate much of the same work in overseeing discovery, resolving disputes, and addressing claim construction and validity issues common to the asserted patents.

### B.     The Asserted Patents

Each Action asserts infringement of claim 15 of the '247 Patent against a product called the Super Safety. Several Actions also assert additional patents. Differences in the set of additional patents asserted in particular actions do not diminish the substantial overlap in the core factual issues presented by Plaintiffs' claims, including claim construction, prosecution history, priority, and validity issues concerning the '247 Patent.

| Defendants & Action | Asserted Patents (as alleged) | Docket Sheet & Operative Complaint |
|---|---|---|
| *DNT LLC and Zach Morrow* No. 4:25-cv-00298 (D. Idaho) | 12,038,247 (claim 15); 7,398,723 | Exhibit 1 |
| *Harrison Gunworks LLC and Tyler Harrison* No. 4:25-cv-00299 (D. Idaho) | 12,038,247 (claim 15); 10,514,223; 11,724,003; 12,036,336; 12,274,807 | Exhibit 2 |
| *Hanes Tactical LLC and Damion Bennett* No. 3:25-cv-00201 (W.D. Tex.) | 12,038,247 (claim 15); 7,398,723 | Exhibit 3 |
| *80Mills LLC and Pearson Gardner* No. 1:25-cv-01262 (N.D. Ohio) | 12,038,247 (claim 15); 7,398,723 | Exhibit 4 |
| *Z3 Productions LLC* No. 5:25-cv-00695 (W.D. Okla.) | 12,038,247 (claim 15) | Exhibit 5 |
| *Steven Nguyen* No. 4:25-cv-02961 (S.D. Tex.) | 12,038,247 (claim 15) | Exhibit 6 |

## II.     LEGAL STANDARD

The Panel may order the transfer of civil actions pending in different districts for coordinated or consolidated pretrial proceedings when the actions involve "one or more common

questions of fact" and transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). In applying this standard, the Panel has repeatedly recognized that centralization is appropriate in patent litigations where common issues concerning claim construction, patent validity, and related discovery predominate, even if the actions involve different accused products or different combinations of asserted patents.

Centralization is appropriate where overlapping patents will require the parties and courts to address common issues such as claim construction, validity and enforceability defenses, and discovery concerning prior art, prosecution history, inventorship, and damages. *See, e.g., In re Taasera Licensing, LLC, Pat. Litig.*, 619 F. Supp. 3d 1352, 1352-53 (J.P.M.L. 2022) (centralization warranted where claim construction and validity issues predominated); *In re Bear Creek Techs., Inc. ('722) Pat. Litig.*, 858 F. Supp. 2d 1375, 1379 (J.P.M.L. 2012) (Panel has often centralized litigation involving different products alleged to infringe common patents).

The Panel does not require complete identity of claims or patents to order transfer; differences in the patents asserted or accused products do not defeat centralization when the actions share substantial common questions of fact. *See In re Proven Networks, LLC*, *Pat. Litig.*, 492 F. Supp. 3d 1338, 1339 (J.P.M.L. 2020) (centralizing patent actions notwithstanding that "different combinations of patents" were asserted); *In re Mobile Telecomm. Techs.*, *LLC Pat. Litig.*, 222 F. Supp. 3d 1337, 1338 (J.P.M.L. 2016) (same).

## III.   <u>ARGUMENT</u>

### A.   <u>The Actions Involve Common Questions of Fact and Law</u>

Centralization is warranted because the Actions indisputably share common questions of fact and law. Most importantly, each Action asserts infringement of the same patent claim: claim

15 of the '247 Patent. Accordingly, each court will be required to construe the same claim language and address overlapping issues of patent validity, enforceability, infringement, and damages. The Panel has consistently held that these types of overlapping patent issues satisfy Section 1407's "common questions of fact" requirement. *See, e.g., In re Taasera Licensing*, *LLC, Pat. Litig.*, 619 F. Supp. 3d at 1352-53; *In re RAH Color Techs. LLC Pat. Litig.*, 347 F. Supp. 3d 1359, 1360 (J.P.M.L. 2018).

Common issues will include, at minimum: (a) the meaning and scope of the limitations of claim 15 of the '247 Patent; (b) the '247 Patent's prosecution history, priority claims, and any related proceedings; (c) prior art and other evidence relevant to validity (including anticipation and obviousness defenses); (d) Plaintiffs' ownership and standing theories; and (e) Plaintiffs' infringement and damages methodologies that will be advanced across multiple Actions against the same product: the Super Safety. These issues will necessarily be explored through overlapping discovery, including common document discovery and deposition testimony from Plaintiffs, inventors and prosecuting attorneys (where relevant), third-party prior-art witnesses, and overlapping technical and damages experts.

The presence of additional patents in some Actions does not undermine the substantial overlap created by the '247 Patent. The Panel routinely centralizes patent actions even where "different combinations of patents are asserted" across cases, because the common patents and defenses create sufficient overlap to warrant coordinated pretrial proceedings. *See In re Proven Networks, LLC*, *Pat. Litig.*, 492 F. Supp. 3d at 1339. Similarly, any differences in the specific accused products at issue do not defeat centralization where, as here, common questions concerning claim construction, infringement, and validity will predominate. *See In re Bear Creek*

*Techs., Inc. ('722) Pat. Litig.*, 858 F. Supp. 2d at 1379; *In re Mobile Telecomm. Techs., LLC, Pat. Litig.*, 222 F. Supp. 3d at 1338.

Finally, the Panel has long recognized that patent validity presents common factual questions that support centralization. *See In re Embro Pat. Infringement Litig.*, 328 F. Supp. 507, 508 (J.P.M.L. 1971) ("We have consistently held that the issue of patent validity presents common questions of fact which satisfy the statutory requirements of § 1407."). This principle applies with particular force where, as here, all Actions assert the same patent claim and will give rise to overlapping validity defenses and expert analyses.

### B.    Centralization Will Serve the Convenience of Parties and Witnesses.

Centralization will serve the convenience of the parties and witnesses by eliminating duplicative discovery and avoiding the need for common witnesses to appear in multiple jurisdictions. *See In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 626 F. Supp. 2d 1341, 1342 (J.P.M.L. 2009) (centralization before a single judge ensures that common parties and witnesses are not subjected to duplicative discovery).

Without centralization, the parties face the prospect of repeating the same core efforts in six courts, including: (a) producing and reviewing overlapping categories of documents concerning the asserted patents; (b) litigating similar protective-order and ESI issues; (c) engaging in multiple rounds of expert discovery on claim construction and validity; and (d) conducting multiple Markman proceedings focused on the same patent claim. Centralization will streamline these processes and reduce the burden on parties, witnesses, and counsel.

The geographic dispersion of the Actions further supports centralization. The Actions are pending in Idaho, Texas (two districts), Oklahoma, and Ohio. Coordinating common discovery and motion practice across that footprint will impose substantial costs and inefficiencies absent an

MDL structure. A single transferee court can establish coordinated procedures to minimize travel and duplication, including the use of coordinated deposition scheduling and uniform protocols for expert discovery.

###### C.    Centralization Will Promote the Just and Efficient Conduct of the Actions.

Centralization will promote the just and efficient conduct of these Actions by conserving judicial resources and preventing inconsistent pretrial rulings, particularly with respect to claim construction and patent validity. *See In re Taasera Licensing, LLC*, *Pat. Litig.*, 619 F. Supp. 3d at 1352-53 (centralization eliminates duplicative discovery and prevents inconsistent pretrial rulings, particularly on claim construction); *In re Acacia Media Techs. Corp. Pat. Litig.*, 360 F. Supp. 2d 1377, 1379 (J.P.M.L. 2005) (same).

Absent centralization, six courts will be required to become familiar with the same asserted patent claim and related technology, and may be called upon to decide substantially similar disputes regarding claim construction, discovery scope, validity challenges, and damages-related discovery. The Panel has recognized that this duplication creates an unnecessary burden on the judiciary and increases the risk of inconsistent rulings. *See In re Pipe Flashing Pat. Litig.*, 713 F. Supp. 3d 1414, 1415 (J.P.M.L. 2024) (noting risk of inconsistent rulings and unnecessary expenditure of judicial resources absent centralization).

Centralization is especially appropriate at this stage because the Actions were filed in close temporal proximity. Coordinating pretrial proceedings now will maximize efficiencies and minimize the risk that inconsistent schedules and rulings will entrench duplicative work. Once centralized, the transferee court can structure coordinated procedures for claim construction, invalidity contentions, and expert discovery that will benefit all parties and the courts.

### D.    <u>The Northern District of Ohio Is the Appropriate Transferee Forum.</u>

Movants respectfully submit that the Northern District of Ohio is the most appropriate transferee forum. One Action is already pending in that district (No. 1:25-cv-01262, "Ohio Action"), and the Northern District of Ohio is centrally located and readily accessible. Proceedings there would be convenient for parties and counsel, including because 80Mills LLC is established in the district and certain parties and counsel for both sides reside in Ohio.

The Panel commonly selects a transferee forum where an action is already pending and where the court can efficiently manage common pretrial issues. Here, centralization in the Northern District of Ohio will leverage the court's familiarity with the Ohio Action and provide an efficient framework for managing the overlapping patent issues across all Actions.

Judge J. Philip Calabrese, who is presiding over the Ohio Action, is well-suited to oversee coordinated proceedings. He has experience managing complex litigation and currently oversees multidistrict litigation proceedings, including *In re Suboxone Film Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 3092. His experience will promote efficient and consistent case management for this coordinated patent litigation.

For these reasons, the Northern District of Ohio and Judge Calabrese provide the most logical and convenient forum for coordinated pretrial proceedings, and centralization there will best serve the statutory goals of Section 1407.

### <u>CONCLUSION</u>

For the foregoing reasons, Movants respectfully request that the Panel grant the accompanying Motion and transfer the Actions listed on Schedule A, as well as any tag-along actions, to the United States District Court for the Northern District of Ohio for coordinated or consolidated pretrial proceedings before the Honorable J. Philip Calabrese.

Dated: December 23, 2025    Respectfully submitted,

**EMERSON, THOMSON & BENNETT, LLC**

/s/ *John M. Skeriotis*
John M. Skeriotis (Ohio Bar # 0069263)
jms@etblaw.com
Sergey Vernyuk (Ohio Bar # 0089101)
sv@etblaw.com
1914 Akron-Peninsula Rd.
Akron, Ohio 44313
(330) 434-9999 – Telephone
(330) 434-8888 – Facsimile
*Attorneys for Defendants/Movants:*
*80Mills LLC d/b/a Tactical Titan Supply; Pearson Gardner; DNT*
*LLC d/b/a Deez Nutz Tactical; Zach Morrow; Z3 Productions LLC*
*d/b/a Z3 PRO; Harrison Gunworks LLC; Tyler Harrison; Hanes*
*Tactical LLC; Damion Terrell Bennett; and Steven Thanh Nguyen*
*d/b/a Polymer Pew*

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: Super Safety Patent Litigations | MDL No. 3176 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO TRANSFER FOR
<u>COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407</u>**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................2

II.   FACTUAL BACKGROUND ......................................................................................4

    A.    Forced Reset Triggers ....................................................................................4

    B.    The Plaintiffs' Asserted Patents .....................................................................4

    C.    The Plaintiffs' Settlement With the DOJ .......................................................7

    D.    The Rapidly Changing Litigation Landscape .................................................7

    E.    The Plaintiffs' Pertinent Cases....................................................................10

III.  LEGAL STANDARDS .............................................................................................12

IV.   ARGUMENT .............................................................................................................13

    A.    The Panel Should Centralize All of Plaintiffs' Overlapping Actions....................14

        1.    The Panel Should Centralize the Six Actions That the Movant
            Defendants Identify......................................................................14

        2.    The Panel Should Also Centralize Twelve Additional Overlapping
            Tag-Along Actions the Movant Defendants Do Not Identify ...................14

        3.    The Panel Should Centralize Given the High Likelihood of
            Additional Future Overlapping Actions....................................................16

