# EXHIBIT 2

## *2:26cv54, Abc Ip, Llc Et Al V. Hush Distribution, Llc*

US District Court Docket

United States District Court, Texas Eastern

(Marshall)

**This case was retrieved on 01/22/2026**

## Header

**Case Number:** 2:26cv54
**Date Filed:** 01/22/2026
**Nature of Suit:** Patent (830)
**Cause:** Patent Infringement
**Lead Docket:** None
**Other Docket:** None
**Jurisdiction:** Federal Question

**Class Code:** Open
**Statute:** 35:271
**Jury Demand:** Plaintiff
**Demand Amount:** $0
**NOS Description:** Patent

## Participants

### Litigants

ABC IP, LLC
**Plaintiff**

Rare Breed Triggers, Inc.
**Plaintiff**

Hush Distribution, LLC
**Defendant**

### Attorneys

Matthew Alan Colvin
ATTORNEY TO BE NOTICED
Fish & Richardson P.C. - Dallas
1717 Main Street, Suite 5000
Dallas, TX  75201
USA
214-747-5070 Fax: 214-747-2091 Email:Colvin@fr.Com

Matthew Alan Colvin
ATTORNEY TO BE NOTICED
Fish & Richardson P.C. - Dallas
1717 Main Street, Suite 5000
Dallas, TX  75201
USA
214-747-5070 Fax: 214-747-2091 Email:Colvin@fr.Com

## Proceedings

| # | Date | Proceeding Text |
|---|------|-----------------|
| -- | 01/23/2026 | Case assigned to District Judge Rodney Gilstrap. (NKL) (Entered: 01/23/2026) |
| -- | 01/23/2026 | Case: ABC IP, LLC et al v. Hush Distribution, LLC was filed on 1/23/2026 and assigned to Judge Gilstrap. The  Notice Regarding Consent to Proceed Before Magistrate Judge form is provided via hyperlink. (NKL) (Entered: 01/23/2026) |
| 6 | 01/23/2026 | Summons issued as to Hush Distribution, LLC. (NKL) (Entered: 01/23/2026) |
| 1 | 01/22/2026 | COMPLAINT for Patent Infringement against Hush Distribution, LLC, filed by ABC IP, LLC, Rare Breed Triggers, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Civil Cover Sheet) (Counsel is reminded to file form required by LR CV-4(a).)(Colvin, Matthew) (Entered: 01/22/2026) |
| 2 | 01/22/2026 | Notice of Filing of Patent/Trademark Form (AO 120). AO 120 emailed to the Director of the U.S. Patent and Trademark Office. (Colvin, Matthew) (Entered: 01/22/2026) |

Abc Ip, Llc Et Al V. Hush Distribution, Llc

| # | Date | Proceeding Text |
|---|------|-----------------|
| 3 | 01/22/2026 | Fed. R. Civ. P. 7.1(a)(1) Disclosure Statement filed by ABC IP, LLC (Colvin, Matthew) (Entered: 01/22/2026) |
| 4 | 01/22/2026 | Fed. R. Civ. P. 7.1(a)(1) Disclosure Statement filed by Rare Breed Triggers, Inc. (Colvin, Matthew) (Entered: 01/22/2026) |
| 5 | 01/22/2026 | Request for Clerk to issue Summons filed by ABC IP, LLC, Rare Breed Triggers, Inc.. (Colvin, Matthew) (Entered: 01/22/2026) |

## Patents

| Number | Title | Issued | Class | Subclass |
|--------|-------|--------|-------|----------|
| 12,031,784 | Adapted forced reset trigger | 07/09/2024 | 1 | 1 |

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

**End of Document**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **ABC IP, LLC, a Delaware limited liability company,** | ) ) ) | CASE NO. _____ |
| **and** | ) | **JURY TRIAL DEMANDED** |
| **RARE BREED TRIGGERS, INC., a Texas corporation,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | |
| **HUSH DISTRIBUTION, LLC, a Texas limited liability company,** | ) ) ) | |
| **Defendant.** | ) ) | |

---

## COMPLAINT FOR PATENT INFRINGEMENT

---

This is an action for patent infringement in which ABC IP LLC ("ABC") and Rare Breed

Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse Hush Distribution, LLC ("Hush

Distribution" or "Defendant"), of infringing U.S. Patent Nos. 12,038,247 and 12,031,784 as

follows:

### **PARTIES**

1.      ABC is a limited liability company organized under the laws of the State of

Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.      Rare Breed is a Texas corporation having a place of business at 2710 Central

Freeway, Suite 150-151, Wichita Falls, TX 76306.

