# EXHIBIT 6

# *1:26cv18, Abc Ip Llc Et Al V. Peak Tactical, Llc Et Al*

US District Court Docket

United States District Court, Wyoming

(Casper)

**This case was retrieved on 01/16/2026**

## Header

| | |
|---|---|
| **Case Number:** 1:26cv18 | **Class Code:** Open |
| **Date Filed:** 01/15/2026 | **Statute:** 15:1126 |
| **Nature of Suit:** Patent (830) | **Jury Demand:** Plaintiff |
| **Cause:** Patent Infringement | **Demand Amount:** $0 |
| **Lead Docket:** None | **NOS Description:** Patent |
| **Other Docket:** None | |
| **Jurisdiction:** Federal Question | |

## Participants

### Litigants

### Attorneys

ABC IP LLC
**Plaintiff**

Travis W Koch
ATTORNEY TO BE NOTICED
KOCH LAW PC
Wyoming P.O. Box 2660
Cheyenne, WY  82003
USA
307-426-5010 Fax: 307-426-4927
Email:Tkoch@kochlawpc.Com

Rare Breed Triggers, Inc.
**Plaintiff**

Travis W Koch
ATTORNEY TO BE NOTICED
KOCH LAW PC
Wyoming P.O. Box 2660
Cheyenne, WY  82003
USA
307-426-5010 Fax: 307-426-4927
Email:Tkoch@kochlawpc.Com

Peak Tactical, LLC
**Defendant**
NICHOLAS NORTON
**Defendant**

## Proceedings

| # | Date | Proceeding Text |
|---|---|---|
| 1 | 01/15/2026 | COMPLAINT against All Defendants with Jury Demand. (Filing fee $ 405,Receipt Number AWYDC-2724915) Attorney Travis W Koch added to party ABC IP LLC(pty:pla), Attorney Travis W Koch added to party Rare Breed Triggers, Inc.(pty:pla), filed by ABC IP LLC, Rare Breed Triggers, Inc.. (Attachments: # 1 Exhibit Ex. A, # 2 Exhibit Ex. B, # 3 Exhibit Ex. C, # 4 Exhibit Ex. D, # 5 Exhibit Ex. E - Part 1, # 6 Exhibit Ex. E - Part 2, # 7 Exhibit Ex. F, # 8 Exhibit Ex. G, # 9 Exhibit Ex. H, # 10 Exhibit Ex. I - Part 1, # 11 Exhibit Ex. I - Part 2, # 12 Exhibit Ex. J, # 13 Civil Cover Sheet, # 14 Summons - Peak Tactical, LLC, # 15 Summons - N. Norton) (Koch, Travis) |

Abc Ip Llc Et Al V. Peak Tactical, Llc Et Al

| # | Date | Proceeding Text |
|---|------|-----------------|
|   |      | (Entered: 01/15/2026) |
| 2 | 01/15/2026 | CORPORATE DISCLOSURE filed by ABC IP LLC. (Koch, Travis) (Entered: 01/15/2026) |
| 3 | 01/15/2026 | CORPORATE DISCLOSURE filed by Rare Breed Triggers, Inc.. (Koch, Travis) (Entered: 01/15/2026) |

## Patents

| Number | Title | Issued | Class | Subclass |
|--------|-------|--------|-------|----------|
| 10,514,223 | Firearm trigger mechanism | 12/24/2019 | 1 | 1 |

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

**End of Document**

Nathan Nicholas, Wyo. Bar #7-5078
Travis W. Koch, Wyo. Bar # 7-5418
Koch Law, P.C.
P.O. Box 2660
Cheyenne, WY 82003
(307) 426-5010
(307) 426-4927 (fax)
tkoch@kochlawpc.com
nnicholas@kochlawpc.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas corporation, | ) ) ) ) | Case No. |
| *Plaintiffs*, | ) ) | |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| PEAK TACTICAL, LLC d/b/a PARTISAN TRIGGERS, a Wyoming limited liability company, | ) ) ) ) ) | |
| and | ) ) | |
| NICHOLAS NORTON, an individual, | | |
| *Defendants*. | | |

## COMPLAINT FOR PATENT INFRINGEMENT, FALSE PATENT MARKING, AND FALSE ADVERTISING

This is an action for patent infringement and false patent marking in which Rare Breed Triggers, Inc. ("Rare Breed") and ABC IP LLC ("ABC") (collectively, "Plaintiffs") accuse Peak Tactical, LLC d/b/a Partisan Triggers and its owner, Nicholas Norton (collectively, "Defendants"), of infringing U.S. Patent No. 10,514,223 ("the '223 Patent"); U.S. Patent No. 11,724,003 ("the '003 Patent"), 12,036,336 ("the '336 Patent"), and 12,274,807 ("the '807 Patent) (collectively,

1

"the Asserted Patents") and marking products with a false patent number for the purpose of deceiving the public, as follows:

## THE PARTIES

1.      Rare Breed is a corporation organized under the laws of the State of Texas with an address at 2710 Central Fwy, Suite. 150-151, Wichita Falls, TX 76306.

2.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, DE 19901.

3.      Upon information and belief, Peak Tactical, LLC d/b/a Partisan Triggers ("Peak"), is a Wyoming company that lists a principal office at 131 Franklin Plaza, Ste. 257, Franklin, N.C. 28734. Partisan Triggers is a d/b/a by Peak Tactical LLC in Wyoming.

4.      Upon information and belief, Nicholas Norton is an individual residing in Wyoming or North Carolina, and working in Wyoming, and is the owner of Peak Tactical, LLC.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(b), 281, and 283-85.

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

7.      Personal jurisdiction and venue over Defendants is proper in this District because Defendants reside in and/or have a place of business this district.  Nicholas Norton has availed himself of Wyoming's laws by owning a business in Wyoming with a principal address in

Wyoming.  Additionally, on information and belief Mr. Norton commits and directs infringing activities from Peak Tactical, LLC's principal place of business in Wyoming.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1400. Defendants reside in this district and/or have a regular and established place of business in this District.

