Nathan Nicholas, Wyo. Bar #7-5078
Travis W. Koch, Wyo. Bar # 7-5418
Koch Law, P.C.
P.O. Box 2660
Cheyenne, WY 82003
(307) 426-5010
(307) 426-4927 (fax)
tkoch@kochlawpc.com
nnicholas@kochlawpc.com

Matthew A. Colvin*
Carl E. Bruce*
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
colvin@fr.com
bruce@fr.com

Glenn D. Bellamy*
Wood Herron & Evans, LLP
600 Vine St., STE 2800
Cincinnati, OH 45202
(513) 707-0243
gbellamy@whe-law.com

Ben Christoff*
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070
christoff@fr.com

**ATTORNEYS FOR PLAINTIFFS**
*Pro Hac Vice*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas corporation, | ) ) ) ) | Case No. 2:26-cv-00018-KHR |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| PEAK TACTICAL, LLC d/b/a PARTISAN TRIGGERS, a Wyoming limited liability company, | ) ) ) ) | |
| and | ) ) | |
| NICHOLAS NORTON, an individual, | ) ) | |
| *Defendants*. | ) ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR EXPEDITED DISCOVERY**

I.      INTRODUCTION

Plaintiffs ABC IP, LLC ("ABC") and Rare Breed Triggers, Inc. ("RBT") (collectively, "Rare Breed" or "Plaintiffs") pioneered the forced reset trigger ("FRT")—a semi-automatic firearm component that Rare Breed patented and then spent years defending against a Department of Justice enforcement action. Defendants Peak Tactical, LLC and Nicholas Norton (collectively, "Partisan") entered the market in December 2025, selling a knockoff, infringing trigger for $299, compared to Rare Breed's $450 trigger. Partisan projects selling between 1.68 to 3.4 million triggers over the next three years. This represents approximately 5–11% of the 30 million AR-15 rifles Partisan estimates are in the United States—and a larger share still of the actual pool of AR-15 owners likely to buy an FRT.

To prevent this, Rare Breed moved for a temporary restraining order and preliminary injunction. This Court denied the motion, finding that, on the record before it, Rare Breed had not met its burden on the preliminary injunction factors. Rare Breed now seeks limited, expedited discovery to support a renewed motion for preliminary injunction on a full and complete record, specifically to address the evidence the Court said was missing.

Courts in this Circuit have granted expedited discovery after denying a TRO. They also grant expedited discovery before a Rule 26(f) conference upon a showing of good cause. Good cause may exist where the movant seeks a preliminary injunction and needs discovery to avoid irreparable harm. Courts evaluate good cause under five related factors, including (1) whether a preliminary injunction is pending, (2) the breadth of the requests, (3) the purpose of the discovery, (4) the burden on the responding party, and (5) the timing of the request. Rare Breed establishes good cause here.

Start with avoiding irreparable harm. This is the most critical concern behind this motion. The most acute risk Rare Breed faces is not losing at trial—it is that Partisan will have freely

infringed for two or more years and cannot pay the awarded damages. As the Tenth Circuit has recognized, difficulty collecting a damages judgment is itself a form of irreparable injury. Partisan projects selling 1.68 to 3.4 million FRTs over the next three years. At Rare Breed's undisputed per-unit lost profit of $350, damages exposure exceeds $500 million. Against that, Partisan's currently known total capitalization across all entities is less than $1.5 million. The Court credited Partisan's claims that two insurance policies totaling $10 million can help cover a judgment. But the policies were never produced. Partisan's own witness could not say whether they cover willful infringement, attorneys' fees, or false advertising. He did not know how much cash was in the company's bank accounts. Asked how Partisan would cover a judgment of this magnitude, he answered: "No idea."

That collectability risk alone warrants expedited discovery. But it is not the only reason. This case requires targeted discovery so that Rare Breed's renewed preliminary injunction motion can be decided on a complete record—not the compressed one the Court previously had. Defendants filed their opposition five days before the hearing, supported by four declarations, including two from retained experts—totaling 325 pages. Plaintiffs had no reply brief, no depositions, no document discovery, and not even an opportunity to cross-examine Partisan's technical and damages experts whose opinions the Court considered. Neither expert appeared at the hearing.

That limited record left unresolved fact disputes on both prongs of likelihood of success: infringement and validity. On infringement, the Court found a claim construction dispute on "substantially in-battery position" that it recognized as central but did not construe. On validity, Partisan's expert referenced claim charts as exhibits to his declaration but never attached them,

and Rare Breed first learned of Partisan's obviousness theory five days before the hearing, with no opportunity to challenge it.

