Jeffrey S. Pope (Wyo. State Bar #7-4859)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY 82003-1347
Phone: 307.778.4200
jspope@hollandhart.com

Andrew Orr (Wyo. State Bar #7-6235)
HOLLAND & HART LLP
P.O. Box 68
Jackson, WY 83001
Phone: 307.739.9741
acorr@hollandhart.com

Timothy Getzoff (admitted *pro hac vice*)
Randy Roeser (*pro hac vice* to be filed)
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO 80302
Phone: 303.473.2700
tgetzoff@hollandhart.com
jrroeser@hollandhart.com

Paul Swanson (admitted *pro hac vice*)
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Phone: 303.295.8000
pdswanson@hollandhart.com

ATTORNEYS FOR DEFENDANTS

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas Corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>PEAK TACTICAL, LLC, d/b/a PARTISAN TRIGGERS, a Wyoming limited liability company, and NICHOLAS NORTON, an individual,<br><br>    Defendants. | Civil Action No. 2:26-cv-00018-KHR |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR EXPEDITED DISCOVERY**

**I.      INTRODUCTION**

Plaintiffs ABC IP, LLC and Rare Breed Triggers, Inc.'s (together, "Plaintiffs") motion for expedited discovery (ECF No. 42) (hereinafter, "Motion") is styled as a request for "limited" expedited discovery but, in reality, is a request for a "do-over:" a second preliminary injunction proceeding based on a new record that Plaintiffs originally chose to forego. To be clear, Plaintiffs proceeded with their original Motion for TRO/PI *on the procedure and record they chose* and raised no issue or objection to the process until they received the Court's decision. Now, having lost their motion, they have rethought their tactics and want a second bite at the apple, only this time with expedited discovery "to support a renewed motion for preliminary injunction on a full and complete record," and "specifically to address the evidence the Court said was missing." (ECF No. 42 at 1–3.) That is not "good cause" discovery under Rule 26(d).

This Court already provided Plaintiffs exactly what they demanded: a prompt, noticed, adversarial preliminary injunction hearing with live testimony and argument. The Court set a schedule requiring service by January 23, Defendants' response by January 30, and an in-person hearing on February 4. (ECF No. 9.) The parties conferred on time allocation and *jointly proposed* that "three hours (90 minutes per side)" would suffice. (ECF No. 42-4 at 2; *see also* Exhibit B (Hr'g Tr.) 3:20–4:22; ECF No. 42-3.) Plaintiffs then presented five witnesses, three of its own and two of Defendants' called adversely. (*See generally,* Hr'g Tr., ECF No. 42-3.)

Prior to the hearing Plaintiffs never requested that Defendants bring any witnesses, and when Defendants advised at the outset that their retained technical expert was not present (Hr'g Tr. 5:12–13), Plaintiffs did not request a continuance, additional time, pre-hearing discovery, or any other procedural relief.  In short, the procedure and record presented to the Court was the one requested by Plaintiffs, and Plaintiffs never once objected to or raised any issue with the "completeness of the record" until after the Court issued its ruling.

After the hearing, the Court issued a detailed 35-page order denying both a TRO and a preliminary injunction. (ECF No. 39.) The Court did not deny relief on a technicality or a thin record that prevented reasoned decision-making. To the contrary, it addressed each preliminary injunction factor and concluded that *each* weighed against injunctive relief. (*Id.* at 8.) On irreparable harm, the Court found Plaintiffs' theories lacked evidentiary support and were "conclusory," "speculative," and unmoored from actual sales, pricing, market-share, or reputation evidence. (*Id.* at 11–17.) On likelihood of success, the Court found Plaintiffs' infringement showing could not be evaluated without resolving "material disputes" in claim scope, including "substantially in-battery position." (*Id.* at 23–25.) The Court further found that Defendants raised a "substantial question of validity" with the patents and that Plaintiffs had not carried their burden to show Defendants' validity case "lack[ed] substantial merit." (*Id.* at 26–29.) And the Court held Plaintiffs failed to show likely success on their Lanham Act theory because they did not establish literal falsity or provide evidence that Defendants' statements misled consumers. (*Id.* at 29–31.).

