| | |
|---|---|
| Nathan Nicholas, Wyo. Bar #7-5078<br>Travis W. Koch, Wyo. Bar # 7-5418<br>Koch Law, P.C.<br>P.O. Box 2660<br>Cheyenne, WY 82003<br>(307) 426-5010<br>(307) 426-4927 (fax)<br>tkoch@kochlawpc.com<br>nnicholas@kochlawpc.com | Matthew A. Colvin*<br>Carl E. Bruce*<br>FISH & RICHARDSON P.C.<br>1717 Main Street, Suite 5000<br>Dallas, Texas 75201<br>Telephone: (214) 747-5070<br>colvin@fr.com<br>bruce@fr.com |
| Glenn D. Bellamy*<br>Wood Herron & Evans, LLP<br>600 Vine St., STE 2800<br>Cincinnati, OH 45202<br>(513) 707-0243<br>gbellamy@whe-law.com | Ben Christoff*<br>FISH & RICHARDSON P.C.<br>1000 Maine Avenue SW, Suite 1000<br>Washington, DC 20024<br>Telephone: (202) 783-5070<br>christoff@fr.com |

**ATTORNEYS FOR PLAINTIFFS**
**Pro Hac Vice*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas corporation,<br><br>*Plaintiffs*,<br><br>v.<br><br>PEAK TACTICAL, LLC d/b/a PARTISAN TRIGGERS, a Wyoming limited liability company,<br><br>and<br><br>NICHOLAS NORTON, an individual,<br><br>*Defendants*. | Case No. 2:26-cv-00018-KHR<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR EXPEDITED DISCOVERY**

Rare Breed does not dispute that it proceeded with the February 4 hearing as scheduled, without requesting pre-hearing discovery or a continuance. It did so because Defendants were—and still are—flooding the market with thousands of copycat FRTs each week, and because this case moved at emergency speed: complaint to hearing in twenty days, more than 325 pages of opposition and declarations arriving five days before, no reply brief permitted, and only ninety minutes per side. Rare Breed participated in good faith on the record that existed, as parties routinely do when emergency proceedings move this fast—particularly when TRO denials often lead to further PI proceedings with discovery in between. (ECF No. 42 ("Mem.") at 7–8.) Defendants' Response treats the hearing and the Court's order as the final word on preliminary relief. But Rare Breed moved for both a TRO and a PI, and could not anticipate the volume of materials and new arguments Defendants would file just five days before the hearing.

Defendants' Response presents two questions. First, the governing standard. Defendants urge the Court to treat this as a motion for reconsideration under Rules 54(b) and 59(e), requiring a showing of changed law, new evidence, or clear error. But Rare Breed does not ask the Court to revisit any finding it made—it asks for leave to take discovery. Courts in this Circuit and District recognize that such motions are governed by good cause under Rule 26(d).

Second, whether good cause exists. Each category of discovery targets evidence that the Court identified as absent in the current record: evidence that remains unverified (ability to pay), evidence the Court would need to resolve a material dispute it identified (infringement), or evidence underlying the Court's findings that Rare Breed had no opportunity to adequately challenge (validity). Good cause exists, and the Court should grant the Motion.

**I.      Rare Breed Seeks Expedited Discovery Under Rule 26(d)—Not Reconsideration of the Court's PI Ruling.**

Courts in this Circuit and District evaluate motions for expedited discovery under Rule

1

26(d)'s good cause standard. (Mem. at 4–5.) Defendants ask the Court to treat this motion as a request for reconsideration under Rules 54(b) and 59(e)—which would require Rare Breed to show an intervening change in law, previously unavailable evidence, or clear error. (ECF No. 43 ("Resp.") at 3, 6–7.) The Court should reject that framing. Reconsideration asks a court to revisit its findings; Rare Breed's motion does not. And Defendants' cases involve actual motions for reconsideration.[1] If Rare Breed challenges the Court's PI ruling on the existing record, it will do so through interlocutory appeal—not reconsideration. Whether the Court should treat a future renewed motion for a PI as one for reconsideration is a separate question; that issue is not before the Court. The only question now is whether good cause supports targeted discovery before the Rule 26(f) conference.