    B.    The Panel Should Centralize Before Judge Gilstrap in the Eastern District
        of Texas, or Alternatively Judge Albright in the Western District of Texas .........17

        1.    Judges Gilstrap and Albright Have Proven Track Records of
            Efficiently Advancing Complicated Patent Cases Towards Trial .............17

        2.    Texas Is a Convenient and Central Geographic Location ........................19

V.    CONCLUSION..........................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re "Agent Orange" Prods. Liab. Litig.*,
  560 F. Supp. 2d 1352 (J.P.M.L. 2008)................................................................17

*ABC IP, LLC et al. v. 80Mills LLC et al.*,
  No. 1:25-cv-01262 ..............................................................................................10

*ABC IP, LLC et al. v. AR-TT LLC et al.*,
  No. 2:26-cv-00014 ..............................................................................................12

*ABC IP, LLC et al. v. Cloak Industries, Inc. et al.*,
  No. 1:26-cv-00001 ..............................................................................................12

*ABC IP, LLC et al. v. Cope*,
  No. 2:26-cv-00033 ..........................................................................................12, 18

*ABC IP, LLC et al. v. Hanes Tactical LLC et al.*,
  No. 3:25-cv-00201 ..............................................................................................10

*ABC IP, LLC et al. v. Harrison Gunworks LLC et al.*,
  No. 4:25-cv-00299 ...............................................................................8, 10, 15, 16

*ABC IP, LLC et al. v. Hoffman et al.*,
  No. 1:25-cv-00389 ..............................................................................................12

*ABC IP, LLC et al. v. Kline*,
  No. 3:25-cv-00454 ..........................................................................................11, 15

*ABC IP, LLC et al. v. MaRs Trigger, LLC et al.*,
  No. 2:26-cv-00030 ..........................................................................................12, 18

*ABC IP, LLC et al. v. Nguyen*,
  No. 4:25-cv-02961 ..............................................................................................10

*ABC IP LLC et al. v. SGC LLC et al.*,
  No. 2:26-cv-00085 ..............................................................................................12

*ABC IP, LLC et al. v. WebCorp, Inc. et al.*,
  No. 4:26-cv-00018 ..............................................................................................12

*ABC IP, LLC et al. v. Z3 Productions LLC*,
  No. 5:25-cv-00695 ..............................................................................................10

*In re African-American Slave Descendants Litig.*,
    231 F. Supp. 2d 1357 (J.P.M.L. 2002)...................................................................19

*In re Bluetooth Headset Prods. Liab. Litig.*,
    475 F. Supp. 2d 1403 (J.P.M.L. 2007)...................................................................14

*In re BP p.l.c. Sec. Litig.*,
    734 F. Supp. 2d 1376 (J.P.M.L. 2010)............................................................18, 19

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
    536 F. Supp. 2d 1364 (J.P.M.L. 2008)...................................................................16

*In re Janus Mut. Funds Inv. Litig.*,
    310 F. Supp. 2d 1359 (J.P.M.L. 2004)...................................................................17

*In re Mirena IUD Prods. Liab. Litig.*,
    938 F. Supp. 2d 1355 (J.P.M.L. 2013)...................................................................17

*In re: Packaged Ice Antitrust Litig.*,
    560 F. Supp. 2d 1359 (J.P.M.L. 2008)...................................................................16

*In re Passenger Vehicle Replacement Tires Antitr. Litig.*,
    737 F. Supp. 3d 1364 (J.P.M.L. 2024)...................................................................19

*In re Procter & Gamble Aerosol Prods. Mktg. & Sales Pracs. Litig.*,
    600 F. Supp. 3d 1343 (J.P.M.L. 2022)...................................................................20

*Rare Breed Triggers, Inc. et al. v. AS Designs, LLC et al.*,
    No. 1:25-cv-01192 ...................................................................................................12

*Rare Breed Triggers, Inc. et al. v. Dairyland Defense Solutions, LLC et al.*,
    No. 2:25-cv-00852 .....................................................................................11, 15, 16

*Rare Breed Triggers, Inc. et al. v. DNT LLC et al.*,
    No. 4:25-cv-00298 ...................................................................................................10

*Rare Breed Triggers Inc. et al. v. Firearm Systems LLC et al.*,
    No. 2:25-cv-04938 ...........................................................................8, 9, 12, 16

*In re Recalled Abbott Infant Formula Prods. Liab. Litig.*,
    621 F. Supp. 3d 1349 (J.P.M.L. 2022)...................................................................20

*In re Taasera Licensing, LLC, Pat. Litig.*,
    619 F. Supp. 3d 1352 (J.P.M.L. 2022)...................................................................18

**Statutes**

28 U.S.C. § 1407...................................................................1, 12, 13, 14, 16

**Other Authorities**

Judicial Panel Rule 1.1(h) ...............................................................................................................14

Plaintiffs ABC IP, LLC ("ABC") and Rare Breed Triggers, Inc. ("RBT") (collectively, "Plaintiffs") hereby respond to the Movant Defendants'[1] Motion to Transfer for Coordination or Consolidation Under 28 U.S.C. § 1407 ("Motion"), filed December 23, 2025, in the above-captioned case. Plaintiffs agree with the Movant Defendants that centralization in a multidistrict litigation ("MDL") is appropriate for the six cases that the Movant Defendants have identified. Plaintiffs request, however, that the Judicial Panel on Multidistrict Litigation ("Panel") *also* (1) centralize additional cases that the Movant Defendants do not identify in their Motion, but are listed in Schedule A attached hereto as Exhibit 1, and (2) centralize all the Schedule A actions before Judge Rodney Gilstrap in the Eastern District of Texas or in the alternative Judge Alan Albright for the following reasons:

A. Judge Gilstrap and Judge Albright have extensive experience handling patent cases, particularly complex cases such as these, involving what will likely become dozens of defendants spread across the US.

B. The Eastern and Western Districts of Texas are centrally located and much less burdensome on the Defendants spread across the US. Further, Texas is the home of the Plaintiffs. Thus, convenience to all parties greatly favors Texas over the requested Northern District of Ohio.

C. There are pending cases in both the Eastern and Western Districts of Texas, with two cases currently before Judge Gilstrap. While these cases are in their earliest stages, none of the

---

[1] Plaintiffs refer herein to the particular defendants who filed their instant motion as the "Movant Defendants," namely, 80Mills LLC d/b/a Tactical Titan Supply; Pearson Gardner; DNT LLC d/b/a Deez Nutz Tactical; Zach Morrow; Z3 Productions LLC d/b/a Z3 PRO; Harrison Gunworks LLC; Tyler Harrison; Hanes Tactical LLC; Damion Terrell Bennett; and Steven Thanh Nguyen d/b/a Polymer Pew. Plaintiffs refer herein to all the defendants across all present and future tag-along cases as simply the "Defendants."

other cases, including the case pending in Ohio, have reached any significant procedural

milestone.

For the foregoing reasons and others, Judge Gilstrap, or Judge Albright in the alternative, are the

best choices from both an experience and convenience standpoint for the consolidation of these

cases.

## I.     INTRODUCTION

The Plaintiffs agree with the Movant Defendants that the six actions identified in their

Motion should be centralized.  However, the Plaintiffs disagree about which cases the Panel should

centralize and where the Panel should centralize them.

The Panel should centralize all of the Plaintiffs' overlapping cases in Schedule A, not just

the six that the Movant Defendants identify.  Currently, there is a large and growing number of

overlapping cases across the country.  Since the Plaintiffs settled litigation with the U.S.

Department of Justice ("DOJ") in May 2025, and the DOJ then withdrew its position that the

Plaintiffs' forced reset triggers are properly classified as "machineguns," the market has flooded

with copycat products, sold at reduced prices, that infringe some combination of the Plaintiffs'

patents on forced reset triggers.  Related continuing patent applications are pending and may issue

within the coming weeks.  The infringing products are all variations of trigger systems that have

similar components.

The infringement landscape is complex and evolving.  Consistent with the conditions of

their settlement with the DOJ, the Plaintiffs are investigating the market, and are regularly

identifying new infringement and filing new actions.  All of Plaintiffs' cases, as detailed below,

share significant substantive overlap in terms of at least asserted patents and accused product

designs, and therefore they are all highly likely to share common questions of, for example, claim

construction, infringement and validity.  There is no sound reason why—and the Movant

Defendants provide none—the centralization should be limited to the six particular cases identified in their Motion.  The Panel should centralize all cases involving overlapping patents.

Further, the Panel should centralize all of the actions before Judge Gilstrap in the Eastern District of Texas, or alternatively Judge Albright in the Western District of Texas, because of their applicable experience.  Judge Gilstrap has experience presiding over multidistrict litigation; a ***vast*** amount of expertise efficiently managing patent cases; and well-respected rules and procedures that enhance the predictability and efficiency of patent cases.  Judge Albright has similar levels of experience, along with well-understood procedures for patent cases.

The Panel should also consolidate in Texas because it is a central location for all the actions, and notably more central than the Northern District of Ohio requested as transferee by the Movant Defendants.  Texas already hosts the largest number of the Plaintiffs' actions of any state.  Further, unlike the Northern District of Ohio, Marshall where Judge Gilstrap presides is easy to reach via either Dallas or Shreveport, both of which have numerous direct flights every day on multiple carriers from throughout the US.  Austin where Judge Albright presides is similar with lots of direct flights to Austin and easy driving from Houston, San Antonio, and Dallas.  Finally, the Plaintiffs' location in Texas also supports the centrality of Texas, since the Plaintiffs are parties to every action.  Centralizing in Texas before Judge Gilstrap or Judge Albright would therefore result in greater efficiency, certainty, and convenience across all the actions.

For these reasons, discussed further below, Plaintiffs respectfully request that the Panel centralize all of the cases identified in Schedule A before Judge Gilstrap in the Eastern District of Texas, or alternatively, Judge Albright in the Western District of Texas.

## II.    FACTUAL BACKGROUND

### A.    Forced Reset Triggers

This case involves forced reset triggers ("FRTs") made for semi-automatic rifles.  An FRT is a type of trigger that the federal government closely monitors because they are designed to increase the speed of firing a rifle.  An FRT operates by mechanically resetting the trigger after each shot, allowing the user to take immediate follow-up shots without manually releasing pressure on the trigger.  FRTs are distinct from other categories of trigger mechanisms, such as traditional semi-automatic or fully automatic trigger mechanisms.

### B.    The Plaintiffs' Asserted Patents

As relevant here, the Plaintiffs have so far asserted seven patents against FRT infringers: U.S. Patent Nos. 10,514,223 ("'223 Patent"); 11,724,003 ("'003 Patent"); 12,036,336 ("'336 Patent"); 12,274,807 ("'807 Patent"); 12,038,247 ("'247 Patent"); 12,031,784 ("'784 Patent"); and 7,398,723 ("'723 Patent").  The asserted patents cover various aspects of forced reset triggers.

The '223 Patent describes and claims a semi-automatic trigger mechanism involving a hammer, a trigger member, and a locking bar.  '223 Patent, Abstract, cl. 4.  As shown in Figures 3 and 4, when the trigger is pulled, the hammer contacts the firing pin, thereby causing the ammunition cartridge to discharge.  '223 Patent, Figs. 3–4, 2:59–64, 4:61–5:25.  This discharge causes the bolt carrier (52) to move rearwardly, and a lower surface of the bolt carrier pushes against the hammer (18), which in turn forces the trigger (via trigger member 26) to return to its reset position.  '223 Patent, Figs. 4–5, 5:23–54.  A locking bar (62) prevents the trigger member from being pulled again by the user until the bolt carrier (52) has returned to the original or "in-battery" position.  '223 Patent, Figs. 4–5, 5:23–54.



FIG. 5

'233 Patent, Fig. 5 (showing the bolt carrier 52 forcing the hammer 18 and trigger 26 back into its reset position).