3.      Upon information and belief, Defendant Hush Distribution is a corporation located in Plano, Texas, with an established place of business at 305 W. Spring Creek Parkway, Suite 400B, Plano, Texas 75023.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 283-85.

5.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

6.      Personal jurisdiction over Defendant is proper in this District because the Defendant regularly conducts business in this District, and has therefore purposely availed himself of the privileges and benefits of the laws of the State of Texas.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendant has committed acts of infringement and has a regular and established place of business in this District.

## BACKGROUND

8.      This lawsuit asserts direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent") and 12,031,784 ("the '784 Patent") ("the Asserted Patents").

9.      The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '247 Patent is valid and enforceable. A true and correct copy of the '247 Patent is attached as Exhibit A.

10.    The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. Each and every claim of the '784 Patent is valid and enforceable. A true and correct copy of the '784 Patent is attached as Exhibit B.

11.    ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

12.    Rare Breed is the exclusive licensee of the Asserted Patents.

13.    Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

14.    Upon information and belief, Defendant has committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

## THE INVENTIONS

15.    A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than

the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

16.    In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

17.    In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

18.    The '247 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a forced reset semiautomatic mode and uses a cam, rotated by cycling of the action, to force the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

19.    The '784 Patent provides a device that works in a forced reset trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs,

in some embodiments, a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. Certain inventions of the '784 Patent overcome the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

20.    The claims of the patents define the scope of the patented inventions.

## THE INFRINGING DEVICE

21.    On information and belief, Defendant is currently making, using, selling, and/or offering for sale a (3-Position) "Super Safety" ("the Infringing Device"), which embodies the technology claimed in the Asserted Patents.

22.    The Infringing Device can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

23.    On information and belief, Defendant is making, using, selling, and/or offering for sale the Infringing Device via Defendant's physical storefronts.

## COUNT I – INFRINGEMENT OF THE '247 PATENT

24.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

25.    In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '247 patent, including but not limited to Claim 15, literally and/or under the doctrine of equivalents, by among other things,

making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '247 patent. Such unlicensed products include the Infringing Device.

26.     On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '247 patent, including but not limited to Claim 15, literally and/or under the doctrine of equivalents.

27.     An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent, when assembled and used as intended, is illustrated in the chart below:

| '247 Patent Claim 1 | Infringing Device (Super Safety) |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as a cam that in at least one mode, both forces the reset of the trigger and locks the trigger during the cycle of operation.<br><br><br><br>**Super Safety** |

| '247 Patent Claim 1 | Infringing Device (Super Safety) |
|---|---|
| |  **Super Safety** *See also,* Ex. C, Super Safety 3D Printed Active Trigger System v4.4, ("Super Safety Guide") at 12 |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Super Safety (Yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (Red) that has a sear catch and a hook for engaging a disconnector (Orange).  (Plaintiff-generated renderings of Super Safety here and below) |
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (Red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier. |

| '247 Patent Claim 1 | Infringing Device (Super Safety) |
|---|---|
| |  **(Hammer Set Position Above)** **(Hammer Released Position Above)** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Super Safety (Yellow) is installed with a trigger member (Brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions.  The trigger member |

| '247 Patent Claim 1 | Infringing Device (Super Safety) |
|---|---|
| | (Brown) has a sear.<br> |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are in engagement when the hammer and trigger member are in their set positions.<br><br>**(Trigger Member Set Position Above)** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are out of engagement in the released position. |