## **BACKGROUND**

9.      This lawsuit asserts direct infringement of the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent ("the Asserted Patents"). True copies of the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent are attached hereto as Exhibits A, B, C, and D, respectively.

10.     The '223 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 24, 2019. Each and every claim of the '223 Patent is valid and enforceable.

11.     The '003 Patent was lawfully and properly issued by the United States Patent and Trademark Office on August 15, 2023. Each and every claim of the '003 Patent is valid and enforceable.

12.     The '336 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '336 Patent is valid and enforceable.

13.     The '807 Patent was lawfully and properly issued by the United States Patent and Trademark Office on April 15, 2025. Each and every claim of the '807 Patent is valid and enforceable.

14.     ABC is the owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

15.     Rare Breed is the exclusive licensee of the Asserted Patents.   Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

16.     Upon information and belief, Defendants have committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

17.     Upon information and belief, Defendants were aware that their acts were infringing and were, therefore, willful.

## THE INVENTIONS

18.     A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a standard disconnector AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of the bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces

4

pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

19.    In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user allows the trigger to reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages with the hammer before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

20.    In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and hold the trigger member in a locked state until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

21.    The '223 Patent describes and claims a device in which the cycling of the action displaces the hammer which causes the trigger member to forcefully reset the trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

22.    The '003 Patent, the '336 Patent, and the '807 Patent describe and claim a similarly operating device with the additional feature that allows it to be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) forced reset semiautomatic mode.

23.    The claims of the patents define the scope of the patented invention(s).

## THE INFRINGEMENT

24.     On information and belief, Defendants are currently making, using, selling, offering for sale, and/or importing a forced reset trigger assembly, which includes a three-position safety selector, known as the "Disruptor" ("the Infringing Device"), which embodies the technology claimed in the Asserted Patents.

25.     On information and belief, Defendants are making, using, selling, offering for sale, and/or importing the Infringing Device. In a thread on the forum AR15.com formed September 15, 2025, Defendants, *inter alia*, stated the following:

- "A large number of sales and reviewer samples have already gone out, including to a pretty well known guy who has posted in this thread."

- "Our full release is set to occur in time for the holidays, and in such quantities that you won't have to worry about back orders or whether you can find and receive a trigger in short order."

- "There will be a substantial number of units available on release day. Enough that we don't need to worry about throttling sales so that everyone can get one."

- "How many units are we getting ready to ship? A lot of them [showing picture depicting cards corresponding to the number of infringing products]."

- "Everything is set for [December 15, 2025]. Most of the retailers launching Monday are regional brick and mortar locations. There will be a major online retailer selling and shipping Monday, as well as several more major retailers as they receive their shipments throughout the week. We will post the online retailer shipping Monday at 0900 EST. You can also expect a number of review videos to go live Monday."

- "We are doing spot testing of our first full production run this week and early next."

- "More testing yesterday and today with Sig SPEAR-MCX and Light versions."

- "There are people unrelated to the project who have attested in this very thread to getting the opportunity to test fire the trigger that is being released at various events, and we haven't heard a complaint from a single tester."

*See* Ex. E.

26.     On information and belief, Defendants sell, offer for sale, and/or offered for sale the Infringing Device via the website https://partisantriggers.com/the-disruptor.    Exemplary photographs of the Infringing Device (in Green) are shown below:



Ex. F

27.     On information and belief, Defendants promotes the sale of the Infringing Device via the website: https://partisantriggers.com, which includes hyperlink buttons "Where To Find" and   "Where can I buy one?," as well as direct hyperlinks to websites for "Available Now" sellers and "Coming Soon" sellers, as reproduced below.

Ex. G

28.    On information and belief, Defendants promote the sale of the Infringing Device via the forum AR15.com. In a thread formed September 15, 2025, Defendants, *inter alia*, stated the following:

- "Target price is $200 or just a little north of there."

- "This trigger is going to be a very good trigger, and great value for your dollars."

- "It would be shocking if you find a better quality FRT at a comparable price. We are confident that you will find it to be the gold standard."

- "There is a 1 year manufacturers warranty."

- "Our focus is now on finalizing production, marketing and websites.  As we ramp up, we have videos to shoot, samples to get out to your favorite reviewers, contracts to sign and Purchase Orders to fulfill."

- "Many of your favorite big time retailers/distributors will have our product."

- "@PartisanTriggers are these going to be available at brick and mortar retailers?" "Yes."

- "Appreciate those who are keeping the thread bumped daily."

- "We fully agree that the more FRTs in circulation, the better."

*See* Ex. E.

29.     The Infringing Device can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger.  The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic modes by moving the safety selector between positions.

30.     When the Infringing Device operates in the forced reset mode, the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar/member prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

31.     When in the standard semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm again.

32.     When in the forced reset semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

33.     Defendants' website includes a page titled "FRT Legal Library" at https://partisantriggers.com/library, attached as Ex. H.  This web page links to copies of several documents, including the '223 Patent, the '003 Patent, and the '336 Patent, showing that Defendants are aware of Plaintiffs' patent rights and that they are relevant to the product it is

making, using, selling, offering for sale, and/or importing. This provides notice of Plaintiffs' patent rights to reseller customers of the Disruptor.

34.    On information and belief, Defendants, formed a forum thread on AR15.com on September 13, 2025. In this thread, Defendants, *inter alia*, demonstrated their knowledge of Plaintiffs' ownership of and willingness to defend its patent rights. Specifically, Defendants stated the following:

- "It is a three position cassette style trigger, and better than the RB trigger across the board."

- "After much consideration, however, we have decided not to release his particular trigger for the time being. Due to the legal actions being taken by a certain FRT company and their Axis of partners, we are deeply concerned about losing control of the design. We don't believe anyone can patent a concept that was developed nearly a century ago, but others do and think they already have. They also think their patents are actually valid and we are damn sure they will try to claim Ben's design falls within their IP rights, steal it and attempt to incorporate it into their open patent applications through amendments."

- "The new approach has required several long months of intensive work with IP attorneys and insurance companies. It involved hiring special Counsel who have a history of winning billion dollar IP suits. The result is robust insurance coverage and an official Advice Of Counsel Letter that painstakingly covers every detail of concern in the current FRT IP landscape. This Letter, longer than most printed copies of a dictionary, details the legality of releasing our own version of an older trigger which we believe is not protected by any valid patent."