Rare Breed's requests are calibrated to fill these gaps and nothing more: six interrogatories, six requests for production, and five depositions—each targeting issues Partisan itself placed before the Court. (*See* Appendices A & B.) Partisan should not claim prejudice from producing documents and witnesses on subjects it raised in opposing Rare Breed's motion. And to eliminate any question of fairness, Rare Breed will respond in kind and make its own experts and a 30(b)(6) witness available.

## II.   BACKGROUND

On January 15, 2026, Rare Breed filed this action alleging that Defendants' Partisan Disruptor—a competing forced reset trigger for semi-automatic rifles—infringes four patents held by ABC and exclusively licensed to RBT. (ECF No. 1.) Plaintiffs moved for a temporary restraining order and preliminary injunction one day later. (ECF No. 6.)

Both filings came approximately one month after Partisan's first confirmed sales. Partisan announced the Disruptor on an online firearms forum in September 2025 but did not publicly release the product or its internal design until December 15, 2025. (Ex. 1 at 87:9–91:15.) Plaintiffs filed suit one month later—consistent with Rare Breed's obligation under a settlement with the U.S. Department of Justice to enforce its patent rights. (*Id.* at 18:12–19:8.)

The Court entered an order on January 20, 2026, requiring Rare Breed to serve the complaint and motion by January 23, setting Partisan's response to the TRO/PI motion for January 30, and scheduling the hearing for February 4. (ECF No. 9 at 1.) Under Local Rule 7.1(b)(2)(C), no reply brief is permitted when a motion is set for hearing—which meant Plaintiffs had no opportunity to respond in writing to Partisan's opposition or their four supporting declarations (totaling 325 pages with exhibits) before the hearing five days later. (*See* ECF Nos. 27-1–27-4.)

3

Each side received ninety minutes to present its case. (Ex. 2.) Rare Breed presented testimony from its firearms expert (Mr. Luettke), its damages expert (Dr. Warty), and RBT's President (Mr. DeMonico). (Ex. 1 at 29:18–49:20; *id.* at 98:6–99:9; *id.* at 16:3–29:6.) Defendants presented two fact witnesses—Mr. Woods, spokesperson for the Partisan brand, and Mr. Stakes, the named inventor on U.S. Patent No. 9,146,067 (the '067 Patent"), a prior art reference Defendants contend invalidates Rare Breed's asserted patents. (*See* ECF No. 39 at 27–28.) Defendants did not bring either of their retained experts—Mr. Nixon (technical) or Mr. Cragun (damages)—to testify or sit for cross-examination, despite submitting declarations from both. (Ex. 1 at 5:4–5; ECF No. 27 at 2, 4, 7–15, 20–21, 23; ECF Nos. 27-1, 27-2.)

On February 13, 2026, the Court denied the motion in a combined TRO and preliminary injunction ruling, finding that Rare Breed had not carried its burden on the relevant factors. (ECF No. 39 at 8.) The Court repeatedly noted Rare Breed had failed to respond to portions of Partisan's evidence (*id.* at 13, 25, 28–29, 30, 34) and expressly reserved that its "findings and conclusions set forth herein do not constitute a determination on the merits." (*id.* at 34–35)

Plaintiffs bring this motion for expedited discovery one week after the Court's Order.

### III.   ARGUMENT

#### A.   Legal Standard

Discovery ordinarily cannot begin before the parties confer under Rule 26(f). Fed. R. Civ. P. 26(d)(1). But courts retain broad discretion to alter the timing, sequence, and volume of discovery—including by granting expedited discovery before that conference. *See Am. Equip. Sys., LLC v. Chester*, No. 23-cv-00680, 2023 WL 8261427, at *2 (D. Utah Nov. 29, 2023). The Tenth Circuit has not adopted a specific standard governing motions for expedited discovery. Courts within the Circuit—including this District—apply a good cause standard. *See id.* at *4; *Ainstein AI, Inc. v. ADAC Plastics, Inc.*, No. 23-2166, 2023 WL 3568661 (D. Kan. May 19, 2023) (granting

4

expedited discovery under good cause factors); *Legacy Measures. Sols., Inc. v. Chaput*, No. 15-CV-18, 2015 WL 11090694, at *2 (D. Wyo. Apr. 16, 2015) (same in this District). "Good cause may exist 'where a party seeks a preliminary injunction.'" *Am. Equip. Sys.*, 2023 WL 8261427, at *2 (cleaned up).