Plaintiffs' motion for expedited discovery is best understood for what it is: an attempted reconsideration-by-discovery. Courts treat attempts to revisit interlocutory injunctive rulings with caution, because repeated, emergency re-litigation is antithetical to orderly case management and the strong policy against piecemeal, repetitive injunction proceedings. *See, e.g.*, *Schmeisser GmbH v. AC-Unity d.o.o.*, 2021 U.S. Dist. LEXIS 255447, at *8–9 (D. Wyo. Aug. 23, 2021) (reconsideration is appropriate only for "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice," and it "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing"). And courts are particularly skeptical when the "new" material is not truly new, but merely evidence that was always obtainable and simply not pursued

in time. *Id.* at *14–15 (rejecting reconsideration where the purported new evidence was "previously available" and could have been developed earlier).

The Tenth Circuit's treatment of successive injunction-related requests reflects the same principle: absent a meaningful change in circumstances, evidence, or law, the system does not permit serial re-tries of preliminary injunction relief. *See SEC v. Young*, 121 F.4th 70, 78 (10th Cir. 2024) (noting that successive attempts to modify preliminary injunctive relief are disfavored absent "a change in circumstances, evidence, or law since the prior motion"). Plaintiffs identify no intervening change in law or any evidence that they could not have sought prior to the hearing. What Plaintiffs identify instead is dissatisfaction with their tactical decisions regarding their evidentiary presentation and the ultimate outcome based on those decisions.

Moreover, Plaintiffs' requested discovery would not address, let alone alter, each of the independent grounds on which the Court denied relief. The Court's order was not driven by a lack of information uniquely in Defendants' possession; it was driven by Plaintiffs' failure to carry their burden with their own evidence and arguments.

In short, Plaintiffs are asking the Court to impose the extraordinary costs of emergency, front-loaded discovery: five depositions, six interrogatories, and six document requests on compressed deadlines, so Plaintiffs can repackage the same preliminary injunction request the Court has already denied. As their counsel put it during conferrals, Plaintiffs want discovery "across the board." The governing standards do not authorize wide-ranging expedited discovery to correct litigation choices after an adverse ruling. Plaintiffs' motion should be denied.

## II.   BACKGROUND

On January 16, 2026, Plaintiffs filed its motion for a temporary restraining order and preliminary injunction ("Motion for TRO/PI"). (ECF Nos. 6–7.) Plaintiffs chose *not* to file a motion for expedited discovery alongside its Motion for TRO/PI, nor did Plaintiffs at any time

prior to the Court's decision make any other formal or informal request for discovery or witnesses. The Court promptly set an expedited schedule, requiring service of the Complaint and motion by January 23, 2026; requiring Defendants' response by January 30, 2026; and setting an in-person hearing "on Plaintiffs' request for a temporary restraining order and preliminary injunction" for February 4, 2026. (ECF No. 39 at 1 (citing ECF No. 9).)

On January 23, the Court (through chambers) requested that the parties confer on "the time required to present each respective argument during the February 4, 2026, Motion Hearing, and the overall time allotment required," and asked counsel to respond with an agreed time frame. (Exhibit A at 6; ECF No. 42-4 at 2.) After conferring, Plaintiffs' counsel reported to the Court on January 26 that the parties conferred and *jointly* "believe that three hours (90 minutes per side) will be sufficient for argument," and asked for guidance on whether the Court intended to hear witnesses at the hearing. (ECF No. 42-4 at 2.)  Again, Plaintiffs did not request pre-hearing discovery, an extension of the briefing schedule or the hearing, the presence of any of Defendants' declarants at the hearing, or leave to file a reply brief. Instead, Plaintiffs asked only for procedural guidance on whether witnesses would be called and suggested the time allotment could be revisited if witnesses were expected. (*Id*.) The Court responded the next day, setting the hearing at 9:00 a.m. and allotting "90 minutes per side for the parties to utilize how they deem appropriate." (*Id*.).  After the Court confirmed the time allotment agreed to by Plaintiffs and clarified that Plaintiffs could call witnesses, Plaintiffs did not ask for more hearing time or any other change to the schedule.