## II. Good Cause Supports Granting the Motion for Expedited Discovery

Defendants do not dispute that courts in this Circuit apply the five-factor good cause standard Rare Breed cited: (1) whether a PI is at issue, (2) breadth, (3) purpose, (4) burden, and (5) timing. (Mem. at 5; Resp. at 10.) Nor do they challenge that discovery needed to prevent irreparable harm can itself support good cause. (Mem. at 5–6.) Defendants meaningfully contest only two of the five factors: purpose and timing. On purpose (Factor 3), they claim the discovery would not matter. (Resp. at 7–10.) On timing (Factor 5), they contend Rare Breed should have sought it earlier. (Resp. at 1, 4–5, 7–10.) The remaining factors receive a single paragraph. (Resp. at 10.)

The purpose factor asks whether the discovery is tied to the issues raised in a preliminary injunction motion. *See Ainstein AI, Inc. v. ADAC Plastics, Inc.*, No. 23-cv-2166, 2023 WL

---

[1] Both *Schmeisser* and *Young* involved actual motions for reconsideration—not motions for expedited discovery. In *Schmeisser GmbH v. AC-Unity d.o.o*, the movant requested reconsideration based on a "newly discovered" affidavit that was in fact available to it before the hearing—it "just had not discovered it by then." No. 21-cv-24, 2021 WL 7286251, at *4 (D. Wyo. Aug. 23, 2021). In *SEC v. Young*, the Tenth Circuit dismissed an appeal of a third motion raising identical, previously forfeited arguments with no changed circumstances. 121 F.4th 70, 78 (10th Cir. 2024).

3568661, at *4 (D. Kan. May 19, 2023). Defendants argue the discovery serves no purpose because it would not change why the Court denied relief. (Resp. at 7–10.) But the discovery Rare Breed requests focuses on information the Court identified as in dispute and could change the Court's analysis, depending on what the discovery reveals.

   ***(i) Irreparable harm.*** Defendants say collectability "puts the cart before the horse"—that Rare Breed must first prove independent irreparable harm before collectability matters. (Resp. at 8.) But the Federal Circuit instructs courts to "assess whether a damage remedy is a meaningful one in light of the financial condition of the infringer *before* the alternative of money damages can be deemed adequate." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155–56 (Fed. Cir. 2011) (emphasis added). Collectability is not a secondary inquiry contingent on a separate irreparable harm. And here, the collectability record is built entirely on Defendants' unverified representations: $10 million in insurance coverage raised for the first time in opposition, unproduced insurance policies, and a witness who could not say whether the policies cover willful infringement, attorneys' fees, or even how much cash the company holds. (Mem. at 6–7.)[2] If discovery reveals that the insurance does not cover the damages at issue and that Defendants lack the financial capacity to satisfy a judgment, then money damages would be inadequate—and irreparable harm likely. (*Id.* at 5–7.)

---

[2] Defendants suggest that "hundreds of millions of dollars" in projected revenue could satisfy a judgment. (Resp. at 8 n.1 (citing ECF No. 43-2 at 97:2–7).) The math does not support that. At 1.68 million projected units (ECF No. 42-3 at 95:8; ECF No. 27-4 ¶¶ 22–23) and $299 per unit, gross revenue would be roughly $502 million. But Rare Breed's undisputed per-unit lost profit is $350 (ECF No. 42-3 at 95:4–6), yielding approximately $588 million in damages on those same units—an ***$86 million* shortfall *even if every dollar of revenue were pure profit***. In reality, the gap is far larger. Discovery into Defendants' actual margins and insurance policies is needed to determine the size of the gap and whether Defendants can cover it.

3

***(ii) Likelihood of Success: Infringement.*** The Court found that "substantially in-battery position" requires construction, but did not construe it. (ECF No. 39 at 25.) Rare Breed agrees with Defendants that claim construction is a question of law resolved principally on the intrinsic record. (Resp. at 8–9; ECF No. 39 at 22.) But construction is only step one; step two requires *comparing* the accused device to the properly construed claims. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). Once this Court construes "substantially in-battery position"—as it must before any renewed PI ruling—it would then apply that construction to the Disruptor. *See Shuffle Master, Inc. v. VendingData Corp.*, 163 F. App'x 864, 867–68 (Fed. Cir. 2005) (The court is "required to provide some form of claim construction, even if abbreviated, preliminary, or tentative" when likelihood of success turns on a contested construction issue.). This second step requires evidence: CAD files, trigger travel measurements, and technical testimony needed to compare the asserted claims to the Disruptor's design under the Court's construction. (*See* Mem. at 8–9, App. B at RFP 2.) Without it, construction alone resolves nothing.