The '003, '336, and '807 Patents are similar and share a common specification, as the '336 and '807 Patents are continuations of the '003 Patent.[2]  Dkt. 1, Exs. B–D ('003, '336, and '807 Patents, respectively).  These patents describe and claim a device similar to that of the '223 Patent, but with the additional feature that it "provides a 'three position' trigger mechanism having safe, standard semi-automatic, and forced reset semi-automatic positions."  '003 Patent, 2:34–37, Figs. 7 (safe), 8A–8D (standard semi-automatic), and 9A–9D (forced reset semi-automatic).

The '723 Patent teaches a trigger mechanism in which the cycling action of a semiautomatic firearm causes a cam to forcibly reset the trigger member and lock it there until the action has reached the end of its cycle and is ready to fire again.  '723 Patent, Abstract, cl. 1.  The

---

[2] Another related continuation application is pending and expected to be examined this month.

'723 Patent claims a method of accelerating the firing cycle of a semi-automatic firearm. '723 Patent, 8:27–30, cl. 1. According to the method, a firearm trigger is depressed with a finger to discharge the firearm. '723 Patent, 8:35–43. This activates a reciprocating mechanism within the firearm (such as a bolt or bolt carrier) which causes a cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position until the reciprocating mechanism has reached an approximately closed, ready-to-fire position. '723 Patent, 8:27–33, cl. 1. The '723 Patent has expired, but multiple Defendants were selling products accused of infringement before the expiration date.

The '247 Patent relates to a semiautomatic trigger mechanism that represents a further improvement because it offers a further selectable mode, for example, a forcible reset mode in which a trigger member is forcibly reset by a cam while the bolt cycles to the rear and then returns forward to the in-battery position. '247 Patent, Abstract, 2:23–26, cls. 1, 4, 9, 14, 15, 20. The cam limits movement of the trigger member, and acts to prevent the trigger member from being pulled again until the bolt carrier has returned to the in-battery position.[3] '274 Patent, 9:02–27.

The '784 Patent provides a device that works in a forced reset trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. '784 Patent, 1:48–52. The invention of the '784 Patent overcomes the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to move separately from the body portion of the locking member when contacted by the bolt carrier as it cycles to the rear. '784 Patent, 1:48–52.

---

[3] A related continuation application is pending and is expected to be examined this month.

### C.    The Plaintiffs' Settlement With the DOJ

In May 2025, RBT settled litigation with the U.S. Department of Justice ("DOJ") over whether the use of an FRT qualifies a rifle as a "machinegun."  *See* Ex. 2 (Office of the Attorney General, *Department of Justice Announces Settlement of Litigation Between the Federal Government and Rare Breed Triggers* (May 16, 2025), https://www.justice.gov/opa/pr/ department-justice-announces-settlement-litigation-between-federal-government-and-rare-breed (last visited Jan. 10, 2026)).  As the DOJ states in its press release, the settlement rested on certain conditions requiring Plaintiffs to ensure public safety and enforce their patents on forced reset triggers:

> The settlement includes agreed-upon conditions that significantly advance public safety with respect to FRTs, including that Rare Breed [1] will not develop or design FRTs for use in any pistol and [2] will enforce its patents to prevent infringement that could threaten public safety. Rare Breed also agrees to promote the safe and responsible use of its products.

*Id.*

### D.    The Rapidly Changing Litigation Landscape

Since the settlement, an ever-increasing number of entities have flooded the market with infringing products—with an apparent marked increase around the holidays of 2025.  All of the accused products found in the market are variations on trigger systems with similar components. There are therefore now a fast-growing number of cases in which the Plaintiffs assert various combinations of their patents against various types of accused products throughout the country.

As an example, in a case ***not identified*** by the Movant Defendants, a manufacturer named Partisan Triggers ("Partisan") manufactures a knockoff that is a copy—except for irrelevant changes to the look of the outer housing—of RBT's FRT-15L3 three-position forced reset trigger. A Defendant, which is Partisan's distributor, then sells the knockoff to customers for two-thirds of RBT's price ($299 rather than RBT's $450 price).  Ex. 3; Ex. 4.  In this example case, the

Plaintiffs assert four patents—the '223, '003, '336, and '807 Patents—against the accused Disruptor product. *See, e.g.*, *Rare Breed Triggers, Inc. et al. v. Firearm Systems LLC et al.*, No. 2:25-cv-04938-SMB (D. Ariz.) ("*Firearm Systems*"), Dkt. 1, ¶¶ 25–42, 52, 59, 66, 73. Partisan publicly bragged it has shipped thousands of additional units in response to this case. Ex. 5.




| **RBT FRT-15L3** | **Accused Partisan Disrupter** |

As another example, in a case **identified** by the Movant Defendants—*ABC IP, LLC et al. v. Harrison Gunworks LLC et al.*, No. 4:25-cv-00299-REP (D. Idaho) ("*Harrison 299*")—the Plaintiffs assert two groups of patents against two types of products. Namely, the Plaintiffs assert (i) the '247 and '784[4] Patents against a "Super Safety" product, *Harrison 299*, Dkt. 1, ¶¶ 44–52, and (ii) the '223, '003, '336, and '807 Patents against the "Defender FRT" product, *id.*, ¶¶ 53–81.

---

[4] Inclusion of the '784 patent is subject to a pending motion to amend.





**Super Safety**                **Defender FRT**

In yet another example case ***identified*** by the Movant Defendants, another combination of asserted patents and accused products are at play: the Plaintiffs assert the '247 and '784[5] Patents against the accused Super Safety product. *ABC IP, LLC et al. v. Z3 Prods., LLC*, No. 5:25-cv-00695 (W.D. Okla.), Dkt. 1, ¶ 20.

As a final example case ***not identified*** by the Movant Defendants, the Plaintiffs assert another unique combination of patents—the '784, '247, and '723 Patents—against another Super Safety product. *ABC IP, LLC et al. v. Hoffman et al.*, No. 1:25-cv-00389-CLC-CHS (E.D. Tenn.), Dkt. 1, ¶¶ 44–53, 61–95. A Temporary Restraining Order issued against the defendants in this case today.

Thus, the relevant litigation landscape is complex and, at the moment, rapidly changing as the Plaintiffs uncover new infringers and new products around the country that practice the Plaintiffs' patents—a process updating almost daily. The landscape is made even more complicated by Plaintiffs' ownership of applications for patents in this same field that are soon to issue, and which Plaintiffs will seek to add to many of these cases.

---

[5] Inclusion of the '784 patent is subject to a pending motion to amend.

### E.    The Plaintiffs' Pertinent Cases

The following are the six cases that the Movant Defendants *identify* for centralization:

| Case | District Court | Defense Counsel | Date Filed | Asserted Patent(s) | Accused Product(s) |
|------|----------------|-----------------|------------|--------------------|--------------------|
| *Rare Breed Triggers, Inc. et al. v. DNT LLC et al.*, No. 4:25-cv-00298 | D. Idaho (J. Brailsford) | Elam & Burke; Emerson Thomson Bennet | 6/6/2025 | '247; '723; '784[6] | Super Safety |
| *ABC IP, LLC et al. v. Harrison Gunworks LLC et al.*, No. 4:25-cv-00299 | D. Idaho (J. Brailsford) | Elam & Burke; Emerson Thomson Bennet | 6/6/2025 | '223; '003; '336; '247; '807; '784[4] | Super Safety; Defender FRT |
| *ABC IP, LLC et al. v. Hanes Tactical LLC et al.*, No. 3:25-cv-00201 | W.D. Tex. (J. Guaderrama) | Langley Law | 6/6/2025 | '247; '723 | Super Safety |
| *ABC IP, LLC et al. v. Z3 Productions LLC*, No. 5:25-cv-00695 | W.D. Okla. (J. Goodwin) | Michael S. Vernon; Emerson Thomson Bennet | 6/23/2025 | '247; '748[4] | Super Safety |
| *ABC IP, LLC et al. v. 80Mills LLC et al.*, No. 1:25-cv-01262 | N.D. Ohio (J. Calabrese) | Emerson Thomson Bennet | 6/17/2025 | '247 | Super Safety |
| *ABC IP, LLC et al. v. Nguyen*, No. 4:25-cv-02961 | S.D. Tex. (J. Hanks) | Emerson Thomson Bennet; Langley Law | 6/26/2025 | '247; '748[4] | Super Safety |

A number of additional cases exist that the Movant Defendants ***do not identify*** for centralization.  First, the following two cases existed when the Movant Defendants' filed their Motion, and Movant Defendants provide no reason for omitting them.  *See generally* Motion.

---

[6] Inclusion of the '784 patent is subject to a pending motion to amend.

| Case | District Court | Defense Counsel | Date Filed | Asserted Patent(s) | Accused Product(s) |
|------|------|------|------|------|------|
| *Rare Breed Triggers, Inc. et al. v. Dairyland Defense Solutions, LLC et al.,* No. 2:25-cv-00852 ("*Dairyland*") | E.D. Wis. (J. Adelman) | Emerson Thomson Bennet; Halling & Cayo | 6/13/2025 | '223; '003; '336; '807 | Three position safety selector |
| *ABC IP, LLC et al. v. Kline,* No. 3:25-cv-00454 ("*Kline*") | S.D. Miss. (J. Harris) | N/A | 6/23/2025 | '247 | Super Safety |

Second, the Plaintiffs filed the following ten new cases since the Movant Defendants filed their Motion.  These cases substantively overlap with the cases that the Movant Defendants identify in terms of asserted patents and accused product features.

| Case | District Court | Defense Counsel | Date Filed | Asserted Patent(s) | Accused Product(s) |
|------|------|------|------|------|------|
| *ABC IP, LLC et al. v. AR-TT LLC et al.,* No. 2:26-cv-00014 | E.D. Washington | N/A | 1/13/2026 | '223; '003; '336; '807 | Partisan Disruptor |
| *ABC IP, LLC et al. v. Cope,* No. 2:26-cv-00033 | E.D. Texas (J. Gilstrap) | N/A | 1/13/2026 | '247; '784; '223; '003; '336; '807 | Super Safety; 2-pos FRT; 3-pos FRT; |
| *ABC IP, LLC et al. v. MaRs Trigger, LLC et al.,* No. 2:26-cv-00030 | E.D. Texas (J. Gilstrap) | N/A | 1/12/2026 | '247; '784 | Super Safety |
| *ABC IP, LLC et al. v. WebCorp, Inc. et al.,* No. 4:26-cv-00018 | E.D. Missouri (J. Collins) | N/A | 1/7/2026 | '247; '784; '223; '003; '336; '807 | Atrius Forced Reset Selector; Partisan Disruptor |

| Case | District Court | Defense Counsel | Date Filed | Asserted Patent(s) | Accused Product(s) |
|------|----------------|-----------------|------------|--------------------|--------------------|
| *ABC IP LLC et al. v. SGC LLC et al.,* No. 2:26-cv-00085 | D. Arizona (J. Lanham) | N/A | 1/7/2026 | '223; '003; '336; '807 | Partisan Disruptor |
| *ABC IP, LLC et al. v. Hawkphin Sales, LLC et al*; No. 4:26-cv-00015 | S.D. Iowa (J. Ebinger) | N/A | 1/7/2026 | '247; '784; '223; '003; '336; '807 | Super Safety; Atrius Forced Reset Selector; Partisan Disruptor |
| *ABC IP, LLC et al. v. Cloak Industries, Inc. et al.,* No. 1:26-cv-00001 | D. Idaho (J. Brailsford) | N/A | 1/5/2026 | '223; '003; '336; '807 | Partisan Disruptor |
| *Rare Breed Triggers, Inc. et al. v. AS Designs, LLC et al.,* No. 1:25-cv-01192 | M.D.N.C. (J. Osteen) | N/A | 12/30/2025 | '784; '247 | Super Safety; ARC-Fire |
| *Rare Breed Triggers Inc. et al. v. Firearm Systems LLC et al.,* No. 2:25-cv-04938 | D. Ariz. (J. Brnovich) | N/A | 12/23/2025 | '223; '003; '336; '807 | Partisan Disruptor |
| *ABC IP, LLC et al. v. Hoffman et al.,* No. 1:25-cv-00389 | E.D. Tenn. (J. Collier) | N/A | 12/23/2025 | '784; '247; '723 | Super Safety |

## III.    LEGAL STANDARDS

Under 28 U.S.C. § 1407(a), "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings."    Transfer is appropriate where the Panel

12

determines that centralization will be "for the convenience of parties and witnesses" and "will promote the just and efficient conduct of such actions." *Id.*

## IV.    ARGUMENT

The Plaintiffs agree with the Movant Defendants that the Panel should centralize the Plaintiffs' actions into an MDL.  The parties appear to disagree only about *which* cases, and *where* centralization should occur.