| '247 Patent Claim 1 | Infringing Device (Super Safety) |
|---|---|
|  |  **(Trigger Member Released Position Above)** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (Orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (Red). **(Disconnector Hook Engaged Above)** |
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket.  (*See* Image above depicting Super Safety, shown in yellow, in fire control mechanism pocket) |

| '247 Patent Claim 1 | Infringing Device (Super Safety) |
|---|---|
| |  **(Super Safety Cam with Lobe and Lever)** |
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position.<br><br>**(Cam and Lobe First Position Above)**<br>In the second position, the cam lobe forces the trigger member (Brown) toward the set position when the cam is in the forced reset semi-automatic mode. |

| '247 Patent Claim 1 | Infringing Device (Super Safety) |
|---|---|
| | <br><br>**(Cam and Lobe Second Position Above)** |
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode,<br><br> |
| said cam is in said first position, | the cam is in the first position.<br><br> |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook catches the hammer hook. |

| '247 Patent Claim 1 | Infringing Device (Super Safety) |
|---|---|
| and thereafter the bolt carrier moves forward into battery,<br><br><br><br><br>at which time a user must manually release said trigger member to free hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | <br>Thereafter, the bolt carrier moves forward into battery,<br><br>at which time a user must manually release the trigger member (Brown) to free said hammer (Red) from the disconnector (Orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |

| '247 Patent Claim 1 | Infringing Device (Super Safety) |
|---|---|
| |  |
| whereupon in a forced reset semi-automatic mode,<br><br><br><br>said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | When in the forced reset semi-automatic mode,<br><br><br><br>the cam is in the second position during the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook is prevented from catching the hammer hook. |

| '247 Patent Claim 1 | Infringing Device (Super Safety) |
|---|---|
| |  |
| and thereafter the bolt carrier moves forward into battery,<br><br><br><br><br><br><br><br><br>at which time the user can pull said trigger member to fire the firearm. | Thereafter, the bolt carrier moves forward into battery,<br><br><br><br>at which time the user can pull the trigger member (Brown) to fire the firearm. |

| '247 Patent Claim 1 | Infringing Device (Super Safety) |
|---|---|
| |  |

28.    On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including their customers, to directly infringe the '247 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing Device while selling products.

29.    On information and belief, Defendant knows or should know that such activities induce others to directly infringe one or more of at least Claim 15 of the '247 Patent.

30.    On information and belief, Defendants also contributes to the infringement of the '247 patent by others, including their customers. Acts by Defendant that contributes to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Defendant of the components of Infringing Device, such as the cam and cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and

adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '247 Patent.

31.    Defendant has engaged in egregious infringement behavior with knowledge of the '247 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that their actions constituted and continue to constitute infringement of the '247 Patent and that the '247 Patent is valid at least through the service and filing of this complaint.  Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '247 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities.  As such, Defendant willfully infringes the '247 Patent.

32.    By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the '247 Patent pursuant to 35 U.S.C. § 271.

33.    By its actions, Defendant's infringement of the '247 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

34.    By its actions, Defendant's infringement of the '247 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

35.    Defendant's infringement of the '247 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

36.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

37.     Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II–INFRINGEMENT OF THE '784 PATENT

38.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

39.     In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '784 patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '784 patent. Such unlicensed products include the Infringing Device.

40.     On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '784 patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents.

41.     An exemplary comparison of the Infringing Device with claim 1 of the '784 Patent, when assembled and used as intended, is illustrated in the chart below:

| '784 Patent Claim 1 | Infringing Device (Super Safety) |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as an extended trigger member locking device. |

| '784 Patent Claim 1 | Infringing Device (Super Safety) |
| --- | --- |
| | <br>**Super Safety**<br>*See also,* Ex. C, Super Safety Guide at 12 |