- "It has taken a while and cost a lot of money but we finally have everything needed on the legal side in place. Our distributors and dealers are financially covered for frivolous lawsuits. Even our customers are protected. We are ready to rumble."

- "Get plenty of popcorn ready – it's likely to be highly entertaining."

- "Our (not mine, our) words were chosen carefully and vetted with our legal team prior to the OP."

- "[E]very part of this project has been preplanned."

- "[W]e won't be posting any of the brick and mortar locations unless they ask us to, as none of them want a bogus C&D letter from someone suing everyone and their mother. It is a hassle, and they know our trigger will sell regardless."

- "Shroud with deception everything you do."

*See* Ex. E.

35.     On information and belief, Defendants formed a forum thread on AR15.com on January 7, 2026. In this thread, Defendants, *inter alia*, demonstrated their knowledge of Plaintiffs' ownership of and willingness to defend its patent rights. Specifically, Defendants stated the following:

- "In [a September 2025 forum post], we detailed our preparations for the inevitable lawsuit from Rare Breed Triggers/ABC IP (RBT)."

- "Dealers are indemnified under our substantial patent insurance policy—covering the Disruptor alongside our upcoming releases, and worth multiples of RBT's claimed millions in litigation costs from their prior lawsuits."

- "After some discussions with our legal team, we have decided to make a few things clear, out here in public. . . ."

- "As many know, RBT [Rare Breed] named us as a John Doe d/b/a Partisan Triggers in an Arizona suit filed December 23, 2025."

- "Do your homework and sue us in the right venue boys, you're just...so disappointing right now."

- "We don't believe we've violated any valid patent."

*See* Ex. I.

36.     In January 7, 2026 thread, Defendants, *inter alia*, demonstrated their intent to continue to infringe the Asserted Patents by making, using, selling, offering for sale, and/or importing the Accused Product. Specifically, Defendants stated the following:

- This week, we've shipped thousands of triggers to dealers, with thousands more going out by week's end."

- "RBT excels at bullying small companies, often run by young men who have barely gotten their feet under them in life, through aggressive lawfare to bankrupt and break them. It's easy to feel invincible when facing under-resourced opponents while relying on powerful allies. Rest assured, this won't work against us."

- "You and our dealers can trust we won't be bullied or back down. . . . We are here for the long haul, so strap in, folks—this may turn into a wild ride. Thumbs up, let's do this."

- "We have no plans or need for donations; support us by spreading the word or buying our triggers."

- "We would like to ask you to do something. If you have useful information on RBT (or related parties) for this lawsuit, PM us on ARFCOM to share it. We feel very confident in our preparations, but we are aware that there is always the possibility someone may know something we've missed. We hope they see this and want to help."

*See* Ex. I.

37.     In view of the Defendants' knowledge of the Plaintiffs' patent rights as evidenced by the "Legal Library" on the Partisan Triggers website and its knowledge of the allegations made against Defendants in the case *Rare Breed Triggers Incorporated et al v. Firearm Systems LLC et al*, 2:25-cv-04938 (D. Ariz. Dec. 23, 2025), the infringement is willful.

38.     On information and belief, Nicholas Norton is and/or has been and is working in concert with Douglas Rios ("Rios") on the development, manufacture, and/or import of the Infringing Device.

39.     Rios is a named party in prior litigation relating to the '223 Patent, i.e., *Rare Breed Triggers, LLC, et al. v. Big Daddy Enterprises, Inc., et al*., Case No. 1:21-cv-149, N.D Florida ("Prior Litigation"). In that prior litigation, Rios is a party expressly bound by a permanent injunction entered October 19, 2022. That injunction provides:

> The issues of infringement, validity, and enforceability are hereby finally concluded and disposed of and this CONSENT JUDGMENT AND PERMANENT INJUNCTION bars each and any of the Defendants from contending in this action or any other proceeding that the claims of the '223 Patent are invalid, unenforceable or not infringed.

40.     Pursuant to Federal Rule of Civil Procedure 65, an injunction binds persons who receive actual notice of the injunction by personal service or otherwise, to include the parties and other persons who are in active concert or participation with any of them.

41.     Rios is a named Defendant who was represented by counsel in the Prior Litigation and is, thus is presumed to have received actual notice of the injunction.

42.     Existence of the injunction was well known among those who manufacture rate enhancing devices for firearms, including assisted reset and forced reset triggers, including, on information and belief, Nicholas Norton.

43.     On information and belief, Rios gave actual notice of the injunction for the Prior Litigation to Nicholas Norton. In any event, Nicholas Norton has actual notice of the injunction no later than the service of this Complaint. Because Nicholas Norton is acting in active concert or participation with Rios with respect to the Infringing Device, he is bound by the injunction's terms.

## **FALSE MARKING AND ADVERTISING**

44.     The claims of U.S, Patent No. 9,146,067 do not cover a forced reset trigger.

45.     On information and belief, Defendants know that the Disruptor is a forced reset trigger and that the claims of U.S, Patent No. 9,146,067 do not cover that product.

46.     Defendants falsely promote the Disruptor as not being a forced reset trigger. The Partisan Triggers website sates at https://partisantriggers.com/the-disruptor: "The Disruptor (US Patent 9146067) is an assisted reset trigger descended from the original TacCon 3MR trigger . . .." and presents the banner reproduced below, falsely asserting that it is an "assisted reset trigger" and that it is covered by claims of U.S, Patent No. 9,146,067.



Ex. F

47.     This assertion is false, is for the purpose of deceiving the public, causes competitive injury to Plaintiffs, and is in violation of 35 U.S.C. § 292.

## COUNT I – INFRINGEMENT OF THE '223 PATENT

48.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

49.     In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '223 patent, including but not limited to Claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '223 patent.  Such unlicensed products include the Infringing Device.

50.     On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '223 patent, including but not limited to Claim 4, literally and/or under the doctrine of equivalents.