In evaluating good cause, courts consider five well-established factors: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting expedited discovery; (4) the burden on the opposing party to comply; and (5) how far in advance of the typical discovery process the request is made. *Am. Equip. Sys.*, 2023 WL 8261427, at *2. These factors are guideposts, not "binding" prerequisites—the court retains discretion to weigh them as the circumstances require. *Id*. (quotation omitted). The justification for expedited discovery grows even stronger when denying discovery deprives the movant of the opportunity to realistically demonstrate irreparable harm. *See Lindsey & Osborne P'ship v. Day & Zimmermann, Inc.,* No. 08-cv-2301, 2008 WL 2858786, at *2–4 (D. Kan. July 22, 2008).

**B.     The Discovery Sought Is Necessary to Address Irreparable Harm.**

Irreparable harm carries particular weight among the good cause factors. *See Lindsey & Osborne*, 2008 WL 2858786, at *2–3 (finding good cause for expedited discovery where plaintiff "could suffer irreparable harm if it is prevented from conducting expedited discovery in order to prepare for its preliminary injunction hearing" and "the injury that Plaintiff will suffer if not permitted to conduct the expedited discovery looms greater than the injury that Defendant may suffer if the request for expedited discovery is granted"). That inquiry has particular force here. The risk to Rare Breed of losing at trial is less than the risk that it wins—and Partisan cannot pay.

5

Courts nationwide have established that difficulty collecting a damages judgment is itself a form of irreparable injury.[1]

The question is simple: can Defendants pay if they lose? Based on Partisan's own projections—1.68 to 3.4 million units over three years (Ex. 1 at 95:8; ECF No. 27-4 ¶¶ 22–23)—and Rare Breed's undisputed per-unit lost profit of $350 (Ex. 1 at 95:4–6, 134:16), damages in this case could exceed $500 million. Yet the Court credited Partisan's representation that two insurance policies totaling $10 million could help satisfy any eventual judgment. (*Id.* at 92:23–25; ECF No. 39 at 32.) Discovery is the only way to accurately determine whether Partisan could actually pay what it might owe. Those insurance policies were never produced. Mr. Woods could not say whether they cover willful infringement damages (Ex. 1 at 93:12–16) or attorneys' fees in an exceptional case (*id.* at 93:21–94:2). Partisan's financial condition is equally opaque—Mr. Woods did not know how much cash sits in the company's bank accounts now (*id.* at 94:7–9), could not identify the value of the company's assets (*id.* at 94:10–12), and when asked how the Partisan

---

[1] *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155–56 (Fed. Cir. 2011) ("A district court should address whether a damage remedy is a meaningful one in light of the financial condition of the infringer before the alternative of money damages can be deemed adequate."); *Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 256 (D.D.C. 2006), *aff'd*, 263 F. App'x 57, 62 (Fed. Cir. 2008) (holding money damages would not be an adequate remedy where "[d]efendants' operations are far-flung, and locating and attaching assets sufficient to satisfy a money judgment would be exceedingly difficult"); *Carbon Autonomous Robotic Sys. Inc. v. Laudando & Assocs. LLC*, No. 24-cv-3012, 2025 WL 1678438, at *14 (E.D. Cal. June 12, 2025) ("[B]ecause there is a strong possibility that defendant would be unable to pay a monetary judgment at the end of this action were plaintiff to prevail, the court finds that defendant's financial condition supports a finding of irreparable harm."); *Shu v. Di*, No. 24-cv-1643, 2025 WL 1483497, at *4 (W.D. Pa. Apr. 11, 2025) (finding irreparable harm to support preliminarily enjoining design patent infringement where defendants were foreign corporations that allegedly continuously hid or changed identities, "providing little assurance that Plaintiff could collect monetary damages"); *QBAS Co., Ltd. v. C Walters Intercoastal Corp.*, No. 10-cv-406, 2010 WL 7785955, at *13 (C.D. Cal. Dec. 16, 210) ("The fact that any potential trial victory by Plaintiffs would be an empty one when remedies are considered shows that irreparable harm to Plaintiffs would result without a preliminary injunction.").

entities would cover a $500 million damages award, responded: "I am not . . . an accountant" and that he had "no idea," (*Id.* at 95:20–96:1). If the Court is to credit Partisan's representations about its ability to satisfy a judgment, it should do so on a complete record.

### C. Good Cause for Expedited Discovery Also Exists to Develop a Complete Record Before Any Renewed Motion for Preliminary Injunction.