Consistent with the agreed-to framework, at the outset of the February 4 hearing, the Court reiterated that the hearing was scheduled "for argument and evidence, if necessary," with "90 minutes per side." (Hr'g Tr. 3:19–4:4.) Plaintiffs confirmed they intended to present witnesses, including their corporate witness and two experts, and also indicated they would call Defendants'

4

witnesses adversely. (Hr'g Tr. 4:8–20.) Defendants disclosed their "may calls" and expressly advised the Court (and Plaintiffs) that Defendants' retained technical expert, John Nixon, "is not present today." (Hr'g Tr. 5:2–15.) Plaintiffs did not request a continuance, additional time, or pre-hearing discovery in response, nor had Plaintiffs made any request of Defendants to bring any particular witness to the hearing. Instead, Plaintiffs proceeded on the format they had endorsed.

Plaintiffs then presented their case through live testimony from Mr. DeMonico, Mr. Luettke, and Dr. Warty, and also examined Defendants' witnesses Mr. Stakes and Mr. Woods. (ECF No. 42-3.) At the close of argument, the Court also accommodated Plaintiffs' request for a short recess to prepare and present an additional live demonstration and provided Plaintiffs additional time to present argument. (Hr'g Tr. 124:17–125:6.).  At the end of the hearing, Plaintiffs raised no issue with the timing or format of the hearing or of any "incompleteness" of the record, nor did they ask for a continuance or for any of the discovery they now seek. Instead, Plaintiffs were content to let the Court consider and render its decision based on the record presented.

In short, Plaintiffs made a deliberate decision to endorse and proceed with the expedited schedule and hearing format that the Court set. (ECF No. 42-4 at 2.) Only after losing did Plaintiffs reconsider its tactical decision and seek discovery that they could have but never previously requested. (ECF No. 42 at 1–3.)

### III.  ARGUMENT

#### A.  Plaintiffs' Motion Is an Improper Attempt to Re-Run Their PI Proceeding, Not a Good-Cause Request for Pre–Rule 26(f) Discovery.

Although Plaintiffs style their request as one for "expedited discovery," they do not seek expedited discovery for accepted purposes—to preserve evidence, identify unknown defendants, or address an imminent evidentiary need that could not reasonably have been addressed earlier. Instead, they seek expedited discovery "in advance of a renewed motion for preliminary

5

injunction"—relief the Court expressly denied in favor of "proceed[ing] under the status quo while the case proceeds on the merits." (ECF No. 42 at 1–3, 34-35.) There is no law to support this second-chance procedure. Indeed, Plaintiffs have not cited a single case in which expedited discovery was permitted *after* a preliminary injunction order issued, or to support a second motion for preliminary injunction, and Defendants are aware of none.

Courts treat preliminary injunction "do-overs" with skepticism absent clearly changed circumstances. In *Schmeisser*, the District of Wyoming explained that a motion for reconsideration of a preliminary injunction is an interlocutory request invoking the court's discretionary authority under Rule 54(b), and that courts may "look to the standard used to review a motion made pursuant to Federal Rule of Civil Procedure 59(e)." 2021 U.S. Dist. LEXIS 255447, at *7–8. The grounds warranting reconsideration are narrow: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* at *8. And critically, reconsideration "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* Similarly, in *SEC v. Young*, the Tenth Circuit addressed successive efforts to modify preliminary injunctive relief and explained that when a motion is "successive" (raising the same issues or issues that could have been raised earlier), interlocutory review is appropriate only where "there was a change in circumstances, evidence, or law since the prior motion." 121 F.4th 70 at 78. That principle reflects the "long-established policy against piecemeal" re-litigation of preliminary injunctive issues. *Id.* at 76. Plaintiffs identify no such change here. (ECF No. 42.)

Plaintiffs' motion seeks precisely what the established case law forbids. Plaintiffs do not identify a change in law. (ECF No. 42.) They do not point to any new evidence that was previously unavailable. Instead, they seek discovery to generate a different record than the one they elected

to proceed upon for the original PI. (*Id*. at 1–3.) Such a request merely "revisit[s] issues already addressed" and attempts to "advance arguments that could have been raised in prior briefing." *Schmeisser*, 2021 U.S. Dist. LEXIS 255447, at *8.In sum, the controlling principles reflected above counsel strongly against authorizing discovery whose sole purpose is to tee up a second PI absent a meaningful change in law, facts, or evidence. Plaintiffs make no such showing.