***(iii) Likelihood of Success: Validity.*** Defendants contend their invalidity case rests on publicly available prior art, so Rare Breed had everything it needed. (Resp. at 9–10.) That confuses the prior art *references* with the *analysis*. The '067 patent is public. But Mr. Nixon's application of that art to the asserted claims—how the references map to each limitation and why a person of ordinary skill would combine them—is not. It lives in claim charts that Mr. Nixon referenced as exhibits to his declaration but never attached (ECF No. 39 at 27–28; ECF No. 27-2 ¶¶ 75–79), in testimony he never gave, and cross-examination he never underwent because Defendants did not bring him to the hearing (ECF No. 42-3 at 5:12–13; *see also* Resp. at 5). Defendants concede the charts were "inadvertently omitted." (Resp. at 9 n.2.) But the Court credited Mr. Nixon's analysis in finding a substantial question of validity. (ECF No. 39 at 27–28.) That finding shifted the burden

4

to Rare Breed to demonstrate the defense "lack[ed] substantial merit." (*Id.* at 26–29.) Rare Breed should not be forced to bear that burden without seeing the charts and questioning the expert who created them. This limited-scope discovery would provide that opportunity.

*(iii) Timing.* This factor asks how far in advance of the normal discovery process the request for expedited discovery is made. *See Am. Equip. Sys., LLC v. Chester*, No. 23-cv-680, 2023 WL 8261427, at *6 (D. Utah Nov. 29, 2023); (Mem. at 10). Defendants do not argue that this case is too early for discovery in that sense. Their point is narrower: Rare Breed could have sought discovery before the hearing and did not, so discovery should be foreclosed now. (Resp. at 1, 4–5, 7–8.) Rare Breed sought emergency relief (a TRO) on an expedited schedule (ECF No. 9; Mem. at 3–4), a request later justified by Defendants' projected imminent sales of 3,500 triggers a week. (Mem. at 10 n.2.) Seeking expedited discovery before Defendants filed their opposition would have meant guessing what discovery would matter, and risk delaying the very relief Rare Breed was seeking. Besides, the need for the requested discovery crystallized only after the Response (served days before the hearing) and hearing revealed what Defendants would rely on and what the Court found unresolved. (ECF No. 39 at 23–25, 27–28, 32.) This is not a change in tactics; it is a change in the record.

The remaining good cause factors do not change the analysis. The absence of a currently pending PI motion is not dispositive (Resp. at 10)—the inquiry is whether a PI is "at issue." *See Am. Equip. Sys.*, 2023 WL 8261427, at *2. Defendants' suggestion that this Motion should have been made earlier reprises the timing argument addressed above. (Resp. at 10.) As to breadth and burden, Defendants identify no specific request they contend is overbroad and offer no concrete showing of hardship. (*See id.*)

The Court should grant Rare Breed's motion for discovery.

5

Dated: March 5, 2026                             Respectfully Submitted,

By:  /s/ Matthew A. Colvin
Nathan Nicholas, Wyo. Bar #7-5078
Travis W. Koch, Wyo. Bar #7-5418
**KOCH LAW, P.C.**
P.O. Box 2660
Cheyenne, WY 82003
(307) 426-5010
(307) 426-4927
tkoch@kochlawpc.com
nnicholas@kochlawpc.com

Ben Christoff*
**FISH & RICHARDSON P.C.**
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070
christoff@fr.com

Matthew A. Colvin*
Carl Bruce*
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
colvin@fr.com
bruce@fr.com

Glenn D. Bellamy*
**Wood Herron & Evans, LLP**
600 Vine St., STE 2800
Cincinnati, OH 45202
(513) 707-0243
gbellamy@whe-law.com

**Pro Hac Vice*

*Attorneys for Plaintiffs
Rare Breed Triggers and
ABC IP, LLC*

6

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Matthew A. Colvin*
Matthew A. Colvin