First, the Panel should centralize all of the Plaintiffs' actions listed in Schedule A.  *See* Ex. 1.  The Movant Defendants seek centralization of only six of the eight actions that existed when they filed their Motion.  The Movant Defendants provide no reason for omitting the other two actions.  Because of their extensive substantive overlap with the Movant Defendants' six actions—including common patents and accused product designs—the two omitted actions should also be centralized.

Second, the Panel should centralize the actions with Judge Rodney Gilstrap of the Eastern District of Texas, or alternatively Judge Alan Albright of the Western District of Texas.  Judges Gilstrap and Albright are among the country's most experienced district court judges in patent cases.  Given the complexity not only of the patents here and patent law itself, but also this infringement landscape—marked by various products accused of infringing various combinations of patents—centralizing before Judge Gilstrap or Albright provides the surest route for efficient progression of these cases towards trial.  Texas is also a central location for these cases which, so far, span the country from Idaho to North Carolina.  Indeed, four existing cases are in Texas, and two are already before Judge Gilstrap.

### A.     The Panel Should Centralize All of Plaintiffs' Overlapping Actions

#### 1.     The Panel Should Centralize the Six Actions That the Movant Defendants Identify

The parties agree that centralization is appropriate for the six actions that the Movant Defendants have identified in their Motion.  *See, e.g.*, Motion, 3; Dkt. 1-2.  Given the overlap in asserted patents, prosecution histories, accused product design, pertinent prior art, and plaintiffs across these six actions, the actions share common questions of fact relating to at least claim construction, infringement, and validity.  *See supra* §§ II.D, -E.  These six actions' consolidation would therefore enhance the convenience of the parties and witnesses and promote the just and efficient conduct of the actions.  Motion, 4–7; 28 U.S.C. § 1407(a).

#### 2.     The Panel Should Also Centralize Twelve Additional Overlapping Tag-Along Actions the Movant Defendants Do Not Identify

Together with the six actions the Movant Defendants identify, the Panel should also centralize the twelve additional potential tag-along actions that the Movant Defendants fail to identify.  *See supra* § II.D.  Because these twelve actions also share significant substantive overlap with the six actions the Movant Defendants have identified, centralizing all of them together would yield significant efficiencies and benefits for the courts, parties, and witnesses.  *See* 28 U.S.C. § 1407(a).

Tag-along actions include any "civil action pending in a district court which involves common questions of fact with . . . actions on a pending motion to transfer to create an MDL . . . and which the Panel would consider transferring under Section 1407."  Panel Rule 1.1(h).  The Panel often accounts for potential tag-along actions in deciding whether to centralize overlapping cases.  *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 475 F. Supp. 2d 1403, 1403 n.1, 1404 (J.P.M.L. 2007); *In re Stand 'n Seal Prods.*, 469 F. Supp. 2d 1351, 1351 n.1, 1352 (J.P.M.L. 2007).

The twelve potential tag-along actions fall into two groups. *First*, *Dairyland* and *Kline* (1) substantively overlap with the Movant Defendants' six actions in terms of accused product design and asserted patents; and (2) were filed within days of Movant Defendants' six actions. In *Kline*, the Plaintiffs assert claim 15 of the '247 Patent—a prominent reason Movant Defendants state for selecting their six actions for centralization. *See* Motion, 3. *Kline* also involves a Super Safety—the same accused product type in all six of Movant Defendants' identified actions—thus overlap with Movant Defendants' six cases is significant if not complete. *See supra* § II.E.

*Dairyland* also overlaps with the Movant Defendants' six actions. *Dairyland* involves the '223, '003, '336, and '807 Patents, also asserted in *Harrison 299*. *See supra* § II.E. The accused products in both *Dairyland* (three-position safety selector) and *Harrison 299* (Defender FRT) also overlap in their design, as shown below.




*Harrison 299*, Dkt. 1, ¶ 39               *Dairyland*, Dkt. 1, ¶ 24

Therefore, it is likely that the *Dairyland* will overlap significantly with the Movant Defendants' six identified actions. It is unclear why *Dairyland* or *Kline* would be excluded from centralization.

*Second*, the Movant Defendants have not identified the ten new actions listed above. *See supra* § II.E. These ten actions all have asserted patents—namely, the '223, '003, '336, '807, '247, and '723 Patents—in common with the Movant Defendants' six actions. *See supra* § II.E. They also overlap in terms of accused product design, since all ten involve the Super Safety and/or the

Partisan Disruptor (which shares features in common with the accused products in *Harrison 299*

and *Dairyland*, as shown below).







| | | |
|---|---|---|
| **Defender FRT** | **Three-position safety selector** | **Partisan Disrupter** |
| *Harrison 299*, Dkt. 1, ¶ 39 | *Dairyland*, Dkt. 1, ¶ 24 | *Firearm Systems*, Dkt. 1, ¶ 52 |

Indeed, all accused products in all existing actions to date are simply variations on trigger systems

with similar components.  Under these circumstances, substantive overlap among all the cases is

inescapable.

Because of their significant substantive overlap, the Panel should centralize all of the

actions identified in Schedule A.  Ex. 1.  Doing so will yield further efficiencies for the presiding

court, parties, and witnesses.  *See* 28 U.S.C. § 1407(a); Motion, 6–7.

### 3.    The Panel Should Centralize Given the High Likelihood of Additional Future Overlapping Actions

Given an apparent spike of infringing activity in late 2025 that the Plaintiffs are currently

actively investigating, the Plaintiffs anticipate that more overlapping actions will be filed in the

coming days and weeks.  Indeed, the DOJ charged RBT with enforcing their FRT patents as a

condition of settlement, for public safety reasons, among others.  *See supra* § II.C; Ex. 2.  The

Plaintiffs' ownership of relevant applications for patents soon to issue also increases the likelihood

of more future tag-along actions.  Where, as here, the potential tag-along actions are numerous and

geographically distributed, centralization is warranted.  *See, e.g.*, *In re: Packaged Ice Antitrust*

*Litig.*, 560 F. Supp. 2d 1359, 1360 n.3, 1360–61 (J.P.M.L. 2008) (centralizing where actions

included 26 potential tag-along actions in "various districts across the country"); *In re: Cathode*

*Ray Tube (CRT) Antitrust Litig.*, 536 F. Supp. 2d 1364, 1364 n.1, 1364–65 (J.P.M.L. 2008) (centralizing where 28 potential tag-along actions were pending in ten different districts).

### B.    The Panel Should Centralize Before Judge Gilstrap in the Eastern District of Texas, or Alternatively Judge Albright in the Western District of Texas

Judges Gilstrap and Albright are both highly experienced and proficient at efficiently managing complex patent cases, and both have well-worn rules and procedures for patent cases, eliminating surprise and uncertainty for parties.  That expertise is needed here given the complexity of the infringement landscape, the patents, and patent law itself.  Texas is also a central place for these actions around the country—especially since more cases are located in Texas than any other state.

### 1.    Judges Gilstrap and Albright Have Proven Track Records of Efficiently Advancing Complicated Patent Cases Towards Trial

In choosing a transferee forum, the Panel considers whether a transferee judge has the experience and institutional capacity needed to manage complex litigation efficiently and effectively.  Where, as here, the MDL involves highly technical fact questions, complex legal questions, and overlapping pretrial issues, the Panel has emphasized the importance of assigning the matter to an experienced judge "who [it is] confident will steer this litigation on a prudent course."  *In re Mirena IUD Prods. Liab. Litig.*, 938 F. Supp. 2d 1355, 1358 (J.P.M.L. 2013); *see also In re "Agent Orange" Prods. Liab. Litig.*, 560 F. Supp. 2d 1352, 1353–54 (J.P.M.L. 2008). The transferee judge's experience carries additional weight where, as here, the cases are dispersed through the country and no single district clearly predominates in case count.  *See In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) (given geographical dispersal, selecting "a transferee district with the capacity and experience to steer this litigation on a prudent course").

This MDL will likely require the presiding judge to have substantial experience managing complex patent cases; otherwise, this case presents risk of meaningful delays on the path to trial that could unfairly prejudice the plaintiffs. Here, claim construction—as one example—will likely be important and complex, given that there are numerous accused products that are similar but not identical. *See supra*. This complexity raises the prospect of inconsistent claim constructions absent centralization, and creates a need for seasoned experience managing claim construction procedures and assessing the strength of claim construction arguments. Patent cases also present unique issues at discovery, expert discovery, and pretrial motions, and the complex landscape here increases the need for established experience at each stage.

The Plaintiffs thus propose Judge Gilstrap, who is "well-versed in complex patent litigation" and has presided over multidistrict litigation. *In re Taasera Licensing, LLC, Pat. Litig.*, 619 F. Supp. 3d 1352, 1353 (J.P.M.L. 2022) (centralizing cases in MDL before Judge Gilstrap). Judge Gilstrap already presides over two of the cases in question. *ABC IP, LLC v. Cope*, No. 2:26-cv-00033 (E.D. Tex. 2026); *ABC IP, LLC v. MaRs Trigger, LLC*, No. 2:26-cv-00030 (E.D. Tex. 2026). Judge Gilstrap also has well-understood rules and procedures for patent cases—including rules governing discovery disputes, motions in limine, trial, and even patent-specific issues. *See* Ex. 6; Ex. 7. According to LexMachina, Judge Gilstrap has presided over **9,871** patent cases, and in those cases, **690** claim construction hearings and **197** trials. Ex. 8. Judge Gilstrap's established patent and MDL experience favors him as transferee judge.

Judge Albright is a viable alternative as transferee judge. *See, e.g.*, *In re BP p.l.c. Sec. Litig.*, 734 F. Supp. 2d 1376, 1379 (J.P.M.L. 2010) (transferring to a judge not yet presiding over the cases in question). Judge Albright also has extensive experience presiding over patent cases— **6,345** cases total, and in those cases, **568** claim construction hearings and **105** trials. Ex. 9. Judge

Albright and his court also have frequently-litigated rules and procedures for patent cases.  Ex. 10.  Given these judges' experience, Judge Gilstrap, and alternatively Judge Albright, are well suited to manage this patent MDL efficiently.

### 2.    Texas Is a Convenient and Central Geographic Location

The Panel should centralize in the Eastern District of Texas, or alternatively Western District of Texas, as discussed above, for several reasons.

*First*, Texas is a central location, given that the cases in question are dispersed throughout the country—currently from Idaho to North Carolina—with no clearly predominant state or district so far other than Texas.  *See, e.g.*, *In re BP p.l.c. Sec. Litig.*, 734 F. Supp. 2d 1376, 1379 (J.P.M.L. 2010) (centralizing in a Texas court where potential plaintiffs would "reside in every corner of the country," even though no constituent action was pending there).  Choosing a central location benefits all the parties and witnesses, consistent with the MDL statute's goals, by increasing convenience and minimizing travel burdens.  *See, e.g.*, *In re African-American Slave Descendants Litig.*, 231 F. Supp. 2d 1357, 1358 (J.P.M.L. 2002); *In re Passenger Vehicle Replacement Tires Antitr. Litig.*, 737 F. Supp. 3d 1364, 1366 (J.P.M.L. 2024).

Although the Movant Defendants seek centralization in the Northern District of Ohio, centralization near either Dallas (Eastern District of Texas) or Austin (Western District of Texas) would be more convenient for the parties located on the West Coast, such as Idaho, and would more evenly distribute the travel burdens and inconvenience among the parties and witnesses.  For example, flight searches show that it is generally faster and cheaper to fly from Boise to Austin or Dallas than it is to fly from Boise to Cleveland.  *Compare* Ex. 11 (5 hour and 10 minute flight from Boise to Austin costing $370), *and* Ex. 12 (3 hour and 9 minute flight from Boise to Dallas costing $503), *and* Ex. 13 (5 hour and 8 minute flight from Boise to Dallas costing $229), *with* Ex. 14 (6 hour and 8 minute flight from Boise to Cleveland costing $483).