| '784 Patent Claim 1 | Infringing Device (Super Safety) |
|---|---|
|  |  **Super Safety Installed** (Plaintiff-generated renderings of Super Safety here and below; Locking member and bolt carrier shown here and below in section view for clarity) "The Super Safety is a mechanism that actively resets the trigger of a firearm to allow the operator to fire again, quickly, and efficiently.  The Super Safety has been designed to operate with AR-15 pattern firearms that use a mil-spec bolt carrier and fire control group." Ex. C, Super Safety Guide at 1. |
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Super Safety operates as a locking member and has a first position in which the Super Safety locks the trigger member against pulling movement. |

| '784 Patent Claim 1 | Infringing Device (Super Safety) |
|---|---|
|  |  **Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The Super Safety is moveable from the first position to a second position where it does not restrict movement of the trigger member.  **Unlocked Second Position** |
| the locking member configured to be movably supported by a frame | The Super Safety is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver). |

| '784 Patent Claim 1 | Infringing Device (Super Safety) |
|---|---|
| |  |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Super Safety has an upward extending portion (lever arm) configured to make actuating contact with a surface of the bolt carrier.  |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact causes the locking member to move from the first position to the second position. |

| '784 Patent Claim 1 | Infringing Device (Super Safety) |
|---|---|
| |  **Unlocked Second Position** |

42.    On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including their customers, to directly infringe the '784 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing Device while selling at its storefront.

43.    On information and belief, Defendants know or should know that such activities induce others to directly infringe one or more of at least claim 1 of the '784 Patent.

44.    On information and belief, Defendants also contributes to the infringement of the '784 patent by others, including their customers. Acts by Defendant that contributes to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Defendant of the components of Infringing Device, such as the cam and cam lever arm. The

components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '784 Patent.

45.    Defendant has engaged in egregious infringement behavior with knowledge of the '784 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that their actions constituted and continue to constitute infringement of the '784 Patent and that the '784 Patent is valid at least through the service and filing of this complaint.  Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '784 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities.  As such, Defendant willfully infringes the '784 Patent.

46.    By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the '784 Patent pursuant to 35 U.S.C. § 271.

47.    By its actions, Defendant's infringement of the '784 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

48.    By its actions, Defendant's infringement of the '784 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

49.    Defendant's infringement of the '784 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

50.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

51.    Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgement against Defendant as follows:

a.    Each of the Asserted Patents has been and continues to be infringed by Defendant;

b.    Defendant's infringement of each of the Asserted Patents has been, and continues to be, willful;

c.    Each of the Asserted Patents is enforceable and not invalid;

d.    A preliminary injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case, or other such equitable relief as the Court determines is warranted;

e.    A permanent injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents, or other such equitable relief as the Court determines is warranted;

f.    An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

g.      An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

h.      A finding that this action is an exceptional case under 35 U.S.C. § 285 and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

i.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED: January 22, 2026                    Respectfully submitted,

                                           */s/ Matthew A. Colvin*
                                           _____
                                           Matthew A. Colvin
                                           Texas Bar No. 24087331
                                           Carl E. Bruce
                                           Texas Bar No. 24036278
                                           **FISH & RICHARDSON P.C.**
                                           1717 Main Street, Suite 5000
                                           Dallas, TX 75201
                                           E-mail: colvin@fr.com
                                                      bruce@fr.com
                                           Tel: (214) 747-5070
                                           Fax: (214) 7472091

                                           Ben Christoff (DC Bar No. 1025635)
                                           **FISH & RICHARDSON P.C.**
                                           1001 Maine Avenue SW, Suite 1000
                                           Washington, DC 20024
                                           E-mail: christoff@fr.com
                                           Tel: (202) 783-5070
                                           Fax: (202) 783-2331

                                           Glenn D. Bellamy (pro hac vice forthcoming)
                                           **WOOD HERRON & EVANS LLP**
                                           600 Vine Street, Suite 2800
                                           Cincinnati OH 45202
                                           E-mail: gbellamy@whe-law.com
                                           Tel: (513) 707-0243
                                           Fax: (513) 241-6234

                                           *Attorneys for Plaintiffs*
                                           *ABC IP, LLC, and Rare Breed Triggers, Inc.*