51.     An exemplary comparison of the Infringing Device with Claim 4 of the '223 patent, when assembled and used as intended, is illustrated in the chart below:

14

| Claim Language | Infringing Device (Disruptor) |
|---|---|
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, | The Infringing Device is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket. <br><br> **Fire Control Mechanism Pocket** <br><br>  |
| and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising: | An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled. <br><br> **Bolt Carrier** <br><br>  |
| a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; | The Infringing Device includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins. |



**(Plaintiff–generated renderings of the Partisan Disruptor here and below)**

| | |
|---|---|
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis | The Infringing Device includes a hammer **(Blue)** with a sear notch and is mounted in the housing to pivot on a transverse axis. |
| between set and | |



**(Set position)**

**(Released position)**

| released positions; | |
|---|---|
| a trigger member having a sear and mounted in the housing to pivot on a transverse axis<br><br><br>between set | The infringing device has a trigger member **(Green)** that has a sear and is mounted in a housing to pivot on a transverse axis. |

and released positions,



**(Set position)**

the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled,



**(Released position)**

The trigger member (**Green**) has a surface positioned to be contacted by a surface of the hammer (**Blue**)

the contact causing the trigger member to be forced to the set position;



The hammer **(Blue)** pivots rearward causing the trigger **(Green)** to be forced to the set position.

| | |
|---|---|
| a locking bar pivotally mounted in the housing | The Infringing Device includes a locking bar **(Red)** that is pivotally mounted in the housing.<br><br> |
| and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, | The locking bar has spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position.<br><br><br><br>**(First position mechanically blocked)** |
| and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position | The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position. |

| | |
|---|---|
| in which the trigger member can be moved by an external force to the released position. | In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position.<br><br> |

52.     On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '223 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others.  Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Accused Products. One example of this is the instructional steps and videos found on Defendants' website (https://partisantriggers.com/the-disruptor/):





**Installation Steps - The Disruptor**

Follow these steps for proper installation:

1. Remove any magazine and ensure the rifle and workspace are clear of ammunition.
2. Press pivot and takedown pins; separate upper and lower receivers.
3. Loosen the pistol grip screw. In most cases, it is not necessary to completely remove the pistol grip.
4. Remove the installed safety.
5. Remove hammer pin. Remove the hammer and hammer spring assembly.
6. Remove the trigger pin. Remove the trigger, sear and trigger spring assembly.
7. Insert the Partisan Trigger cartridge assembly.
8. Install your Partisan Trigger 3-position safety. Partisan Trigger safeties must be used in conjunction with the trigger. It may be necessary to use a small tool to depress the safety detent to get the safety installed fully.
9. Tighten pistol grip screw.
10. Install anti-rotation pins and apply thread locker.
11. Place the rear lug of the upper receiver into the lower, and slightly pull back on the charging handle to enable the rear of the bolt carrier group to clear the out of battery safety sear.
12. Reinsert pivot and takedown pins.
13. Installation complete.

*See* Ex. J

53.     On information and belief, Defendants know or should know that such activities induce others to directly infringe one or more of at least Claim 4 of the '223 Patent by virtue of their statements in the forum thread formed on September 15, 2025, their statements in the forum thread formed on January 7, 2026, their inclusion of the '223 Patent on their webpage titled "FRT Legal Library," and the allegations made against Defendants in the case *Rare Breed Triggers Incorporated et al v. Firearm Systems LLC et al*, 2:25-cv-04938 (D. Ariz. Dec. 23, 2025).

54.     On information and belief, Defendants also contribute to the infringement of the '223 patent by others, including their customers.  Acts by Defendants that contributes to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Defendants of the components of Infringing Device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '223 Patent.

55.     Defendants have engaged in egregious infringement behavior with knowledge of the '223 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '223 Patent and that the '223 Patent is valid at least through the service and filing of this complaint and the Arizona case.  Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '223 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that his actions constitute infringement, Defendants have continued their infringing activities.  As such, Defendants willfully infringe the '223 Patent.

56.     By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '223 Patent pursuant to 35 U.S.C. § 271.

57.     By their actions, Defendants' infringement of the '223 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

58.     By their actions, Defendants' infringement of the '223 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

59.     Defendants' infringement of the '223 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

60.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

61.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II – DIRECT INFRINGEMENT OF THE '003 PATENT

62.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

63.     In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '003 patent, including but not limited to Claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '003 patent.  Such unlicensed products include the Infringing Device.

64.     On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '003 patent, including but not limited to Claim 4, literally and/or under the doctrine of equivalents.

65.     An exemplary comparison of the Infringing Device with claim 4 of the '003 patent, when assembled and used as intended, is illustrated in the chart below:

| Claim Language | Infringing Device (Disruptor) |
|---|---|
| 4. A firearm trigger mechanism comprising: | The Infringing Device is a firearm trigger mechanism. Peak describes the "Disruptor" as "an assisted reset trigger . . . designed for fast and hassle-free installation on the AR-15 platform" on its website. (https://partisantriggers.com/the-disruptor). |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Infringing Device includes a housing (Black) that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. |



The Infringing Device is sold with hammer and trigger pins.



| | |
|---|---|
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin | The Infringing Device includes a hammer **(Blue)** that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier.  **(Plaintiff-generated renderings of the Partisan Disruptor here and below)** |

| | |
|---|---|
| between set and | <br>**(Set position)** |
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | <br>**(Released position)** |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin<br><br>between set | The Infringing Device includes a trigger member **(Green)** that has a sear and is mounted in the housing to pivot on the trigger member pin |



**(Set position)**

and released positions,

**(Released position)**

The trigger member **(Green)** has a surface positioned to be contacted by a surface of the hammer **(Blue)**

said trigger member having a surface positioned to be contacted by a surface of said hammer

| | |
|---|---|
| |  |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer **(Blue)** pivots rearward causing the trigger **(Green)** to be forced to the set position. |

| | |
|---|---|
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position<br><br><br><br>**(Set position)** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position<br><br><br><br>**(Released position)** |
| a disconnector having a hook for engaging said hammer | The infringing device has a disconnector **(Orange)** that has a hook for engaging the hammer **(Blue)** hook |



| | |
|---|---|
| and mounted in said housing to pivot on said trigger member pin, | The disconnect is mounted in the housing to pivot on the trigger **(Green)** member pin |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The infringing device has a locking member **(Red)** that is mounted in the housing and it pivots on a transverse locking member pin |

said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position

When the locking bar **(Red)** is in the first position, the locking member blocks the trigger **(Green)** from being pulled