#### 1. Plaintiffs May File a Renewed Motion for Preliminary Injunction.

The first good cause factor is whether a preliminary injunction motion is "at issue." *Am. Equip. Sys.*, 2023 WL 8261427, at *2. Plaintiffs intend to file a renewed motion for preliminary injunction if justified by the expedited discovery sought here.

When the evidentiary record at the TRO or early PI stage is in dispute on key elements, the court has discretion to allow the movant to develop "a more robust record to litigate the preliminary injunction." *CLEAR Clinic v. Noem*, No. 25-cv-01906, 2025 WL 3033800, at *2 (D. Or. Oct. 29, 2025); *Am. Equip. Sys.*, 2023 WL 8261427, at *4 (good cause factors are guideposts, not rigid prerequisites). In *CLEAR Clinic*, the court denied a TRO after both sides presented competing evidence. 2025 WL 3033800, at *2. Rather than treating the denial as the final word on preliminary relief, the court ordered that "Plaintiffs shall have two weeks . . . to submit a renewed preliminary injunction motion addressing the evidence and arguments raised by Defendants." *Id.* at *3. Courts in this Circuit have also denied TROs, but then granted expedited discovery to develop the record before a preliminary injunction. *See, e.g.*, *Equity Bank v. McGregor*, No. 22-cv-1081, 2022 WL 1102640, at *8 (D. Kan. Apr. 13, 2022) (denying plaintiffs' motion for TRO and granting request for expedited discovery given plaintiffs' motion for preliminary injunction); *Phibro Biodigester, LLC v. Murphy-Brown, LLC*, No. 22-cv-50, 2022 WL 17243727, at *3 (D. Utah Nov. 23, 2022) (noting the parties conducted expedited discovery in anticipation of preliminary injunction proceedings after denial of TRO).

Here, as in *CLEAR Clinic*, the Court denied relief in the face of competing evidence it had no way to resolve. On infringement, the Court found "material disputes exist regarding the meaning of claim terms that are central to the infringement analysis"—including "substantially in-battery position," which it recognized requires construction. (ECF No. 39 at 23–25). On invalidity, the Court credited Defendants' expert, Mr. Nixon, who relied on claim charts but never produced them. (ECF No. 39 at 27–28; ECF No. 27-2 (Nixon Decl.) ¶¶ 75–79; Ex. 1 at 130:16–20.) Targeted discovery would allow a renewed preliminary injunction motion to be decided on a complete record.

### 2. The Discovery Requests Are Narrowly Tailored and Directed at a Clear Purpose (Factors 2 and 3).

Rare Breed addresses Factors 2 (narrowly tailored) and 3 (clear purpose) together because the analysis overlaps. The requests must be "limited and reasonably tailored to the 'good cause' circumstance for which expedited discovery is sought." *Chaput*, 2015 WL 11090694, at *2. Courts have permitted up to five depositions, ten interrogatories, ten requests for production, and three third-party subpoenas at this stage. *See, e.g.*, *Lindsey & Osborne*, 2008 WL 2858786, at *3–4; *Am. Equip. Sys.*, 2023 WL 8261427, at *6 (granting expedited discovery under good cause standard and permitting plaintiffs to serve 47 total discovery requests—21 interrogatories and 26 requests for production across three defendants). Rare Breed's requests fall well within those bounds: five depositions; six interrogatories; and six requests for production. (Appendices A–B; Exs. 3–4.) Each is tied to a specific preliminary-injunction factor and targets evidence in Defendants' exclusive possession that the Court either relied on or identified as missing or unrebutted.

On ***likelihood of success***, the Court identified unresolved claim construction disputes—including "substantially in-battery position," which requires construction before any renewed PI ruling (ECF No. 39 at 23–25). It also found a "substantial question of validity"—but Partisan's

8

expert charts were never actually produced. (ECF No. 39 at 27–28; Ex. 1 at 130:16–20.) Rare Breed seeks the CAD files, measurement data, and expert depositions needed to test evidence the Court credited but Plaintiffs had no opportunity to challenge. On ***irreparable harm***, the discovery sought is the same financial, insurance, and sales data discussed in Section III.B, *supra*. On ***balance of hardships***, Partisan asserts an injunction would destroy its business and touts $10 million in annual insurance coverage—yet no records have been produced to evaluate either representation. Basic questions remain unanswered: Is the insurance currently paying out to the Partisan entities? Can those funds sustain business operations during litigation? What is the actual financial condition of the companies they claim would be destroyed by an injunction? And the Court's evaluation of ***public interest*** depended heavily on its evaluation of irreparable harm and the merits, so the same discovery discussed above will be relevant.