### B. The Requested Expedited Discovery Would Not Cure the Dispositive Defects the Court Identified.

Even if Plaintiffs could satisfy Rule 26(d)'s "good cause" standard (they cannot), their motion fails for a more basic reason: the requested discovery would not affect the multiple independent grounds on which the Court denied TRO/PI relief. The Court did not deny relief because Plaintiffs lacked access to some key, Defendant-held information; it denied relief because Plaintiffs failed to carry their own burden, especially on irreparable harm, and because the record presented dispositive disputes that expedited discovery would not resolve. (ECF No. 39 at 8, 34–35.) Plaintiffs rely on cases suggesting expedited discovery may be warranted to prepare for an injunction proceeding. (ECF No. 42 at 5–6.) But Plaintiffs were not prevented from requesting discovery, additional time, or a continuance before or at the hearing; they proceeded through a noticed evidentiary hearing under stipulated procedures without seeking any such relief, even after being told Defendants' technical expert would not appear live. (Hr'g Tr. 4:3–5:24.) Having made that choice, Plaintiffs cannot use Rule 26(d) to obtain a second, accelerated injunction record to relitigate what was already decided.

First, The Court's irreparable harm analysis turned on Plaintiffs' lack of affirmative evidence: Plaintiffs' own sales history, pricing history, market-share and reputation evidence, and concrete support for price erosion and market displacement. (ECF No. 39 at 11–17.) Those subjects are primarily within Plaintiffs' own possession and control. The Court faulted Plaintiffs for

7

offering "conclusory" and unsupported assertions rather than evidence tying alleged harms to market facts. (*Id*.) Expedited discovery into Defendants' files cannot supply Plaintiffs' missing proof about Plaintiffs' own sales, pricing, and alleged market effects.

Plaintiffs attempt to shift the focus to Defendants' ability to satisfy a hypothetical judgment (insurance policies, balance sheets, capitalization). (ECF No. 42 at 5–8.) That puts the cart before the horse and ignores the extent of the Court's ruling. Collectability concerns presuppose Plaintiffs are likely to suffer harm that insolvency would make irreparable. The Court did not find Plaintiffs had shown a likelihood that Defendants would be incapable of covering a judgment.[1] But in addition, the Court found Plaintiffs had not provided evidence of *their own* likely harm in the absence of an injunction—no evidence of sales data, pricing pressure, lost market share, injured dealer networks, or tarnished reputation. (ECF No. 39 at 11–17.) Expedited discovery into Defendants' insurance and assets cannot cure Plaintiffs' threshold failure to show harm they'll likely suffer, irreparably or otherwise, without an injunction.

Second, Plaintiffs seek CAD files, engineering documents, and depositions to "develop" infringement evidence. But the Court's infringement ruling was not driven by lack of access to the Disruptor's design. Plaintiffs presented and demonstrated the product at the hearing. (Hr'g Tr. 125:1–127:15.) The Court denied relief because infringement could not be assessed without resolving a material dispute about claim scope, especially "substantially in-battery position." Despite Defendants raising this issue in its response brief, Plaintiffs failed to provide any argument or explanation to rebut Defendants' argument, instead choosing to ignore it.  (ECF No. 39 at 23–25 (finding "material disputes exist" regarding claim terms "central to the infringement analysis,"

---

[1] "In addressing Defendants' ability to satisfy a judgment, Plaintiffs ignore testimony that Defendants sales will generate "hundreds of millions of dollars" from which a judgment creditor could seek recourse. (Hr'g Tr. at 97:2-7.)

identifying "substantially in-battery position," and holding the Court "cannot properly compare the asserted claims to the accused device without first construing the meaning and scope").