***Second***, Texas already hosts more of the actions in question than any other state. *See supra* § II.E.  Based on the Plaintiffs' investigation to date, it is likely that more than ten additional future cases will be filed in Texas, and so Texas is just as likely, if not more likely, than any other state to predominate in case count as this MDL progresses.

***Third***, the Plaintiffs' location in Texas supports centralizing the actions in Texas to increase efficiency throughout the litigation, including during discovery.  Where a party appears in every action, that party's location takes on heightened importance in assessing transfer.  *See, e.g.*, *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 621 F. Supp. 3d 1349, 1350 (J.P.M.L. 2022); *In re Procter & Gamble Aerosol Prods. Mktg. & Sales Pracs. Litig.*, 600 F. Supp. 3d 1343, 1344 (J.P.M.L. 2022).

For all the reasons above, the Panel should centralize the cases in Texas to maximize the centrality and convenience for the parties and witnesses, and to benefit from Judge Gilstrap or Judge Albright's extensive experience advancing patent cases toward trial.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Panel transfer the Actions listed on Ex. 1 (Plaintiff's Schedule A) to the United States District Court for the Eastern District of Texas before the Honorable J. Rodney Gilstrap, or alternatively, to the United States District Court for the Western District of Texas before the Honorable J. Alan Albright, for coordinated or consolidated pretrial proceedings.

Dated:  January 13, 2026                          Respectfully submitted,

By:   */s/ Glenn D. Bellamy*
　　　　Glenn D. Bellamy
　　　　Ohio Bar No. 00700321
　　　　Wood Herron & Evans LLP
　　　　600 Vine Street, Suite 2800
　　　　Cincinnati OH 45202
　　　　Tel: (513) 707-0243

E-mail: gbellamy@whe-law.com

Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070
E-mail: colvin@fr.com
          bruce@fr.com

Ben Christoff
FISH & RICHARDSON P.C.
1000 Maine Ave, SW, Suite 100
Washington, DC 20024
(202) 783-5070
E-mail: christoff@fr.com

and

Glenn D. Bellamy
Ohio Bar No. 00700321
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati OH 45202
Tel: (513) 707-0243
E-mail: gbellamy@whe-law.com

*Attorneys for Plaintiffs*
*ABC IP, LLC and Rare Breed Triggers, Inc.*

# EXHIBIT 1

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: Super Safety Patent Litigations | MDL No. 3176 |

**SCHEDULE A
ACTIONS TO BE TRANSFERRED PURSUANT TO 28 U.S.C. § 1407**

| Case Captions | Civil Action No. | District | Assigned Judge |
|---|---|---|---|
| *Rare Breed Triggers, Inc. et al. v. DNT LLC et al.* | 25-cv-00298 | D. Idaho | J. Brailsford |
| *ABC IP, LLC et al. v. Harrison Gunworks LLC et al.* | 25-cv-00299 | D. Idaho | J. Brailsford |
| *ABC IP, LLC et al. v. Hanes Tactical LLC et al.* | 25-cv-00201 | W.D. Texas | J. Guaderrama |
| *ABC IP LLC et al. v. Z3 Productions LLC* | 5:25-cv-00695 | W.D. Oklahoma | J. Goodwin |
| *ABC IP, LLC et al. v. 80Mills LLC et al.* | 1:25-cv-01262 | N.D. Ohio | J. Calabrese |
| *ABC IP, LLC et al. v. Nguyen* | 4:25-cv-02961 | S.D. Texas | J. Hanks |
| *Rare Breed Triggers, Inc et al. v. Dairyland Defense Solutions LLC* | 2:25-cv-00852 | E.D. Wisconsin | J. Adelman |
| *ABC IP, LLC et al. v. Kline* | 3:25-cv-00454 | S.D. Mississippi | J. Harris |
| *ABC IP, LLC et al. v. AR-TT LLC et al.* | 2:26-cv-00014 | E.D. Washington | |
| *ABC IP, LLC et al v. Cope* | 2:26-cv-00033 | E,D. Texas | J. Gilstrap |
| *ABC IP, LLC et al v. MaRs Trigger, LLC et al* | 2:26-cv-00030 | E.D. Texas | J. Gilstrap |
| *ABC IP, LLC et al v.* | 4:26-cv-00018 | E.D. Missouri | J. Collins |

| Case Captions | Civil Action No. | District | Assigned Judge |
|---|---|---|---|
| *WebCorp, Inc. et al.* | | | |
| *ABC IP, LLC et al v. SGC LLC et al.* | 2:26-cv-00085 | D. Arizona | J. Lanham |
| *ABC IP, LLC et al v. Hawkphin Sales, LLC et al* | 4:26-cv-00015 | S.D. Iowa | J. Ebinger |
| *ABC IP, LLC et al v. Cloak Industries, Inc. et al.* | 1:26-cv-00001 | D. Idaho | J. Brailsford |
| *Rare Breed Triggers, Inc. et al. v. AS Designs, LLC et al.* | 1:25-cv-01192 | M.D. North Carolina | J. Osteen |
| *Rare Breed Triggers Inc. et al. v. Firearm Systems LLC et al.* | 2:25-cv-04938 | D. Arizona | J. Brnovich |
| *ABC IP, LLC et al. v. Hoffman et al.* | 1:25-cv-00389 | E.D. Tennessee | J. Collier |

# EXHIBIT 2



**Office of Public Affairs**
U.S. Department of Justice

**PRESS RELEASE**

# Department of Justice Announces Settlement of Litigation Between the Federal Government and Rare Breed Triggers

Friday, May 16, 2025

**For Immediate Release**

Office of Public Affairs

Today, in accordance with President Trump's Executive Order *Protecting Second Amendment Rights*, as well as the Attorney General's Second Amendment Enforcement Task Force, the Department of Justice announced the settlement of litigation between the federal government and Rare Breed Triggers.

"This Department of Justice believes that the 2nd Amendment is not a second-class right," said Attorney General Pamela Bondi. "And we are glad to end a needless cycle of litigation with a settlement that will enhance public safety."

In June 2024, in *Cargill v. Garland*, the Supreme Court held that the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) exceeded its statutory authority by issuing a rule classifying a bump stock as a "machinegun." In July 2024, the Northern District of Texas applied *Cargill v. Garland* to a device called a "forced-reset trigger" (FRT) and concluded that FRTs also cannot be classified as a "machinegun."

The Department's agreement with Rare Breed Triggers avoids the need for continued appeals in *United States v. Rare Breed Triggers* and continued litigation in other, related cases concerning the same issue. The settlement includes agreed-upon conditions that significantly advance public safety with respect to FRTs, including that Rare Breed will not develop or design FRTs for use in any pistol and will enforce its patents to prevent infringement that could threaten public safety. Rare Breed also agrees to promote the safe and responsible use of its products.

The cases that will be resolved under the settlement agreement are:

- *NAGR v. Garland*, 23-cv-830-O (N.D. Tex.), on appeal 24-10707 (5th Cir.).
- *United States v. Rare Breed Triggers LLC*, No. 23-cv-369 (E.D.N.Y), on appeal 23-7276 (2d Cir.).
- *United States v. Miscellaneous Firearms and Related Parts and Equipment Listed in Exhibit A*, 23-cv-17 (D. Utah).

*Updated May 16, 2025*

**Topic**

FIREARMS OFFENSES

**Component**

Office of the Attorney General

Press Release Number: 25-520

## Related Content

PRESS RELEASE

**Justice Department Publishes Proposed Rule to Grant Relief to Certain Individuals Precluded from Possessing Firearms**

WASHINGTON — President Trump directed the Department of Justice to address the ongoing infringements of the Second Amendment rights of our citizens —all of them. Federal law disables the firearms rights...

July 18, 2025

PRESS RELEASE

**27 Members or Associates of Tren de Aragua Charged with Racketeering, Narcotics, Sex Trafficking, Robbery and Firearms offenses**

April 21, 2025

PRESS RELEASE

**Notorious Violent Mexican Cartel Leader Sentenced to Life Plus 30 Years in Prison for International Drug Trafficking and Firearms Offenses**

A U.S.-Mexican dual national and co-founder of the Cartel de Jalisco Nueva Generación (CJNG) — an international drug trafficking organization — was sentenced today in the District of Columbia to...

March 7, 2025

 **Office of Public Affairs**
U.S. Department of Justice

📞 Office of Public Affairs Direct Line
202-514-2007

# EXHIBIT 3

# The Disruptor Trigger System

 firearmsystems.net

January 1, 2026

## Partisan Triggers Disruptor FRT

Video Player



00:00

00:43

## Partisan Triggers For Sale!!

At Firearm Systems, we offer cutting-edge firearm components and accessories that enhance the performance, reliability, and precision of your firearm setup. Our extensive selection includes the Partisan Triggers line, featuring The Disruptor, a **forced reset trigger** (FRT) that delivers unmatched responsiveness and consistent performance. Trusted by shooting enthusiasts and professionals nationwide, we pride ourselves on offering advanced, legal, and compliant trigger systems that meet the high demands of competitive shooters and tactical applications.

## Innovative Trigger Technology - Featuring Partisan Triggers

Experience superior performance with **Partisan Triggers**, including *The Disruptor*, our premium forced reset trigger system. Known for its precision engineering, **The Disruptor** offers an exceptional reset mechanism that enhances shooting accuracy and speed, providing a competitive edge for serious shooters. As part of our advanced firearm technology offerings, **Partisan Triggers** ensures both performance and safety, making it the perfect choice for professionals and enthusiasts alike.

## Premium Forced Reset Triggers - The Disruptor by Partisan Triggers

Firearm Systems is proud to feature **The Disruptor**, a top-tier **forced reset trigger** from **Partisan Triggers**. Designed to meet the needs of tactical professionals and competitive shooters, **The Disruptor** provides a robust, legal solution for enhancing your firearm's rate of fire and overall precision. Whether you're looking to improve your shooting performance or require a high-quality FRT for your AR-15, **The Disruptor** by **Partisan Triggers** offers reliability and consistency you can count on.

## Contact Us Today for Information on Partisan Triggers and The Disruptor

Ready to upgrade your shooting experience with **Partisan Triggers**?
Contact info@FirearmSystems.net today to learn more about **The Disruptor** and our full range of advanced trigger systems and firearm components. Our team is here to assist you with selecting the right products for your competitive, tactical, and recreational shooting needs.

## FEATURED PRODUCTS



### Partisan Disruptor AR-15 FRT

$299.99 Add to cart

© 2026 Firearm Systems. All Rights Reserved.



# EXHIBIT 4



# Rare Breed Triggers

The Rare Breed Trigger offers easy installation, enhancing semi-automatic firearm performance. Our FRT-15, FRT-15E3, FRT-15L2 and FRT-15L3 are drop-in forced reset triggers that fit your AR-15 without requiring gunsmithing.

Shop Now





# FRT–15 Trigger

Our original model that began the controversy, designed to allow for a faster rate of fire. The ATF classified it as a machine gun because it functioned similarly to one. Now it is legal along side the others.

Shop Now



https://rarebreedtriggercs.com/

# FRT–15E3 Trigger

An enhanced version, featuring refinements to improve reliability and performance while still offering the same force–reset functionality.

Shop Now






# FRT–15L2 Trigger

This model provides further improvements, potentially offering additional features or modifications for a different shooting experience while maintaining the core concept of force–reset technology. It is our Super Modified version and comes with upgraded high–pressure stainless springs, which are a step up from the standard Modified version. These springs are specially designed for

both single-action shooting and rapid fire. It takes practice to master this setup.

Shop Now



# FRT–15L3 Trigger

The latest in the FRT series, designed to provide the best possible performance, with even more refinements compared to FRT 15 L2 Trigger. It is our SUPER LITE WEIGHT X Version and is a highly modified lightweight version that is the same as the Super Modified version, but it also has a custom lightweight hollowed hammer and a custom hollowed trip sear, in addition to having all 3 springs replaced with performance stainless steel.