**(First position mechanically blocked)**

and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position,

When the locking bar **(Red)** is in the second position, it does not prevent the trigger **(Green)** from being pulled



**(Second position not mechanically blocked)**

The locking member **(Red)** is spring biased toward the first position and is moved against the spring bias to the second position by contact of the

| | |
|---|---|
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.<br><br><br><br>**(https://partisantriggers.com/the-disruptor/)** |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot and the disconnect **(Orange)** hook catches the hammer hook |

33

| | |
|---|---|
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and |  **(Standard semi-automatic position)** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the infringing device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot which causes the trigger **(Green)** to be forced to the set position.  **(Trigger pulled to the rear, hammer first touches the trigger)** |



**(Hammer has now caused the trigger to move to the reset position)**

| | |
|---|---|
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector **(Orange)** hook from catching the hammer **(Blue)** hook |

**(Set position)**

| | |
|---|---|
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger **(Green)** without manually releasing pressure off the trigger |



66.     On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '003 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others.  Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Accused Products. One example of this is the instructional steps and videos found on Defendants' website (https://partisantriggers.com/the-disruptor/):





**Installation Steps - The Disruptor**

Follow these steps for proper installation:
1. Remove any magazine and ensure the rifle and workspace are clear of ammunition.
2. Press pivot and takedown pins; separate upper and lower receivers.
3. Loosen the pistol grip screw. In most cases, it is not necessary to completely remove the pistol grip.
4. Remove the installed safety.
5. Remove hammer pin. Remove the hammer and hammer spring assembly.
6. Remove the trigger pin. Remove the trigger, sear and trigger spring assembly.
7. Insert the Partisan Trigger cartridge assembly.
8. Install your Partisan Trigger 3-position safety. Partisan Trigger safeties must be used in conjunction with the trigger. It may be necessary to use a small tool to depress the safety detent to get the safety installed fully.
9. Tighten pistol grip screw.
10. Install anti-rotation pins and apply thread locker.
11. Place the rear lug of the upper receiver into the lower, and slightly pull back on the charging handle to enable the rear of the bolt carrier group to clear the out of battery safety sear.
12. Reinsert pivot and takedown pins.
13. Installation complete.

Ex. J

67.     On information and belief, Defendants know or should know that such activities induce others to directly infringe one or more of at least Claim 4 of the '003 Patent by virtue of their statements in the forum thread formed on September 15, 2025, their statements in the forum thread formed on January 7, 2026, their inclusion of the '003 Patent on their webpage titled "FRT Legal Library," and the allegations made against Defendants in the case *Rare Breed Triggers Incorporated et al v. Firearm Systems LLC et al*, 2:25-cv-04938 (D. Ariz. Dec. 23, 2025).

68.     On information and belief, Defendants also contribute to the infringement of the '003 patent by others, including their customers.  Acts by Defendants that contributes to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Defendants of the components of Infringing Device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '003 Patent.

69.     Defendants have engaged in egregious infringement behavior with knowledge of the '003 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '003 Patent and that the '003 Patent is valid at least through the service and filing of this complaint and the Arizona case. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '003 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that his actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '003 Patent.

70.     By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '003 Patent pursuant to 35 U.S.C. § 271.

71.     By their actions, Defendants' infringement of the '003 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

72.     By their actions, Defendants' infringement of the '003 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

73.     Defendants' infringement of the '003 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

74.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

75.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT III – DIRECT INFRINGEMENT OF THE '336 PATENT

76. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

77. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '336 patent, including but not limited to Claim 3, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '336 patent. Such unlicensed products include the Infringing Device.

78. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '336 patent, including but not limited to Claim 3, literally and/or under the doctrine of equivalents.

79. An exemplary comparison of the Infringing Device with Claim 3 of the '336 patent, when assembled and used as intended, is illustrated in the chart below:

| Claim Language | Infringing Device (Disruptor) |
|---|---|
| 3. A firearm trigger mechanism comprising: | The Infringing Device is a firearm trigger mechanism. Peak describes the "Disruptor" as "an assisted reset trigger . . . designed for fast and hassle-free installation on the AR-15 platform" on its website. (https://partisantriggers.com/the-disruptor). |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Infringing Device includes a housing that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. |

<table>
<tr>
<td></td>
<td>



The Infringing Devise is sold with hammer and trigger pins.



.
</td>
</tr>
<tr>
<td>

a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin
</td>
<td>

The Infringing Device includes a hammer (**Blue**) that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier.



**(Plaintiff-generated renderings of the Partisan Disruptor here and below)**
</td>
</tr>
</table>

41

| | |
|---|---|
| between set and | <br>**(Set position)** |
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | <br>**(Released position)** |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin<br><br><br>between set | The Infringing Device includes a trigger member **(Green)** that has a sear and is mounted in the housing to pivot on the trigger member pin |



**(Set position)**

**(Released position)**

and released positions,

The trigger member **(Green)** has a surface positioned to be contacted by a surface of the hammer **(Blue)**

said trigger member having a surface positioned to be contacted by a surface of said hammer

43

| | |
|---|---|
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer **(Blue)** pivots rearward causing the trigger **(Green)** to be forced to the set position<br><br><br><br> |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position |

44

| | |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | <br><br>**(Set position)**<br><br>The sear and sear catch are out of engagement in the released position<br><br><br><br>**(Released position)** |
| a disconnector having a hook for engaging said hammer | The infringing device has a disconnector **(Orange)** that has a hook for engaging the hammer **(Blue)** hook |

| | |
|---|---|
| and mounted in said housing to pivot on said trigger member pin, |  The disconnect is mounted in the housing to pivot on the trigger **(Green)** member pin |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The infringing device has a locking member **(Red)** that is mounted in the housing and it pivots on a transverse locking member pin. |

46

said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position

When the locking bar **(Red)** is in the first position, the locking member blocks the trigger **(Green)** from being pulled



**(First position mechanically blocked)**

and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position,

When the locking bar **(Red)** is in the second position, it does not prevent the trigger **(Green)** from being pulled.