Appendix A outlines each requested deposition, its proposed scope, and why it is necessary. Appendix B details each written discovery request, the PI factor it addresses, and the relevant portion of the Court's Order. Rare Breed's proposed interrogatories and requests for production are also attached as Exhibits 3 and 4.

### 3.     The Requested Discovery Does Not Impose an Undue Burden.

Expedited discovery is not unduly burdensome when the requests are properly scoped, the opposing party has had notice of the underlying claims, and the information sought would need to be produced during the normal course of litigation or has likely already been located and reviewed. *See Am. Equip. Sys.*, 2023 WL 8261427, at *5–6 (permitting expedited discovery where, despite a "compressed timeline," the defendants "had notice of [the] requests for two months" and the "need for limited discovery before a preliminary injunction hearing outweighs any potential prejudice"); *Icon Health & Fitness, Inc. v. Johnson Health Tech N. Am., Inc.*, No. 10-cv-00209, 2011 WL 13136539, at *3 (D. Utah Mar. 1, 2011) (finding no undue burden where the expedited discovery

9

sought "would need to be produced during the normal course of the litigation and has quite probably already been located and reviewed in preparation for [the] injunction opposition").

All conditions are satisfied here. On scope: Rare Breed's requests are already narrowed to the preliminary injunction factors—not the "dozens of proposed interrogatories and requests for production" the court had to trim in *American Equipment* before granting the moving party's requests for expedited discovery. *Am. Equip. Sys.*, 2023 WL 8261427, at *5. On notice: Partisan has been litigating these exact issues since January. It briefed infringement, validity, irreparable harm, and the balance of hardships. (ECF No. 27.) It prepared four declarations on those subjects. (ECF Nos. 27-1 through 27-4.) It presented witnesses and exhibits at a half-day hearing. The information Rare Breed seeks is the underlying evidence Partisan drew from in building that record. *See Icon Health & Fitness, Inc.*, 2011 WL 13136539, at *3.

### 4. The Timing of the Request for Expedited Discovery Is Appropriate.

The final factor compares the timing of the expedited discovery request to the normal discovery process. Where no scheduling order has been entered, and no Rule 26(f) conference has occurred, courts have found this factor neutral—even when the request is made at the earliest stages of the case. *Am. Equip. Sys.*, 2023 WL 8261427, at *6 (finding the timing factor "neutral" when "the court has not set a scheduling conference or a deadline for a scheduling order" and was "unaware of any pending meet and confer").[2] So too here.

## IV. CONCLUSION

For the above reasons, Rare Breed asks the Court to grant its motion for limited, expedited discovery to support a renewed motion for preliminary injunction.

---

[2] In *American Equipment*, the expedited discovery motion was filed with the preliminary injunction. Here, Rare Breed filed its complaint and its TRO/PI motion the next day—on an expedited timeline driven by Defendants' public campaign to flood the market with 3,500 competing FRTs. (Ex. 1 at 11:18–25.) The priority was getting before the Court as fast as possible.

10

Dated: February 20, 2026                      Respectfully Submitted,

                     By:    */s/ Matthew A. Colvin*
                           Nathan Nicholas, Wyo. Bar #7-5078
                           Travis W. Koch, Wyo. Bar #7-5418
                           **KOCH LAW, P.C.**
                           P.O. Box 2660
                           Cheyenne, WY 82003
                           (307) 426-5010
                           (307) 426-4927
                           tkoch@kochlawpc.com
                           nnicholas@kochlawpc.com

                           Ben Christoff*
                           **FISH & RICHARDSON P.C.**
                           1000 Maine Avenue SW, Suite 1000
                           Washington, DC 20024
                           Telephone: (202) 783-5070
                           christoff@fr.com

                           Matthew A. Colvin*
                           Carl Bruce*
                           **FISH & RICHARDSON P.C.**
                           1717 Main Street, Suite 5000
                           Dallas, Texas 75201
                           Telephone: (214) 747-5070
                           colvin@fr.com
                           bruce@fr.com

                           Glenn D. Bellamy*
                           **WOOD HERRON & EVANS, LLP**
                           600 Vine St., STE 2800
                           Cincinnati, OH 45202
                           (513) 707-0243
                           gbellamy@whe-law.com

                           ***Pro Hac Vice***

                           *Attorneys for Plaintiffs*
                           *Rare Breed Triggers and*
                           *ABC IP, LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 20, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notice of electric filing to all counsel of record.

                                                     */s/ Matthew A. Colvin*
                                                     Matthew A. Colvin