No amount of expedited discovery into Defendants' CAD drawings or internal design documents cures that threshold problem. Claim construction is a legal question for the Court based principally on the intrinsic record, not a factual question answered by a defendant's files. (*See* ECF No. 39 at 19–25 (citing *Markman* and *O2 Micro*)). Plaintiffs' proposed discovery therefore targets the wrong "gap": the gap the Court identified was not "we don't know what the Disruptor looks like," but "the Court cannot evaluate infringement until claim scope is determined," and Plaintiffs failed to give the Court a workable construction to apply. (*Id*. at 23–25.) As noted by the Court, "Neither Plaintiffs nor their expert attempt an express definition of 'substantially in-battery position.'" (ECF No. 39 at 25.) That omission was Plaintiffs' choice and failure of advocacy on a legal issue, not something Defendants "possess."

Third, the Court held Defendants raised a "substantial question" of validity, then found Plaintiffs did not carry their burden to show the defense "lack[ed] substantial merit." (ECF No. 39 at 26–29.) That outcome did not arise from missing, Defendant-possessed information. Defendants' invalidity case (as presented in briefing, declarations, and at the hearing) was grounded in publicly-available patents/prior art and related public history—materials Plaintiffs had access to and could have addressed directly. (*Id*. at 27–28 (summarizing Defendants' obviousness theory grounded in § 103/KSR and prior art including the '067 Patent and related materials).)

Plaintiffs now propose discovery into Defendants' "prior art analysis," "invalidity contentions," and "missing claim charts."[2] (ECF No. 42-2 at 2–3; ECF No. 42-6 at 7 (RFP 1). But

---

[2] Plaintiffs seek the "missing claim charts" referenced in Mr. Nixon's declaration. (ECF No. 42-2 at 2; ECF No. 42-6 at 7.) But the Court's decision did not turn on those absent exhibits, which

9

a party's internal "analysis," litigation contentions, or work product summaries do not determine patent validity; the publicly-available prior art does. And the Court's ruling already accounted for the evidentiary record actually presented, finding Defendants' showing sufficient to raise a substantial question that Plaintiffs failed to rebut. (ECF No. 39 at 28–29.)Plaintiffs' inability to carry their rebuttal burden is not something that can be fixed by discovery into Defendants' litigation files. Plaintiffs elicited testimony from their technical expert at the hearing but notably did not present an invalidity rebuttal opinion. That is a Plaintiffs-controlled omission.

*     *     *

For all these reasons, none of the good cause factors in Plaintiffs' Motion support expedited discovery. (Mot. at 5-10.) The factor they concede carries "particular weight"—irreparable harm—was not shown at the preliminary injunction hearing and is not shown here. Nor can Plaintiffs claim the time is right for expedited discovery. There is no pending preliminary injunction motion. This request should have been made, if at all, before the hearing, not after it. The requested discovery is neither narrowly drawn nor clear in its purpose. Rather, Plaintiffs seek wide-ranging, "across the board" discovery that they do not and cannot show will alter the multiple independent grounds for denial that the Court identified in its order. And Plaintiffs plainly would impose an undue burden on Defendants, and the Court, by forcing expedited discovery and another round of expedited proceedings that Plaintiffs could have addressed during their first go-around. There is no good cause for emergency discovery

## IV.   CONCLUSION

Accordingly, the Court should deny Plaintiffs' Motion.

---

were inadvertently omitted from Defendants' filing. The Court ruled on the evidentiary record before it and Plaintiffs' failure to meet their rebuttal burden. (ECF No. 39 at 26–29.)

Dated: February 27, 2025.

/s/ *Timothy P. Getzoff*
Andrew Orr (Wyo. State Bar #7-6235)
HOLLAND & HART LLP
P.O. Box 68
Jackson, WY 83001
Phone: 307.739.9741
acorr@hollandhart.com

Jeffrey S. Pope (Wyo. State Bar #7-4859)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY 82003-1347
Phone: 307.778.4200
jspope@hollandhart.com

Paul Swanson (pro hac vice)
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Phone: 303.295.8000
pdswanson@hollandhart.com

Timothy Getzoff (pro hac vice)
Randy Roeser (pro hac vice to be filed)
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO 80302
Phone: 303.473.2700
tgetzoff@hollandhart.com
jrroeser@hollandhart.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on February 27, 2026, a copy of the foregoing was filed electronically using the CM/ECF system, which will send notification of such filing to counsel of record.

                                                      */s/ Timothy P. Getzoff*
                                                      Timothy P. Getzoff

37144369_v2