Shop Now

# Best Sellers








Rare Breed FRT 15 Trigger    Rare Breed FRT 15 E3 Trigger
**$295.00**    **$375.00**




Rare Breed FRT–15L3 Trigger    Rare Breed FRT–15L2 Trigger
**$450.00**    **$379.00**





Rare Breed FRT 3 Position Repair Kit

**$239.00**



▶ Liberty 1776

Rare Breed Triggers LLC is a company known for producing a range of innovative trigger products designed for AR-15-style rifles. Our products are primarily centered around their

Forced Reset Trigger (FRT) series, which includes various models.

The Rare Breed FRT Trigger is a Drop–In Trigger that can be purchased from us at wholesale prices online 1/4" Wide Hammer, Rare Breed Trigger, and Locking Bar 7075–T6 Aluminuim Housing. Precision Wire EDM Cut. Black Nitrite QPQ Finish. Includes Anti Walk Pins. Standard shipments arrive at your doorstep unopened and also direct from our warehouse. It's corners are hand–cut and will undergo additional work to ensure that it has superior spring rapid fire reliability.

Rare breed trigger →



https://rarebreedtriggercs.com/



# Installation Process

Installing the FRT-15 Trigger is straightforward, but it's crucial to follow the steps carefully to ensure proper functionality and safety. Here's a step-by-step guide:

Safety Precautions: Always ensure the firearm is unloaded and the safety is engaged before beginning any installation.

Removal of Old Trigger: Carefully remove the existing trigger assembly, taking note of the placement of any springs or pins.

Installation of FRT-15: Align the FRT-15 trigger assembly and secure it in place using the provided pins and screws.

Functionality Testing: After installation, test the trigger for proper function, ensuring it resets correctly and operates smoothly.

If you need help with this process, you can either contact your local gunsmithing service or have us do it for you by obtaining our RARE BREED COMPLETE UPGRADE SERVICE.

Rare breed trigger →

# Our Benefits

 **Money-Back Guarantee**                ⌄



### Payments

### Express Delivery

### Free Returns

---

★★★★★                                              **John M**

I've been using triggers from various stores, but nothing compares to the FRT-15 triggers from this shop. The quality is top-notch, and the responsiveness is exceptional. Installation was a breeze, and it feels like a game-changer. Highly recommend!

★★★★

After mont
15L3 trigger
and the trig
improves th
more!

# Location

### Our address

Colorado Springs, CO 80910

Get directions ◈

https://rarebreedtriggercs.com/

## Contact info

sales@rarebreedtriggerus.com

# EXHIBIT 5
# Part 1

1/9/26, 6:34 PM

Case MDL No. 3218 Bread Triggers v Partisan Triggers legal battle - Page 2 of 76 ... Firearm Discussion and Resources from AR-15, AK-47, Handguns and more > General Discussion

1/33

Modern ⌄



⌂ Home (/) / General (/forums/b/1_General.html) /
General Discussion (/forums/f_1/5_General-Discussion.html)

**Shortest and Lightest 1-10x LPVO | Vortex AMG (https://youtu.be/QuJmcxLMuZM)**

**Rare Breed Triggers v Partisan Triggers legal battle (/forums/topic.html?**
**b=1&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle)** (Page 1 of 3)

< Previous
  Page

[ 1 ⌄ ] / 3

Next  > (/forums/General/Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle/5-2828908/?
Page     page=2)

1/7/2026 12:36:11 AM EST

[Last Edit: PartisanTriggers]



**PartisanTriggers**
**(https://ar15.com/member/user.html?**
**id=608514)**

Freedom Accelerated

Joined: Jun 2025      Posts: 88
EE: 0% (0)              USA


(/)

Partisan Triggers previously introduced ourselves
here. (https://www.ar15.com/forums/general/It-is-time-for-an-
introduction-Edit-Nominate-charities-now-/5-2813452/)

In it, we detailed our preparations for the inevitable lawsuit from
Rare Breed Triggers/ABC IP (RBT). As many know, RBT named us as
a John Doe d/b/a Partisan Triggers in an Arizona suit filed December
23, 2025. They've also sued Cloak Industries in Idaho, and we
expect more suits against our dealers.

As stated on our website, we oppose public/private partnerships
that exist only to your detriment.

RBT excels at bullying small companies, often run by young men
who have barely gotten their feet under them in life, through
aggressive lawfare to bankrupt and break them. It's easy to feel
invincible when facing under-resourced opponents while relying on
powerful allies. Rest assured, this won't work against us.

This week, we've shipped thousands of triggers to dealers, with
thousands more going out by week's end. Dealers are indemnified
under our substantial patent insurance policy—covering the
Disruptor alongside our upcoming releases, and worth multiples of
RBT's claimed millions in litigation costs from their prior lawsuits.
You and our dealers can trust we won't be bullied or back down.

We don't believe we've violated any valid patent. When we respond
to RBTs suit, we'll post the documents here for those interested. We
have no plans or need for donations; support us by spreading the
word or buying our triggers.

A certain famous former naval officer¹ once said:

"The wrong thing to do about any given circumstance or situation is
to do nothing."

We would like to ask you to do something. If you have useful
information on RBT (or related parties) for this lawsuit, PM us on
ARFCOM to share it. We feel very confident in our preparations, but
we are aware that there is always the possibility someone may know
something we've missed. We hope they see this and want to help.

We have new products coming out phased over the next weeks,
including maintenance kits, the Clone Lower Appropriate Pins (the
CLAP), military style one piece selectors, and  the LAT. We also have
several more triggers that are past the drawing board and into pre-
production prototyping.

We are here for the long haul, so strap in, folks—this may turn into a
wild ride.

Thumbs up, let's do this.



(https://i.guim.co.uk/img/media/836fc5a8a5b50dde76ae4f9ac3
9355b5e33c6d9c/0_768_5100_3060/master/5100.jpg?
width=1200&height=900&quality=85&auto=format&fit=crop&s=
c87af4d12l9ad0d8b91b034f0cdaf7l)

"L. Ron Hubbard, maybe better known for other works

(/forums/topic.html?b=1&f=5&t=2828908&t1=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i1156766676)

1/7/2026 12:38:49 AM EST

[#1]

AN APPEAL TO HEAVEN ○



**Southernman077**
**(https://ar15.com/member/user.html?
id=94863)**

★ Oh, I'm a Good Ol' Rebel

Joined: Mar 2006          Posts: **36042**
EE: **0% (0)**            TN, USA





(https://external-
preview.redd.it/33Zg9n3cj2fdcPYBn8GiUGnZuspYOSdcnKxFEuP
G9w0.jpg?
auto=webp&s=58978e977759cc0b7cd3cd509e9b672558930c
c)

"America is a a whorehouse where the revolutionary ideals of your

"forefathers are corrupted and sold in alleys by vendors of capitalism."



**jtb33 (https://ar15.com/member/user.html?id=42132)**

★ Member

Joined: Jun 2003
EE: **100% (191)**

Posts: **13053**
AZ, USA

🔗 (/forums/topic.html?b=1&f=5&t=2828908&t=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i115676708)
1/7/2026 12:44:30 AM EST

[Last Edit: jtb33]   [#2]

Oh boy....



(https://media2.giphy.com/media/2GigvS5vA6y08/200.webp?cid=8dc8958cpazoo3zmrfnzsnz8lp87eezpkqnacu4wx8vh81sz&ep=v1_gifs_search&rid=200.webp&ct=g).

https://www.ArizonaShooting.org (https://www.ArizonaShooting.org)



BEST DEALS, UPDATED DAILY — PALMETTO STATE ARMORY — SHOP NOW!



**Aimless (https://ar15.com/member/user.html?id=145563)**

⚙ Suburban pot bellied snow chicken

Joined: **Sep 2001**   Posts: **325677**

🔗 (/forums/topic.html?b=1&f=5&t=2828908&t=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i115676720)
1/7/2026 12:47:35 AM EST

[#3]

There's a "super safety legal defense" gofundme that I assume is about defending these rare breed lawsuits.

Getting sued is probably 4th after illness, criminal charges and divorce for awful things that can happen to someone. Even if the lawsuit is weak it's still money and months of stress.

1/9/26, 6:34 PM

Case MDL No. 3186 Document 1-45 Filed 01/13/26 Page 6 of 76 Rare Breed Triggers v Partisan - legal battle - AR15.COM Discussion Forums

EE: **100% (47)**
UT, USA
(/)



**ChuckD05**
(https://ar15.com/member/user.html?
id=215078)
⭐ Member

Joined: **Aug 2009**
EE: **100% (65)**

Posts: **24645**
WV, USA

🔗
(/forums/topic.html?b=1&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i156776734)
**1/7/2026 12:50:26 AM EST**

[#4]

In for a LAT when it drops

---



**mooreshawnm**
(https://ar15.com/member/user.html?
id=116375)
⭐ Member

Joined: **Feb 2007**
EE: **100% (1)**

Posts: **25398**
WY, USA

🔗
(/forums/topic.html?b=1&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i156776777)
**1/7/2026 1:01:45 AM EST**

[#5]

Send the next batch to Optics Planet! 🔫

---

China delenda est

**MEMBER**

🔗
(/forums/topic.html?b=1&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i156776804)
**1/7/2026 1:09:41 AM EST**

[Last Edit: HKPDW]   [#6]

**HKPDW**
(https://ar15.com/member/user.html?id=19106)

★

Joined: Jan 2002    Posts: 11132
EE: 100% (32)    MOZ

Rare Greed is now the de facto legal enforcement arm of the Gay TF...

Hope they don't f up my Optics Planet order...

🔗 (/forums/topic.html?b=1&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i1156776812)
**1/7/2026 1:14:41 AM EST**

[#7]



**PartisanTriggers**
(https://ar15.com/member/user.html?id=608514)

🏳️ Freedom Accelerated

Joined: Jun 2025    Posts: 89
EE: 0% (0)    USA



💬 ↩ Quote History

Originally Posted By HKPDW:

Rare Greed is now the de facto legal enforcement arm of the Gay TF...

Hope they don't f up my Optics Planet order...

Optics Planet knows we have them covered. 🤓

🔗 (/forums/topic.html?b=1&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i1156776817)
**1/7/2026 1:15:48 AM EST**

[#8]



**FreefallRet**
(https://ar15.com/member/user.html?

**id=20956)**

Retired

Joined: Mar 2002
EE: 100% (185)

Posts: 84695
NC, USA

🔗 **Quote History**

Originally Posted By PartisanTriggers:

Optics Planet knows we have them covered. 😎






(/forums/topic.html?b=1&f=5&t=28289088ti=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i1156776832)

**1/7/2026 1:22:16 AM EST**

[#9]

---

**jimhoff
(https://ar15.com/member/user.html?
id=171676)**

⭐ Achin' Membah

Joined: Sep 2008
EE: 100% (7)

Posts: 19017
AK, USA

🔗 **Quote History**

Originally Posted By Aimless:

Getting sued is probably 4th after illness, criminal charges and
divorce for awful things that can happen to someone. Even if
the lawsuit is weak it's still money and months of stress.

Some people have the temperament for battles. Sounds like these
guys do. Rock on!

---

Announcing your plans is a good way to hear God laugh

-Al Swearengen

(/forums/topic.html?b=1&f=5&t=28289088ti=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i1156776954)

**1/7/2026 2:17:50 AM EST**

[#10]

**AR4U
(https://ar15.com/member/user.html?
id=52600)**



I hope you ruin them. It certainly appears you've planned this out
well.



Tested Things
(/)

⭐

Joined: May 2004    Posts: **35933**

EE: **0% (0)**    NC, USA



MEMBER

**Justinandfreyja (https://ar15.com/member/user.html?id=608374)**

⭐

Joined: Jun 2025    Posts: **1587**

EE: **100% (37)**    UT, USA

---

⸂

(/forums/topic.html?b=1&f=5&t=28289088t1=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i115676972)

**1/7/2026 2:21:25 AM EST**

[Last Edit: Justinandfreyja]    [#11]

"During the second 100 days, we will design, build and open a library dedicated to my first 100 days." -Barack Obama, May 9 2009

I bought three the first night from battlehawk to support yall, you don't have anything to do with shield arms do you? Because they sent out a sticker about Partisans a year or so ago. You operate in the same state so I figured you guys might.