47

| | |
|---|---|
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | <br><br>**(Second position not mechanically blocked)**<br><br>The locking member **(Red)** is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions..<br><br> |



**The Disruptor**

The Disruptor (US Patent 9146067) is an assisted reset trigger descended from the original TacCon 3MR trigger, designed for fast and hassle-free installation on the AR-15 platform. It requires no modification, gunsmithing, or fitting. Built for shooters who value precision and control, it features a three-position safety selector with Safe, Semi- Automatic, and Enhanced Semi-Automatic modes. This versatile trigger delivers a responsive and confident shooting experience while maintaining reliability and safety for users.

**(https://partisantriggers.com/the-disruptor/)**

| | |
|---|---|
| said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook, | While in the forced reset semi-automatic position the disconnect **(Orange)** moves to a position that does not allow the disconnector hook to catch the hammer **(Blue)** hook<br><br>**(Forced reset semi-automatic position)** |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot and the disconnect **(Orange)** hook catches the hammer hook |

| | |
|---|---|
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and |  **(Standard semi-automatic position)** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the infringing device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot which causes the trigger **(Green)** to be forced to the set position.  **(Trigger pulled to the rear, hammer first touches the trigger)** |

| | |
|---|---|
| |  |
| | **(Hammer has now caused the trigger to move to the reset position)** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector **(Orange)** hook from catching the hammer **(Blue)** hook |
| | **(Set position)** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger **(Green)** without manually releasing pressure off the trigger |

80.    On information and belief, in addition to direct infringement, Defendants take active

steps to induce others, including their customers, to directly infringe the '336 patent. Defendants take

such active steps knowing that those steps will induce, encourage, and facilitate direct infringement

by others.  Such active steps include, but are not limited to, encouraging, advertising, promoting,

and instructing others to use and/or how to use the Accused Products. One example of this is the instructional steps and videos found on Defendants' website (https://partisantriggers.com/the-disruptor/):





**Installation Steps - The Disruptor**

Follow these steps for proper installation:
1. Remove any magazine and ensure the rifle and workspace are clear of ammunition.
2. Press pivot and takedown pins; separate upper and lower receivers.
3. Loosen the pistol grip screw. In most cases, it is not necessary to completely remove the pistol grip.
4. Remove the installed safety.
5. Remove hammer pin. Remove the hammer and hammer spring assembly.
6. Remove the trigger pin. Remove the trigger, sear and trigger spring assembly.
7. Insert the Partisan Trigger cartridge assembly.
8. Install your Partisan Trigger 3-position safety. Partisan Trigger safeties must be used in conjunction with the trigger. It may be necessary to use a small tool to depress the safety detent to get the safety installed fully.
9. Tighten pistol grip screw.
10. Install anti-rotation pins and apply thread locker.
11. Place the rear lug of the upper receiver into the lower, and slightly pull back on the charging handle to enable the rear of the bolt carrier group to clear the out of battery safety sear.
12. Reinsert pivot and takedown pins.
13. Installation complete.

Ex. J

81.     On information and belief, Defendants know or should know that such activities induce others to directly infringe one or more of at least Claim 3 of the '336 Patent by virtue of their statements in the forum thread formed on September 15, 2025, their statements in the forum thread formed on January 7, 2026, their inclusion of the '336 Patent on their webpage titled "FRT Legal Library," and the allegations made against Defendants in the case *Rare Breed Triggers Incorporated et al v. Firearm Systems LLC et al*, 2:25-cv-04938 (D. Ariz. Dec. 23, 2025).

82.     On information and belief, Defendants also contribute to the infringement of the '336 patent by others, including their customers. Acts by Defendants that contributes to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Defendants of the components of Infringing Device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '336 Patent.

83.     Defendants have engaged in egregious infringement behavior with knowledge of the '336 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '336 Patent and that the '336 Patent is valid at least through the service and filing of this complaint and the Arizona case.  Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '336 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that his actions constitute infringement, Defendants have continued their infringing activities.  As such, Defendants willfully infringe the '336 Patent.

84.     By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '336 Patent pursuant to 35 U.S.C. § 271.

85.     By their actions, Defendants' infringement of the '336 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

86.     By their actions, Defendants' infringement of the '336 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

87.     Defendants' infringement of the '336 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

88.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

89.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT IV – DIRECT INFRINGEMENT OF THE '807 PATENT

90.　　Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

91.　　In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '807 patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '807 patent. Such unlicensed products include the Infringing Device.

92.　　On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '807 patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents.

93.　　An exemplary comparison of the Infringing Device with Claim 1 of the '807 patent, when assembled and used as intended, is illustrated in the chart below:

| Claim Language | The infringing Device (Disruptor) |
|---|---|
| 1. A firearm trigger mechanism comprising: | The Infringing Device is a firearm trigger mechanism. Peak describes the "Disruptor" as "an assisted reset trigger . . . designed for fast and hassle-free installation on the AR-15 platform" on its website. (https://partisantriggers.com/the-disruptor). |
| a hammer having a sear catch and a hook and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis | The Infringing Device includes a hammer (**Blue**) that has a sear catch and a hook for engaging a disconnector. It is mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |



**(Plaintiff-generated renderings of the Partisan Disruptor here and below)**

between set and

**(Set position)**

released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

**(Released position)**

| | |
|---|---|
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis | The Infringing Device includes a trigger member **(Green)** that has a sear and is mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis |
| between set | <br>**(Set position)** |
| and released positions, | <br>**(Released position)**<br><br>The trigger member **(Green)** has a surface positioned to be contacted by a surface of the hammer **(Blue)** |