ETA:



(https://i.postimg.cc/6qtxyJpk3/IMG-5719.jpg)

⸂

(/forums/topic.html?b=1&f=5&t=28289088t1=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i115677198)

**1/7/2026 4:28:04 AM EST**    [#12]



**raven**
**(https://www.ar15.com/member/user.html?id=421774)**

⭐ Member

Joined: **Jan 2015**     Posts: **2721**
EE: **100% (104)**       LA, USA



(https://media1.tenor.com/m/bCMJkp3suZ4AAAAd/sean-penn-awardee.gif)

🔗 (/forums/topic.html?b=1&f=5&t=2828908&t=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i1156772119)

**1/7/2026 4:51:18 AM EST**

[#13]

---

**InflectionPoint**
**(https://www.ar15.com/member/user.html?id=81419)**

⭐

Joined: **Sep 2005**    Posts: **25320**
EE: **100% (64)**       USA



💬 ↩ **Quote History**

Originally Posted By JustinandFreyja:

I bought three the first night from battlehawk to support yall, you don't have anything to do with shield arms do you? Because they sent out a sticker about Partisans a year or so ago. You operate in the same state so I figured you guys might.

ETA:
**https://i.postimg.cc/6qkyJpk3/IMG-5719.jpg**
**(https://i.postimg.cc/6qkyJpk3/IMG-5719.jpg)**

I hope not.  Shield Arms mags and their multiple magazine release iterations and "It's just tolerance stacking!" was such a disappointment.  Thank God for PSA micro dagger mags!

🔗

(/forums/topic.html?b=1&t=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i1156677260)

**1/7/2026 5:32:22 AM EST**

[#14]



**Glocked**
**(https://ar15.com/member/user.html?**
**id=483179)**

⭐ Armed Autist

Joined: **May 2018**
EE: **100% (35)**

Posts: 22495
MS, USA

💬 ↩ Quote History

Originally Posted By Justinandfreyja:

I bought three the first night from battlehawk to support yall,
you don't have anything to do with shield arms do you?
Because they sent out a sticker about Partisans a year or so
ago. You operate in the same state so I figured you guys
might.

ETA:
**https://i.postimg.cc/6qkyJpk3/IMG-5719.jpg**
**(https://i.postimg.cc/6qkyJpk3/IMG-5719.jpg)**

Might just be a reference to SA's Partisan line of slings.

Not everyone gets to be an astronaut, the world needs pole dancers too.
–Observer

🔗 (/forums/topic.html?b=1&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i1156677408)

**1/7/2026 6:46:41 AM EST**

[#15]



**alphajaguars**
**(https://ar15.com/member/user.html?**
**id=1245)**

⭐ Shitpost Crew

Joined: **Jan 2001**
EE: **100% (28)**

Posts: 354533
NC, USA

OST for the ride

I wasn't put in jail for what I did. I was put in it for what I think... They won
by making a DC jury scared that people like YOU AND I exist outside of
their liberal bubble.
–trobertson5-0

🔗 (/forums/topic.html?b=1&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i1156677450)

1/9/26, 6:34 PM

Case MDL No. 3176 Document 14 Filed 01/13/26 Page 1 of 33 Rare Breed Triggers v Partisan Triggers - Legal battle - AR15.COM Discussion

[##]

11/33



**Badlatitude (https://ar15.com/member/user.html?id=196498)**

⭐ Member

Joined: Feb 2009
EE: 100% (1)

Posts: 40087
VT, USA

1/7/2026 6:59:08 AM EST

I'm sure you launched knowing this was going to happen and already had a plan in place. There is nothing more satisfying than leading a bully into a situation while giving them the rope and the ladder to hang themselves. The best part is they are usually so overconfident they don't even realize its a trap until they are already stuck.

[#17]



**Torque556 (https://ar15.com/member/user.html?id=193868)**

⭐ Member

Joined: Feb 2009
EE: 100% (1)

Posts: 8745
USA

(/forums/topic.html?b=1&f=5&t=2828908&ti=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i15677460)
1/7/2026 7:04:08 AM EST

Fuck RBT.

[#18]



**Coffin-Nail (https://ar15.com/member/user.html?id=54712)**

⭐

(/forums/topic.html?b=1&f=5&t=2828908&ti=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i15677498)
1/7/2026 7:14:21 AM EST

It's really unfortunate that this will take years to litigate. I just hope it's close to resolved under the current administration because who knows what the future holds.

MEMBER



**Ackrite**
**(https://ar15.com/member/user.html?**
**id=2739443)**
⭐

Joined: Jun 2011
EE: 100% (5)
Posts: 1104
KY, USA

🔗
(/forums/topic.html?b=1&f=5&t=2828908&ti=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i15677513)
**1/7/2026 7:18:00 AM EST**

[#19]

What role did Partisan Triggers play in the current legal status of
FRT triggers in general? How deep in the trenches were you guys
and how much of your personal wealth and potential freedom was
put on the line to ensure the masses can use FRT's without the
boogeyman looking over their shoulder?

I'm sure it's easy to hate on RBT after the fact when the settlement
ended up being what it was.

I have no relation to RBT, but it's funny to see all the love they
received during the fight they put up turn to hate after some legal
compromises to finally end the saga.

Flame away.



**Firestarter123**
**(https://ar15.com/member/user.html?**
**id=128059)**
⭐ The original Murder Bunny®

Joined: Jun 2007     Posts: 22668
EE: 100% (151)      NE, USA

🔗
(/forums/topic.html?b=1&f=5&t=2828908&ti=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i15677568)
**1/7/2026 7:30:13 AM EST**

[#20]

I really have no use for or desire to own an FRT, however, I just
ordered a couple from Optics Planet just because FRBT.

🔗

MEMBER



**Torque556**
**(https://ar15.com/member/user.html?**
**id=193868)**

★ Member

Joined: Feb 2009         Posts: 8746
EE: **100% (1)**              USA

---

⚫ **Quote History**

↩ Originally Posted By Ackrite:

What role did Partisan Triggers play in the current legal status of FRT triggers in general? How deep in the trenches were you guys and how much of your personal wealth and potential freedom was put on the line to ensure the masses can use FRT's without the boogeyman looking over their shoulder?

I'm sure it's easy to hate on RBT after the fact when the settlement ended up being what it was.

I have no relation to RBT, but it's funny to see all the love they received during the fight they put up turn to hate after some legal compromises to finally end the saga.

Flame away.

What does that have to do with anything in this thread? Please provide specifics.

(/forums/topic.html?b=1&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i156777752)
1/7/2026 7:53:14 AM EST

[#21]

---



**TampaTyron**
**(https://ar15.com/member/user.html?**
**id=41173)**

★

Joined: May 2003        Posts: 458
EE: 0% (0)                   AZ, USA

🔗 (/forums/topic.html?b=1&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i156778151)
1/7/2026 8:00:50 AM EST

[#22]

Would/could it make sense for RareBreed to "license" their patent to other manufacturers for a reasonable amount? That would require everyone to "agree" it is their design, etc.

However, a small fee of $1-10 per trigger license could solve this, right?

RareBreed gets compensated for their ATF fight, meets the ATF requirement of defending their patent, and other manuf get their products to market. No lawsuits, everyone makes money.

But, I am a simple person. The world rarely works like I want it to.

TT



(/)

🔗 (/forums/topic.html?b=1&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i115677831)

**1/7/2026 8:02:35 AM EST**

[#23]

Good luck

**P1pe
(https://ar15.com/member/user.html?
id=595885)**



★ Member

Joined: **Apr 2024**    Posts: **984**
EE: **100% (12)**    MD, USA

---

🔗 (/forums/topic.html?b=1&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i115677994)

**1/7/2026 8:22:19 AM EST**

[#24]

Classic Tag Scribe!

**TZLVredmist
(https://ar15.com/member/user.html?
id=47383)**

🏅

It's not broke... Just badly bent.

Joined: **Dec 2003**    Posts: **13739**
EE: **100% (30)**    ID, USA

---

🔗 (/forums/topic.html?b=1&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i115678043)

**1/7/2026 8:27:52 AM EST**

[#25]

Other than Optics Planet, where else are these products available?

**Kiju
(https://ar15.com/member/user.html?
id=476019)**

MEMBER

★



1/9/26, 6:34 PM

Case MDL No. 3176 Breed Document 14 FilerFiled Rare 01 Triggers 11/26/26 Partisan-Triggers 1 of 33 Discuss Page > AR15.COM

15/33





Joined: **Dec 2017**    Posts: **7966**
EE: **100% (1)**    KY, USA
(/)

**ChaosSquared**
**(https://ar15.com/member/user.html?**
**id=177685)**
★
**Member**

Joined: **Nov 2008**    Posts: **5465**
EE: **100% (1)**    OH, USA



(/forums/topic.html?b=1&f=5&t=2828908&ti=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i15678047)
**1/7/2026 8:28:02 AM EST**

[Last Edit: guns762]    [#26]

💬 ← **Quote History**

Originally Posted By Ackrite:

What role did Partisan Triggers play in the current legal status
of FRT triggers in general? How deep in the trenches were
you guys and how much of your personal wealth and potential
freedom was put on the line to ensure the masses can use
FRT's without the boogeyman looking over their shoulder?

I'm sure it's easy to hate on RBT after the fact when the
settlement ended up being what it was.

I have no relation to RBT, but it's funny to see all the love they
received during the fight they put up turn to hate after some
legal compromises to finally end the saga.

Flame away.


[Deleted]If rare breed had simply settled and moved on with their
lives and sold triggers, no one would have batted an eye.

Instead, they are choosing to sue everyone and anyone that sells
any form of FRT. They are claiming to have a patent on ALL FRT
tech. They are rancid cunts of the highest order

[#27]



(/forums/topic.html?b=1&f=5&t=2828908&ti=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i15678121)
**1/7/2026 8:36:07 AM EST**

1/9/26, 6:34 PM

Case MDL No. 3176 Greed Document 14 Triggers-Filed 01/13/26 Dischage 1 Ar of ... Partisan Triggers legal battle DiscPage 1Ar of Com

16/33




**TheOtherDave**
(https://www.ar15.com/member/user.html?
id=48873)

⭐ Member

Joined: Jan 2004
EE: **100% (9)**

Posts: **55436**
MI, USA

💬 **Quote History**

Originally Posted By TampaTyron:

Would/could it make sense for RareBreed to "license" their patent to other manufacturers for a reasonable amount? That would require everyone to "agree" it is their design, etc.

However, a small fee of $1-10 per trigger license could solve this, right?

RareBreed gets compensated for their ATF fight, meets the ATF requirement of defending their patent, and other manuf get their products to market. No lawsuits, everyone makes money.

But, I am a simple person. The world rarely works like I want it to.

TT

I'm would guess that, based on Rare Greed's actions post-settlement that *if* they were to make a licensing deal at all it would still involve keeping customer lists for future disposition once Congress acts on FRT's and puts them on the NFA Registry.

The settlement mechanism seems geared toward frustrating the market for FRT's on the buying end by making them sole source from a company that is now keeping records where they weren't before. As a defense to losing the rights they gained under the settlement, they (Rare Greed) have to defend their patent, which further frustrates and suppresses the market. As mentioned in the OP, most of the manufacturers up to this point who have been sued (not counting Rare Greed apparently suing themselves to scare everyone off with a legal "victory") have been small time dudes working out of their house by having the open source Super Safety 3D printed in metal and plastic before putting them in retail packaging and shipping them. It's not hard to sic lawyers on a working stiff who has a side business like this. Partisan will be a tougher nut to crack.

Bleeding people out with lawsuits goes both ways, Rare Greed better sell a lot of triggers...