57

| | |
|---|---|
| said trigger member having a surface positioned to be contacted by a surface of said hammer |  **Trigger Surface** · **Hammer Surface**<br><br>The hammer **(Blue)** pivots rearward causing the trigger **(Green)** to be forced to the set position |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, |  |

| |  |
|---|---|
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position <br><br> **(Set position)** <br><br> The sear and sear catch are out of engagement in the released position |
| and are out of engagement in said released positions of said hammer and trigger member, | |

| | |
|---|---|
| | <br>**(Released position)** |
| a disconnector having a hook for engaging said hammer hook | The infringing device has a disconnector **(Orange)** that has a hook for engaging the hammer **(Blue)** hook |
| and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnect is mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis |



| | |
|---|---|
| a locking member adapted to be movably mounted in the fire control mechanism pocket, | The infringing device has a locking member **(Red)** that is movably mounted in the fire control mechanism pocket and it is movable between a first position and a second position.  |
| said locking member being movable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar **(Red)** is in the first position, the locking member blocks the trigger **(Green)** from being pulled |



**(First position mechanically blocked)**

and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position,

When the locking bar **(Red)** is in the second position, it does not prevent the trigger **(Green)** from being pulled



said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and

**(Second position not mechanically blocked)**

| | The locking member (**Red**) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position |
|---|---|
| a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.<br><br><br><br>**(https://partisantriggers.com/the-disruptor/)** |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br><br><br><br>at which time a user must manually release said trigger member to free | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (**Blue**) to pivot and the disconnect (**Orange**) hook catches the hammer hook |

| said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | <br>**(Standard semi-automatic position)** |
| --- | --- |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the infringing device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot which causes the trigger **(Green)** to be forced to the set position.<br><br><br>**(Trigger pulled to the rear, hammer first touches the trigger)** |



**(Hammer has now caused the trigger to move to the reset position)**

said safety selector preventing said disconnector hook from catching said hammer hook,

The safety selector prevents the disconnector **(Orange)** hook from catching the hammer **(Blue)** hook.



**(Set position)**

and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

When the bolt carrier reaches a substantially in-battery position the user can pull the trigger **(Green)** without manually releasing pressure off the trigger.



94.     On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '807 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others.  Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Accused Products. One example of this is the instructional steps and videos found on Defendants' website (https://partisantriggers.com/the-disruptor/):





**Installation Steps - The Disruptor**

Follow these steps for proper installation:
1. Remove any magazine and ensure the rifle and workspace are clear of ammunition.
2. Press pivot and takedown pins; separate upper and lower receivers.
3. Loosen the pistol grip screw. In most cases, it is not necessary to completely remove the pistol grip.
4. Remove the installed safety.
5. Remove hammer pin. Remove the hammer and hammer spring assembly.
6. Remove the trigger pin. Remove the trigger, sear and trigger spring assembly.
7. Insert the Partisan Trigger cartridge assembly.
8. Install your Partisan Trigger 3-position safety. Partisan Trigger safeties must be used in conjunction with the trigger. It may be necessary to use a small tool to depress the safety detent to get the safety installed fully.
9. Tighten pistol grip screw.
10. Install anti-rotation pins and apply thread locker.
11. Place the rear lug of the upper receiver into the lower, and slightly pull back on the charging handle to enable the rear of the bolt carrier group to clear the out of battery safety sear.
12. Reinsert pivot and takedown pins.
13. Installation complete.

Ex. J

95.     On information and belief, Defendants know or should know that such activities induce others to directly infringe one or more of at least Claim 1 of the '807 Patent by virtue of their statements in the forum thread formed on September 15, 2025, their statements in the forum thread formed on January 7, 2026, and the allegations made against Defendants in the case *Rare Breed Triggers Incorporated et al v. Firearm Systems LLC et al*, 2:25-cv-04938 (D. Ariz. Dec. 23, 2025).

96.     On information and belief, Defendants also contribute to the infringement of the '807 patent by others, including their customers. Acts by Defendants that contributes to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Defendants of the components of Infringing Device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '807 Patent.

97.     Defendants have engaged in egregious infringement behavior with knowledge of the '807 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '807 Patent and that the '807 Patent is valid at least through the service and filing of this complaint and the Arizona case.  Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '807 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that his actions constitute infringement, Defendants have continued their infringing activities.  As such, Defendants willfully infringe the '807 Patent.

98.     By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '807 Patent pursuant to 35 U.S.C. § 271.

99.     By their actions, Defendants' infringement of the '807 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

100.    By their actions, Defendants' infringement of the '807 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

101.    Defendants' infringement of the '807 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

102.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

103.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT V – FALSE PATENT MARKETING

104.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

105.     The claims of U.S. Patent No. 9,146,067 (the "'067 Patent") do not cover a forced reset trigger.

106.     On information and belief, Defendants know that the Disruptor is a forced reset trigger and that the claims of the '067 Patent do not cover that product.

107.     Additionally, claims of the '067 Patent require, as one example, a "reset lever" that is struck by a hammer. The Disruptor does not have such a component and therefore is not covered by the '067 patent.

108.     Further, claims of the '067 Patent require the trigger to be reset less that the full travel of the trigger.  Such a limitation is not present in the Disruptor and therefore is not covered by the '067 Patent.

109.     Defendants falsely promote the Disruptor as not being a forced reset trigger and that it is covered by claims of U.S. Patent No. 9,146,067. This falsely suggests to reseller customers and end user customers that the Disruptor is not covered by Plaintiffs' patent(s) deceiving those customers to believe they are not exposed to infringement liability.

110.     This assertion is false and is for the purpose of deceiving the public,

111.     Plaintiffs have suffered competitive injury as a result of these false and deceptive statements and are entitled under 35 U.S.C. § 292 to recover damages adequate to compensate for the injury.

## COUNT VI – FALSE ADVERTISING UNDER THE LANHAM ACT

112.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

113.    Defendants have violated Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by making false or misleading statements of fact in commercial advertising or promotion that misrepresent the nature, characteristics, or qualities of the Disruptor product.

114.    Specifically, on information and belief, Defendants falsely advertise and promote the Disruptor on their website and in other commercial materials as an "assisted reset trigger" that is covered by U.S. Patent No. 9,146,067 (the "'067 Patent"). For example, the Partisan Triggers website states: "The Disruptor (US Patent 9146067) is an assisted reset trigger descended from the original TacCon 3MR trigger . . . ." and includes a banner asserting that it is an "assisted reset trigger" covered by the '067 Patent.