Again, Rare Greed's deal with the DOJ very much appears to be designed to limit the number of FRT's on the market by creating a sole control point from which they can be acquired that keeps

records. Given the scourge that Glock Switches have been in our cities, and that the crowd using them have discovered FRT's and have the same capability legally now, you can expect the government to address the issue sooner or later.

---


(/)


○

**TheOtherDave**
**(https://ar15.com/member/user.html?**
**id=48873)**
⭐
Member

Joined: Jan 2004      Posts: 55437
EE: **100% (9)**          MI, USA

Never make another person a priority when they merely see you as an option....

"Some People Are Like Slinkies. They're Not Really Good For Anything, But They Bring a Smile To Your Face When Pushed Down The Stairs."

[Last Edit: guns762]      [#28]

🔗
(/forums/topic.html?b=1&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i15678132)
**1/7/2026 8:37:14 AM EST**

They have to sue. They made a deal with the devil and have a short window to make/recoup their money.

---


○

**tac556**
**(https://ar15.com/member/user.html?**
**id=23705)**
⭐
Member

Joined: Jun 2002      Posts: 11591
EE: **100% (98)**         USA

Never make another person a priority when they merely see you as an option....

"Some People Are Like Slinkies. They're Not Really Good For Anything, But They Bring a Smile To Your Face When Pushed Down The Stairs."

[#29]

🔗
(/forums/topic.html?b=1&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i15678217)
**1/7/2026 8:46:956 AM EST**

Well I can't help, since your lawyers incorrectly think they would be illegal here. Gonna have to try an Arc Fire for a throw lever type apparently - Looks like their lawyers can actually read....

---

a loaded gun won't set you free, so you say...



**jaqufrost**
**(https://ar15.com/member/user.html?**
**id=57761)**

⭐ Member

Joined: **Sep 2004**
EE: **100% (114)**

Posts: **64890**
OK, USA

🔗 (/forums/topic.html?b=1&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i156782696)

1/7/2026 8:56:47 AM EST

[#30]

Originally Posted By TampaTyron:

Would/could it make sense for RareBreed to "license" their
patent to other manufacturers for a reasonable amount? That
would require everyone to "agree" it is their design, etc.

However, a small fee of $1-10 per trigger license could solve
this, right?

RareBreed gets compensated for their ATF fight, meets the
ATF requirement of defending their patent, and other manuf
get their products to market. No lawsuits, everyone makes
money.

But, I am a simple person. The world rarely works like I want it
to.

TT

That would make sense if RareBreed had a valid patent. But many
(perhaps all) of RareBreed's patents are invalid. There are earlier
patents and some of those are owned/licensed by Partisan now.



MEMBER

**deevil**
**(https://ar15.com/member/user.html?**
**id=241137)**

⭐

Joined: **Apr 2010**
EE: **100% (1)**

Posts: **2866**
SC, USA

🔗 (/forums/topic.html?b=1&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i156778323)

1/7/2026 9:00:08 AM EST

[#31]

I just bought two more triggers, even though the one I already
bought seems to have been lost by UPS.

1/9/26, 6:34 PM






**tac556
(https://ar15.com/member/user.html?
id=23705)**

⭐ Member

Joined: Jun 2002          Posts: 11593
EE: 100% (98)            USA

🔗 (/forums/topic.html?b=1&f=5&t=2828908&t=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i15678349)

**1/7/2026 9:02:25 AM EST**                                    [#32]

💬 🔙 Quote History

Originally Posted By jaqufrost:

That would make sense if RareBreed had a valid patent. But
many (perhaps all) of RareBreed's patents are invalid. There
are earlier patents and some of those are owned/licensed by
Partisan now.

Yeah I think those patents are a bunch of BS.  When all is said and
done, RB actually would have been better off to go for say a $5
licensing fee per FRT.  That would be enforcing their patent per the
agreement, and cost little enough for anyone else to not just pay
them.  Pretty much being a patent troll, but keeping the dollar
amount low enough that it would be just cheaper to pay them vs
fighting it out.

And they would not have lost all the good will they had after the
work they did. They just shot themselves in the foot, right after
stepping across the finish line.  Kind of dumb...

a loaded gun won't set you free, so you say...

🔗 (/forums/topic.html?b=1&f=5&t=2828908&t=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i15678353)

**1/7/2026 9:03:05 AM EST**                        [Last Edit: deevil]   [#33]



**deevil
(https://ar15.com/member/user.html?
id=241137)**

⭐ Member

Joined: Apr 2010          Posts: 2867
EE: 100% (1)             SC, USA


(/)

Originally Posted By Kiju:

Other than Optics Planet, where else are these products
available?

**https://cloak-industries.com (https://cloak-industries.com) and
https://battlehawkarmory.com
(https://www.avantlink.com/click.php?
tt=cl&mi=100488pw=234121&ctc=241137&url=https%3A%2F%2F
battlehawkarmory.com)**
have them in stock.

---



**constitutionlvr
(https://ar15.com/member/user.html?
id=61734)**

★
Heartless libertarian

Joined: Oct 2004        Posts: 5759
EE: 0% (0)                    TN, USA

🔗
(/forums/topic.html?b=1&f=5&t=2828908&i=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i15678376)
**1/7/2026 9:05:48 AM EST**

[#34]

Bought a Partisan the 15th when they released, sadly still not
installed.  Will buy the LAT when it drops.  I may not have the funds
to be a major player but believe it's my patriotic duty to buy as many
FRTs as I can to help with the common use numbers.  I've put off
purchasing firearms I want in order to prioritize FRTs and honestly so
should everyone else.  This is our moment in history. Do what you
can.

---

I carry, because I cherish life.

Team Ranstad

---



**ricky_45
(https://ar15.com/member/user.html?
id=54873)**

★
Member

Joined: Jul 2004        Posts: 19771

🔗
(/forums/topic.html?b=1&f=5&t=2828908&i=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i15679123)
**1/7/2026 10:28:36 AM EST**

[#35]

Wouldn't mind buying one if it was cash and carry.

EE: 100% (59)
(/)

GA, USA

NorCal callsign "Boogaloo"

MEMBER

robertmegar
(https://ar15.com/member/user.html?
id=26503)
★

Joined: Sep 2002     Posts: 10070
EE: 100% (35)     FL, USA

🔗
(/forums/topic.html?b=1&f=5&t=2828908&t=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i15679254)
1/7/2026 10:39:23 AM EST

[#36]



Originally Posted By PartisanTriggers:

Partisan Triggers previously introduced ourselves **here. (https://www.ar15.com/forums/general/it-is-time-for-an-introduction-Edit-Nominate-charities-now-/5-2813452/)**

. In it, we detailed our preparations for the inevitable lawsuit from Rare Breed Triggers/ABC IP (RBT). As many know, RBT named us as a John Doe d/b/a Partisan Triggers in an Arizona suit filed December 23, 2025. They've also sued Cloak Industries in Idaho, and we expect more suits against our dealers.

As stated on our website, we oppose public/private partnerships that exist only to your detriment.

RBT excels at bullying small companies, often run by young men who have barely gotten their feet under them in life, through aggressive lawfare to bankrupt and break them. It's easy to feel invincible when facing under-resourced opponents while relying on powerful allies. Rest assured, this won't work against us.

This week, we've shipped thousands of triggers to dealers, with thousands more going out by week's end. Dealers are indemnified under our substantial patent insurance policy—covering the Disruptor alongside our upcoming releases, and worth multiples of RBT's claimed millions in litigation costs from their prior lawsuits. You and our dealers can trust we won't be bullied or back down.

We don't believe we've violated any valid patent. When we respond to RBT's suit, we'll post the documents here for those interested. We have no plans or need for donations; support us by spreading the word or buying our triggers.

A certain famous former naval officer' once said:

"The wrong thing to do about any given circumstance or situation is to do nothing."

We would like to ask you to do something. If you have useful information on RBT (or related parties) for this lawsuit, PM us on ARFCOM to share it. We feel very confident in our preparations, but we are aware that there is always the possibility someone may know something we've missed. We hope they see this and want to help.

We have new products coming out phased over the next weeks, including maintenance kits, the Clone Lower Appropriate Pins (the CLAP), military style one piece selectors, and the LAT. We also have several more triggers that are past the drawing board and into pre-production

1/9/26, 6:34 PM

Case MDL No. 3176 Breed Triggers Event 14 Rare Breed Triggers v Partisan Filed 01/12/26 Discharge 24 of 33M Page 2 of 277



(/)

prototyping.

We are here for the long haul, so strap in, folks—this may turn into a wild ride.

Thumbs up, let's do this.

**https://li.guim.co.uk/img/media/836fc5a8a5b50dde76ae4f9ac39355b5e33c6d9c/0_768_5100_3060/master/5100.jpg?**
**width=1200&height=900&quality=85&auto=format&fit=cro p&s=c87af4d12f9ad0d8b91b0364f0cdaf71**
(https://li.guim.co.uk/img/media/836fc5a8a5b50dde76ae4f9ac39355b5e33c6d9c/0_768_5100_3060/master/5100.jpg?
**width=1200&height=900&quality=85&auto=format&fit=cro p&s=c87af4d12f9ad0d8b91b0364f0cdaf71)**
'L. Ron Hubbard, maybe better known for other works

If you don't ship to FL, you ARE forcing me to support Rare Breed. Grow some balls and ship to FL, it's legal, the law is unenforceable.

(/forums/topic.html?b=t&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i156793272)
**1/7/2026 10:40:35 AM EST**

[#37]



**Hking**
**(https://ar15.com/member/user.html?**
**id=363844)**
★
Member

Joined: **Aug 2013**
EE: **100% (20)**
Posts: **15288**
SD, USA

As I posted in the SHOT Show thread, I will pay anyones bar tab and bail money that takes a giant steamy hangover shit in the middle of the Rare Breed booth if they even have one.

(/forums/topic.html?b=t&f=5&t=2828908&tl=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i156793304)
**1/7/2026 10:42:51 AM EST**

[#38]



**Kuraki**
**(https://ar15.com/member/user.html?**
**id=125898)**

⭐ Space Cadet

Joined: **May 2007**
EE: **100% (227)**

Posts: 62046
WI, USA

## ⚙ ↩ Quote History

Originally Posted By Aimless:

There's a "super safety legal defense" gofundme that I assume is about defending these rare breed lawsuits.

Getting sued is probably 4th after illness, criminal charges and **divorce** for awful things that can happen to someone. Even if the lawsuit is weak it's still money and months of stress.

Eye of the beholder there.



**Kuraki**
**(https://ar15.com/member/user.html?**
**id=125898)**

⭐ Space Cadet

Joined: **May 2007**
EE: **100% (227)**

Posts: 62047
WI, USA

🔗 (/forums/topic.html?b=1&f=5&t=2828908&ll=Rare-Breed-Triggers-v-Partisan-Triggers-legal-battle#i1156793322)
**1/7/2026 10:44:44 AM EST**

[#39]



**NvrBrdWes
(https://ar15.com/member/user.html?
id=567831)**

ARFCOM's CHO

Joined: Aug 2022
EE: 0% (0)

Posts: 4108
FL, USA



## Quote History

Originally Posted By Ackrite:

What role did Partisan Triggers play in the current legal status of FRT triggers in general? How deep in the trenches were you guys and how much of your personal wealth and potential freedom was put on the line to ensure the masses can use FRT's without the boogeyman looking over their shoulder?

I'm sure it's easy to hate on RBT after the fact when the settlement ended up being what it was.

I have no relation to RBT, but it's funny to see all the love they received during the fight they put up turn to hate after some legal compromises to finally end the saga.

Flame away.

"Some legal compromises" and you're questioning their understanding of things? 





**(https://media4.giphy.com/media/FKhKMphSgp1Ac/200.webp?
cid=8dc8958cjg9hvo433b7s26oh99l8qms9zi2bot0k2fzx24v0&
ep=v1_gifs_search&rid=200.webp&ct=g).**

(/forums/topic.html?b=1&f=5&t=2828908&I=Rare-Breed-Triggers-v-Partisan-
Triggers-legal-battle#i115679345)
1/7/2026 10:47:25 AM EST

[#40]