115.    These statements are false or misleading because:

    a. The Disruptor is, in fact, a forced reset trigger, not an assisted reset trigger as claimed. Defendants know this and elsewhere identify the Disruptor as a "FRT" and "Forced Reset Trigger." See Ex. J.

    b. The claims of the '067 Patent do not cover a forced reset trigger like the Disruptor. Among other deficiencies, the claims of the '067 Patent require a "reset lever" that is struck by a hammer, which the Disruptor lacks. Further, the claims of the '067 Patent require the trigger to be reset less than the full travel of the trigger, a limitation not present in the Disruptor.

    c. On information and belief, Defendants know or should know that the Disruptor is not covered by the '067 Patent, yet they continue to make these false representations.

71

116.    Defendants' false or misleading statements are made in commercial advertising or promotion, including on their website, which promotes the sale of the Disruptor and includes hyperlinks to sellers under "Where To Find," "Where can I buy one?," "Available Now," and "Coming Soon." These statements are disseminated in interstate commerce and are directed to consumers, resellers, and the public in the firearms industry.

117.    The false or misleading statements are material and have a tendency to deceive a substantial portion of the intended audience, including reseller customers and end-user customers. By falsely claiming that the Disruptor is covered by the '067 Patent and is an "assisted reset trigger," Defendants mislead consumers into believing that the Disruptor possesses certain patented qualities, features, or legitimacy that it does not have, such as implying that it operates in a manner distinct from forced reset triggers (like those covered by Plaintiffs' Asserted Patents), thereby suggesting reduced risk of patent infringement liability for purchasers. This misrepresentation ties directly to the product's nature, characteristics, and qualities, including its mechanical operation, exclusivity, and legal status in the market.

118.    Plaintiffs have suffered, and are likely to continue suffering, injury as a direct result of Defendants' false advertising, including but not limited to competitive harm, lost sales, diverted business, damage to reputation and goodwill, and erosion of market share in the forced reset trigger market.

119.    Defendants' false advertising is willful, as evidenced by their knowledge of Plaintiffs' Asserted Patents (demonstrated through the "FRT Legal Library" on their website, which links to the '223 Patent, '003 Patent, and '336 Patent), their forum posts on AR15.com acknowledging Plaintiffs' patent rights and litigation activities (e.g., threads from September 15, 2025, and January 7, 2026), and their continued promotion of the Disruptor despite awareness of

the allegations in *Rare Breed Triggers Incorporated, et al v. Firearm Systems LLC, et al*, 2:25-cv-04938 (D. Ariz. Dec. 23, 2025).

120.   By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for false advertising under the Lanham Act pursuant to 15 U.S.C. § 1125(a).

121.   By their actions, Defendants' false advertising has irreparably injured Plaintiffs. Unless such false advertising is enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

122.   By their actions, Defendants' false advertising has damaged and continues to damage Plaintiffs in an amount yet to be determined.

123.   Defendants' acts of false advertising are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and goodwill.

124.   Plaintiffs have been substantially harmed by Defendants' false advertising activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, actual damages, disgorgement of Defendants' profits, treble damages for willful conduct, costs of the action, and reasonable attorneys' fees in this exceptional case.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgement against Defendants as follows:

a.   Each of the Asserted Patents has been and continues to be infringed by Defendants;

b.   Defendants' infringement of each of the Asserted Patents has been, and continues to be, willful;

c.   Each of the Asserted Patents is enforceable and not invalid;

d. A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case, or other such equitable relief as the Court determines is warranted;

e. A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents, or other such equitable relief as the Court determines is warranted;

f. An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

g. An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

h. A finding that this action is an exceptional case under 35 U.S.C. § 285 and an award to Plaintiffs of their costs and attorneys' fees incurred in this action;

i. An award of damages to compensate Plaintiffs for the competitive injury it suffered under 35 U.S.C. § 292(b);

j. An award of all relief available under the Lanham Act, 15 U.S.C. § 1125(a), including a preliminary and permanent injunction enjoining Defendants from continuing their false advertising and misrepresentations regarding the Disruptor and U.S. Patent No. 9,146,067, actual damages, disgorgement of Defendants' ill-gotten profits attributable to such false

advertising, treble damages for willful conduct, costs of the action, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) in this exceptional case.

k.     Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

Dated: January 15, 2026                    Respectfully Submitted,


                                           By:  */s/ Travis W. Koch*
                                                Nathan Nicholas, Wyo. Bar #7-5078
                                                Travis W. Koch, Wyo. Bar # 7-5418
                                                Koch Law, P.C.
                                                P.O. Box 2660
                                                Cheyenne, WY 82003
                                                (307) 426-5010
                                                (307) 426-4927 (fax)
                                                tkoch@kochlawpc.com
                                                nnicholas@kochlawpc.com

                                                Matthew A. Colvin
                                                Texas Bar No. 24087331
                                                Carl E. Bruce
                                                Texas Bar No. 24036278
                                                **FISH & RICHARDSON P.C.**
                                                1717 Main Street, Suite 5000
                                                Dallas, TX 75201
                                                Tel: (214) 747-5070
                                                Facsimile: (214) 747-2091
                                                E-mail: colvin@fr.com
                                                        bruce@fr.com

                                                Ben Christoff
                                                FISH & RICHARDSON P.C.
                                                (D.C. Bar No.        )
                                                1001 Maine Avenue SW, Suite 1000
                                                Washington, DC
                                                E-mail: christoff@fr.com
                                                Tel: (202) 783-5070
                                                Fax: (202) 783-2331


                                                Glenn D. Bellamy
                                                Wood Herron & Evans LLP
                                                600 Vine Street, Suite 2800
                                                Cincinnati, OH 45202
                                                Tel: 513-707-0243
                                                Emails:gbellamy@whe-law.com

                                                ***Counsel for Plaintiffs***
                                                ***ABC IP, LLC, and Rare Breed Triggers,***
                                                ***Inc.***